UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID EDMOND, CAROL EDMOND, and
TOM EDMOND,

                              Plaintiffs,

                -against-

                                              **MEMORANDUM AND ORDER**
                                                16-CV-2871 (JFB)(AYS)

LONGWOOD CENTRAL SCHOOL
DISTRICT, SUFFOLK COUNTY,
SUFFOLK COUNTY POLICE
DEPARTMENT, SUFFOLK COUNTY
POLICE OFFICER EDWARD
ZIMMERMAN, in his individual and official
capacities, SUFFOLK COUNTY POLICE
OFFICER SGT ISNARDI, in his individual
and official capacities, SUFFOLK COUNTY
POLICE OFFICERS "JOHN AND JANE DOES
1-10," in their individual and official capacities,
LONGWOOD SUPERINTENDANT MICHAEL
R. LONERGAN, in his individual and official
capacity, PRINCIPAL MARIA CASTRO, in her
individual and official capacity, LONGWOOD
ASSISTANT PRINCIPAL SCOTT REESE, in
his individual and official capacity, LONGWOOD
LONGWOOD SECURITY GUARD SCOTT, in
his individual and official capacity, SECURITY
GUARDS "JOHN AND JANE DOES 1-10,"
in their individual and official capacities and
JANE AND JOHN DOE # 1-10, in their individual
and official capacities,

                           Defendants.
----------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiffs David Edmond ("David"), Carol Edmond, and Tom Edmond

(collectively "Plaintiffs") commenced this action alleging that David was the victim of

excessive force inflicted by defendants Longwood Central School District (the

1

"District"), Longwood Superintendant Michael R. Lonergan, in his individual and official capacity, Principal Maria Castro, in her individual and official capacity, Longwood Assistant Principal Scott Reese, in his individual and official capacity, Longwood Security Guard Scott, in his individual and official capacity, and Longwood Security Guards "John and Jane Does 1-10," in their individual and official capacities, (collectively "the District Defendants").[1]

Presently before this Court is the District Defendants' motion pursuant to Federal Rule of Civil Procedure 26, seeking a protective order directing the parties to keep confidential the identities and images of non-party current or former District students depicted in the District's video footage of the incident.  See Docket Entry ("DE") [28]. For the reasons set forth below, the motion for the protective order is DENIED.

BACKGROUND

Plaintiffs allege that on or about June 4, 2015, David, a former District student, was in the hallway of the District's Longwood High School ("LHS"), following a "senior prank" when students, but not David, began chanting the word "asshole" repeatedly. Compl. ¶¶ 18, 35-39, DE [1].  Plaintiffs allege that while David was in the hallway, he was seized and assaulted by Assistant Principal Reese and Security Guard Scott Partlow. Compl. ¶¶ 40-76.  The LHS hallway cameras captured video footage of the incident. Plaintiffs further allege that David was deprived of necessary medical care following the incident, and subject to disparately harsh discipline by the District.  Compl. ¶¶ 78-85, 80-

---

[1]  This Court notes that the Complaint also names as defendants, Suffolk County, Suffolk Police Department, Suffolk County Police Officer Edward Zimmerman, in his individual and official capacities, Suffolk County Police Officer Sgt. Isnardi, in his individual and official capacities, and Suffolk County Police Officers "John and Jane Does 1-10," in their individual and official capacities.

94.

Plaintiffs commenced this action on June 3, 2016. See generally Compl.  On August 1, 2016 this Court held an Initial Conference at which time Plaintiffs demanded production of the video footage from the District.  See Minute Entry 8/1/2016, DE [17]. The District did not object to producing the video footage, yet stated that they would prefer to do so under a confidentiality agreement due to privacy concerns related to the non-party students visible in the footage.  See id.  This Court directed the parties to confer regarding whether such a confidentiality agreement could be agreed upon for this particular production, as well the overall discovery production in this matter.  See id. In subsequent status letters to this Court, DE [25] and [26], counsel represented that they could not reach an accord with regard to a confidentiality agreement for the video footage, and the instant motion was briefed and submitted. See DE [28].  Following the filing of this motion, the parties did enter into a confidentiality agreement concerning discovery production for the rest of the matter, and even engaged in several good faith attempts both among themselves and in phone conferences with chambers, to try to reach a compromise which would mutually satisfy both parties.  Unfortunately, no such agreement could be reached.

DISCUSSION

I.      Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

A protective order may be issued by the Court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. That rule provides, in relevant part that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). Further, "[w]here the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992).

II.     The Parties' Positions

The District Defendants argue that they are willing to produce the video, and only seek a confidentiality or protective order to protect the interests of uninvolved students whose images are shown in the video. The District Defendants contend that the Plaintiffs cannot demonstrate a significant interest in making public the identities and depictions of the uninvolved students. In addition, the District notes that while the Second Circuit has yet to confront this issue, video footage from a school's hallway camera may qualify as an education record under the Federal Educational Rights and Privacy Act ("FERPA"), and thus subject to strict confidentiality unless disclosure is made pursuant to a court order.

Plaintiffs argue that FERPA does not provide protections for a school's hallway video footage, therefore the video footage at issue does not qualify as an educational record under FERPA. Plaintiffs further argue that students do not have a reasonable expectation of privacy when it comes to walking public hallways, thus students' privacy rights and/or Fourth Amendment rights are not at issue here. Finally, Plaintiffs contend that the balance of interests, namely student safety, outweighs any alleged privacy interests of students who were present in the hallway at the time of the alleged incident, and thus captured on the video footage.

III.     Characterization of the Video as a FERPA
         Record Does Not Require a Protective Order

At the outset, this Court notes that it is an open question in this Circuit whether video footage qualifies as an educational record pursuant to FERPA. Nevertheless, this Court does not have to opine on the question because even if it determined that the video footage qualified as an educational record under FERPA, that fact, standing alone would not bar its production in this matter.

FERPA, inter alia, authorizes federal funds to be withheld from school districts that permit students' "education records (or personally identifiable information contained therein...)" to be released without their parents' written consent, 20 U.S.C. § 1232g(b)(1); and defines education records as "records, files, documents, and other materials" containing information directly related to a student, which "are maintained by an educational agency or institution or by a person acting for such agency or institution." § 1232(a)(4)(A).

Courts have recognized that FERPA does not create a privilege against disclosure of student records. Rios v. Read, 73 F.R.D. 589 (E.D.N.Y. 1977); Ragusa v. Malverne

<u>Union Free School District</u>, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008).  Moreover, "[u]nder the provisions of the statute, a school would not be subject to sanctions for disclosure of education records covered by FERPA when such disclosure was made pursuant to a judicial order." <u>Ragusa</u>, 549 F. Supp. at 291–92.  Nonetheless, in light of the privacy concerns embodied in FERPA, courts have imposed a higher burden on litigants moving to compel the disclosure of educational records: "before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interest of the students." <u>Rios</u>, 73 F.R.D. at 599.  <u>See</u> <u>also</u> <u>Ragusa</u>, 549 F. Supp. 2d at 292.

In light of the fact that an educational record may still be disclosed if the balance of interests so justifies it, the Court now considers whether the balance of interests weighs in favor of production of the video.

IV.     <u>Balance of Interests</u>

In the instant case, the District Defendants seek a protective order pursuant to Rule 26(c) staying the discovery of the video footage until a confidentiality order is entered to "protect the privacy of the countless non-party students whose images are incidentally shown in the video footage from use outside the context of this litigation and from release to the press and/or the public." Defs.' Memo. at 1, DE [30]. However, the District Defendants do not point to any specific facts or circumstances that have arisen thus far in the litigation which support this position. Rule 26(c) is clear that a court may issue a protective order upon a showing of good cause. <u>See</u> FED. R. CIV. P. 26(c)(1). However, conclusory statements that a party might disclose video footage of a public school hallway to the press and/or public does not establish good cause.  <u>See</u> <u>Costa v.</u>

AFGO Mech. Servs., Inc., 237 F.R.D. 21, 23 (E.D.N.Y. 2006) (finding that "plaintiff's mere conclusory allegation [ ] is insufficient to establish good cause") (internal quotations and citation omitted) (alteration in original).

To countenance the withholding of relevant evidence—even for a short period—would run counter to the over-arching purpose of the federal discovery rules which were designed to encourage liberal pre-trial disclosure in order to ensure that the crucible of a trial is "less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958); see also Daniels v. Nat'l R.R. Passenger Corp., 110 F.R.D. 160, 161 (S.D.N.Y. 1986); Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir. 1985); Schlesinger Investment Partnership v. Fluor Corp., 671 F.2d 739, 742 (2d Cir. 1982); Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 474 (S.D.N.Y. 1982).

The District Defendants have provided this Court with no independent factual basis, nor case law, to issue a protective order other than the spectre that Plaintiffs may release the footage to the public.  Without any such showing, the Court cannot, and does not, find any good cause to issue such an order. The touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause. That essential condition precedent is lacking here. Conclusory assertions and the "whiff" of possible maneuvers on the part of the Plaintiffs are insufficient to establish good cause. Those assertions, consequently, cannot serve as the necessary factual predicate for a protective order

7

"Discovery is not a matter of gamesmanship nor conducted like a game of chess." Phelan v. Cambell, 2012 WL 407161, at *2 (N.D.N.Y. Jan. 19, 2012), report and recommendation adopted, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012), aff'd, 507 Fed. Appx. 14 (2d Cir. 2013). Rather, the over-arching purpose of the discovery rules is to "encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field" for both parties to the litigation. United States v. Smith, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013); see Cornell Research Found., Inc. v. Hewlett–Packard Co., 2006 WL 5097357, at *8 (N.D.N.Y. Nov. 13, 2006) order clarified, 2007 WL 4324094 (N.D.N.Y. May 16, 2007), aff'd sub nom., Cornell Univ. v. Hewlett–Packard Co., 2007 WL 4302778 (N.D.N.Y. July 23, 2007) ("The court has consistently reminded the parties that one of its goals, in carrying out its discovery oversight responsibilities, has been to ensure a level playing field for both sides."); see also Inferrera v. Wal–Mart Stores, Inc., 2011 WL 6372340, at *2 (D.N.J. Dec. 20, 2011) ("The Court will not authorize 'gotcha games.' Defendant's tape will be produced and then plaintiff will be deposed. This is how the orderly progression of civil cases has and will proceed.").

In the instant case, the Court, exercising its discretion in managing the discovery process and otherwise finding no good cause to grant a protective order with regard to the production of the surveillance footage in this action, DENIES the District Defendants' motion. Defendants are directed to provide Plaintiffs' counsel with a copy of the surveillance video within seven (7) days of the date of this Order.

CONCLUSION

For the foregoing reasons, the District Defendants' motion for a protective order

as set forth in Docket Entry [28] is DENIED.


Dated: Central Islip, New York
       April 17, 2017

                                          /s/ Anne Y. Shields
                                         ANNE Y. SHIELDS
                                  United States Magistrate Judge