# United States District Court

*for the*

## Eastern District of New York

**DAVID EDMOND, CAROL EDMOND**, his mother,
and
**TOM EDMOND**, his father

*Plaintiffs*

–v–

**LONGWOOD CENTRAL SCHOOL DISTRICT**;
**MICHAEL R. LONERGAN**, DSW, individually, and as Superintendent of Schools; **MARIA I. CASTRO**, EDD, individually and as Assistant Superintendent for Instruction and Learning, and as Principal of Longwood High School at the times mentioned in this complaint; **MELISSA CONLON**, individually and as Assistant Principal, Longwood Senior High School; **SCOTT REESE**, individually and as Assistant Principal, Longwood Senior High School; **BARBARA MERKLE,** , individually and as a member of the Longwood Senior High School Administration Personnel Group;
**JAMES PERROTTA,** individually and as a "security guard" and/or a supervisor of "security" at the Longwood Senior High School, &c; **SCOTT PALTROW,** individually and as a "security guard" at the Longwood Senior High School, &c; and **JERRY CHAN,** individually and as a "security guard" at the Longwood Senior High School,

*Defendants*

## PLAINTIFFS' MEMORANDUM OF LAW SUPPORTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Cory H. Morris (CM 5225)**
*Counsel of Record for Plaintiffs*

## Table of Contents

Table of Authorities .................................................................................ii

Preliminary Statement.............................................................................. 1

Factual Background ................................................................................. 1

Argument .................................................................................................2

Point I.   Plaintiffs have established their § 1983 equal protection claims
           pursuant to the Fourteenth Amendment of the United States
           Constitution ............................................................................. 1

Point II.   Plaintiffs have established their Title VI claims against
            defendants...............................................................................3

Point III.   Plaintiffs have established their *Monell* claims of failure to
             train and supervise..............................................................7

Point IV.   The individually named defendants are not entitled to
            qualified immunity as their actions violated a clearly established
            constitutional right of which a reasonable school official would have
            known .................................................................................... 11

CONCLUSION ................................................................................. 12'

## TABLE OF AUTHORITIES

### CASES

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242 (U.S. 1986)........................2

*Babiker* v. *Ross Univ. Sch. of Med.*, No. 98 CIV 1429 THK, 2000 U.S. Dist. LEXIS 6921, 2000 WL 666342, at \*4 (S.D.N.Y. May 19, 2000)....4

*Batista* v. *Rodriguez*, 702 F.2d 393 (2d Cir. 1983) ...................................7

*Bizzarro* v. *Miranda*, 394 F.3d 82 (2d Cir. 2005) .....................................1

*Cine SK8, Inc.* v. *Town of Henrietta*, 507 F.3d 778 (2d Cir. N.Y. 2007)...1

*City of Canton* v. *Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed,2d 412 (1989)...............................................................................7, 8, 10

*City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432,  105 S. Ct. 3249  87 L. Ed. 2d 313 (1985)................................................................1

*City of St. Louis* v. *Praprotnik*, 485 U.S. 112,  99 L. Ed. 2d 107, 108 S. Ct. 915 (1988).................................................................................9

*Crowley* v. *Courville*, 76 F.3d 47 (2d Cir. 1996) ......................................1

*Dister* v. *Continental Group, Inc.*, 859 F.2d 1108 (2nd Cir. 1988.............2

*Dwares* v. *City of New York*, 985 F.2d 94 (2d Cir. 1993)..........................8

*Green* v. *City of New York*, 453 F.Supp.2d 690 (S.D.N.Y. 2006)...............7

*Inturri* v. *City of Hartford*, 365 F.Supp.2d 240 (D.Conn. 2005) ...............1

*J.E. ex rel. Edwards* v. *Ctr. Moriches Union Free Sch. Dist.*, 898 F.Supp.2d 516, 558 (E.D.N.Y. 2012)......................................................5

*Johnson* v. *Newburgh Enlarged School District*, 239 F.3d 246 (2d Cir. 2001)...............................................................................................12

*Lopez* v. *Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274  (W.D.N.Y. 2010) ...................................................................................................2

*Lopez* v. *Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274 (W.D.N.Y. 2010) 4

*Mislin* v. *City of Tonawanda Sch. Dist.*, 2007 U.S. Dist. LEXIS 23199 (W.D.N.Y. Mar. 28, 2007) ..................................................................... 1

*Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) ........................... 8, 9

*Oklahoma City* v. *Tuttle*, 471 U.S. 808,105 S.Ct. 2427, 85 L.Ed.3d 791 (1985) ..................................................................................................... 7

*Pearson* v. *Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ................ 11

*Rodriguez* v. *New York University*, 2007 WL 117775  (S.D.N.Y. 2007) ... 4

*Rodriguez* v. *New York University,* 2007 WL 117775, at *6 (S.D.N.Y. Jan. 16, 2007) ...................................................................................... 5

*Saucier* v. *Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) 11

*Sound Aircraft Servs., Inc.* v. *Town of East Hampton*, 192 F.3d 329, 335 (2d Cir.1999) ...................................................................................... 1

*T.E. v Pine Bush Cent. Sch. Dist.*, 58 F Supp 3d 332 (SDNY 2014) ......... 5

*Turley* v. *Sch. Dist. of Kansas City*, 713 F.Supp. 331 (W.D.M. 1989) ...... 8

*Walker* v. *The City of New York*, 974 F.2d 293, (2d. Cir. 1992) .......... 7, 10

*Williams* v. *Smith*, 781 F.2d 319 (2d Cir. 1986) ...................................... 7

*Wilson* v. *Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ............................................................................................................. 11

*Ying Jing Gan* v. *City of New York*, 996 F.2d 522 (2nd Cir. 1993 ............ 2

*Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655 (2d Cir. 2012) ........ 6

### STATUTES

*U.S. Const. amend.* XIV, §1 ..................................................................... 1

42 U.S. C. § 2000e(d) ............................................................................... 4

42 U.S.C. §2000-d .................................................................................. 12

42 U.S.C. §2000e(d) ................................................................................. 6

## PRELIMINARY STATEMENT

Plaintiff DAVID EDMOND, Plaintiff Carol Edmond and Plaintiff TOM EDMOND ("Plaintiffs") by and through their attorneys, The Law Offices of Cory H. Morris, Cory H. Morris, P.C., now move for partial summary judgment, pursuant to Rule 56 of the *Federal Rules of Civil Procedure* against Defendants.

Plaintiffs submit this Memorandum of Law  in support of their motion for an Order pursuant to Rule 56 granting Partial Summary Judgment in favor of the Plaintiffs and in accordance with *Local Rule of Civil Procedure* 7.1 entering judgment against Defendants as a matter of law on Plaintiffs' Twelfth Cause of Action under Title VI of the *Civil Rights Act*, 42 U.S.C. §2000-d and establishing "*Monell*" liability of the Defendants for violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States;  Third Cause of Action (42 U.S.C. §1983); and Ninth Cause of Action (42 U.S.C. §1983) upon which there are no material issues of fact which might preclude entry of such judgments; all together with specific findings that, there being no material issues of fact to prevent such findings,

Defendant Longwood Central School District did discriminate against African Americans in violation of Title VI of the *Civil Rights Act of 1964*;  and

Defendants, individually and collectively, by their actions and lack of proper action did evince a pattern and practice of discrimination against African Americans.

## FACTUAL BACKGROUND

For an in-depth statement of facts, Plaintiffs respectfully refer this Court to Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Facts submitted herewith, paragraphs 1 through 103.  However, additional salient facts, and evidence, are set forth below in the Arguments Section, the Docket Entries within the Eastern District of New York along with the Longwood Central School District Security Video, some of which was previously submitted to the Court *in camera*.

## ARGUMENT

### Standard of review

Under Rule 56 of the *Federal Rules of Civil Procedure*, "summary judgment shall be granted if viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrated that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Dister* v. *Continental Group, Inc.*, 859 F.2d 1108, 1114 (2nd Cir. 1988). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (U.S. 1986). There is a genuine dispute over a material fact only "if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister*, 859 F2d at 1114.

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific fact to show that there is a factual question that must be resolved at trial. See, *Ying Jing Gan* v. *City of New York*, 996 F.2d 522, 532 (2nd Cir. 1993). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Dister*, 859 F.2d at 1114. Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor". *Id.*

Partial summary judgment for the Plaintiffs is appropriate because Defendants cannot provide any admissible evidence of facts that create a genuine dispute over Plaintiffs' proffered evidence, and Plaintiffs have established and supported all the causes of action alleged in the their Amended Verified Complaint (D.E. 95). D.E. 96, Defendants' answer simply denies or deniers information sufficient to form a belief about every substantive allegation of fact in Plaintiffs' complaint.

## POINT I.

### PLAINTIFFS HAVE ESTABLISHED THEIR § 1983 EQUAL PROTECTION CLAIMS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall, "deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV*, §1. It is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne* v. *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985); see also *Sound Aircraft Servs., Inc.* v. *Town of East Hampton*, 192 F.3d 329, 335 (2d Cir.1999) ("[a]t its core, equal protection prohibits the government from treating similarly situated persons differently").

A "traditional" equal protection claim "protects against [classification-based] discrimination," such as race or national origin. *Inturri* v. *City of Hartford*, 365 F.Supp.2d 240, 248 (D.Conn. 2005). In *LeClair* v. *Saunders*, the Second Circuit recognized an equal protection claim based on malicious or bad faith intent to injure. 627 F.2d 606, 609-10 (2d Cir. 1980); see also *Mislin* v. *City of Tonawanda Sch. Dist.*, 2007 U.S. Dist. LEXIS 23199, *39 (W.D.N.Y. Mar. 28, 2007).

To succeed on a selective enforcement claim, the plaintiff must establish both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure the plaintiff." *Harlen,* 273 F.3d at 499; see also *Crowley* v. *Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996). "To prevail, plaintiffs must prove that the disparate treatment was caused by the impermissible motivation". *Bizzarro* v. *Miranda*, 394 F.3d 82, 87 (2d Cir. 2005). Generally, whether two entities are similarly situated is a factual issue that should be submitted to the jury. *Cine SK8, Inc.* v. *Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. N.Y. 2007); See also, *Graham* v. *Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Mislin* v. *City of Tonawanda Sch. Dist.*, 2007 U.S. Dist. LEXIS 23199 (W.D.N.Y. Mar. 28, 2007). Courts have applied the familiar *McDonnell Douglas*

burden-shifting analysis to cases arising under Title VI and title VII. *Lopez* v. *Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274, 279-280 (W.D.N.Y. 2010)(Citations Omitted).

Plaintiff is a black/African American male that was enrolled in Longwood Central School District during the 2014–2015 school year. **Pltf 56.1 ¶¶ 1-2**. Longwood Central School District, inclusive of Longwood High School, was composed of both black/African American and Caucasian students. **Pltf 56.1 ¶ 34, 67**. Plaintiffs, black/African Americans, were subject to a school district that disproportionately disciplined African Americans. See **Edward Fergus**, Ph.D., **Expert Report On 2011-2015 Behavioral/Discipline Infractions**; **Pltf 56.1 ¶ 97**. Longwood Central School District knew and had reason to know of the disproportionate discipline of black/African American students.

Although Plaintiff David Edmond did not engage in any wrongdoing on June 4, 2015, he was targeted on the basis of his race, color and/or national origin, battered, choked and disciplined when other similarly situated Caucasian students were not. **Pltf 56.1 ¶¶ 34, 67, 72, 77-89, 97, 100.** Scores of Longwood Central School District Students witnessed Plaintiff David Edmond being pushed, battered, choked and, then, subsequent punished for it. See, e.g., **Pltf 56.1 ¶¶ 45-55.** Not only choked by a security guard, Plaintiff David Edmond suffered a summary suspension consistent with the years of disproportionate discipline received by black/African Americans within Longwood Central School District. See *Sound Aircraft Servs., Inc.*, 192 F.3d at 335. Plaintiffs were treated differently because they were black/African American.

David Edmond and the parents of David Edmond were treated differently because of their race, color and national origin in that Plaintiffs Carol and Tom Edmond and their son, Plaintiff David Edmond was subject to summary discipline on the basis of Scott Reese's assault visited upon David Edmond. **Pltf 56.1 ¶¶ 25-29, 35-43, 49, 51 90.** Defendants dismissed the account of Plaintiff David Edmond and several onlookers (*id.*) in further efforts to punish Plaintiff David Edmond. **Pltf 56.1 ¶¶ 45-50, 61, 71, 91-97.** Plaintiffs were denied the ability to view the security video on which Defendants based their decision or contest any allegations against Plaintiff David Edmond. Plaintiffs Carol and Tom Edmond, the parents of David Edmond were

threatened and told that their son, Plaintiff David Edmond, would not be able to walk at graduation within an hour of Plaintiff David Edmond being choked by Defendant Scott Partlow. **Pltf 56.1 ¶ 61, 71, 91-103.** Such summary punishment against black/African Americans was consistent with the citations received by Longwood Central School District, Longwood High School previously. Plaintiffs suffered such violations because Plaintiffs are black/African Americans.

Accordingly, Plaintiff David Edmond was at risk for discipline merely by being a black/African American student walking through the halls of Longwood High School. See **Edward Fergus**, Ph.D., **Expert Report On 2011-2015 Behavioral/Discipline Infractions**. He was choked, battered and summarily disciplined because of his race, color and/or national origin. Dr. Fergus' statistics are consistent with the New York State Education Department ("NYSED") findings and are based on Longwood Central School District's records. *Id.* Dr. Fergus' report details the likelihood, of such differential treatment merely by being African American. Plaintiff, David Edmond and other black/African American students were punished and disciplined as opposed to other white/Caucasian students who were present in the hallways of Longwood High School on June 4, 2015. **Pltf 56.1 ¶¶ 31. 34, 65.** The disparity of treatment is highlighted and evidenced in Dr. Fergus' report that was compiled with Defendant Longwood Central School District's data.

Plaintiffs, together, were treated differently than similarly situated white/Caucasian students and their parents merely because of the color of their skin. Defendants, and all of them (**Pltf 56.1 ¶¶ 42-93**) violated Plaintiffs rights under the 14th Amendment, Equal Protection under law. Accordingly,

This Honorable Court should award Plaintiffs summary judgment on this claim and grant all other relief that This Honorable Court deems just and proper.

## POINT II.
### PLAINTIFFS HAVE ESTABLISHED THEIR TITLE VI CLAIMS AGAINST DEFENDANTS

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."
42 U.S.C. § 2000d.

"To establish a claim under Title VI, a plaintiff must show: (1) that the entity involved engaged in racial or national origin discrimination; (2) the entity involved is receiving federal financial aid; and (3) plaintiff was an entitled beneficiary of the program or activity receiving the aid." *Babiker* v. *Ross Univ. Sch. of Med.*, No. 98 CIV 1429 THK, 2000 U.S. Dist. LEXIS 6921, 2000 WL 666342, at *4 (S.D.N.Y. May 19, 2000); See also *Rodriguez* v. *New York University*, 2007 WL 117775 *6-7 (S.D.N.Y. 2007). Additionally, a private right of action exists for damages under Title VI . *Lopez* v. *Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274, 278–279 (W.D.N.Y. 2010).

Title VI prohibits racial discrimination in connection with participation in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; see *New York State Ass'n for Retarded Children, Inc.* v. *Carey*, 612 F.2d 644, 649 (2d Cir. 1979); *Lopez* v. *Webster Central School Dist.*, 682 F. Supp.2d 274, 277 (W.D.N.Y. 2010). To state a claim under Title VI, a plaintiff must show intentional discrimination, and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions. *Id.* (citations omitted); *Koumantaros* v. *City Univ. of New York*, 2007 U.S. Dist. LEXIS 19530, 2007 WL 840115 *7 (S.D.N.Y. 2007); see also *Jacques v Adelphi Univ.*, 2011 US Dist LEXIS 147100, at *5-6 (E.D.N.Y. Dec. 19, 2011, No. CV 10-3076). Such can be evidenced by the targeting of black/African American students, see **Pltf 56.1 ¶¶ 30-35**, and the indifference of the Defendants in the summary discipline of black/African American students.

Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. See 42 U.S. C. § 2000e(d). The United States Department of Education's regulations regarding Title VI further state that a recipient of federal funds may not, "on ground of race, color, or national origin . . . [r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or benefit under the program."
34 C.F.R. § 100.3(b)(1)(iv). Nor may a funding recipient, including a school district, "[d]eny an individual an opportunity to participate in the

program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program" on the basis of race, color, or national origin. *Id*.; § 100.3(b)(1)(vi); see also *T.E. v Pine Bush Cent. Sch. Dist.*, 58 F Supp 3d 332, 353–354 (S.D.N.Y. 2014). Such programs including attending of classes, regular school programming, graduation, prom and free movement within the halls of the school-recipient of federal funds.

It is undisputed that Defendant Longwood Central School District received federal funding. **Pltf 56.1 ¶¶ 3** and **86.** Plaintiffs were subject to discrimination, both Plaintiff David Edmond and his parents, Tom and Carol Edmond. See **Pltf 56.1 ¶¶ 25-29, 35-43, 49, 51 90.** The Plaintiff was targeted on the basis of his race then assaulted, choked and then summarily disciplined. Plaintiff was a Longwood High School student duly enrolled and entitled to receive the benefits of that Longwood High School education and the programs, services and benefits of Longwood Central School District.

To establish "[A] deliberate indifference claim under Title VI plaintiffs must show that the District (1) had actual knowledge of, and (2) was deliberately indifferent to (3) disproportionate suspensions and institution of discipline on African Americans was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *J.E. ex rel. Edwards* v. *Ctr. Moriches Union Free Sch. Dist.*, 898 F.Supp.2d 516, 558 (E.D.N.Y. 2012) (citing *Rodriguez* v. *New York University,* 2007 WL 117775, at *6 (S.D.N.Y. Jan. 16, 2007) (internal quotation marks and citations omitted)). Statistics from Defendant Longwood Central School District establish the knowledge, deliberate indifference of disproportionate discipline that deprived black/African American students within Longwood Central School District access of educational benefits and opportunities provided by the school(s). **Pltf 56.1 ¶ 103**.

David Edmond was denied Educational benefits, including those of due process, to be free from excessive force, targeting on the basis of race, color and/or national origin. See 34 C.F.R. § 100.3(b)(1)(iv); see also *id.* § 100.13(g)(2)(ii). "Educational benefits include an academic environment free from racial hostility." *Zeno* 702 F.3d at 666. In both the Complaint and Amended Complaint, Plaintiffs show disparity in

suspension/treatment resulting in nearly twice as many suspensions for black students than for white students.

Longwood Central School District disparately disciplines black/African American students. This treatment violates the mandates of 42 U.S.C. §2000e(d). As discussed extensively in the analysis by Dr. Fergus of data compiled from the Longwood Central School District's document production, Longwood Central School District knew and had reason to know that it treated black/African American students differently than white/Caucasian students in discipline and continued to do so after it obtained this knowledge years ago.

David Edmond never signed a stipulation and never waived his constitutional rights to equal protection, to be free from excessive force and to obtain an education as every other white/Caucasian student within Longwood Central School District. To the extent that his parents did, it was with such constitutional deprivation and the only opportunity they could see their son obtain a diploma and walk at graduation, a right not subject to the Defendants stipulation. As with the Plaintiffs in *Zeno* v. *Pine Plains Cent. School Dist.*, 702 F.3d 655 (2d Cir. 2012) ("Zeno"), Plaintiffs have provided ample proof to sustain serious damages as the result of a Title VI violation by Defendant Longwood Central School District.

David Edmond is yet another black/African American student summarily disciplined on the basis of his race, color and/or national origin. See **Pltf 56.1 ¶¶ 25-29, 35-43, 49, 51 90.** David Edmond's parents, also Plaintiffs, enrolled their son in a well established multi-racial, multi-ethnic School District to provide him with a meaningful public school education in an environment free from racial discrimination. Instead, David, like other children of color suffered from disproportionately discriminatory a disciplinary process that favored white/Caucasian students as evidenced by the citations of the New York State Education Department and the analysis by Dr. Fergus in 2018, now, and years ago when Dr. Fergus attempted to address such disparate treatment in Longwood School District around the 2011-2012 school year.

## POINT III.
### PLAINTIFFS HAVE ESTABLISHED THEIR *MONELL* CLAIMS OF FAILURE TO TRAIN AND SUPERVISE

A municipality can be held liable under 42 U.S.C. §1983 for unconstitutional violations by its employees if the alleged unconstitutional action "implements or executes a policy statement, ordinance, or regulation, or decision officially adopted and promulgated by the [municipality's] officers or even without formal governmental approval is visited pursuant to governmental custom." *Green* v. *City of New York*, 453 F.Supp.2d 690, 726 (S.D.N.Y. 2006)( citing *Monell* v. *Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978)). A policymaker must be shown to have "deliberate indifference" to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may be properly thought of as a city policy or custom that is actionable under §1983. *Amnesty*, 361 F.3d at 126 (citing *City of Canton* v. *Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed,2d 412 (1989)). A single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability. *Amnesty*, 361 F.3d at 127. There must be a causal connection between the deliberate indifference to a known injury, risk, or duty, and the failure to perform such duty or ameliorate such risk and the constitutional violation. *Green*, 453 F.Supp.2d at 726. Furthermore, if "a supervisory official is deemed to have been personally involved in a constitutional violation" then the municipality is liable. *Williams* v. *Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

"[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification or unconstitutional conduct." *Caidor*, 2006 WL839547 at *9; citing *Batista* v. *Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)(other citations omitted).

To 'establish inadequate training, plaintiffs must put forward some evidence that the [municipality] itself acted or consciously not acted." *Walker* v. *The City of New York*, 974 F.2d 293, (2d. Cir. 1992) (citing *Oklahoma City* v. *Tuttle*, 471 U.S. 808, 832, 105 S.Ct. 2427, 85 L.Ed.3d 791 (1985) ). Inadequate training will trigger municipal liability only

where "the failure to train amounts to deliberate indifference to the rights" of those with whom the municipal employees come in contact. Id. at 297 quoting *City of Canton*, 489 U.S. at 389 (see also *Caidor*, 2006 WL 839547 at *9). Deliberate indifference requires that the city policymakers made a deliberate choice from among various alternatives not to fully train employees. *City of Canton*, 489 U.S. at 389. A deliberate choice could be established where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*

Plaintiffs can recover under 42 U.S.C. §1983 for failure to supervise and monitor if they can show that the failure amounted to deliberate indifference by the school district to its pupils. *Turley* v. *Sch. Dist. of Kansas City*, 713 F.Supp. 331 (W.D.M. 1989) (citing *City of Canton* v. *Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204, 102 L.Ed.2d 412 (1989). " The question of whether a municipality exercised deliberate indifference in its failure to supervise or monitor employees must be made by the factfinder." *Id.* at 1206.

Section 1983 provides that: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

"There are two distinct parts to a Section 1983 claim: first, whether the plaintiff has alleged that a person acting under color of state law has deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States see *Dwares* v. *City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); and second, whether the various defendants may be held liable for that action based on the requirements of *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

In such a case, the municipality and its agencies may not be held liable under a *respondeat superior* theory, but may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. In determining whether specific individuals hold such policymaking authority, the Supreme Court has set forth a number of guiding principles:

> First, . . . municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." *Id*. at 408. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. *Id*. at 483 (plurality opinion). Third, whether a particular official has "final policymaking authority" is a question of state law. *Id*. (plurality opinion). Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. *Id*. at 482-483, and n. 12 (plurality opinion).

*City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 123, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988) (internal citations to *Pembaur* v. *Cincinnati*, 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)) (external quotation marks omitted).

Longwood Central School District and its employees are state actors operating a state educational facility that receives, *inter alia*, federal funding. **Pltf 56.1 ¶¶ 3** and **86.** Incorporating the argument above, Defendants operate a public school and do so in a matter that discriminates against black/African American students in suspension. **Pltf 56.1 ¶ 103**. As evidenced by the analysis of Longwood data by Dr. Fergus,m  Longwood Central School District knew and continued to engage in practices that disproportionately targeted and disciplined black/African American students. Plaintiff David Edmond is proof of that.

Dr. Lonergan testified that he knew that Longwood Central School District was cited for disproportionately disciplining black/African American students. See *Amnesty*, 361 F.3d at 126 (citing *City of Canton*

v. *Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed,2d 412 (1989)). Longwood Central School District acted and failed to act in continuing that trend of disproportionate discipline and failed to remedy the disproportionate discipline that continued and culminated with the discipline of, among others, Plaintiff David Edmond. **Pltf 56.1 ¶¶ 5-11 and 68-86.** Defendant Longwood Central School District through Defendant Michael Lonergan had final authority and rule making ability. *Id.* Defendant Longwood Central School District, through its agents and employees, yet continued to disproportionately discipline black/African American students after having knowledge of doing so and being cited by NYSED for continuing such practice.

Longwood Central School District failed to act and continued its pattern of summarily disciplining black/African American students whose only transgression was to walk within school buildings hallways while being black/African American. Longwood Central School District, its rule makers and policy makers, knew of such disproportionate discipline but still acted with conscious disregard of the rights of David Edmond and other African/American students. See *Walker* v. *The City of New York*, 974 F.2d 293, (2d. Cir. 1992). Longwood Central School District's actions and failure to act was the actual cause and proximate cause of Plaintiff David Edmond being targeted for discipline first by physical assault and battery and then immediately thereafter by summary academic discipline all on the basis of his race, color and/or national origin for otherwise innocent behavior had it been done by a caucasian student.  See **Pltf 56.1 ¶¶ 25-29, 35-43, 49, 51 90.**

Accordingly, This Honorable Court should award Plaintiffs summary judgment on Plaintiffs' *Monell* claim, finding Longwood Central School District violated Plaintiffs' constitutional rights as well as the rights of all other similarly situated black/African American parents and students so unfortunate to be subject to the pattern, practice, policy and indifference to the disproportionate discipline doled out and tolerated at Longwood Central School District and grant all other relief that This Honorable Court deems just and proper.

## POINT IV.

### THE INDIVIDUALLY NAMED DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A REASONABLE SCHOOL OFFICIAL WOULD HAVE KNOWN

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson* v. *Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting `, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. See *Saucier* v. *Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

The United States Supreme Court recently receded from *Saucier*, however, in *Pearson*, holding that when "resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out a violation of a constitutional right. *Pearson* v. *Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Therefore, at the Court's own discretion, it can first determine whether a constitutional right was clearly established at the time of defendant's alleged misconduct. In determining whether a constitutional right is "clearly established," as required for plaintiff to defeat a government official's claim of qualified immunity in civil rights actions, the relevant dispositive inquire is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he

confronted. *Johnson* v. *Newburgh Enlarged School District*, 239 F.3d 246, 250-251 (2d Cir. 2001).

**CONCLUSION**

Plaintiffs submit and have shown to this Honorable Court that there are no genuine issues of material fact and that the Plaintiffs are entitled to judgment as a matter of law on their claim under Title VI of the *Civil Rights Act*, 42 U.S.C. §2000-d, "*Monell*" liability for violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Plaintiffs submit that Defendants cannot raise a material issue of fact concerning the causes of action in Plaintiffs' amended complaint. Accordingly, Plaintiffs respectfully request that this Honorable Court grant partial summary judgment in Plaintiffs' favor on these claims and grant all other relief that this Court deems just and proper.

DATED AT   Dix Hills, New York
28 September 2018

/s/

CORY H. MORRIS (CM 5225)

THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
33 Walt Whitman Rd, *suite* 310
Dix Hills, New York 11746
Phone:   (631) 450–2515
FAX:   (631) 223–7377

email   Cory.H.Morris@protonmail.com

VICTOR JOHN YANNACONE, JR. (VY6405)
*of counsel*
Phone:   (631) 475–0231

Email   barrister@yannalaw.com

To: **SILVERMAN & ASSOCIATES**
*Attorneys for Defendants*
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510