# Exhibit "H"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------x

DAVID EDMOND, CAROL EDMOND and TOM EDMOND,

Plaintiffs,

Docket No. 2:16-cv-2871

-against-

LONGWOOD CENTRAL SCHOOL DISTRICT, SUFFOLK COUNTY, SUFFOLK COUNTY POLICE DEPARTMENT, SUFFOLK COUNTY POLICE OFFICER EDWARD ZIMMERMAN, in his individual and official capacities, SUFFOLK COUNTY POLICE OFFICERS "JOHN AND JANE DOES 1-10," In their individual and official capacities, LONGWOOD SUPERINTENDANT MICHAEL R. LONERGAN in his individual and official capacity, PRINCIPAL MARIA CASTRO in her individual and official capacity, LONGWOOD ASSISTANT PRINCIPAL SCOTT REESE, in his individual and official capacity, LONGWOOD SECURITY GUARD SCOTT, in his individual and official capacity, LONGWOOD SECURITY GUARDS "JOHN AND JANE DOES 1-10," in their individual and official capacity, and JOHN AND JANE DOE #1-10, in their individual and official capacities,

Defendants.

---------------------------------------x

33 Walt Whitman Road, Suite 310
Dix Hills, New York 11746

November 28, 2017
9:30 a.m.

(REESE - CONTINUED ON NEXT PAGE)

Examination Before Trial of the Defendant, SCOTT REESE, pursuant to Court Order, before Rich Moffett, a Notary Public of the State of New York.

Rich Moffett Court Reporting, Inc.
114 Old Country Road, Suite 630
Mineola, New York 11501
516-280-4664

A P P E A R A N C E S:

LAW OFFICES OF CORY H. MORRIS, P.C.
Attorneys for Plaintiffs
33 Walt Whitman Road, Suite 310
Dix Hills, New York 11746
BY: CORY H. MORRIS, ESQ.

SILVERMAN & ASSOCIATES
Attorneys for Defendants
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
BY: CAROLINE LINEEN, ESQ.

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that the filing, sealing and certification of the within deposition be waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath with the same force and effect as if signed and sworn to before the Court.

- oOo -

Scott Reese
5

SCOTT REESE, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

* * *

EXAMINATION BY
MR. MORRIS

Q Please state your full name for the record.
**A Scott Reese.**
Q What is your address?
[redacted]
Q Good morning, Mr. Reese.
**A Good morning.**
Q My name is Cory Morris. I represent the Edmond family.
Do you know why you're here today?
**A Yes.**
Q Do you understand what a deposition is?
**A Yes.**

*Rich Moffett Court Reporting*

Scott Reese
6

MR. MORRIS: I would like to state for the record that we reserve the right to recall this witness. We still have an outstanding document production. As early as yesterday, we received documentation responsive to this witness.
MS. LINEEN: We're not agreeing to bring the witness back, but we heard your statement.
MR. MORRIS: Okay.
Q So like I said before, my name is Cory Morris; I'll be taking your deposition today.
Have you ever been deposed before?
**A Yes.**
Q When have you been deposed before?
**A About ten years ago.**
Q In this deposition, I'll be asking you questions. Mr. Moffett here, the court reporter, will record my questions and your answers.

*Rich Moffett Court Reporting*

Scott Reese
7

You understand that you need to speak up to answer so that the reporter can hear you when you give your answers?
**A Yes.**
Q He won't be able to record a nod or a shake of your head. Do you understand?
**A Yes.**
Q Mr. Moffett also might have trouble if we talk over each other or if your attorney and I talk over each other. Therefore, it's very important that you wait until I finish my question before you begin answering, even when you think you may know what the rest of the question will be.
Will you do that?
**A Yes.**
Q You have just taken an oath that requires you to tell the truth, the whole truth, and nothing but the truth; do you understand that?
**A I do.**
Q That's the same oath that you would take if you were to testify in court; do you understand that?

*Rich Moffett Court Reporting*

Scott Reese
8

**A Yes.**
Q We're interested in finding out everything you know about the events and facts that underlie this lawsuit. For that reason, we're looking for full and complete answers to the questions I'm going to ask. In other words, we're looking for the whole truth that you just took an oath to give.
Is that understood?
**A Yes.**
Q Now, on occasion I may ask a question that I don't state very well; for some reason, you might not understand my question. If you don't understand my question for any reason, please don't answer it. It's my job to ask understandable questions, so if you don't understand, I'll try to ask a better question. Okay?
**A Okay.**
Q If you need a break at any time, for any reason, you can do so. Just please make sure that a question is not pending.
Sometimes it may happen that you will give an answer as quickly as you can,

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 5 to 8 of 502 2 of 156 sheets

Scott Reese

9

then later on -- maybe five minutes later or maybe two hours later -- you remember some additional information, or perhaps some clarification in response to an earlier question. If that happens, please tell us that you would like to add something to the earlier answer. We will do that right here when it's on your mind and on the record.

Will you do that?

A **Yes.**

Q Sometimes when you're answering, you may think of some documents that might help you remember the answer and might help you give a more accurate answer. If you do, please tell us. We may have those documents right here, or we may be able to ascertain those documents to help you answer completely and accurately.

Do you understand?

A **Uh-huh -- yes.**

Q Are you taking any medications or drugs of any kind, or consumed any cough syrup or medicine or something containing alcohol, that might it difficult for you to

*Rich Moffett Court Reporting*

Scott Reese

10

understand and answer my questions here today?

A **No.**

Q Are you sick at all today?

A **No.**

Q Is there any reason that you cannot give full, complete, and accurate testimony today?

A **No.**

Q Have you reviewed any documents in preparation for this deposition?

A **Yes.**

Q What documents did you review?

A **Documents my lawyer presented, my statement.**

Q Anything else beside your statement?

A **Not that I recall.**

Q That was a statement to whom?

A **It was a statement written by me to my principal, I believe.**

Q Anything else?

A **No.**

Q So aside from that statement,

*Rich Moffett Court Reporting*

Scott Reese

11

that's the only document that you reviewed?

A **That I recall.**

Q That you recall reviewing prior to this deposition?

A **Yes.**

Q Why don't you tell me everything that you did to get ready for this deposition today?

A **I just spoke with my lawyer.**

Q You reviewed the documents, correct?

MS. LINEEN: Objection to form.

A **Just the statements.**

Q Anything else?

A **Some e-mails, but the e-mail was a reiteration of my statement.**

Q And I'm looking, again, for everything that you might have reviewed. Do you understand any question?

A **I do. I'm thinking.**

**We reviewed the police report that was taken as well which, again, that was pretty much my same statement.**

Q Anything else?

*Rich Moffett Court Reporting*

Scott Reese

12

A **No.**

Q The statement to your principal in the police report and e-mails regarding the same statement; is that right?

A **Yes, that I can recall.**

Q You say "recall"; is there anything that would refresh your recollection?

A **Not that I know of.**

Q The documents themselves refresh your recollection as to what you reviewed prior to this deposition?

A **Possibly.**

Q Having a little difficulty? When you say "possibly," what would refresh your recollection, if anything?

MS. LINEEN: Objection.

I'm sorry. You can answer.

A **Okay.**

I mean, if you showed me something that I recall discussing with -- that I don't recall right now.

Q Did you review these documents today, yesterday?

*Rich Moffett Court Reporting*

3 of 156 sheets Page 9 to 12 of 502 01/03/2018 09:38:23 AM

Scott Reese
13

A **No. A week ago, I would say.**
Q You don't remember what you reviewed a week ago?
MS. LINEEN: Objection.
A **No.**
Q Did you make any notes?
A **No.**
Q Who was with you when you reviewed these documents, aside from your lawyer?
A **No one.**
Q I'd like to get back to what you were saying earlier. You were deposed before?
A **Yes.**
Q When was the first time you were deposed?
A **I don't know the exact date, but ten years ago.**
Q Why were you deposed?
A **Accident.**
Q When you say "accident," car accident?
A **Yes.**

Rich Moffett Court Reporting

Scott Reese
14

Q Tell me about that?
A **It was a DWI accident.**
Q Were you the victim of the accident?
A **No.**
Q Were you the driver of the car?
A **Driver.**
Q You were accused of DWI?
A **Yes.**
Q You plead guilty to that crime?
A **Yes.**
Q Let's go back to that. When you say "deposed," you testified in court?
A **No.**
Q Were you deposed in a civil suit?
A **I don't recall.**
Q Let's go back to that.
Start with your education. Can you tell me your highest degree of education, please, going backwards?
A **Master's.**
Q Master's in what?
A **Liberal Arts.**

Rich Moffett Court Reporting

Scott Reese
15

Q Where did you obtain that?
A **Stony Brook.**
Q What year?
A **'98, I think -- '97.**
Q Anything higher than that master's in liberal arts?
A **More graduate credits attained, but no more degrees.**
Q Any certifications?
A **My professional certifications?**
Q Yes.
A **School business, administrator. I mean school district -- school building administrator, school district leader.**
Q From where did you obtain that?
A **New York State.**
Q Did you go to a specific university, center?
A **The credits attained above my original master's were in an administrative program. You need 24 credits and an internship when I got my certifications.**
Q Where did you conduct your internship?

Rich Moffett Court Reporting

Scott Reese
16

A **Internship was done in Massapequa.**
Q At a school?
A **School district. It was central office and building level.**
Q That's the Massapequa School District, correct?
A **Yes.**
Q Any education beyond that, above that, that you just described?
A **No.**
Q Before your master's, what degree did you attain?
A **My bachelor of arts -- bachelor of science. Secondary ed biology. Oneonta.**
Q Before the bachelor's, what was the previous level of education that you attained?
A **High school diploma. Division Avenue High School, Levittown.**
Q Do you recall when you got your bachelor's of science?
A **1994.**
Q When did you graduate high

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 13 to 16 of 502 4 of 156 sheets

Scott Reese
17

school?

A **1989.**

Q What licenses do you hold?

A **Just the ones previously mentioned, I guess. I don't know if those are licenses or just certifications.**

Q Start, I guess, with your driver's license?

A **Okay. I have a driver's license.**

Q Do you have any other licenses?

A **No.**

Q Can you tell me about your work history? Now, you are the assistant principal at Longwood High School; is that right?

A **Yes.**

Q How long have you held that position?

A **I believe this is starting year 13.**

Q Have you worked for Longwood for 13 years?

A **For the last 13 years.**

*Rich Moffett Court Reporting*

Scott Reese
18

Q Before assistant principal, what position did you hold?

A **Secondary ed bio teacher, Massapequa High School.**

Q When did you leave that employment?

A **I think that was 2004.**

Q You left -- did you quit? Did you get fired?

A **No. I resigned to accept an administrative position.**

Q And that administrative position was in Longwood?

A **Yes.**

Q What was the position that you entered in Longwood in 2004?

A **Assistant principal.**

Q You held that position until today?

A **Yes.**

Q How long did you hold the secondary education biology position?

A **Seven years, I believe.**

Q Prior to that position, where

*Rich Moffett Court Reporting*

Scott Reese
19

did you work, if anywhere?

A **Levittown, Wisdom Lane Middle School; three-and-a-half years.**

Q What position did you hold at the Wisdom Lane Middle School?

A **Eighth-grade science teacher.**

Q How long did you hold that position?

A **About three and-a-half years.**

Q Did you hold any other position at Wisdom Lane?

A **No.**

Q Where did you work, if anywhere, before Wisdom Lane?

A **I did not. That was my first job out of college.**

Q Did you hold any other employment?

A **Ever?**

Q Yes.

A **Yeah.**

MS. LINEEN: Note my objection. You can answer.

A **Construction. Some various**

*Rich Moffett Court Reporting*

Scott Reese
20

**other odd jobs during high school.**

Q What construction did you do during high school?

A **Just residential.**

Q Did you work for yourself, a contractor, or something else?

A **I worked for a contractor. And I worked for a contractor in the city as well. In between semesters.**

Q That was only in high school?

A **No, it was actually during college, in between semesters, that I held those jobs.**

Q What contractors did you work for?

A **Nets That Work. It's a safety company.**

Q Anywhere else?

A **No.**

Q Have you been disciplined in any of these positions?

A **No.**

Q You belong to any clubs or professional associations?

*Rich Moffett Court Reporting*

5 of 156 sheets Page 17 to 20 of 502 01/03/2018 09:38:23 AM

Scott Reese

21

A **No.**
Q Were you ever terminated from any of these positions?
MS. LINEEN: Note my objection to form.
A **No.**
Q Were you ever fired from any of these positions?
A **No.**
Q Terminated from any job in your life?
A **No, I don't think so.**
Q How did you find the Longwood assistant principal job?
A **I believe I located that position just looking online or maybe in the papers back at that time.**
Q Did you have any friends or relatives that worked in the district?
A **No.**
Q Did you have to pass tests as part of employment?
MS. LINEEN: Objection to form.
A **No.**

*Rich Moffett Court Reporting*

Scott Reese

22

Q Did you have to submit a resume?
A **Yes.**
Q What other documentation did you have to submit?
A **I don't know if a writing sample counts as documentation. I had to do a writing sample after the interview.**
Q Anything else?
A **No.**
Q So just a resume and a writing sample?
A **Yes.**
Q Who interviewed you?
A **It was a panel. I don't recall any of the names.**
Q A panel of one, two, three -- do you remember how many people?
A **I would estimate eight.**
Q Was the school board composed of anyone on that panel?
A **I don't recall.**
Q Did you know anyone on that panel?
A **No.**

*Rich Moffett Court Reporting*

Scott Reese

23

Q Anything else to obtain employment at Longwood Central School District?
A **No, not that I recall.**
Q Anything that would refresh your recollection?
A **I'm not sure.**
Q Is there any documents that are evidence here of your employment there?
MS. LINEEN: Objection to form.
THE WITNESS: I don't understand that question.
Q You were hired. As part of that process, you submitted documentation, correct?
A **Right.**
Q To whom did you submit that documentation?
A **Clerical staff member, if I recall. I had to fill out an application, mailed in my resume. They called me in for an interview.**
Q Any other documentation that's part of that?

*Rich Moffett Court Reporting*

Scott Reese

24

A **Not that I recall.**
Q Everything that you submitted was given to someone at Longwood High School, or Longwood Central School District?
A **Central.**
MS. LINEEN: Objection to form.
Q It was all given to Longwood Central School District?
A **Yes.**
MR. MORRIS: I'm going to call for the production of that documentation.
MS. LINEEN: Follow up in writing. We will take it under advisement.
Q Did you make any notes as part of your hiring process?
A **No.**
Q Have you ever been arrested?
A **Yes.**
MS. LINEEN: Objection.
Q How many times?
A **Twice.**
Q When was the first time you were

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 21 to 24 of 502 6 of 156 sheets

Scott Reese

25

arrested?

**A I believe 1997.**

Q For what were you arrested?

**A DUI.**

Q Was anyone injured?

**A No.**

Q Do you know the basis of the stop?

**A No.**

Q How did that matter resolve?

**A $300 fine.**

Q Did you plead guilty to a crime?

MS. LINEEN: Note my objection.

**A Yes.**

Q To what did you plead guilty?

**A DUI.**

Q Tell me about the second time, please?

**A DWI.**

Q I noticed you said DUI and DWI. What was the difference between the two charges?

**A I think the first one was driving under the influence. And driving**

Rich Moffett Court Reporting

Scott Reese

26

**while impaired the other one.**

Q Do you remember what you -- withdrawn.

Did you submit to a chemical test in 1997?

**A I don't recall.**

Q Did you blow into a device?

**A I don't remember.**

MS. LINEEN: I'm going to direct him not to answer any questions other than -- first of all, let me finish before you stare at me like that -- other than what was the charge and what was the outcome. The actual specifics of the arrest and what he did during the course of the arrest are not relevant.

MR. MORRIS: Counsel, I understand you have an objection to that.

MS. LINEEN: Right.

MR. MORRIS: I've heard your objection.

MS. LINEEN: Uh-huh.

Rich Moffett Court Reporting

Scott Reese

27

MR. MORRIS: To the extent that you're going to direct him not to answer, I'll ask that we go off the record. So from here, and throughout the day --

MS. LINEEN: Okay.

MR. MORRIS: -- please, if you're going to object --

MS. LINEEN: That's the basis for my objection. I'm just letting you know before we go further.

MR. MORRIS: I understand. And I'm going to please ask you, that if you're going to object, direct the witness not to answer and then explain your reasoning why, that you not do so in front of the witness. Please.

MS. LINEEN: That's my objection.

MR. MORRIS: Do you understand what I just asked you?

MS. LINEEN: I understand what you said.

MR. MORRIS: Are you going to

Rich Moffett Court Reporting

Scott Reese

28

follow that, or...

MS. LINEEN: Let's move on. I've made my objection. I stated the line of questioning I'm going to allow questioning on. We can go further.

Q The second time you were charged with DWI; is that right?

**A Yes.**

Q Do you know why it was DWI and not DUI?

**A I don't.**

Q You don't?

**A No.**

Q How did you resolve that?

**A Pled guilty. Probation, community service.**

Q To what did you plead guilty?

**A Felony DWI, vehicular assault.**

Q We'll come back to that.

Do you have family in law enforcement?

**A Yes.**

Q Who?

**A Cousin Chris Reese.**

Rich Moffett Court Reporting

7 of 156 sheets Page 25 to 28 of 502

Scott Reese
29

Q Anyone else?
A **No.**
Q By whom is Chris Reese employed?
A **Suffolk County Police Department.**
Q To where did you plead guilty to DUI?
MS. LINEEN: Objection to form.
MR. MORRIS: I'll withdraw it.
Q When you pled guilty to the 1997 DWI -- DUI, excuse me -- where did that occur? Where did that crime occur?
A **What do you mean where it happened? Where did I get pulled over? On Hempstead Turnpike.**
Q Suffolk or Nassau?
A **Nassau.**
Q The second DWI?
A **I believe the town of the accident was Oakdale.**
Q Suffolk County?
A **Yes.**
Q Same county which Chris Reese works?

*Rich Moffett Court Reporting*

Scott Reese
30

A **Right.**
Q You have any friends in law enforcement?
A **No.**
Q How long has Chris Reese worked for the Suffolk County Police Department?
A **I don't know.**
Q Was he working at the time that you had these -- the second arrest?
A **No.**
MS. LINEEN: Was he employed?
Q When was that second arrest?
A **I don't recall the date.**
Q You have any family in Longwood School District?
A **No.**
Q Any friends in Longwood School District, prior to your employment there?
A **No.**
Q I'd like to go back to the question I asked you at the outset, have you ever been deposed before? Please tell me the first time you were deposed.
MS. LINEEN: Objection.

*Rich Moffett Court Reporting*

Scott Reese
31

You can answer.
A **I don't know the date. But it was regarding the DWI, though.**
Q Was it a criminal lawsuit, a civil lawsuit, or something else?
MS. LINEEN: Objection.
A **I don't know.**
Q Do you recall where you gave this testimony?
A **No.**
Q Do you recall when you gave this testimony?
A **No.**
MS. LINEEN: Objection.
MR. MORRIS: What's the...
MS. LINEEN: That's the third time you asked that question.
MR. MORRIS: I'm going to call for the production of that testimony.
MS. LINEEN: Please follow up in writing. We'll take it under advisement.
Q Anything other than that testimony that you mentioned earlier? Is

*Rich Moffett Court Reporting*

Scott Reese
32

there a second time you were deposed?
A **No.**
Q Have you ever been sued before?
A **If the civil part of that is considered being sued, I guess that's a yes.**
Q To be clear, were you sued as a result of the DWI or DUI?
A **I don't know if I was sued technically.**
Q Were you sued actually?
A **I don't know.**
MS. LINEEN: Objection.
Q So when you say -- when I asked you, have you ever been sued before, and you said civilly, could you describe what you're thinking -- to what you're referring?
MS. LINEEN: Objection.
A **No. I don't know the legal part of that.**
Q Do you recall who was suing you?
MS. LINEEN: Objection.
A **No.**
Q Do you recall anyone present at any of these depositions?

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 29 to 32 of 502 8 of 156 sheets

PageID #: 3919

Scott Reese
33

MS. LINEEN: Objection.
A **No.**
Q Do you recall what county you were in?
A **Suffolk.**
Q Do you recall what decade you were in?
A **It's right on the cusp. So I guess it was somewhere around 2008.**
Q I don't want to you guess. Was it 2008?
MS. LINEEN: Objection.
A **I believe so.**
Q As a result of the felony arrest, correct?
A **Correct.**
Q We will return to that.
Any other time you gave sworn testimony?
A **Not that I recall.**
Q Giving sworn testimony in a suspension hearing?
A **Yes.**
Q Do you recall it now?

*Rich Moffett Court Reporting*

Scott Reese
34

A **Yes.**
Q When did you give sworn testimony before?
A **That happens very frequently.**
Q So you've frequently given sworn testimony?
A **Yes.**
Q Aside from school district hearings, you ever given sworn testimony before?
A **No.**
Q Have you given sworn testimony in regards to any of the allegations in this lawsuit?
MS. LINEEN: Note my objection to form.
A **I don't think so, no.**
Q You don't think so or you don't remember or something else?
A **I'm trying to think of when the police interviewed us, if he sworn us in, but I don't think they did. I would say no.**
Q When you say "police interview," was it a statement or were you interviewed

*Rich Moffett Court Reporting*

Scott Reese
35

by the police?
MS. LINEEN: Objection to form.
A **Interview.**
Q Verbal?
A **Yes.**
Q Do you recall when that was?
A **No.**
Q Do you recall what year that was?
A **Two years ago, 2015.**
Q Before or after June 4, 2015?
A **After.**
Q How many times did you interview with the police?
A **Once.**
Q How many times did you give a statement to police?
A **Once.**
Q Aside from what we mentioned, that being the school hearings and the interview, have you ever given any other sworn testimony?
A **Not that I recall.**
Q Anything that would refresh your

*Rich Moffett Court Reporting*

Scott Reese
36

recollection?
A **Possible.**
Q Lot of things are possible. For instance, is there transcripts or notes or anything?
A **Not that I have.**
Q Do you know who may have those things?
MS. LINEEN: Objection.
A **No.**
Q To be clear, as you sit here today, you can't recall any other sworn testimony that you've given, other than this interview with the police and these hearings at the school; is that right?
MS. LINEEN: Objection.
A **That's right.**
Q The deposition, do you know if it was in state or Federal Court?
A **State.**
Q You testified at trial?
MS. LINEEN: Objection to form.
A **No.**
Q Anyone deposed?

*Rich Moffett Court Reporting*

9 of 156 sheets Page 33 to 36 of 502 01/03/2018 09:38:33 AM

Scott Reese
37

A **Not that I know of.**
Q Anyone else give -- withdrawn.
What was the result of that case?
MS. LINEEN: Objection.
A **Result of what case?**
Q The case in which you were deposed?
A **What result, other than what I already said, are you looking for?**
Q How did the case resolve?
A **I already answered that.**
MS. LINEEN: Objection.
Q I'm going to ask you to answer again, and I apologize if you already did?
A **I pled guilty. Probation.**
Q I'm referring to the civil suit in which you were deposed?
A **I don't know.**
MS. LINEEN: Objection.
Q You don't know the result of that civil suit?
A **No.**
MS. LINEEN: Objection.

Rich Moffett Court Reporting

Scott Reese
38

MR. MORRIS: Okay. I got it. Let me finish the question.
MS. LINEEN: Okay. I thought you were done.
MR. MORRIS: No, no. If you look at me.
Q What was the result of that civil case of which you mentioned earlier?
A **I can't remember.**
MS. LINEEN: Objection.
Q Did you have to pay money to somebody?
MS. LINEEN: Objection.
THE WITNESS: Do I have to answer that.
MS. LINEEN: If you know, or if you did.
A **No, I didn't.**
MS. LINEEN: I'm not allowed to say what my objection is.
MR. MORRIS: To just be clear, counsel is allowed to lodge objections. She might ask you not to answer certain questions. I won't ask

Rich Moffett Court Reporting

Scott Reese
39

her for any attorney/client privilege discussions. I'll never ask you what conversation you had with your attorney.
But I just ask, as I said before, just we can resolve the pending question, and then you can speak with your counsel if you like. You can even walk outside, have a private conversation. I just want to be clear on this last question.
Q You don't know how this civil lawsuit resolved in 2007-2008, which you mentioned earlier?
MS. LINEEN: Objection.
A **No.**
Q Were you represented by a lawyer?
A **Yes.**
Q Who?
A **Don't recall.**
MR. MORRIS: I call for production of the civil suit. We're going to call for the production of

Rich Moffett Court Reporting

Scott Reese
40

the name of that lawyer.
MS. LINEEN: Please follow up in writing. We'll take it under advisement.
Q Pretty significant event in your life, correct?
A **Yes.**
MS. LINEEN: Objection to form.
Q You don't remember, though?
MS. LINEEN: Objection.
A **No.**
Q Any lawsuits filed against you?
MS. LINEEN: Objection.
A **No, not that I recall.**
Q Do you recall any other allegations made against you, other than the ones you discussed today?
A **No.**
Q Anybody ever accuse you of discrimination?
A **No.**
Q Harassment?
A **No.**
Q Sexual harassment?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 37 to 40 of 502 10 of 156 sheets

Scott Reese
41

A **No.**
Q Bullying?
A **No.**
Q Throughout your tenure at Longwood, 13 years, have you ever had a complaint lodged against you by a student?
A **Not that I recall.**
MS. LINEEN: Objection to form.
Q So you said not that you recall?
A **Yes.**
Q Any written records of any complaints lodged against you by students?
A **No that I recall.**
Q Anything that would refresh your recollection?
A **Possibly.**
Q When you say "possibly," as you sit here today, is there anything that refreshes your recollection?
A **No.**
Q Are you aware that you've been the subject of complaints by students at Longwood High School?
A **No.**

Rich Moffett Court Reporting

Scott Reese
42

MS. LINEEN: Objection.
Q Do you know why you're being deposed today?
A **Yes.**
Q Why?
A **Because of an incident in 2015, June 4th, I believe.**
Q Do you know the allegations in that lawsuit?
A **No.**
Q You're represented by counsel, correct?
A **Yes.**
Q Anyone have a discussion as to why you're being represented by counsel here today?
MS. LINEEN: Other than counsel?
Q Do you understand the question?
MS. LINEEN: Other than counsel? Can you say whether it's other than counsel?
MR. MORRIS: I'm just asking a yes-or-no question. I'm asking him the substance of the conversation.

Rich Moffett Court Reporting

Scott Reese
43

MS. LINEEN: You can answer with a yes or no.
THE WITNESS: No.
Q Just to be clear -- only because of that interruption -- has anyone explained to you why you're represented by counsel here today?
A **No.**
Q Do you know if you're being indemnified by an insurance company?
A **I don't.**
Q Do you know that you've been named personally in this lawsuit?
A **Yes.**
Q Ever seen the plaintiff, that being David Edmond, before June 4, 2015?
A **Yes.**
Q Can you tell me when?
A **Just in passing, in the hallways.**
Q Do you know who he was?
A **No.**
Q Could you describe him for us?
MS. LINEEN: Note my objection.

Rich Moffett Court Reporting

Scott Reese
44

Q Withdrawn.
Could you describe David Edmond, please?
MS. LINEEN: Objection to form.
MR. MORRIS: What's the objection?
MS. LINEEN: Are you describing -- how? Physical appearance? Academically?
Q Do you understand the question?
A **I would like -- yeah -- a little more clarification. What exactly are you looking for?**
Q Can you describe his physical appearance, that being David Edmond, to us, please?
A **Limited.**
Q Can you please do that for us?
A **Male, probably 5-10 at the time. African-American, muscular build, athletic build.**

Q Aside from the hallways, any other time that you've seen the plaintiff,

Rich Moffett Court Reporting

11 of 156 sheets Page 41 to 44 of 502 01/03/2018 09:38:23 AM

Scott Reese

45

David Edmond, before June 4, 2015?

A **No.**

Q How many times did you meet with your lawyers before this deposition?

A **Twice.**

Q Anyone else present, aside from your attorney?

A **First meeting, there were two interprets. Second meeting, just -- first meeting, two. Second meeting, one.**

Q Aside from these attorneys here, have you ever met with another group of attorneys?

A **No.**

Q You said before you spoke to a few folks and made some recorded statements here and some written statements. Any audio recordings or video recordings regarding the event in this lawsuit?

MS. LINEEN: Objection to form.

A **No.**

Q You engage in any social media regarding this lawsuit?

A **No.**

*Rich Moffett Court Reporting*

Scott Reese

46

Q Do you have a social media account?

A **No.**

Q Do you have an e-mail address?

A **Yes.**

Q What is your e-mail address?

A **Scott.Reese@LongwoodCSD.org.**

Q Anything else?

A [redacted]

Q Anything else?

A **No.**

Q Aside from that e-mail -- those e-mails addresses, any internet use?

MS. LINEEN: Objection.

A **What do you mean? In what way?**

Q Aside from utilizing e-mail and possibly surfing the internet, do you use any other networking platform or internet platform to communicate with people?

MS. LINEEN: Objection.

A **No.**

Q Have you reviewed other people's social media websites in regard to the events described in this lawsuit?

*Rich Moffett Court Reporting*

Scott Reese

47

A **No.**

Q Did you review any video in preparation for this lawsuit?

A **Yes.**

Q Let me ask this question one more time. I'm positive I asked this before.

Tell me everything you reviewed prior to coming in for this deposition?

A **We had a video of the incident from our cameras in the building.**

Q Anything else?

A **I did witness a student video of the tail end of the interaction that was on News 12.**

Q Anything else?

A **No.**

Q Along with those statements and these videos, did you review anything else prior to this deposition?

MS. LINEEN: Objection to form.

A **No.**

Q As a Longwood administrator, were you responsible for creating the code

*Rich Moffett Court Reporting*

Scott Reese

48

of conduct?

A **No.**

Q Do you have any input into the code of conduct?

A **No.**

Q Are you bound by the Longwood High School -- withdrawn.

Were you bound by the Longwood School District code of conduct?

A **What do you mean by "bound"?**

Q Do you have to comply with the code of conduct promulgated by the Longwood Central School District?

A **Me personally?**

Q Yes.

A **No.**

Q I present to you what's been marked as Plaintiff's Exhibit 1.

Do you recognize that document?

A **(Witness reading through document).**

A **I do.**

Q What do you recognize Plaintiff's Exhibit 1 to be?

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 45 to 48 of 502 12 of 156 sheets

Scott Reese

49

A **It looks like a Board of Ed code of conduct.**

Q When you say "Board of Ed," what Board of Ed?

A **Longwood School District -- Central School District Board of Ed.**

Q Is that the same Longwood Central School District at which you work?

A **Yes, at work.**

Q Do you know when this document was created?

A **No.**

Q To be clear, are you expected to comply with the terms and conditions set forth in Plaintiff's Exhibit 1?

MS. LINEEN: Objection to form.

You can answer.

A **I don't believe it's relevant to employees. It's mainly for students.**

Q Do you understand my question I've asked you?

A **No.**

Q Are you bound by the terms and conditions in this code of conduct, as it

*Rich Moffett Court Reporting*

Scott Reese

50

sits before you?

A **Not that I know of.**

Q Let's go through this.

The school has a policy against corporal punishment?

A **Yes.**

Q What is corporal punishment?

MS. LINEEN: Objection.

A **Being some sort of physical abuse on an student as a result of their actions, I believe.**

Q Would you agree that corporal punishment is, quote, "any act of physical force on an student for the purpose of punishing that student," end quote?

A **I guess I can agree to that, yes.**

Q It's in front of you in this book that says, quote "Policy Manual, LCSD-1, Longwood Central School District."

A **I see that that's the policy.**

Q Is that the policy of Longwood High School?

A **It is.**

*Rich Moffett Court Reporting*

Scott Reese

51

Q I just want to make sure.

Is choking somebody corporal punishment?

MS. LINEEN: Objection.

A **I don't know.**

Q When one of your staff members chokes a Longwood High School student, do you consider that corporal punishment?

MS. LINEEN: Objection.

You can answer.

A **If a student is doing absolutely nothing to harm himself or others, and a student -- staff member walks up to him and chokes him, yeah, that's not only corporal punishment, it's probably criminal.**

Q Is a Longwood staff member allowed to choke somebody under any circumstances?

A **No.**

**MS. LINEEN: Objection.**

**You can answer.**

Q So to clarify, if someone did choke a Longwood High School student, that would be considered corporal punishment?

*Rich Moffett Court Reporting*

Scott Reese

52

MS. LINEEN: Objection.

You can answer.

A **No.**

Q Why would it not be corporal punishment?

A **It depends on the situation, the definition of choking. Would it be choking to the point of asphyxiation or a student passing out? Or was it just an accident brush along a kid's neck while you're trying to restrain them considered choking?**

Q Let's go with the child not being able to breathe. Is that considered corporal punishment?

MS. LINEEN: Objection.

You can answer.

A **Yes.**

Q So pursuant to this policy, if someone is choking a child and they could not breathe, they would be violating this corporal punishment policy, correct?

MS. LINEEN: Over my objection, you can answer.

A **I guess if that was the case,**

*Rich Moffett Court Reporting*

13 of 156 sheets Page 49 to 52 of 502 01/03/2018 09:38:33 AM

yes.

Q Are you familiar with the harassment and bullying policy, as contained within this document, Plaintiff's Exhibit 1?

**A (Witness reading document). Yes.**

Q You understand that harassment includes interfering with a student's educational performance, opportunities or benefits, or mental, emotional, or physical well-being, correct?

**A That's part of it, yes.**

Q Would you consider pushing harassment?

MS. LINEEN: Objection.

**A No. Again, it's irrelevant to the situation.**

Q I just want to be clear. If one pushes another, it's not harassment?

MS. LINEEN: Objection.

**A No.**

Q Why not?

**A Depends on the situation.**

Q Are folks allowed to push others

in certain circumstances, in accordance with the Longwood Central School District policy?

MS. LINEEN: Objection.

**A In an effort to defend themselves, possibly.**

Q How do you know that?

**A What do you mean, how do I know that?**

Q Did you receive any training on how to push in order to defend oneself?

**A No. I'm speaking of students and student interaction.**

Q Were you trained in the use of force as it relates to students at Longwood High School?

MS. LINEEN: Objection to form.

**A Possibly. But I don't recall.**

Q When you say "possibly," were you trained in 2017?

**A No.**

Q Were you trained in 2016?

**A Not that I recall.**

Q Again, I'm talking about the use of force over the next few questions. Were

you trained in the use of force in 2015?

**A No.**

Q Were you trained in the use of force in 2014?

**A Not sure.**

Q Not sure.

Were there any notes that you took in regards to any training that might have occurred in 2014?

**A No.**

Q Any documents that might refresh your recollection?

**A Possibly.**

Q As you sit here today, any documents that might have refreshed your recollection as to training in the use of force in 2014?

**A Possibly; I don't know. At some point, I do recall getting a training. But I don't remember when; it's a long time ago.**

Q Have you been retrained since that training?

**A Informal. Nothing that would have any documentation attached to it.**

Q That might be my next question, but when you say "informal," can you explain what you mean?

**A I know some of my colleagues have gone to RTI training, and they've shown me what they learned from that.**

Q I'm sorry. What training?

**A Response to intervention training.**

Q Who of your colleagues have gone to that RTI training?

**A I don't recall. I've had a lot of different assistant principals working with me over the years.**

Q Can you tell me about that informal training?

**A It was literally just a turnkey -- what we call a turnkey training, where you offer to send six assistant principals to a training. You send one; that one comes back and then shows the others what they've learned.**

Q Who was that one?

**A I don't recall.**

Q Do you recall the year?
A **No.**
Q Do you recall the decade?
A **I would estimate around 2000 to 2010.**
Q Anything after 2000 to 2010?
A **Informal.**
Q Tell me when?
A **I don't know the date.**
Q Do you recall the year?
A **No.**
Q Do you recall the decade?
A **2010 to present.**
Q Somewhere in between today -- as you sit here -- and 2010, you received informal training on the use of force?
A **Yes.**
Q Any formal training on the use of force?
A **No.**
Q Any training on the use of excessive force?
MS. LINEEN: Objection.
You can answer.

A **No.**
Q Any training throughout your tenure on excessive force?
MS. LINEEN: Objection.
A **(No response).**
Q To be clear, anything throughout your training in -- withdrawn.
Anything in regards to training that you've received throughout your tenure at Longwood Central School District on the use of excessive force?
MS. LINEEN: Objection.
You can answer.
A **Probably part of the informal -- yes -- trainings from my colleagues. It was what to do and what not to do. So if what not to do is considered excessive then yes, I've had training. Again, no documentation to prove this. This is informal training, turnkey training from my colleagues.**
Q I appreciate that. You might anticipate that being the next question.
So there was no formal training on excessive force for you?

A **No.**
Q I want to peruse to LCSD-5. I direct your attention -- counsel is helping me -- to E, Principals. Could you read that to yourself, please, and look up once you're done?
A **(Reading).**
Q Were you principal at Longwood High School?
A **Assistant principal.**
Q Did this section apply to you?
A **It says "Principals." I don't remember if I'm considered actually a principal. I'm an assistant principal.**
Q Did you receive training as to who the code of conduct applies?
A **No.**
Q Did you receive training in 2014 to 2015 in regards to the code of conduct?
A **Not that I recall.**
Q Do you agree that principals, including assistant principals, have to, quote, "enforce the code of conduct and ensure that all cases are resolved promptly

and fairly," end quote?
A **I do.**
Q Would you agree with me that Longwood Central School District principals -- including assistant principals -- must, quote, "address issues of discrimination and harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function," end quote?
A **Yes.**
Q Lastly, would you agree -- I'm reading under E, Principals in subsection 7 on LCSD-5. And I quote, "that principals, including assistant principals at Longwood Central School District, have to, quote, 'address personal biases that may prevent equal treatment of all students, report incidents of discrimination and harassment that are witnessed or otherwise brought to a principal's attention in a timely manner,'" end quote?

Scott Reese
61

MS. LINEEN: Objection to form.
A **I agree.**
Q So you agree that you must address reports of discrimination and/or harassment as an assistant principal at Longwood High School?
A **Yes.**
Q I'd like to direct your attention to LCSD-11. Can you peruse -- just read it to yourself -- the top two paragraphs, and look up once you're done, please?
A **(Reading).**
**Okay.**
Q Do you agree that certain code violations should be reported -- and that being Longwood Central School District code violations -- to the Suffolk County Police Department?
A **Yes.**
Q Would you agree with me that choking somebody to the point that they cannot breathe -- being a Longwood Central School District Student -- should be

Rich Moffett Court Reporting

Scott Reese
62

reported to the police department?
MS. LINEEN: Objection to form.
A **If that occurs, yes.**
Q I'd like to look down to that second paragraph.
Are students allowed to make complaints at Longwood High School if they feel that they've been discriminated against?
A **Yes.**
Q Would those complaints be investigated?
A **Yes.**
Q Would those complaints undergo a thorough investigation?
A **Yes.**
Q An impartial investigation?
A **Yes.**
Q By whom?
MS. LINEEN: Objection.
A **It depends who they complain to. It usually gets to an assistant principal's office.**
Q What happens if the subject of

Rich Moffett Court Reporting

Scott Reese
63

that complaint is the assistant principal?
A **It would go above that person.**
Q Who?
A **The principal, I guess.**
Q If that complaint is concerning the principal and it's a Longwood High School student, who would that complaint address?
A **His or her boss; assistant superintendent or superintendent.**
Q You said it would go to the assistant principal if it was not -- that the assistant principal was not the subject of the complaint; is that right?
A **Yes, usually.**
Q What do you, as Longwood High School assistant principal, do with these complaints?
A **It's relative to the complaint. If it's student on student, we start by interviewing other students. Student to staff, it depends.**
Q Other policies and procedures on what to do with these complaints?

Rich Moffett Court Reporting

Scott Reese
64

A **Thoroughly investigate. And if there's anything that needs to be reported, we report it to security.**
Q Any written policies and procedures as what to do with these complaints?
A **No.**
Q Anything to show -- ensure that there is uniformity amongst how these complaints are handled?
A **Not that I know of.**
Q Anything to ensure that students are treated equally on the basis of race, color, and/or national origin, as to when these complaints are made or to whom they are addressed?
A **Can you rephrase that or repeat that question?**
Q Sure.
Is there anything to ensure that student are treated equally amongst race?
A **All students are treated equally, regardless of their race.**
Q Anything done, in terms of these

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 61 to 64 of 502 16 of 156 sheets

Scott Reese
65

complaints which we're discussing, to ensure that they're handled evenly among the races?

MS. LINEEN: Note my objection to form.

A **Yeah. Can you clarify that one? Again, now, are we talking about this case with David Edmond?**

Q If a complaint of discrimination is made to you --

A **Okay.**

Q -- by a Longwood High School student, is there anything done to ensure that that complaint is handled as equally as if had been by someone of a different race?

A **They're all handled with the same degree of importance, regardless of the student's race making the complaint.**

Q In terms of discipline, is there anything to ensure that discipline is distributed evenly amongst the Longwood High School body when it comes to race?

MS. LINEEN: Objection.

A **Race has no influence on a disciplinary decision. It's based on what**

*Rich Moffett Court Reporting*

Scott Reese
66

**the student does and what violation of the code of conduct they make. Transgressed and prior incidents as well are considered.**

Q To be clear, is there any sort of audit or review to make sure that consequences of discipline are distributed evenly amongst the races at Longwood High School?

A **Yes.**

Q What is that?

A **New York State actually comes in and looks at our data.**

Q So New York State looks at your data?

A **Right.**

Q When does this occur?

A **It's random, I believe.**

Q When have they last done that?

A **I believe the last one was approximately two years ago, maybe earlier. Three.**

Q This was based -- withdrawn. This was to ensure that discipline was evenly doled out among races

*Rich Moffett Court Reporting*

Scott Reese
67

at Longwood High School?

A **Yes. They look at ethnicity, date of suspension, incidents, et cetera.**

Q When was their conclusion?

A **Their conclusion was that African-American males and ethnic students are suspended at a rate higher than others.**

Q How did you learn about this?

A **Our building principal, possibly. I don't recall.**

Q Did you see something in writing?

A **No.**

Q Verbal conversation?

A **Verbal.**

Q Anything that denotes the percentage of disparity?

A **Not that I recall.**

Q Dr. Castro was the one who informed you of this?

A **I believe it was around that time.**

MS. LINEEN: Objection.

A **When she was principal.**

*Rich Moffett Court Reporting*

Scott Reese
68

Q Do you think it was Dr. Castrostro or someone else?

A **I believe it was Dr. Castro.**

MR. MORRIS: I'm going to call for the production of the documentation of which this deponent speaks, the New York State data on the disparity of treatment of African-American males in special ed.

MS. LINEEN: Please follow up in writing. We will take it under advisement.

Q You started to say it depends on what they do and prior incidents. To what were you referring?

A **When we make a disciplinary decision.**

Q A sort of written rules or guidelines?

A **No.**

Q Are you guided by any procedure?

A **We have a general document, Recommended Disciplinary Procedures, but it's not followed to the letter. Again,**

*Rich Moffett Court Reporting*

17 of 156 sheets Page 65 to 68 of 502

**it's very -- every disciplinary incident is individual. It's very hard to say that you do this, you get that each time. It doesn't work that way.**

Q When you say "it doesn't work that way," who makes that determination?

A **Usually, it starts with an assistant principal and a discussion with other assistant principals, possibly if there are other students involved. And it usually ends up on the principal's desk to make a final determination. The assistant principals don't suspend; we can make a recommendation. The principal has to approve or disapprove of that recommendation.**

Q This document, when did you receive it?

A **This document was created inhouse the first year I was there.**

Q Has it changed since you were there?

A **Yes.**

Q How?

A **I don't know.**

Q Did you ever receive training on that document?

A **Again, informal. Just, you know, all the administrators sitting around and discussing it, deciding on what's best, how it needs to be changed with the times.**

Q When you say "all the administrators," to whom are you referring?

A **The assistant principals and the principal.**

Q You're saying "the assistant principals and the principal." Are you referring to Longwood High School?

A **Correct.**

Q Would the superintendent be involved in that process?

A **He has not been in directly at our meetings.**

Q Indirectly in your meetings?

A **I don't know.**

Q When you say "not directly," could you explain?

A **He hasn't been present**

**physically when we discussed our code of conduct inhouse. I do believe the document, though, has been forwarded to him.**

Q Do you know how that's done?

A **I don't know.**

MR. MORRIS: Call for the production of all documents the witness referring to in disciplinary referrals. All documents have been forwarded in these disciplinary referral guidelines to superintendent and all related documentation. So basically, the meeting and any notes that are taken in regards to determining discipline.

MS. LINEEN: Please follow up in writing with your specific requests. We will take it under advisement.

Q I want to go back to what you were saying before, it depends on what they do. So that document sort of lists those things; is that right?

MS. LINEEN: Objection to form.

A **It can't possibly list**

**everything a kid can do. It has a general list.**

Q So if for instance, and I don't want to put words in your mouth, that document contains something like if there's a fight?

A **Yes.**

Q Or if there's a knife?

A **Weapon, yes.**

Q For instance, if the knife is a certain length, it could dictate a penalty, correct?

MS. LINEEN: Objection.

A **Not in there, not in that document specifically. It's limited. It's an inhouse document, the guidelines. It's not something we go by, you know, written in stone. It's something maybe a brand-new administrator might refer to, to get kind of an idea, a ballpark idea, of what to do when a student does something, like he's caught smoking on campus.**

Q In other words, you're not bound by it?

PageID #: 3929

Scott Reese

73

**A No, not at all. And it says it on that document.**

MR. MORRIS: So we'll call for the production of that. We will revisit this.

Q You said "a prior incident." What were you referring to when you said you would consider prior incidents in discipline?

**A Student gets in a fight once, it's handled one way. If it's his fourth fight, it's handled a little differently.**

Q So it's progressive discipline; is that right?

**A Typically, yes.**

Q Any policies, guidelines, rules, or written procedures that determine that progressive discipline?

**A Again, no. It's still really individual to that incident. It depends on the severity of the altercations; was there any provocation, was it random? Is it struggling against staff upon arrival to break it up? I mean all these little things**

Rich Moffett Court Reporting

Scott Reese

74

**have to be considered.**

Q So it's in discretion of the person to make that referral; is that right?

**A Yes, I guess.**

Q I don't want you to guess. I'm sure your attorney doesn't want you to guess or assume. Is that right, that discipline is at the discretion of the referrer.

MS. LINEEN: Objection to form.

**A I don't understand that question.**

Q In other words, when considering prior incidents, the person making a referral -- and it's a person that makes a referral, correct?

**A You mean the actual paper referral that would indicate a description of the incident?**

Q Let me ask it this way. I withdraw the question.

When referring to the consequences of discipline, would it be left to the discretion of the referrer as to what consequence a Longwood High School student

Rich Moffett Court Reporting

Scott Reese

75

would receive?

MS. LINEEN: Objection to form.

**A A recommendation would be made of a suspension out of school to the building principal. If the building principal agrees with that decision, they'll simply approve it and go from there. The building principal has to sign off, knowing that he or she would be the one to say, you know, that's appropriate, too excessive, not excessive enough.**

Q What happens, basically, in school. And it's not, as you say, five days?

**A An in-school suspension?**

Q Yes.

**A A one-day, even though, it has to be run by our building principal.**

Q So ultimately, the building principal needs to sign off on suspension?

**A Yes.**

Q The referral itself, is it left to the discretion of the referrer as to their consideration of prior incident in

Rich Moffett Court Reporting

Scott Reese

76

making that referral to the incident?

MS. LINEEN: Note my objection to form.

**A No.**

Q What guides their decision as to how to use the prior incident?

MS. LINEEN: Objection to form.

**A The principal?**

Q I'm talking about the person who refers the discipline?

**A I didn't understand the question.**

Q How does one consider the prior incidents of somebody when referring discipline?

MS. LINEEN: Objection.

**A I don't get it. I don't understand. When you...**

Q What do you do with the information regarding the prior incidents of the student?

**A It's considered in a decision or the recommendation we make to the principal.**

Q How?

Rich Moffett Court Reporting

19 of 156 sheets Page 73 to 76 of 502

Scott Reese

77

A **Verbally, usually.**
Q How are the prior incidents considered?
MS. LINEEN: Objection to form.
A **I don't understand.**
Q You say you consider the prior incident, correct?
A **Right, yes.**
Q How do you consider them? Do you do...
MS. LINEEN: Objection to form.
A **I don't know, other than what I've already said. It's just that they're considered. I mean, two fights is different than four fights. Four fights is different than three. So this is all considered when we make a recommendation to our building principal.**
Q So for instance, is there anything to insure uniformity if there are two prior fights and there is a third fight, in terms of discipline?
MS. LINEEN: Objection.
A **Just experience. We speak to**

Rich Moffett Court Reporting

Scott Reese

78

**each other as administrators in the building. We make a decision. It's not just usually solely done by one principal. It's a call to a colleague; it's a call to the other assistant principals. I would take two, and I usually see how the assistant principals decide. We discuss; we look at the background. All those things are considered when making a recommendation to another principal.**
Q In other words, it's left to your discretion at that point?
MS. LINEEN: Objection.
A **The recommendation is left at the assistant principal's discretion.**
Q I wanted to follow up with something you said earlier.
The altercation with a staff member, what if any procedures are developed in how to deal with the discipline of that Longwood High School student?
A **What was that in reference to? You said what kind of altercation with a staff member?**

Rich Moffett Court Reporting

Scott Reese

79

Q If there's an altercation between a Longwood High School student and a Longwood High School staff member, what if any policy, rule, guideline, procedure, guides that discipline process?
MS. LINEEN: Note my objection to form.
A **I don't understand. We haven't had any actual altercations between students and staff. I haven't been involved in that. We've had students struggling mightily to get through staff, to get back at another student, but I haven't had an actual altercation between student and staff that I've had to investigate.**
Q As you sit here today, you're saying no student has made a complaint against a staff member for physical aggression?
MS. LINEEN: Objection.
A **That may have happened.**
MS. LINEEN: Objection.
THE WITNESS: But it doesn't mean it's relevant. Or realistic.

Rich Moffett Court Reporting

Scott Reese

80

Q Which did that happen?
A **I don't know.**
Q As you sit here today, you don't recall?
A **No.**
Q Is there anything that would refresh your recollection?
A **Possibly.**
Q Can you think of anything, as you sit here today, that would refresh your recollection?
A **Of where a student made a complaint against a staff member?**
Q Yes.
A **Of this incident.**
Q Anything else?
A **Not that I recall.**
Q Anything that would refresh your recollection as you sit here today?
A **Possibly.**
Q I'm sure you could appreciate a lot of things are possible. Anything that could refresh your recollection with what you know here now today?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 77 to 80 of 502 20 of 156 sheets

Scott Reese
81

A **No.**
Q Any notes taken of these incidents?
MS. LINEEN: Objection to form.
A **No.**
Q Anything referrals made in regard to these incidents?
MS. LINEEN: Objection to form.
A **No.**
Q Again, I'm referring to altercations where student made complaints against Longwood High School staff. No paper at all that evidences such interactions?
MS. LINEEN: Objection to form.
A **Not that I that know of.**
Q Who would know?
A **I don't know. I worked with five other assistant principals. Not everything is up on our desk. Everything is -- complaints of that nature typically go to the principal, or director of security. I don't...**
Q So your testimony that it's

Rich Moffett Court Reporting

Scott Reese
82

either the principal or director of security who know that information?
MS. LINEEN: Objection.
A **Or other assistant principals.**
Q Or the other assistant principals, but not you?
A **Not that I recall.**
Q I'd like to -- further down, LCSD-11. If you could read Possible Methods of Dealing With Prohibitive Student Behavior. Please look up once you're done?
A **I did.**
Q Do you see -- withdrawn.
Is physical force acceptable when dealing with students -- dealing with prohibitive student behavior?
MS. LINEEN: Objection to form.
You can answer.
A **If the student is endangering himself or others.**
Q Does this policy allow for physical force as it relates to prohibitive student behavior?
MS. LINEEN: Objection.

Rich Moffett Court Reporting

Scott Reese
83

A **Not that I see there.**
Q As you understand, are you allowed to use physical force if a student is insubordinate?
A **If I feel that student is a danger to himself or others, yes.**
Q Absent that feeling, are you allowed to use physical force against a student?
A **No.**
Q What guides your feeling as to whether a student is going to be a physical harm?
A **Experience, body language, posture, vulgarity -- you know, statements being made. Proximity to other students, staff.**
Q So you can anticipate physical violence; is that right?
A **In my experience, yes.**
Q Tell me what statements guide your belief that physical violence will occur?
MS. LINEEN: Objection.

Rich Moffett Court Reporting

Scott Reese
84

A **Student makes a direct threat to another student or staff member; that would be something that indicates possible physical violence.**
Q Anything else?
A **Verbally only?**
Q In terms of statement. What statement would be a predictor for you to anticipate?
A **A threat, vulgarity. Aggressive posturing.**
Q Any threat or vulgarity.
Anything else in regards to statements that would help you anticipate physical violence?
MS. LINEEN: Objection to form.
A **No.**
Q What about behavior? What behavior helps you anticipate physical violence?
MS. LINEEN: Objection to form.
A **Proximity to other students or staff. Clenched fists. Teeth clenched. Dropping the backpacks, jackets we've seen usually indicates imminent physicality.**

Rich Moffett Court Reporting

21 of 156 sheets Page 81 to 84 of 502 01/03/2018 09:38:23 AM

Scott Reese
85

Q You said "proximity and fear." What else did you say that would help you to determine --
**A I didn't say fear, did I?**
Q Withdrawn.
What else would help you anticipate physical violence?
**A I think that pretty much covers it. The student has verbalized that they're going to do something aggressive. When an student postures physically, gets in someone's face -- I would say within 2 feet of another person -- drops their backpacks, drops their bags, et cetera.**
Q Anything else?
**A No.**
Q Was that received -- withdrawn. Did you learn that in some sort of training given at Longwood Central School District?
**A No. I learned that through experience.**
Q What experience?
**A Being an assistant principal for 13 years and looking at cameras that we have**

*Rich Moffett Court Reporting*

Scott Reese
86

**in our building when an altercation occurs, and being able to view what students do prior to an altercation.**
Q Were you ever provided this code of conduct?
**A Yes.**
Q Plaintiff's Exhibit 1?
**A Yes.**
Q Is it the same as -- substantially the same as when you received it?
**A Yes.**
Q It was kept in the regular and ordinary course of business?
**A What did you say?**
Q Is this kept in the regular and ordinary course of business at Longwood Central School District?
**A What does that mean, "kept"?**
Q In other words, can you refer to this throughout the 2014 to 2015 school year if you had to?
MS. LINEEN: Objection to form.
**A Yes.**

*Rich Moffett Court Reporting*

Scott Reese
87

Q Was this kept in the ordinary course of business at Longwood Central School District?
**A If "kept" means that it's been in an office then nearby and accessible, then yes.**
Q I'd like to direct your attention to LCSD-22. When were you provided this code of conduct?
**A We were provided with a copy, I think upon employment. If any changes are made, an addendum was sent interoffice. And it's updated.**
Q You say addendums were sent?
**A If a policy changes as per our Board of Ed, they don't reprint the entire document. They'll just send pages you need to use to replace.**
Q How do they do that?
**A Interoffice mail. Paper copies are sent. And I believe this is also on our website.**
Q Did you receive any interoffice mail or paper copies of addendums to this

*Rich Moffett Court Reporting*

Scott Reese
88

code of conduct, being Plaintiff's Exhibit 1?
**A You mean it had this change, this page specifically?**
Q The entire Plaintiff's Exhibit 1.
**A During my 13 years, or recently?**
Q So let me ask the question again. During the 2014 to 2015 school year, did you receive any addendums?
**A I don't know. Possibly.**
Q When you say "possibly," is there anything that would refresh your recollection?
**A No.**
Q Any addendums are regularly maintained?
**A Yes.**
Q Where are they regularly maintained?
**A In my office.**
MR. MORRIS: Respectfully call for the production of all addendums to the 2014-2015 code of conduct.

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 85 to 88 of 502 22 of 156 sheets

Scott Reese
89

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

Q Everyone in the building bound by this?

**A I don't know who everything in the building is.**

Q School teachers bound by this code of conduct?

**A I believe so.**

Q Students bound by this code of conduct?

**A Yes.**

Q Secretaries bound by this code of conduct?

**A I don't know.**

Q What about security guards? Are they bound by this code of conduct?

**A I don't know if it's identified for them.**

Q They have a different code of conduct?

**A I don't know.**

Q Are you responsible at all in

Rich Moffett Court Reporting

Scott Reese
90

part for the security guards in the school?

**A Yes.**

Q You're responsible for enforcing the code of conduct?

**A Yes.**

Q I know you can anticipate the questions; I apologize.

I know it's -- it's arcane, but you're responsible for enforcing this code of conduct against the violators of the same code of conduct, correct?

**A Yes.**

Q I'd like to direct you to LCSD-20. If you could read roman numeral XII, Corporal Punishment, to yourself.

**A (Reading).**

**Okay.**

Q Were you ever trained in, quote, "reasonable physical force," end quote, as described in LCSD-20, Plaintiff's Exhibit 1?

**A Again, informally.**

Q When?

**A I don't know.**

Q Were you trained in the 2014

Rich Moffett Court Reporting

Scott Reese
91

to 2015 school year on what is reasonable physical force?

**A Don't remember. Don't know. Possibly. Again, it would have been informal.**

Q You say "it would have been informal." No written documentation?

**A No.**

Q No written guidelines?

**A No.**

Q No training materials?

**A No.**

Q Do you remember who informally gave you that training?

**A No.**

Q Did they explain what excessive force was?

MS. LINEEN: Note my objection to form.

**A No.**

Q Do you agree that, quote, "the district will file all complaints about the use of corporal punishment with the commissioner of education in accordance with

Rich Moffett Court Reporting

Scott Reese
92

the commissioner's regulations," end quote?

**A Yes.**

Q When if any time in your career has the Longwood Central School District filed a complaint with the commissioner of education?

**A I don't know.**

MS. LINEEN: Objection to form.

Q I'm sorry. You said you have not?

**A I have not.**

Q Do you know of anyone filing such a complaint?

**A No.**

Q Has a complaint been filed by or against the Longwood School District for corporal punishment?

**A I don't know.**

Q Did you ever have to report an incident of discrimination in your tenure as Longwood High School assistant principal?

**A Student to student?**

Q Yes.

**A Yes.**

Rich Moffett Court Reporting

23 of 156 sheets Page 89 to 92 of 502 01/03/2018 09:38:22 AM

Scott Reese
93

Q When?
A **I don't know the exact date. But I know last year I had a couple of incidents where there was some complaints.**
Q Anything before last year?
A **Likely, but I don't recall any specifics.**
Q Not possible, but as you sit here today, is there anything that would refresh your recollection?
A **No.**
Q Did you take notes regarding these referrals?
MS. LINEEN: Note my objection to form.
A **Not that I recall.**
Q Was there any written documentation regarding any of these reported incidents?
A **If I found there would be some discrimination, I would have submitted a DASA referral, D-A-S-A.**
Q So there would be a paper trail, in other words?

*Rich Moffett Court Reporting*

Scott Reese
94

MS. LINEEN: Objection to form.
A **Yes.**
Q Do you recall if you made any of those referrals in 2014 or 2015?
MS. LINEEN: Note my objection to form.
A **I would say likely, but I don't recall specifically whether or not I definitely did one that year.**
MR. MORRIS: I'm going to call for the production of all discrimination referrals in 2014 and 2015.
MS. LINEEN: Please follow up in writing. Clarify the specific nature and scope of your requests, and we'll take it under advisement.
Q I'd like to go back for a second. LCSD-11, please.
A **Okay.**
Q If you look under roman numeral IX, Student Disciplinary Penalties. You can read that to yourself; please look up when you're done.

*Rich Moffett Court Reporting*

Scott Reese
95

A **(Reading).**
**Okay.**
Q What if anything was done to ensure that discipline was evenly distributed amongst the racial classes at Longwood?
MS. LINEEN: Note my objection.
A **We respond to student actions, not their race.**
Q Was anything done to ensure that consequences and discipline were doled out evenly amongst races?
MS. LINEEN: Objection.
A **Again, we respond to their actions, not their race.**
Q So to be clear, you never considered race in the consequences?
A **Never.**
Q Never evaluated whether racial disparities existed between consequences of discipline at Longwood High School?
A **Personally, no.**
Q Do you know if anyone has?
A **I believe the state does.**

*Rich Moffett Court Reporting*

Scott Reese
96

Q Aside from the state?
A **As a Longwood District employee, I brought this to your attention, are you asking?**
Q Aside from the state evaluator, is there anyone at Longwood High School District -- Longwood Central School District who made such an evaluation?
MS. LINEEN: Note my objection.
A **Not that I know of.**
Q Do you know who would?
A **No.**
Q Do you know if there's any written reports made by Longwood Central School Districting in regard to ensuring that discipline is evenly distributed amongst racial classes at Longwood?
A **No.**
Q Are there any training programs to ensure the implementation of consequences on an equal basis, based on race, color, and/or national origin?
A **No.**
Q Did you contribute to this

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 93 to 96 of 502 24 of 156 sheets

Scott Reese
97

policy at all?

A No.

Q Being Plaintiff's Exhibit 1, were you ever solicited to contribute to Plaintiff's Exhibit 1?

A No.

**I'm sorry. Can we go back to that last question? Does that mean was I ever asked to be on a policy committee, like that, which they do review this? Would that be that question? Because we do that every year. We get asked if we want to be on that board of ed policy committee. So I was -- so I would say to that, yes.**

Q Did you participate?

A **No, I did not.**

Q Okay. That was my question.

So aside from the state audit regarding a student's discipline and race, any other audits regarding student discipline?

MS. LINEEN: Note my objection to form.

A **Not that I know of.**

Rich Moffett Court Reporting

Scott Reese
98

Q Who's the decision maker as to whether or not an audit based on race and discipline should occur?

A **The state, I believe.**

Q What about within the Longwood Central School District?

MS. LINEEN: Objection to form.

A **I don't know.**

Q Do you make such a decision?

A **On what?**

Q On whether an audit should be conducted as to see --

A **No.**

Q Sorry. I know -- wait until I ask the question.

A **I'm sorry.**

Q Would you be able to make a decision as to whether an audit should occur to insure that discipline is equally distributed among students at Longwood High School, based on their race?

MS. LINEEN: Note my objection to form.

A **No.**

Rich Moffett Court Reporting

Scott Reese
99

Q Did Dr. Castro conduct such an audit?

MS. LINEEN: Can you repeat the question?

(Whereupon, the last question was read back by the court reporter.)

A **Did or could she.**

Q Could?

A **She could.**

Q Did she?

A **Not that I know of.**

Q Could Dr. Lonergan conduct such a audit?

A **Could.**

Q Did he?

A **Not that I know of.**

Q Have you -- withdrawn.

Have any internal audits been completed to determine whether discipline is evenly distributed among race, color, national origin?

MS. LINEEN: Note my objection to form.

A **Possibly.**

Rich Moffett Court Reporting

Scott Reese
100

Q You say "possibly." Do you know of any audits that have been conducted by Longwood Central School District to determine whether --

MS. LINEEN: Objection to form.

A **No.**

MR. MORRIS: Counsel, please let me finish.

MS. LINEEN: I thought you were done.

Q Any policy based on race, relations, and consequences as to the students of a certain minority class?

A **Can you repeat that?**

Q I'm going to withdraw the question.

Is there a policy to ensure that race is equally -- withdrawn.

Is there a policy to ensure that consequences are evenly distributed amongst minority classes?

MS. LINEEN: Objection to form.

A **I don't know if there's a policy.**

Rich Moffett Court Reporting

25 of 156 sheets Page 97 to 100 of 502 01/03/2018 09:38:23 AM

Scott Reese
101

Q Any written guideline?
A **No. Again, we respond to students' actions, not their race.**
Q Any audit based on consequence to determine whether a discipline is evenly distributed?
MS. LINEEN: Objection.
THE WITNESS: Say that again?
MR. MORRIS: Can you repeat that question, please?
(Whereupon, the last question was read back by the court reporter.)
A **Not that I know of.**
Q Has there been an audit to determine if students who receive a given infraction receive the same discipline?
A **Not that I know of.**
Q Anything that would refresh your recollection?
A **No.**
Q Any notes, persons, anything that would help you determine whether such an audit was done?
A **No.**

Rich Moffett Court Reporting

Scott Reese
102

Q Just to be clear, who are the decision makers regarding what discipline a Longwood High School student would ultimately receive?
MS. LINEEN: Objection.
A **It's the assistant principal making a recommendation to the building principal for matters of ISS or OSS.**
Q Just for the record, an in-school suspension or an out-of-school suspension; that's what we're referring to?
A **Yes.**
Q Ultimately, the decision-maker as to what discipline would be received by a student rests with the principal of Longwood High School; is that right?
A **No. Depends on the infractions. Detentions, lunch detentions. One to three periods in ISS would be made by the assistant principal. Anything more than that, the building principal has to sign off on that.**
Q Understood. So let's clarify that. Aside from detentions, one to three

Rich Moffett Court Reporting

Scott Reese
103

periods, all -- all disciplinary referrals beyond that consequence must be signed off by the principal?
A **Yes.**
MS. LINEEN: Objection.
Q Do you know why that is?
A **I believe that's the -- one of the educational principals are the only one that can suspend a student from school.**
Q Who are the decision makers regarding whether a student is referred to more than a five-day suspension?
A **That's again the building principal. And the superintendent.**
Q Is it correct in stating that an assistant Longwood High School principal could make that recommendation?
A **Yes.**
Q But ultimately the building principal and/or superintendent must act to suspend a student for more than five days?
MS. LINEEN: Objection.
A **Yes.**
Q I think you answered this

Rich Moffett Court Reporting

Scott Reese
104

before. You've not been involved in any of the committees regarding the writing of the code of conduct or policies and procedures at Longwood High School, correct?
A **Correct.**
Q You receive any bias training?
A **Yes. We get training at the start of every school year.**
Q Who conducts such training?
A **School social workers.**
Q Do you know the name of the school social worker who does such training?
A **Maureen Beatrice and Dawn DeStefano.**
Q Are those the same two persons every year that do the training?
A **Social workers, I believe. Yeah, those are the two that I can recall have done it every time.**
Q When you say "bias training," are you referring to the DASA, Dignity for All Students Act?
A **Yes.**
Q Anything other than DASA?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 101 to 104 of 502 26 of 156 sheets

PageID #: 3937

Scott Reese
105

A **No.**
Q What about implied bias training?
MS. LINEEN: Objection.
A **What does that mean?**
Q Have you received implied bias training?
MS. LINEEN: Objection.
A **What does that mean?**
Q It's a type of training?
A **What is implied bias?**
Q It was developed by a psychologist that addresses the implied bias that might exist in a person's background. Unconscious bias, in other words.
A **No.**
Q Just to be clear, you've not been trained in implied bias?
MS. LINEEN: Objection.
A **No.**
Q To whom was this DASA training provided?
A **Entire staff.**
Q Did you receive written

Rich Moffett Court Reporting

Scott Reese
106

materials?
A **No.**
Q Any handouts?
A **No.**
Q Are you required to take this?
A **Yes.**
Q Are you required to follow it?
A **Yes.**
Q Are security guards required to take this?
A **Yes.**
Q Are all Longwood High School staff required to take the Dignity for All Students type training?
A **Yes.**
THE REPORTER: A good time to take five minutes?
MR. MORRIS: You need five minutes?
THE REPORTER: I'd like to.
MR. MORRIS: 11:08. We're going off the record.
(Whereupon, a break was taken in the proceedings.)

Rich Moffett Court Reporting

Scott Reese
107

MR. MORRIS: It's 11:17. We are back on the record.
Q Mr. Reese, we were talking earlier about the trainings, the Dignity For All Students Act training, for instance. Who's responsible for determining the training for the teachers within Longwood High School?
MS. LINEEN: Objection to form.
A **Responsible for what? When it happens or what's the content of it?**
Q The content.
A **The content, I believe, is dictated by the state, I think. I don't know exactly where it comes from.**
Q Do you know who's responsible for ensuring the teachers are adequately trained?
A **No.**
MS. LINEEN: Note my objection.
Q Are you responsible, in whole or in part, making sure that the employees within Longwood High School are appropriately trained?

Rich Moffett Court Reporting

Scott Reese
108

A **No.**
Q Do you know who is?
MS. LINEEN: Objection.
A **No.**
Q I'm going to show what's been previously marked as Plaintiff's Exhibit 15. Have you ever seen Plaintiff's Exhibit 15 before?
A **Not that I recall.**
Q What is Plaintiff's Exhibit 15?
A **It's a policy manual mission statement and vision regarding the Dignity for All Students Act. December 18, 2014, this was distributed.**
Q How do you recognize this document as the mission statement and vision for Dignity for All Students Act?
A **It's under section and title.**
Q Did you receive this document as part of your employment at the Longwood High School?
A **Yes.**
Q Is this document the same or substantially the same as when you received

Rich Moffett Court Reporting

27 of 156 sheets Page 105 to 108 of 502 01/03/2018 09:38:23 AM

it?

A **Yes.**

Q Did you receive this in conjunction with training that occurred in or around -- withdrawn.

Did you receive this in conjunction with training that occurred within the 2014 to 2015 Longwood High School school year?

A **Not positive, but likely. I can't say officially that that definitely happened. But it seems logical.**

Q Were you bound by this policy?

A **I don't know what "bound" means. But we're expected to understand what the Dignity Act for all students is, and investigate all complaints thoroughly.**

Q That's along the lines of what I mean. So in other words, you're expected to comply with this policy?

A **Yes.**

Q You're expected to enforce this policy against other Longwood High School employees; is that correct?





A **Or students, yes.**

Q Does that include school security guards?

A **Yes.**

Q Anyone within the building, right?

A **Yes.**

Q What do you understand harassment to mean within the context of the Dignity for All Students Act?

A **Harassment is when an student, staff or any individual is bothering other students to a point where it's been expressed that they do not welcome that comment or whatever that other student may be, and the other student or staff members continues along those lines.**

Q In other words, if a student says, stop making these comments, but the aggressor persisted?

A **Correct.**

MS. LINEEN: Objection to form.

Q In other words, if it's a physical action, the person says, please





stop this physical action, yet the person persisted in doing that physical action?

MS. LINEEN: Objection to form.

A **That could be a situation, yes. That would be considered as harassment.**

Q So unwanted physical touching?

A **Excessive, repeated. It's expressed that it's not welcomed.**

Q Does it need to be expressed more than once?

MS. LINEEN: Objection.

A **No.**

Q In other words, if someone expresses that they do not want physical contact to be initiated with them, that simple expression isn't enough to constitute harassment if the person persists in touching them?

MS. LINEEN: Objection.

A **Yes.**

Q Would you agree that, quote -- I'm reading off of LCSD-233, last paragraph. Do you agree that, quote, "the school district strictly prohibits all forms of





bullying, harassment, discrimination of all student by school district employees or students on school district property or at school district functions, regardless of whether they are conducted on the premises of the school district," end quote.

A **Yes.**

Q In other words, all harassment is prohibited, irrespective of who the actor is, correct?

A **Correct.**

MS. LINEEN: Objection.

Q I'd like to direct your attention to the next page at the LCSD-234 of this exhibit.

Looking at the third paragraph, do you agree that, quote, "all school district staff members are responsible for taking action if they become aware of any bullying, harassment, or discrimination," end quote?

A **Yes.**

Q Do you believe that you were bound by this policy?

Scott Reese

113

A Yes.

MS. LINEEN: Objection.

Q Do you believe that the school security guards at Longwood High School were bound by this policy?

A Yes.

Q Do you agree that at Longwood High School, quote -- reading from the same paragraph -- quote, "staff members must report all student complaints of bullying, harassment, and discrimination that they received from students, as well as any instances of bullying, harassment, or discrimination that they are aware of, to the principal of the school where the incident occurred," end quote?

A Yes.

Q Looking down by the fifth paragraph on the top, on LCSD-234. Do you agree that Longwood High School would comply with this provision, that being, quote, "all reports of bullying, harassment, or discrimination will be fully investigated and action will be taken to address the

Rich Moffett Court Reporting

Scott Reese

114

allegations, including the imposition of appropriate disciplinary measures in accordance with applicable law and the school district's code of conduct," end quote?

A Yes.

Q If an student reports discrimination, will there be a full investigation?

A Yes.

Q Did David Edmond report discrimination?

A Not to me.

Q Are you already aware that the allegations in this lawsuit allege discrimination?

A Yes.

Q Were those allegations of discrimination fully investigated?

A Not by me.

Q By anyone?

A I would say yes.

Q In that investigation, what were the results?

Rich Moffett Court Reporting

Scott Reese

115

A Unfounded, I believe.

MR. MORRIS: I'm going to call for the production of that investigation. ^^REQUEST FOR PRODUCTION.

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

Q Do you know when that investigation was done?

A No.

Q Do you know who was the investigator?

A No. Are we talking about the police investigating this, or Longwood personnel?

Q I'm talking about the Dignity for All Students Act.

A I didn't know there was an investigation conducted on this case. It could have. I thought you were referring to a different police investigation.

Q Although there was a complaint of discrimination, you're saying the school

Rich Moffett Court Reporting

Scott Reese

116

did not investigate, pursuant to this policy?

A I don't know if there was a complaint filed --

MS. LINEEN: Objection to form.

A -- with the school.

Q Did the school district create guidelines for training -- provide training in accordance with the requirements of state law, with the commissioner of education, to raise awareness of the Dignity for All Students Act?

A Yes.

Q What guidelines were created and when?

A I don't know. I thought you were referring to the training we got at the beginning of each year from our social workers on it.

Q Aside from the training from the social workers, anything else, in terms of training or guidelines?

A No.

Q Do you know who the Dignity for

Rich Moffett Court Reporting

29 of 156 sheets Page 113 to 116 of 502

Scott Reese
117

All Students Act coordinator was in 2014-2015 at Longwood High School?
A **Dawn DeStefano.**
Q Do you know if Dawn DeStefano investigated David Edmond's complaints of discrimination?
MS. LINEEN: Objection to the form.
A **I don't.**
Q Do you know if she -- withdrawn.
Do you know if Dawn DeStefano investigated any referrals, pursuant to the Dignity for All Students Act within the 2014 to 2015 school year?
A **No.**
Q The answer was no?
A **Yes.**
MR. MORRIS: Mr. Moffett, if I could ask you to please mark this. Thank you.
THE REPORTER: I believe this would be 43. Do you have that right, Counselor?
MR. MORRIS: I believe so.

Rich Moffett Court Reporting

Scott Reese
118

(Whereupon, Plaintiff's 43 for identification, Policy Manual, was so marked.)
Q Mr. Reese I'm handing you what's been marked Plaintiff's Exhibit 43. What do you recognize this document as?
A **Looks like a policy manual.**
Q How do you recognize this 23-page document bearing LCSD-31, Plaintiff's Exhibit 43, as a policy manual?
A **It says it on the book, Mission Statement and Vision, title, Equal Opportunity and Non-Discrimination. Reviewed by counsel December 4, 2014; it's adopted December 18, 2014.**
Q Do you know when this document was created?
A **No.**
Q Were you expected to be bound by this document?
A **Yes.**
Q Does this maintain the regular course of business at Longwood High School?
A **Yes.**
Q Is this document the same as or

Rich Moffett Court Reporting

Scott Reese
119

essentially the same as when you received it?
A **Yes.**
Q Do you understand that the Board of Education, its officers, and employees shall not discriminate against any student on the basis of race, color, creed, age, national origin, religion, disability, sexual orientation, military status, student orientation, genetic characteristics, marital status, domestic violence, victim status, or sex?
A **Yes.**
Q What if anything -- withdrawn.
What if any training did you receive to ensure compliance with this policy?
A **None.**
Q Do you agree that, quote, "the Board of Education, its officers, and employees shall not discriminate against students on the basis of actual or perceived race, color, weight, national origin, ethnic creed, religion, religious practice, disability, sex, sexual orientation, or

Rich Moffett Court Reporting

Scott Reese
120

gender," end quote?
A **Yes.**
Q Were you in receipt of established grievance procedures for resolving complaints of discrimination?
A **No.**
Q Were these ever distributed to you, that being the established grievance procedures for resolving complaints of discrimination?
MS. LINEEN: Note my objection to form.
A **Not that I recall.**
Q Anything that would refresh your recollection?
A **No.**
Q Did you take any notes in regards to receiving this policy?
A **No.**
Q How did you receive this policy?
A **Interoffice mail likely.**
Q Do you recall when you received it?
A **No.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 117 to 120 of 502 30 of 156 sheets

Scott Reese

121

Q Did you have to acknowledge receipt of that mail?

A **No. Expected that we read it, though, and adhere to it.**

Q Did anyone ensure that you read this document?

A **No.**

Q Anybody ensure that you adhere to this document?

MS. LINEEN: Objection.

A **Not that I know of.**

Q Assistant Principal Reese, do you know what VADIR is, V-A-D-I-R?

A **Yes. It's a reporting that we have to do at the beginning of each year of all of our employees, their positions, their salaries, their classes.**

Q Anything else?

A **I don't oversee the data reports. I believe they also do include disciplinary determination and frequency and length of those as well.**

Q These reports document violent and destructive incidents at Longwood High

Rich Moffett Court Reporting

Scott Reese

122

School?

MS. LINEEN: Objection to form.

A **Is there a question?**

Q Yes. Do these reports document violent and destructive incidents at Longwood High School?

A **Yes.**

Q The answer is yes?

A **Yes.**

Q Do these reports indicate whether police were present in response to such a violent or destructive incident at Longwood High School?

A **I believe they do.**

Q Do these reports indicate whether a police officer is present at the school?

MS. LINEEN: Objection.

A **I don't know what that means. Just showed up one day?**

Q In other words, the school resource officer?

MS. LINEEN: Objection.

A **I don't know.**

Rich Moffett Court Reporting

Scott Reese

123

Q Do you know if the school resource officer was reported on the VADIR report?

MS. LINEEN: Objection to form.

A **I don't know.**

Q Who was the school resource -- withdrawn.

Who was the school resource officer in the 2014 to 2015 school year?

A **I believe it was SRO Steven Hughes.**

Q Anybody else, aside from Steven Hughes?

A **No.**

Q Mr. Hughes contribute to this report at all, the V-A-D-I-R report?

A **I don't think he does.**

Q Do you -- withdrawn.

Are you responsible for submitting the V-A-D-I-R report to a superior or the state?

A **No.**

Q Have you ever seen a V-A-D-I-R report?

Rich Moffett Court Reporting

Scott Reese

124

A **Yes.**

(Whereupon, Plaintiff's 44 for identification, VADIR Report, was so marked.)

Q I'm handing you what has been marked Plaintiff's Exhibit 44. Do you recognize Plaintiff's Exhibit 44?

A **Yes.**

Q What do you recognize Plaintiff's Exhibit 44 to be?

A **A VADIR report.**

Q How do you recognize this document, Plaintiff's Exhibit 44, to be a VADIR report?

A **It's labeled as such.**

Q Do you know when this document was created?

A **I don't see a year on this one, unless I'm missing it.**

Q Are you responsible for the data contained within this V-A-D-I-R, VADIR report?

A **No.**

Q Who is?

A **Assistant Principal Merkle at**

Rich Moffett Court Reporting

31 of 156 sheets Page 121 to 124 of 502 01/03/2018 09:38:23 AM

Scott Reese
125

**the time created this report.**

Q Anybody else responsible for the creation of this report?

A **No, not that I know of.**

Q How do you know Merkle is responsible for the creation of the data in this report?

A **I know she had -- that was one of her responsibilities on this year.**

Q You say "on this year." Which year?

A **2014-15.**

Q And this Plaintiff's Exhibit 44, the VADIR report bearing LCSD-72 stamped to LCSD-783, do you know if this accounts for whether a school resource officer is located within the school?

MS. LINEEN: Objection.

A **I do not.**

Q I'd like to direct your attention to LCSD-79, the top of that page. If you could read 7 to yourself please, and just look up when you're done.

A **(Reading).**

*Rich Moffett Court Reporting*

Scott Reese
126

Q It seems that "no" is highlighted on LCSD-79 in response to the question, quote, "is there a police officer or other safety officer present in your school on a regular scheduled basis," end quote. Is that statement correct?

MS. LINEEN: Objection.

A **I think the statement point there is "regularly scheduled." Our SRO does not have a schedule, not regular. He comes in sporadically or when called.**

Q How is he called?

A **Usually by a director of security.**

Q Anyone else?

A **Typically not, no.**

Q When you say "sporadically," key to the building?

A **No.**

Q So how does he come sporadically? Please describe what you mean.

MS. LINEEN: Objection to form.

A **He shows up. They make a radio**

*Rich Moffett Court Reporting*

Scott Reese
127

**call from the gate, saying SRO Hughes is here, or whoever the SRO is, and we let him in.**

Q Is that SRO guided by school district code of conduct?

A **I don't know.**

Q Do you know what if anything -- withdrawn.

Do you know if there's a memorandum of understanding between the Suffolk County Police Department and Longwood High School in regards to Officer Hughes?

A **No.**

Q Do you know if there's any written documentation regarding the presence of Officer Hughes within Longwood High School?

A **No.**

MS. LINEEN: Objection to form.

Q Is there a state trooper currently within Longwood High School?

A **No.**

Q Will there be a state trooper at

*Rich Moffett Court Reporting*

Scott Reese
128

Longwood High School next school year?

A **No. That was removed.**

Q How was that removed?

A **Our superintendent made it very clear to Governor Cuomo that we're not a school that would require that.**

Q Do you know if school requires a school resource officer?

MS. LINEEN: Objection to form.

A **I didn't hear the question. Could you repeat it again?**

Q Do you believe that Longwood High School requires a school resource officer?

A **No, I don't think we do. They're all there when we call them.**

Q When you say "call them," call 911 or something else?

A **Usually 911, yes. Or we'll just call their desk line and ask if they could send over a second car.**

Q Did Steven Hughes have a desk or a room at Longwood High School?

A **He shared an office with the**

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 125 to 128 of 502 32 of 156 sheets

Scott Reese
129

**extra security personnel.**

Q Did he come in a marked car?

A **It varied.**

Q Did he have his own desk?

MS. LINEEN: Objection.

A **Yes.**

Q Did he have his own computer?

A **No.**

Q Did he have a mailbox?

A **I don't know.**

Q What about an e-mail address?

A **He gave us his. Suffolk County e-mail.**

Q Did you utilize his Suffolk County e-mail?

A **No.**

Q Did James Perrotta utilize his Suffolk County e-mail address?

MS. LINEEN: Objection.

A **I don't know.**

Q When you say "gave us," who's us?

A **Admin team.**

Q How did he do that?

Rich Moffett Court Reporting

Scott Reese
130

A **How did he do what?**

Q How did Officer Steven Hughes give the admin team his e-mail address?

A **Likely showed up at one of our meetings.**

Q I don't want you to speculate or likely; do you recall?

A **No.**

Q Did he give you a writing? Did he verbally tell it to you and --

A **I don't recall.**

MS. LINEEN: Objection.

Q Did he hand you something?

MS. LINEEN: Objection.

A **I don't remember.**

Q Were these meeting minutes at this meeting?

A **No.**

MS. LINEEN: Objection.

Q Was there a board meeting?

A **No.**

Q Who was part of the admin team?

A **Six assistant principals and the principal.**

Rich Moffett Court Reporting

Scott Reese
131

Q Did you take notes at this meeting?

MS. LINEEN: Objection.

A **From time to time.**

Q Did anyone else take notes or record the meeting?

A **Which meeting?**

Q The meeting of which we are discussing now, with Steven Hughes?

A **No.**

MS. LINEEN: Objection.

Q Did Mr. Hughes give you any guidelines, rules, policies, procedures, or anything else in writing?

A **No.**

MR. MORRIS: I respectfully call for production of those notes as testified by this deponent.

MS. LINEEN: What notes?

MR. MORRIS: Notes that he testified he took.

MS. LINEEN: I don't know that he testified that. Please clarify your request in writing; we'll take it

Rich Moffett Court Reporting

Scott Reese
132

under advisement then.

MR. MORRIS: Absolutely.

Q I'd like to direct your attention to LCSD-80. I believe this is a true and accurate representation of the material incident of discrimination and/or harassment at Longwood High School for the 2014-2015-year?

A **I don't know. I didn't produce the document.**

Q Do you know if any race-related complaints were made in 2014 to 2015?

A **Not definitely, no.**

Q Do you think there were no race-related events that occurred in 2014 to 2015?

A **Don't know.**

MS. LINEEN: Objection.

Q Do you see what this document indicates, in terms of race-related events in 2014-15?

A **Yes.**

Q What does it indicate?

A **Incident types: incidents**

Rich Moffett Court Reporting

33 of 156 sheets Page 129 to 132 of 502 01/03/2018 09:38:23 AM

**occurring on school property, based on disability; claims there were six. Incidents involving intimidation of abuse but no verbal threat or physical contact, five. Incidents involving physical contact but no verbal threat of one. Incidents involving only students, six. Total number of incidents, six.**

Q So you're looking at the row. If you could look at the column, column A being race, how many incidents were there in 2014- 2015 at Longwood High School regarding race?

A **Where are you looking?**

MS. LINEEN: Objection.

Q Column A where it says "race"?

A **1-A?**

Q I'm going to point to the deponent where race is being -- the column?

A **Uh-huh.**

Q That coincides with the rows.

A **I see none.**

Q To be clear, you see no race-reported events from the 2014 to 2015

school year at Longwood High School, correct?

A **Correct.**

Q You can go to LCSD-82.

Do you see any incidents of cyber-bullying based on race?

A **Yes.**

Q How many do you see?

A **One.**

Q If we could go to the last page, LCSD-83. Do you see that certification; it says, quote, "I certify that the data reported are here are complete and accurate to the best of my knowledge," end quote?

A **Yes.**

Q Do you see whose name bears underneath that certification?

A **Yes.**

Q Who is that?

A **Superintendent of schools, Michael Lonergan.**

Q Is he responsible for your employment -- withdrawn.

Was he your boss in 2014 to

2015?

MS. LINEEN: Objection to the form.

A **Yes.**

Q Do you believe that he was responsible for the VADIR report that we just reviewed, being Plaintiff's Exhibit 44?

MS. LINEEN: Objection to the form.

A **I don't know.**

Q Has he ever discussed race-based complaints with you?

A **No.**

Q Has he ever discussed consequences for race-based complaints that Michael Lonegan had with you?

MS. LINEEN: Objection to form.

A **No.**

Q Let's go turn to the exhibit we discussed earlier.

Are you aware of any news regarding your conviction of a felony?

MS. LINEEN: Note my objection to form.

A **What do you mean?**

Q Have you ever read a news article that said, quote, "Reese slammed his car into a highway patrol car parked on the left shoulder of the highway, injuring a highway patrol officer who was airlifted to Stony Brook Medical Center and released that night, with some tissue damage and back and neck sore," end quote?

A **I don't recall, but possibly.**

Q Is that an accurate statement?

MS. LINEEN: Of what.

Q Do you understand the question?

MS. LINEEN: Are you finished with your question? So it's inaccurate statement of what? What the article says, or what happened on that date?

Q I'll withdraw and rephrase.

Is this statement of which I read to you, is that accurate?

A **Can I read it again?**

MS. LINEEN: First of all, let me ask you a question.

PageID #: 3945

Scott Reese
137

Q I'll make this easier; I'll withdraw it. And ask that this be marked.

MS. LINEEN: This is a document that you produced in discovery?

MR. MORRIS: No. I'm going to ask that --

MS. LINEEN: Counsel, why can't you answer a simple question?

MR. MORRIS: You received the document.

MS. LINEEN: When? Why didn't I receive it before the deposition, if you're going to ask the witness about it?

MR. MORRIS: I'm going to ask that you please leave the room. We're going to continue a conversation off the record, please.

(Whereupon, the witness left the room).

MS. LINEEN: I'd like it off the record.

MR. MORRIS: We're staying on the record.

Rich Moffett Court Reporting

Scott Reese
138

MS. LINEEN: What are you doing?

MR. MORRIS: I'm going to call the Court.

MS. LINEEN: Counsel, I'm not directing him not to answer.

MR. MORRIS: You seem to be confused as to process. I'm going to call the Court.

MS. LINEEN: I'm not confusing the process. It's a simple question, and I don't understand why you can't answer simply. You don't need to go to the Court about every little thing in the litigation. I don't understand why you don't understand that.

MR. MORRIS: I'm going to give you the opportunity now. This is for him to ask questions. Will you allow him to ask questions without interjecting? Questions to me, please let me finish.

MS. LINEEN: Okay.

MR. MORRIS: Can you do that?

MS. LINEEN: So you're telling

Rich Moffett Court Reporting

Scott Reese
139

me if -- for the witness to ask you questions about where he got the exhibit from?

MR. MORRIS: This is the last time. I'll try my phone call.

MS. LINEEN: Is that what you're telling me?

MR. MORRIS: I'm telling you that this is for me to ask this named defendant questions --

MS. LINEEN: Right.

MR. MORRIS: -- not for you to ask me questions; do you understand?

MS. LINEEN: Listen, don't speak to me like that. I understand that if you're going to question a witness about a document, I have a right to understand where it came from if you didn't produce it. And you can answer that instead of just ignoring me and saying, we're going to call the Court. So you want to tell me where he got it, or you want to say you're not going to tell me where he got it?

Rich Moffett Court Reporting

Scott Reese
140

MS. LINEEN: That's not what that deposition is. Will you allow me to proceed in asking him questions?

MS. LINEEN: I understand that you don't understand how this works.

MR. MORRIS: Okay. I'm going to call the Court.

MS. LINEEN: Go ahead. I don't understand why you can't --

MR. MORRIS: No. I'm going to call the Court now.

MS. LINEEN: Okay. Please stop.

MR. MORRIS: I'm going to call the Court so we can continue this conversation with the Court. Please let's --

MS. LINEEN: I don't need to continue a conversation with the Court; I'm going to tell the Court that. I don't need to have a conversation with the Court. You explain to the Court why you're unnecessarily bothering them.

MR. MORRIS: Good morning. This

Rich Moffett Court Reporting

35 of 156 sheets Page 137 to 140 of 502 01/03/2018 09:38:23 AM

Scott Reese
141

is attorney Cory Morris. I'm in a deposition, Edmond versus Longwood.

WOMAN'S VOICE: Okay. Hold on, please.

THE CLERK: Dina speaking.

MR. MORRIS: Good morning, Dina. This is attorney Cory Morris. I'm calling on the Edmond versus Longwood matter. How are you?

THE CLERK: I'm good. Give me one second. If you can give me the case number.

MR. MORRIS: Absolutely. It's 16-CV-2871.

THE CLERK: Okay. I heard you guys called yesterday, right?

MR. MORRIS: We did.

THE CLERK: Is today a different issue?

MR. MORRIS: Today is the same sort of issue. But yes, it's in a different context.

THE CLERK: Okay.

MS. LINEEN: Yes. Hi, Dina.

Rich Moffett Court Reporting

Scott Reese
142

THE CLERK: Are we in the middle of a deposition now?

MR. MORRIS: We are.

THE CLERK: Okay. So what I am going to tell you, though, the judge is not in. So like yesterday, she'll be in this afternoon.

I know I'm thinking at some point you wanted to go to Judge Malcolm [phonetic]. The issue with that is, if you want to call Judge Malcolm's chambers, I know they're just going to tell you to wait for Judge Shield [phonetic].

MS. LINEEN: Okay.

THE CLERK: So I'm saying that if it's like before we get into anything, let the judge say what's going on, so I can't make a ruling on this. I can listen to you, and I could tell you what I think she's going to say to you, but I can't make a ruling. And then if you want, you can either call back later when she's

Rich Moffett Court Reporting

Scott Reese
143

here. Or, you know, something that isn't a privilege objection, we move forward with the deposition and make that application later. Okay?

MR. MORRIS: Yes, Dina. We're on the record now.

THE CLERK: Is the witness still in the room?

MS. LINEEN: No.

MR. MORRIS: No. I've asked the witness to leave. Because -- as I produced a document, and I've presented the document to defense counsel and defendant. Defense counsel has interjected questions to plaintiff 's counsel -- that being me -- and has not allowed me to ask questions of the defendant, the named defendant, without first answering her questions. And she's done so on more than one occasion.

MS. LINEEN: That's not entirely accurate, Dina. The document was produced. I just asked where it came

Rich Moffett Court Reporting

Scott Reese
144

from, whether it was produced in the course of discovery, because I haven't seen it before today. And counsel immediately said he's not going to answer any questions. It's a simple question; I didn't say I wasn't going to allow the witness to answer questions on the document.

Now that I'm looking at it, though, I can say I will probably have an objection to answering certain questions. Because the document appears being an article related, discussing -- a news article discussing arrest of the witness 10 years ago. I am not the witness's criminal attorney.

I did allow him to answer questions as it related to what he was arrested for, what he was charged with, what the result was, whether there was any penalty. But as it relates to the underlying circumstances of the -- of what led to

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 141 to 144 of 502 36 of 156 sheets

Scott Reese
145

the arrest, I am going to direct him not to answer that, because I'm not his criminal attorney, and I cannot allow him to answer questions on that, without consulting with the attorney.

THE CLERK: Okay. There's two things I'm going to say at this point. The first thing is the production of a document. That's -- whenever you produce a document, you have to identify, you know, like where it was -- in the discovery -- just to make sure -- that's a normal thing. That's fine. There's nothing wrong with that. And then you show opposing attorney the document, and you know, that's why you do that, so they're familiar with it.

MR. MORRIS: She's received a copy.

MS. LINEEN: Now.

THE CLERK: Okay. So the second issue there, about -- have there been any questions that you have objections

Rich Moffett Court Reporting

Scott Reese
146

to yet?

MS. LINEEN: So there were questions in the beginning of the deposition about his criminal convictions and arrests. And I allowed questions on those grounds; you know, when he was arrested, what he was arrested for, what the charge was, what the result was, what the penalties were, if any.

But it appears that Counsel is showing him this news article discussing one of the arrests, discussing the circumstances that led to the arrest. And if he is going to ask him if those are accurate circumstances, I can't allow the witness to answer questions without what went on in the incident that led to the arrest, because I'm not his criminal attorney.

And what's relevant and admissible, arguably - I don't know if that even is admissible, and we'll

Rich Moffett Court Reporting

Scott Reese
147

have to fight that out in a motion in limine -- would be whether there was a conviction, what the charge was, what the conviction was for, and when it was --

THE CLERK: I missed that.

MR. LINEEN: And when it was. I'm sorry.

THE CLERK: Okay.

Mr. Morris? Do you want to add anything?

MR. MORRIS: I can't get a question out because Counsel keeps on asking me where the document came from, won't allow me to ask questions of the witness.

MS. LINEEN: I asked him once about the document.

THE CLERK: You're going to explain where the document came from, right? Is that on discovery or not?

MR. MORRIS: No. It's an internet article; it bears 11/27 in the top left corner. I printed it out

Rich Moffett Court Reporting

Scott Reese
148

yesterday. I don't want counsel to keep on interjecting in front of the witness, which is why I have to call the Court. She's done this again; she did this yesterday. I questioned him earlier.

Please let me finish.

MS. LINEEN: I am. I'm sorry.

MR. MORRIS: Please.

MS. LINEEN: I said go ahead.

MR. MORRIS: When I asked him simple questions before the introduction of the document, Counsel needed to continue to clarify those questions, again interrupting the witness, necessitating me to introduce this document.

MS. LINEEN: Because Counsel was reading from a document which he didn't show me and saying, is that accurate. What I asked was, are you asking him whether what you're reading from is accurate, or what happened on the date is accurate.

Rich Moffett Court Reporting

37 of 156 sheets Page 145 to 148 of 502 01/03/2018 09:38:23 AM

Scott Reese
149

And then he brought out the document, and I said, did you produce this in the course of discovery. And he said, I'm not answering your questions; let's call the Court.

MR. MORRIS: You know, all my notes are documents that were not produced in discovery, and I'm reading off of those two.

MS. LINEEN: That's different. You know that.

THE CLERK: Okay. Mean, we've all done depositions before. I presume we've all done depositions before. There's nothing wrong with asking where the document is from when you need it. And Mr. Morris, you've allowed to do that as well. You have the same exact right to ask for that.

MR. MORRIS: We could say we resolve this, as long as I'm not going to have questions in front of this witness as to the production of this document. I could resolve this right

Rich Moffett Court Reporting

Scott Reese
150

now.

MS. LINEEN: I don't understand why asking where the document comes from in front of the witness is an issue.

THE CLERK: Wait. This is not an issue for the judge to rule on. You do not need a judge's ruling on this because this is, basically, a waste of your seven hours of deposition.

We know the rules of deposition; you have to identify where the document is from. It's perfectly fine; you can move on with your questioning. It sounds like you haven't asked questions regarding this document yet.

MR. MORRIS: Because I've been interrupted.

THE CLERK: Okay. So going forward, once we get to this -- everyone's going to be -- once we hang up on this phone call. Like I said,

Rich Moffett Court Reporting

Scott Reese
151

if there are privilege objections, you may the privilege objection. You know, the witness should have to know his rights, that he can claim when answering something, or he can consult an attorney. Maybe he wants -- maybe you want to give him an opportunity to consult an attorney, a criminal attorney. But it's up to him to if he needs that.

MS. LINEEN: I'm sorry. I didn't hear the last...

THE CLERK: If there are deposition issues, the judge will not be in until the afternoon.

MS. LINEEN: Okay.

THE CLERK: If you need a ruling on something, she'll be in this afternoon. In the afternoon, she'll definitely be here.

MS. LINEEN: Okay.

MR. MORRIS: Understood. I'm going to proceed with the understanding that counsel is not

Rich Moffett Court Reporting

Scott Reese
152

going to ask any more questions about where this document came from.

THE CLERK: Are there any other issues right now? Anything you would like me to bring to her attention when she does gets in?

MR. MORRIS: No, no. As long as I can review the case, we can move forward.

THE CLERK: Are you okay? Do you understand the need for that?

MS. LINEEN: Yeah. I mean, I didn't feel there was a need to call the Court in response to asking where the document came from. So I do think there may be an issue as we go down the line, but we'll address that if we get there.

THE CLERK: Okay. Very good. Good luck with the rest of the deposition.

MR. MORRIS: Thank you for your time.

Let's call the witness back in,

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 149 to 152 of 502 38 of 156 sheets

Scott Reese
153

please.

(Whereupon, the witness entered the room).

Q Mr. Reese, we're still on the record. I hand you what's been marked as Plaintiff's Exhibit 45.

Plaintiff's Exhibit 45 says, quote, "the incident appears to be Reese's second alcohol-related arrest," end quote; is that accurate?

A **Yes.**

Q The statement below that bold print, it says, quote, "he slammed the car into a highway patrol car parked on the left shoulder of the highway," end quote; is that accurate?

MS. LINEEN: To the extent you're asking the witness whether or not the actual substance there is accurate, I'm going to direct him not to answer. If you're asking him whether or not that's accurate, what's written there, those are the words on the page, he can answer that.

*Rich Moffett Court Reporting*

Scott Reese
154

MR. MORRIS: Obviously, it's the former.

MS. LINEEN: Okay. Well, I'm going to direct him not to answer.

MR. MORRIS: On what grounds?

MS. LINEEN: That I'm not his criminal attorney. He could possibly incriminate himself by speaking about that. What is admissible is whether he had a conviction, what it was for, and what the penalties were and when.

MR. MORRIS: You're exercising your Fifth Amendment rights?

MS. LINEEN: I am directing him not to answer.

MR. MORRIS: On what grounds?

MS. LINEEN: I just told you. You can take a ruling later.

Q Was there a civil lawsuit related to this?

MS. LINEEN: Objection.

A **Yes.**

Q Who represented you?

A **An attorney from my insurance**

*Rich Moffett Court Reporting*

Scott Reese
155

**company; I don't recall his name.**

Q What insurance company?

A **State Farm.**

Q Did you give sworn testimony in that litigation?

MS. LINEEN: Objection.

A **There was a deposition. I don't know if that's the same as litigation.**

Q You ever go to trial?

A **No.**

Q Do you know what the case settled for?

A **No.**

MS. LINEEN: Objection.

Q Who was the insurance company at the time?

MS. LINEEN: Objection.

A **State Farm.**

RQ MR. MORRIS: I call for production of the unsworn testimony in that matter.

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

*Rich Moffett Court Reporting*

Scott Reese
156

Q Highway patrol officer -- was there a highway patrol airlifted to Stony Brook Medical Center as a result of this accident?

A **I don't know.**

Q Is that the individual who was the subject -- the plaintiff in that civil lawsuit?

MS. LINEEN: Objection.

A **What individual.**

Q Was the highway patrol officer the plaintiff in that civil lawsuit which gave sworn testimony?

A **I don't recall.**

Q Let's put that aside.

MS. LINEEN: Is this the same article?

MR. MORRIS: Yes.

Q Did this impact your job at all?

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

*Rich Moffett Court Reporting*

39 of 156 sheets Page 153 to 156 of 502



Scott Reese
157

A [redacted]

MS. LINEEN: Before we go any further, I just want to note that any questions as to the discipline imposed on Mr. Reese by the Longwood School District and testimony about it should be governed by the stipulation of protective order in effect in this case.

MR. MORRIS: Everything is -- this whole deposition is protected by that.

MS. LINEEN: No, it's not.

MR. MORRIS: Thank you for that, Counsel.

Q What your attorney's referring to in confidentiality, that was entered between both parties in this lawsuit?

A **Okay.**

Q [redacted]

A [redacted]

Q [redacted]

Rich Moffett Court Reporting

Scott Reese
158

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Q [redacted]

A [redacted]

Rich Moffett Court Reporting

Scott Reese
159

[redacted]

Rich Moffett Court Reporting

Scott Reese
160

[redacted]

Q Were you charged with vehicular assault?

A **Yes.**

Q Did you plead guilty to vehicular assault?

A **Yes.**

Q Is that the penalty to which you referred earlier?

A **Yes.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 157 to 160 of 502 40 of 156 sheets

PageID #: 3951

Scott Reese
161

Q Are you still allowed to act as assistant principal of Longwood High School, although you are a convicted felon?

A **Yes.**

Q Did you make any statements or any notations or anything at all issued to the public regarding this arrest and reprimand?

A **No.**

Q Did you issue any letters of apology?

A **No.**

Q Did you apologize?

A **Yes.**

Q To whom?

A **The Superintendent at the time.**

Q Who was that?

A **Dr. Allan Gerstenlauer.**

Q When was Dr. Allan Gerstenlauer replaced by Dr. Michael Lonergan?

A **I don't know.**

Q Does Michael Lonergan know about this conviction?

A **Yes.**

*Rich Moffett Court Reporting*

Scott Reese
162

MS. LINEEN: Objection.

MR. MORRIS: Let's mark this as Plaintiff's 46.

(Whereupon, Plaintiff's 46 for identification, Agreement Between Scott Reese and Longwood Central School District, was so marked.)

Q Mr. Reese, do you recognize Plaintiff's Exhibit 46?

A **Yes.**

Q What is Plaintiff's Exhibit 46?

A **An agreement between myself and**

*Rich Moffett Court Reporting*

Scott Reese
163

*Rich Moffett Court Reporting*

Scott Reese
164

Q Did you successfully complete the term of five years probation under indictment number 3489-2007?

A **Yes.**

Q Any violations?

A **No.**

Q Aside from that fine, did you

A **No.**

*Rich Moffett Court Reporting*

Scott Reese
165

n

Q Let's put this aside. Thank you.

Did you have an opportunity to speak to anyone about your discipline and/or conviction in 2007-2008?

A **Yes.**

MS. LINEEN: Objection to form.

Q Did you respond to any online statements or comments?

A **No.**

Q Did you respond to any parents regarding your discipline or conviction in 2007-2008?

A **Not that I recall.**

*Rich Moffett Court Reporting*

Scott Reese
166

Q Do you know if the injured party suffered life-threatening injuries as a result of your accident in 2007?

A **He did not.**

Q Before your arrest, from where were you driving?

MS. LINEEN: Objection.

Don't answer that.

Same objection I made before.

MR. MORRIS: What's the objection?

MS. LINEEN: That it relates to the criminal charges against him. Circumstances are underlying, and I'm not his criminal attorney. I didn't want to place him in a position where he could implicate himself.

MR. MORRIS: Are you exercising his Fifth Amendment?

MS. LINEEN: I'm directing him not to answer. You can seek a ruling if you like.

Q Before you got in the car that night, where were you?

*Rich Moffett Court Reporting*

Scott Reese
167

MS. LINEEN: Don't answer that.

Q Were you with another Longwood School District employee earlier that evening?

MS. LINEEN: Don't answer that.

MR. MORRIS: What's the basis of that objection?

MS. LINEEN: Same basis.

MR. MORRIS: That it can incriminate him if he was with a Longwood --

MS. LINEEN: This all relates to what went on that evening, right? I'm not his criminal attorney. I'm not going to allow him to be put in a position that potentially incriminates his job. You want to speak to the attorney about it or get a ruling from the judge, that's fine.

Q Do you know who Skuggevik is, S-K-U-G-G-E-V-I-K?

A **Yeah.**

Q Who was that?

A **A former colleague.**

*Rich Moffett Court Reporting*

Scott Reese
168

Q When you say "former colleague," a colleague --

A **He is a superintendent now.**

Q A superintendent where?

A **I don't know.**

Q When is the last time you worked with him?

A **I don't know. Long time ago.**

Q Could you give his first name and last name?

A **Leonard Skuggevik.**

Q Was he your supervisor at some point?

A **Colleague, peer.**

Q When you say "colleague," he was a --

A **Assistant principal.**

Q At what time?

A **I don't know exactly the years.**

Q Was he your colleague in 2010?

A **No.**

Q Was he your colleague within this decade?

A **No.**

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 165 to 168 of 502 42 of 156 sheets

Scott Reese

169

Q Was he your colleague between 2000 and 2010?

**A Yes.**

Q Was he your colleague in 2004?

**A Yes.**

Q Was he your colleague in 2005?

**A Yes.**

Q Was he your colleague in 2006?

**A Yes.**

Q Was he your colleague in 2007?

**A Yes.**

Q Was he your colleague in 2008?

**A I'm not sure. That might be the year he left.**

Q Do you know why he left?

**A Advancement; principal.**

Q Did you and your coworkers -- withdrawn.

Did you interact socially with coworkers at Longwood School District?

**A When? Have I ever?**

Q The beginning of your tenure to today?

**A Yes.**

Rich Moffett Court Reporting

Scott Reese

170

Q Who?

**A We need the names of every coworker I've ever interacted with socially, including barbecues and birthdays?**

Q That's a lot. A lot of co-workers?

**A Yes.**

Q More than 50?

MS. LINEEN: Objection.

**A I don't know; probably around there.**

Q All have your support, correct?

**A Yes, I believe so.**

Q For that matter, you support them, right?

**A Yes.**

Q You ever receive or -- withdrawn.

Were you ever the recipient of complaints of social behavior outside of Longwood School District?

**A No. I didn't receive any. I'm not sure if any were ever made, but it didn't get to me.**

Rich Moffett Court Reporting

Scott Reese

171

Q Let's put this aside.

MR. MORRIS: This is 47?

THE REPORTER: 47.

(Whereupon, Plaintiff's 47, for identification, Board Policy, was so marked.)

Q Are you familiar with Plaintiff's Exhibit 47?

**A I'm sure I've seen it. But it looks like an another board policy regarding data reporting.**

Q Is that what Plaintiff's Exhibit 47 is, a board policy?

**A Looks like it, yes.**

Q Is this regular -- withdrawn.

Is this kept in the ordinary course of business at Longwood Central School District?

**A Yes.**

Q Were you responsible -- withdrawn.

Were you to be bound by such documents?

MS. LINEEN: Objection.

You can answer.

Rich Moffett Court Reporting

Scott Reese

172

**A Yes.**

Q Is this policy the same or substantially the same as when you received it?

**A Appears so.**

Q Is that correct that, quote -- reading off the LCSD-24 -- "each building principal shall be responsible for preparing on a regular basis a report of all the violent and destructive incidents that have occurred on school grounds, at a school function, or at a school-sponsored event and forwarding the report to the Superintendent of Schools," end quote?

**A Yes.**

Q Do you know if the State Education department requested data reports from Longwood Central School District?

**A I believe they do.**

Q Do you know if they requested such reports for the 2014-2015 school year?

**A Likely.**

Q Is there anything else not contained within that policy that is

Rich Moffett Court Reporting

43 of 156 sheets Page 169 to 172 of 502 01/03/2018 09:38:23 AM

Scott Reese
173

required in compliance with the V-A-D-I-R school reports?
MS. LINEEN: Note my objection to form.
A **Not that I know of.**
Q You can put that down.
Are you responsible for the training of security guards in any form or fashion at Longwood High School?
A **No.**
Q Have you ever sat in any Longwood High School security guard training?
A **Yes.**
Q In what year?
A **I don't know.**
Q Do you know which decade?
A **This one.**
Q Prior to -- withdrawn.
Was it in 2014 to 2015 or afterwards?
A **Prior.**
Q Was it 2013 to 2014?
A **Don't know. I don't know the**

Rich Moffett Court Reporting

Scott Reese
174

**year.**
Q Was it after 2014?
A **I don't know the year, specifically. It's somewhat before.**
MS. LINEEN: Objection.
Q Did you sign in?
A **No. It was an informal, again, training that -- I know I received a security path, and I just talked to them about how to interact with students. It was nothing too formal.**
Q Were you conducting the training?
A **No. I came in, and I just spoke at the beginning. And it was a summer training that was conducted by director Perrotta. I came in at the beginning and spoke to them about, you know, the best way to interact with students; it's always important to be nice, stuff like that.**
Q Did you remind them of the corporal punishment?
A **No.**
Q You said Perrotta. James

Rich Moffett Court Reporting

Scott Reese
175

Perrotta?
A **Yes.**
Q He was the one who was conducting that training?
A **Yes.**
Q Did you receive any written material as a result of that training?
A **No.**
Q I'd like to direct your attention to the suspension referral of David Edmond on June 4, 2015. Who took part in determining the referral for David Edmond?
MS. LINEEN: Note my objection to form.
A **Don't know.**
Q So you don't know who made the disciplinary referral for David Edmond on June 4, 2015?
A **When you mean that, you mean who made the disciplinary determination?**
Q No, the referral.
A **The write-up of the incident?**
Q Do you understand the question?

Rich Moffett Court Reporting

Scott Reese
176

A **No.**
Q The principal acted in disciplining David Edmond, is that right?
A **Right.**
Q Do you know who made the referral to the principal?
A **There were probably several referrals to the principal regarding the incident. One of them was mine; I don't know the others.**
Q Do you know who recommended the consequence for David Edmond on June 4, 2015?
A **I made a recommendation. I don't know if it was followed to the letter. Someone else likely made one as well. A couple of assistant principals involved that day.**
Q When you say "likely," as you sit here today, do you know?
A **No.**
Q Any notes that would refresh your recollection?
A **No.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 173 to 176 of 502 44 of 156 sheets

Scott Reese
177

Q Was anyone else present as you made your recommendation?

MS. LINEEN: Note my objection to form.

A **No.**

Q If they made a recommendation for David Edmond's discipline on June 4, 2015, would there be a paper trail?

A **Possibly.**

Q When you say "possibly," one made a referral without putting in a paper?

A **Yes.**

Q What policy, rules, guidelines, handbook, procedures?

A **You verbally have a conversation with the principal.**

Q So in other words, there's no guiding rule, written policy --

A **Typically, it would be put in writing.**

MS. LINEEN: Let him get the question out.

THE WITNESS: Sorry.

Q So no written policy in regards

Rich Moffett Court Reporting

Scott Reese
178

to how one makes a disciplinary recommendation; is that right?

MS. LINEEN: Objection to form.

A **Right.**

Q Sorry. You said "right"?

A **Right.**

Q So each assistant principal can make a disciplinary referral for David Edmond? For instance, in any form or fashion they feel it responsible and appropriate?

A **Yes.**

MS. LINEEN: Objection to form.

Q Just to be clear, June 4, 2015, Dr. Castro was responsible for that punishment; is that right?

MS. LINEEN: Objection to the form.

A **She was responsible for making the final determination on what discipline would be administered.**

Q Did she make that final determination as it relates to David Edmond on June 4, 2015?

Rich Moffett Court Reporting

Scott Reese
179

A **Likely.**

Q Anything about the hiring process for the school security guards?

A **No.**

Q Do you know if Longwood High School advertises for school security guards?

A **No, I don't know.**

Q Do you know if there's any policies in place in determining criteria candidates must have before being hired as a Longwood High School security guard?

A **No.**

Q After June 4, 2015, was there retraining in the use of force amongst Longwood High School employees?

A **I don't know.**

Q Were you trained on the use of force after June 4, 2015?

A **No.**

Q Do you agree that Longwood maintains a, quote, "zero tolerance policy for unprofessional behavior and conduct," end quote?

Rich Moffett Court Reporting

Scott Reese
180

A **Yes.**

Q Do you know if a violent or destructive incident report was created as a result of the incident involving David Edmond on June 4, 2015?

A **I don't know.**

Q Did you make a referral on June 4, 2015?

A **I wrote the statement up.**

Q Did you contact the law enforcement on June 4, 2015?

A **No.**

Q Was the law enforcement present on June 4, 2015?

MS. LINEEN: Objection to form.

A **Not that I recall.**

Q Any documentation, notes, anything that would refresh your recollection?

A **No.**

Q Was the school resource officer present on June 4, 2015?

A **I don't remember.**

Q Was James Perrotta present on

Rich Moffett Court Reporting

45 of 156 sheets Page 177 to 180 of 502 01/03/2018 09:38:23 AM

Scott Reese
181

June 4, 2015?
A **Yes.**
Q Do you know if James Perrotta called the police on June 4, 2015?
A **I don't know.**
Q Do you know if emergency medical services were called on June 4, 2015?
A **I don't believe so.**
Q Do you have a radio as part of your --
A **Yes.**
Q Sorry. I know this is tedious; let me finish.
Did you have a radio as part of your employment with Longwood High School?
A **Yes.**
Q And for what purpose did you have that radio?
A **Communication with colleagues and security.**
Q Did that radio give you access to Suffolk County Police Department?
A **No.**
Q Did the Suffolk County Police

*Rich Moffett Court Reporting*

Scott Reese
182

Department have access to that radio?
A **No. Not that I know this of.**
Q Did you ever receive training from the Crisis Prevention -- withdrawn.
Have you ever received training from the Crisis Prevention Institute, otherwise known as CPI?
A **No.**
Q Were you ever trained in a non-violent crisis intervention?
A **No.**
Q Were you ever trained in non-violent crisis intervention training program, understanding the risks of restraints?
A **No.**
Q Were you aware that certain restraints could result in death or other serious injury?
A **I'm aware of that.**
MS. LINEEN: Objection to form.
Q Are you aware that lying on top of a student in form can result in asphyxia?
MS. LINEEN: Note my objection

*Rich Moffett Court Reporting*

Scott Reese
183

to form.
A **No, I'm not aware.**
Q Were you ever -- withdrawn.
Did you ever participate in James Perrotta -- New York State-mandated security training?
A **I think that was the training I was at. But not formally, no. I didn't stay for the entire training.**
Q How long did you stay at such training?
A **Thirty minutes.**
Q Did you receive written materials?
MS. LINEEN: Objection.
A **No.**
Q Did you see others with written materials?
A **I don't recall.**
Q When you said you stayed there, where is "there"?
A **LGI, large group instruction room at Longwood High School.**
Q Was this on a particular day of

*Rich Moffett Court Reporting*

Scott Reese
184

the week?
A **I recall it was a summer day. No students in session. That's all I can point to.**
Q When you participated in that training, did Mr. Perrotta discuss the use of force?
MS. LINEEN: Objection to form.
A **I don't recall.**
Q When you were in that training, did Mr. Perrotta discuss potential criminal liability for the use of force?
A **Don't recall.**
Q Do you recall anything about that training?
A **No.**
Q As you sit here today, you have no independent recollection of that training?
A **Other than what I spoke of, no.**
Q You ever participated in a non-violent crisis intervention training program?
A **(No response).**

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 181 to 184 of 502 46 of 156 sheets

PageID #: 3957

Scott Reese
185

Q Carewell [phonetic] for safety security?
**A No.**
Q You ever participated in any Longwood Central School District Security Department eight-hour training service course for security guards?
**A No.**
Q I'd like to hand you what's been previously marked as Plaintiff's Exhibit 17. Have you seen this document before?
**A Yes.**
Q What is Plaintiff's Exhibit 17?
**A The Dignity for All Students Act. It looks like a PowerPoint printed-out fashion that we use.**
Q How far do you recognize Plaintiff's Exhibit 17 as the Dignity for All Students Act PowerPoint?
**A From our training material, it look familiar. I believe that's what it is, but I'm not certain. That's what it looks like from my recollection.**
Q Is it the same or substantially

*Rich Moffett Court Reporting*

Scott Reese
186

the same as when you received it?
**A Yes.**
Q Did you sign anything to acknowledge receipt of such training?
**A No.**
Q Did you receive a certificate of completion for such training?
**A No.**
Q I respectfully request that document back.
(Whereupon, there was a brief off-the-record discussion.)
Q Were you aware that a student incident report was filed on June 4, 2015?
MS. LINEEN: Note my objection to form.
**A No.**
Q Were you aware that several students complained of physical force -- withdrawn.
Were you aware that several students complained that they were subject to physical abuse by Longwood High School employees?

*Rich Moffett Court Reporting*

Scott Reese
187

**A No.**
Q Were you aware that David Edmond complained that he was the subject of physical force by Longwood High School employees?
**A Not that day, but I believe a few weeks thereafter.**
Q You say "a few weeks thereafter." How did you become aware of that?
**A I don't know. I don't recall. It was probably just a conversation with someone.**
Q Do you recall whom?
**A No.**
Q Prior to June 4, 2015, did you know that there was going to be a senior prank?
**A No.**
Q Prior to June 4, 2015, were you on alert that there might be a senior prank?
**A Yes.**
Q How did you become aware of that?

*Rich Moffett Court Reporting*

Scott Reese
188

**A It's hearsay. It's what we just hear. The guards hear things in the hallways and they brought it to us. We get a lot of reports, a lot of possible pranks. We try to be diligent, try to weed out what's reality and what's not.**
Q When you say "reports," to what are you referring?
**A Just verbal conversations.**
Q Does the school monitor any social media to determine whether a prank would be occurring?
**A I didn't hear anything prior to this incident.**
Q Do you know if the school monitored social media?
**A I don't know.**
Q Are you aware of ever seeing a student's social media page?
**A I have so, yes.**
Q Are you aware if the school's -- any employee within Longwood High School monitors?
**A I don't know if it's monitored**

*Rich Moffett Court Reporting*

47 of 156 sheets Page 185 to 188 of 502 01/03/2018 09:38:23 AM

PageID #: 13958

Scott Reese

189

**by a staff member. Probably is.**

Q Did you ever receive a Google alert, for instance?

A **Not that I recall, no.**

Q Did you ever see the field reports created by the security guards concerning the event on June 4, 2015?

A **I don't know. I don't remember.**

Q Is it that you don't know or that you don't remember?

A **I don't remember.**

Q Anything -- is there anything that would refresh your recollection?

A **No.**

Q Did you make any notes as to whether you -- withdrawn.

From who did you hear that there might be a senior prank on June 4, 2015?

A **I don't recall.**

Q Was it a Longwood High School employee?

A **Yes.**

Q Was it a man or a woman?

A **Don't recall.**

*Rich Moffett Court Reporting*

Scott Reese

190

Q Do you recall what date?

A **Probably the period before, on that same day.**

Q Did you receive any electronic mailings regarding such a student prank?

A **No.**

Q Did you witness anyone getting punched on June 4, 2015?

A **No.**

Q Did you witness anyone getting kicked on June 4, 2015?

A **No.**

Q Did you witness anyone get injured on June 4, 2015?

A **No.**

(Whereupon, Plaintiff's 48 for identification, XX , was so marked.) ^^THIS WAS IN NOTES BUT NOTHING MENTIONED? ^^

MR. MORRIS: Let's take two-minute break.

Going off the record. I have a 11 -- actually, I have 12:38.

MS. LINEEN: I have 12:39.

MR. MORRIS: 12:39.

*Rich Moffett Court Reporting*

Scott Reese

191

THE WITNESS: Can I go to the bathroom, please?

(Whereupon, there was a break in the proceedings.)

MR. MORRIS: Let's get started.

MS. LINEEN: It's 12:42.

MR. MORRIS: The time now is 12:42. We're back on the record.

Mr. Reese, all of my questions I'm going to ask you now have to do with June 4, 2015, unless I say otherwise.

Do you understand?

THE WITNESS: Yes.

Q Could you tell any where you were that morning around 9:55?

A **No.**

Q Can you tell me where you were around ten?

A **No. When did the incident occur?**

MS. LINEEN: He can't really answer the questions.

THE WITNESS: I don't know

*Rich Moffett Court Reporting*

Scott Reese

192

exactly where I was.

MS. LINEEN: Answer the question as best you can.

THE WITNESS: This was just prior to the incident. I was outside, actually, north main entrance.

Q So let's start there. What were you doing at the north main entrance?

A **We had heard that there was going to be a mass exodus of the senior class. A bunch of other students period -- I think it was five or six; I don't recall the exact period -- we positioned ourselves to various exits to try to keep the kids in the building from going outside unsupervised.**

Q When you say "we," who's we?

A **Assistant principals, security staff, teachers that might have been available.**

Q How did you communicate that to all those people?

A **Radio.**

Q Do teacher have access to radio?

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 189 to 192 of 502 48 of 156 sheets

Scott Reese
193

A No. That would have been verbal.

Q Who made a radio phone call?

A Radio call initially, I believe came in from security staff, but I don't know who.

Q And the other people?

A I don't recall.

Q Tell me, what did you have to do after you got that call?

A We just began communicating and positioning ourselves at exits. I chose the north main entrance.

Q Did you use the radio?

A Yes.

Q What did you say into the radio?

A I likely said I'll take the north main entrance.

Q I don't want "likely." Do you remember?

A Not the exact statement.

Q Sum and substance?

A This is H-5, which is my call number. I'll take the north main

Rich Moffett Court Reporting

Scott Reese
194

entrance --

Q Did anyone respond?

A Likely. Some 10-4s, and all just called back as to what exit they were going to cover.

Q What occurred after that?

A Lot of radio chatter likely going back and forth, covering a lot of the exits in the building. We can't cover all of them, but we chose the ones that we felt were best.

Q Explain the ones that you thought were best?

A The main entrances, the ones that get the most traffic, coming by.

Q What was your intention?

A To tell the students to go back into the building and go to class.

Q So why did you position yourself outside the door as opposed to inside?

A There was a guard inside as well. And a visible presence outside the door, prior to the bell ringing, we thought would be helpful.

Rich Moffett Court Reporting

Scott Reese
195

Q Was it your goal to prevent students from going outside?

A Yes.

Q What if anything was communicated about the level of intervention to be used at this point?

A There was nothing communicated.

Q In other words, what was the form of the intervention there was to take?

MS. LINEEN: Objection.

A Instruct the student to re-enter the building if they got outside.

Q Do you know if a teacher, Cipp [phonetic], had a radio that day?

A He did not.

Q Do you know if anyone physically blocked students from entering on that day?

A I don't know.

Q Tell me what happened after that communication?

A I got a call from another assistant principal, Ms. Smith, that there was, quote -- I believe that she said it was "the 1600 was chaotic."

Rich Moffett Court Reporting

Scott Reese
196

Q What did you do in response to that?

A I responded to the 1600 hallway to assist. As I came down the hallway, I saw a group of students coming down the hallway, saying "asshole" to everyone they saw. Student in the front of the pack later identified as David Edmond looked right at me, called me an asshole. I told him to stop.

I positioned my arms to my side. He did not stop. I then positioned my arms to the side of the hallway; he was coming from this direction. He walked with his chest into my hand, proceeded through my hand. At that point, I grabbed a jacket, a red jacket that he was wearing in front of it, to restrain him, to keep him from proceeding down the hall. He immediately spun around and began raining down throws on my left arm, excessive force, trying to break my hand away from his jacket to continue down the hallway. '

At that time I had severe injury

Rich Moffett Court Reporting

49 of 156 sheets Page 193 to 196 of 502 01/03/2018 09:38:23 AM

PageID #: 3960

Scott Reese
197

on my right hand, a burn. I had forgotten about it that moment. I tried to engage him with my right hand, which he immediately slapped away. I then let go of his jacket, let go of him. Put my hands to my side, backed up against the wall, hoping he would just continue down the hall. Instead, he turned, got in my face within 6 inches, and shouted profanities.

At that point, I was in fear of imminent physicality. I was thinking about how I was going to defend myself, which I thought was absolutely going to happen because another had student joined in as well, barking and cursing in my face, so close that I felt saliva on my face. At that point, security intervened, thankfully, and removed the students from my vicinity.

Q So there was a lot of positioning of your hands?

A Uh-huh.

Q Indicating you were putting your hands out?

A Yes.

Rich Moffett Court Reporting

Scott Reese
198

Q So that being a left and right arm?

A Both hands went out, yes. I can't cover the entire hallway. He began to move around me; I then took a step or two to the left, putting my hands against the wall, not him.

He walked into my hands, chest level. Walked through my hands. I grabbed his jacket -- not his shirt, nothing else, his jacket only -- with my left hand. He began raining down blows on my left arm. Trying to break my hand loose of his jacket.

Q You seem to recall this event vividly?

A I do. It was quite vivid.

Q Let's go back to the beginning. Ms. Smith called. From where did you leave and where did you go?

A At that point, I believe I was already at the south main. She was in the building, so I walked over from the north, noticing that there was nothing going on there. I did -- there was some other radio

Rich Moffett Court Reporting

Scott Reese
199

communication indicating that the 1600 hallway was getting a bit chaotic, so I started to walk outside the building towards that area.

At that point, I got the call from Ms. Smith that there was, quote, "chaos occurring," or a chaotic situation brewing in the 1600s.

Q Did anyone go with you to the 1600s?

A There were a lot of staff there. I found out afterwards teachers walking the hallway, trying to assist, but it was chaotic. A large group of students coming down the hallway, shouting "asshole" to everyone they saw was something they likely hadn't seen before.

Q I got that. So what I'm asking you specifically when you, in response to Ms. Smith, did anyone accompany you to the 1600s?

A Not that I recall, but I don't know. Probably was someone behind me. Probably Ms. Smith; she was first-year

Rich Moffett Court Reporting

Scott Reese
200

administrator at the time.

Q Anyone else?

A Not that I recall.

Q You were with security?

A Not at that time.

Q So you were responding to -- withdrawn.

What type of situation did you feel you were responding to?

A I didn't know what to expect. I had to make a quick determination, as I got about three-quarters of the way down the hall, whether or not to try to stop this group of students, or proceeding down the hallway, riotously, knowing that the hallway behind it that I just walked through was full, and had they passed me, it likely would have escalated dramatically had this continued. It would have gained steam, basically. So I make a split-second decision to decide to stop it, to prevent injuries to students, selves, and others.

Q When you say "stop it," what did you intend to do?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 197 to 200 of 502 50 of 156 sheets

PageID #: 3961

Scott Reese
201

A I wanted to stop the students from proceeding down the hall, chanting "asshole" to everybody.
Q Now, you indicated before you're going to verbally say something?
A I did. I verbally indicated for them to stop. I said, Stop. Stop. Did not. David Edmond was in front of this group. I put my hands out to my side. He certainly -- he ignored me completely. This is all on video too, this part of the incident.
Q So did you intend to physically stop it?
A Not initially, no. We hoped they would respond to a verbal.
Q When you say "we," who is we?
A Any adult in the building.
Q So you're assuming. Did you speak to anyone?
A I guess -- yeah, I'm assuming that all adults would prefer students to respond to a verbal command rather than get physical.

Rich Moffett Court Reporting

Scott Reese
202

Q But you did get physical?
MS. LINEEN: Objection to form.
A As a result of this gross insubordination. I grabbed his jacket to stoop him from proceeding down the hall.
Q I want to back up. Take me back to before you grabbed his jacket. You said there was -- they were chanting. Who was chanting and what were they chanting?
A Several students. Asshole.
Q When you say "several," you said "riotous" and a few other choice words. 30 students, 40 students?
A I can't estimate.
MS. LINEEN: Note my objection to form.
A I have no idea. It was more than one; more than five. I can say that, definitively.
Q More or less, there were 50 students chanting "asshole"?
MS. LINEEN: Objection.
A Yes.
Q Were there boys chanting

Rich Moffett Court Reporting

Scott Reese
203

"asshole"?
A Yes.
Q Were there girls chanting "asshole"?
A Not that I recall.
Q Were there gentlemen of different races chanting "asshole"?
A Yes.
Q I want to take you right before you outstretched your arms. What did you see at that point?
A David Edmond -- I didn't know his name at that point, definitively -- a student in a red jacket at the front of the pack, who looked directly at me and called me an asshole. So I decided since he was in the front, that he would be the person I would try to stop, hoping the others would follow.
Q So just to be clear, you said a lot of people were chanting "asshole," then you said he called you "asshole." How do you know he called you "asshole"?
A He looked right at me.

Rich Moffett Court Reporting

Scott Reese
204

MS. LINEEN: Objection to form.
A Again, that also can be seen on video.
Q And I appreciate that. I'm looking for what you recall here.
But he looked at you and you took his chanting of "asshole" to mean you were the asshole?
MS. LINEEN: Objection to form.
A I took it as they were calling everyone assholes. He specifically looked at me then, and chanted "asshole" right before then. I said Stop, stop, and I outstretched my hand.
Q Now, you said at the time you didn't know, but later came to know it was David Edmond; is that right?
A Yes. I didn't know his name, but I recognized his face.
Q And you think the chants of "asshole" were not directed to you before seeing David Edmond, correct?
MS. LINEEN: Objection to form.
A Correct. They were just

Rich Moffett Court Reporting

51 of 156 sheets Page 201 to 204 of 502 01/03/2018 09:38:23 AM

Scott Reese

205

**chanting it, like a hockey game, "asshole, asshole," the whole way down the hall.**

Q And at some point, you feel that David Edmond called you an asshole?

A **Yes. He looked right at me and said "asshole."**

Q Tell me, what did you do right after you saw that?

A **I raised my hand and said, stop. He continued. I then positioned myself to the left of the side of the hallway from my rear. My hand touched the wall. He walked into my hand at chest level; I grabbed his jacket with my left. He immediately spun around and began raining down blows on my left arm.**

Q I want to back up there. So you indicated that your left arm was outstretched --

A **Yes.**

Q -- looks like a wingspan? And then your right arm was outstretched; it looks like a wingspan?

A **Correct.**

Rich Moffett Court Reporting

Scott Reese

206

Q So you indicated that both arms were outstretched as if you were in a wingspan, correct?

A **Yes.**

Q Was your intention to stop anyone who came into your wingspan?

A **He was, at that point, pretty much right in front of me, like I would say 2 or 3 feet away. So I was hoping, really, just to stop him, him being the one in front of this group of students.**

Q So to be clear, you intended to physically stop David Edmond?

MS. LINEEN: Objection to the form.

A **Not physical, no.**

Q How did you intend to stop him?

A **Verbally.**

Q And out spanning your arms?

A **Body positioning; hopefully he would see it and like, okay. I don't want to get by this administrator. It's a bad idea to walk into an adult.**

Q You said because of the

Rich Moffett Court Reporting

Scott Reese

207

insubordination?

A **Yes. He wasn't listening to verbal commands, yeah.**

Q And in response, you grabbed him?

MS. LINEEN: Objection to form.

A **In response to him pushing his way through my hand, as he was already getting past me, I had to make a decision at that split second whether or not to let him get past me, or try to stop him through minor restraint and grabbing his jacket.**

Q Just to be clear, you stopped David Edmond through physical restraint?

MS. LINEEN: Objection to form.

A **I stopped him by grabbing his jacket. And I did stop him. I actually let go of him, and then he came back at me.**

Q David Edmond is walking in the hall, correct? You make physical contact with David Edmond, correct?

A **No. He made physical contact with me.**

Q When he made physical contact

Rich Moffett Court Reporting

Scott Reese

208

with you, did you let him keep walking?

A **He pushed through my arm, and was spinning around. There was a little alcove, so the hallway pretty much stopped. It goes in, so he started to move through that area now. This was right in front of the athletic director's office.**

**At that point, I realized I had to stop him at that point from continuing down the hallway, creating a much more dangerous situation. Grabbed his jacket; he immediately spun around within half a second and began wildly slamming on my...**

**MR. MORRIS: Could you read back my question back, please?**

(Whereupon, the last question was read back by the court reporter.)

Q Did you understand my question?

A **I guess yes. I did let him keep walking.**

Q At what time did you prevent him from continuing to walk?

MS. LINEEN: Objection to form.

A **I didn't.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 205 to 208 of 502 52 of 156 sheets

Q David Edmond was free to go?
**A Yes. I let go of him, after I realized that he is not stopping. 18-year-old athlete, a lot of strength; I wasn't going to wrestle with him in the hallway.**
Q Just to be clear, you grabbed him at some point, correct?
MS. LINEEN: Objection.
**A I grabbed his jacket.**
Q You grabbed his jacket; is that right?
**A Yes.**
Q Why did you grab his jacket?
**A To stop him from going down the hallway.**
Q That was a physical stopping, correct?
MS. LINEEN: Objection to form.
**A If grabbing the front of a student's jacket for about four seconds in total is a physical, then yes.**
Q You understand my question, right?

**A Yes.**
Q Did David Edmond say anything to you as you grabbed his jacket?
**A Yeah. He was saying things; I don't recall exactly. Nothing kind.**
Q Do you recall him asking for you to release him?
**A He said, you can't touch me.**
Q What did you say?
**A I said, yes, I can.**
Q Was that your understanding?
**A That is my understanding, yes. The student was putting himself and others in physical danger.**
Q Tell me exactly what David Edmond was doing, prior to you touching him, that put students in danger?
**A He was leading a group of students down the hallway, a crowded hallway, that could have led to something riotous and continued.**
Q How did you determine that he was the leader?
**A He was in front of the pack.**

Q By virtue of him being in front of everybody else, he was the leader?
MS. LINEEN: Objection to form.
**A I determined that if I stopped the person in front, hopefully, everyone else would stop. I had to address one student; I chose the student in front of the group.**
Q Were you aware of a prior altercation with B[redacted] W[redacted] [phonetic] earlier that day?
**A Between who?**
Q Do you understand the question?
**A No.**
Q Were you aware of a prior altercation with B[redacted] W[redacted] that occurred moments before you grabbed David Edmond's jacket?
**A No.**
Q Were you aware of a situation with Mr. Cipp, C-I-P-P, prior to you grabbing David Edmond's jacket?
**A No.**
Q Were you aware of a situation

with B[redacted] Z[redacted] [phonetic]; prior to you grabbing David Edmond's jacket?
**A No.**
Q So you had coming down, saw David Edmond, and that was your primary target, correct?
MS. LINEEN: Objection to form.
**A Being in the front of the group of students, yes. I wasn't going to let the first group who was chanting "asshole" come pass me, then randomly select someone behind him. It would make sense to stop the person in front.**
Q That being David Edmond?
**A That being David, yes.**
Q Although there were many students chanting "asshole"?
**A Yes.**
Q You said "raining down blows." Could you describe what occurred?
**A As I held his jacket with my left hand, then he immediately spun around, and using both hands full force, as hard as he could, he was just pounding on my left**

Scott Reese

213

**forearm.**

Q Okay. I just want to because you seem to have -- about 12 times -- but the right hand in a fist, pounding down?

A **Yeah. With just one hand after -- the boom, boom, boom, boom, a lot.**

MS. LINEEN: Objection to form and to characterization.

Q Could you demonstrate what happened?

MS. LINEEN: Can you describe it?

THE WITNESS: Describe it?

MS. LINEEN: Yes.

Q Can you demonstrate what happened?

MS. LINEEN: You can describe it.

MR. MORRIS: Counselor, are you instructing him not to --

MS. LINEEN: Yes. You're asking him to demonstrate how another person was doing something to him. He can't do that, so...

Rich Moffett Court Reporting

Scott Reese

214

MR. MORRIS: Let me ask him.

Q Can you do that? Can you demonstrate what someone else did to you?

MS. LINEEN: How can he demonstrate two people?

Q No, no. Demonstrate what David Edmond did to you?

MS. LINEEN: No. He can describe it.

A **I just did.**

Q So that's what it was?

A **Yes.**

Q I'm just making sure. Because he might not get that down.

So you are saying he folded his fist -- can you tell me how many times that he rained down? Was it one time? Two times?

A **Oh, I can't tell it exactly. I mean, it's all -- happened very quickly. More than five times.**

Q More than ten times?

MS. LINEEN: Objection.

A **Don't know.**

Rich Moffett Court Reporting

Scott Reese

215

Q And you said "excessive force"?

A **Very quick. It was as hard as he could, in my estimation.**

Q How do you know it was as hard as he could?

A **I have brothers.**

Q Fair enough.

A **It hurt.**

Q Was he trying to get away from you?

A **Yes.**

Q Did you allow him to get away?

A **Yes. He let go at that point, after he slammed my finger hand and let go. And he did not leave the area; he came right back in my face.**

Q So was that before he asked about you touching him and you saying, yes you could touch him?

A **No, after.**

Q So let's go back to that point. What did you say to him in response to his statement?

A **He said, you can't touch me. I**

Rich Moffett Court Reporting

Scott Reese

216

**said, yes, I can.**

Q What happened right after that?

A **He then spun around and began punching wildly at my arm.**

Q As you held him?

MS. LINEEN: Objection to form.

A **For about four seconds, if that.**

Q Just to be clear, you were holding him as he was punching you?

A **Yes.**

Q And then you let go?

A **Yes.**

Q What happened right after that?

A **He did not leave. Seeming he got back in my face, I backed myself up against the wall. Another student joined in, the barking in my face, so then there were two of them, Edmond and W[redacted], within inches of my face again, barking all sorts of profanities at me. What was going through my head was I am about to get hit I one of these guys. And I was preparing to receive some blows, certainly, from them.**

Q So you knew who W[redacted] was

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 213 to 216 of 502 54 of 156 sheets

Scott Reese

217

before that?

A **No. I later found that was W█████ in my face on my left side.**

Q Could you describe W█████ -- what was his first name?

A **I think B█████**

Q Could you describe what B█████ W█████ looks like?

A **Similar to Dave; I don't know why. Skinny, 5-10. Light-skinned African-American male; that's all I can recall.**

Q So I want to take you back to that. So you let go of the jacket?

A **Of Dave, yes.**

Q As you held the jacket, was there a time you moved from the 1600 hallway off-camera into a foyer?

A **Yes, about two feet.**

MS. LINEEN: Note my objection.

Q Tell me how that occurred, how the movement off the camera in the hall to the foyer, occurred?

MS. LINEEN: Objection to form.

Rich Moffett Court Reporting

Scott Reese

218

A **As soon as we got to the foyer --**

**THE REPORTER: I'm sorry. I'm not able to get your objections unless there's some kind of coordination. Okay? Because it's happening at the same time.**

**MS. LINEEN: Okay.**

**Give me a second to place my objections on the record before you start answering.**

MR. MORRIS: I'm going to ask another question because I want to the record to be clear.

Q Tell us how you left the 1600 hallway and ended up with your back against the wall?

A **It was, literally, not too far from this foyer where my hands were outstretched, so it happened very quickly. He began -- as he spun around, he began pulling me backwards while he was raining down blows on my arm.**

**I again brought my -- I forgot at this point this hand was severely burned**

Rich Moffett Court Reporting

Scott Reese

219

**and injured. He hit that hand, I let go. It happened within less than two, three, or four seconds max. So we got dragged out of camera by his force pulling me backward. As I was trying to hold onto his jacket, he was punching wildly at my arm, so I let go at that point, hoping he would just pursue down the hallway.**

Q So you held him at this point?

A **One hand.**

MS. LINEEN: Objection to form.

Q You held him with one hand? I'm sorry.

A **Yes.**

Q And he dragged you?

A **Yes.**

Q And dragged you off?

A **Off-camera, about two feet off.**

Q Let me ask you about that burn. How did you get burned?

A **Poker by a fire.**

Q Did you have your hand in a bandage?

A **Yes, big bandage. I believe**

Rich Moffett Court Reporting

Scott Reese

220

**that can be seen on the camera too.**

Q Like a sling?

A **No. It was across my hand.**

Q You grabbed him --

A **Yeah. I grabbed -- I was closer than I thought. I burned my hand pretty good.**

Q So that was your right hand?

A **Yes.**

Q So you had him with your left hand?

A **Yes.**

Q So you're coming towards him, down the hall. You grabbed him with your left hand. So you grabbed the right hand -- the right-hand side of David Edmond's jacket?

MS. LINEEN: Objection to form.

A **No. We're going back now?**

Q Yeah. With your left hand, what part of his jacket did you grab?

A **Right in front of his chest, right here.**

Q Grabbed him in the center mass?

Rich Moffett Court Reporting

55 of 156 sheets Page 217 to 220 of 502 01/03/2018 09:38:23 AM

Scott Reese
221

A **Yes.**
Q So you're indicating the center, sort of like the tie line?
A **Yes.**
Q From there, you say that David dragged you off the camera view; is that right?
A **Yes. I went with as well, just to not get in a pulling me match as well. I just wanted to keep him with me. But, he was hitting pretty hard.**
Q Did you say anything to him afterwards, after he was hitting you pretty hard?
A **No, I don't recall.**
Q Did you say something, or is it that you don't recall saying something?
A **I don't -- I don't think I said anything. I let go, and was hoping he would leave, and they didn't.**
Q Do you recall what W[redacted] said to you?
A **They were using a lot of profanity. I don't know exactly what they**

Rich Moffett Court Reporting

Scott Reese
222

**were saying.**
Q You don't know or you don't remember?
A **I don't know. It happened so quickly. It's hard to recall those details.**
Q So shortly after you said yes, I can, you let go of him; is that right?
A **Yes.**
Q What happened next?
A **With him and the other student got within six inches of my face. And they were barking profanities at me, yelling and screaming at me. At this point, I was in fear for my physical self, and assuming I was about to be struck by one of them or both.**
Q I think you used the word "imminent physicality"; is that right?
A **Yes.**
Q Could you explain what you mean by that?
A **It means I was certain I was about to be struck.**
Q So why not say "I was certain I

Rich Moffett Court Reporting

Scott Reese
223

was about to be struck"? Why did you use "imminent physicality"?
A **I didn't know what form it was going to come in.**
Q So by imminent physicality, you felt that you were about to be struck?
A **Struck, tackled. I don't know; who knows. Kicked, jumped on, spit on.**
Q This was in response to you, among other things, outstretching your arms, grabbing David Edmond's jacket?
MS. LINEEN: Objection to the form.
A **I don't know.**
Q You don't know?
A **I don't know what it was in response to.**
Q Was David Edmond acting with imminent physicality as he walked down the hall?
A **I would say that was a possibility, yes.**
Q Explain to me how is that a possibility?

Rich Moffett Court Reporting

Scott Reese
224

A **A group of students walking down a hallway -- pretty much if they own that hallway, bumping into students, calling everyone "assholes" -- that easily could potentially get physical had it gone any further.**
Q So imminent physicality, that means someone who was about to get struck?
MS. LINEEN: Note my objection to form.
A **In my estimation, yes.**
Q So when you saw those students walking down the halls, 1600, you felt that there was imminent physicality?
MS. LINEEN: Objection to form.
A **I felt that that was definitely a possibility had it continued further. Other students don't liking being called asshole either.**
Q And did you know why the students were chanting "asshole"?
A **No.**
Q Did you get on the radio, ask anybody?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 221 to 224 of 502 56 of 156 sheets

A **No.**
Q Anyone with you at this time?
MS. LINEEN: Objection.
A **Which time?**
Q The time you are up against the hall with David Edmond?
A **When he is in my face?**
Q I guess when you move off the 1600's camera, when B[redacted] W[redacted] and David Edmond are present?
A **It felt like an eternity, but it probably ended up being about five seconds that it all occurred within. No, no one was with me.**
Q What happened after that?
A **Security came and attempted to restrain the two individuals that were in front of me.**
Q Describe what you saw?
A **I saw security staff -- I don't remember specifically who initially -- attempting to restrain David and the other student. The other student seemed compliant, didn't really struggle too much,**

**was removed from the scene from what I recall. David Edmond was struggling mightily against any type of security intervention to keep him away from me.**
Q When you say "struggling mightily," what do you mean?
A **I mean, as if you were trying to hold down someone against their will, and using every ounce of energy and strength to get away from the people trying to do that.**
Q Did you see B[redacted] W[redacted], who grabbed Mr. Winthrop [phonetic]?
A **I don't remember.**
Q Was it one person?
A **I don't remember.**
Q Was it two people?
MS. LINEEN: Objection.
A **I don't know. He was not an issue, I believe, because he was -- I would assume more compliant. You know, security and staff trying to remove him.**
Q Tell me what you recall?
A **I recall David Edmond on the ground, struggling mightily against security**

**staff.**
Q You say "on the ground." He was he on the ground?
A **Yes.**
Q How did he get on the ground?
A **Both him and security were on the ground.**
Q How did he get to the ground? Tell me. He was in front of you the whole time?
A **Right.**
Q You said "chest to chest"?
A **Close, yeah.**
Q Very, very close?
A **Yes, within inches.**
Q You said "imminent physicality"?
A **Right.**
Q Close enough to strike you?
A **Yes.**
Q Did you say right before security restrained him?
A **Right before?**
Q Yes. Take me through those events?

A **I don't know what happened right before. I mean, that's different; you're in the fight-or-flight mode at this point. Again, I was believing I was going to be struck. Your adrenaline is pumping; very hard to recall minor details on how the student was removed from the area. All I knew was he was suddenly removed, both suddenly gone from my vision. I was thankful.**
Q Did you close your eyes?
A **I might have.**
Q As you sit here today, do you remember what happened?
A **I don't remember how they got removed. I remember, right after they were removed from my field of vision, I was thankful. I looked around, tried to regain my wits. I noticed Dave Edmond on the floor, struggling mightily against the guard who was trying to remove him from the area, likely. And an 18-year-old, very strong, athletic boy at the end of his senior year is quite hard to get hold of. And he proved**

**that.**

Q Do you remember how he got on the ground?

A **No.**

Q Do you remember any events before he got on the ground?

A **Any two adult-size individuals, one trying to restrain the other, likely end up on the ground.**

Q Did you see him placed in a chokehold?

A **No.**

Q Did you see any teacher come to assist David Edmond?

A **I don't recall any teachers there. I know there were, though.**

Q Let's take it right from where you saw David Edmond and a security guard on the ground. Do you know who that security guard was?

A **Scott Partlow, I believe.**

Q Take me from when you saw that from when you saw next, what you witnessed.

A **I witnessed them on the ground,**

**guard trying to restrain him, losing the battle essentially, so I kind of left. Hoping that if he ever did get free, I wouldn't be there to instruct him, but at least to diffuse the situation, so I left the area. I went down the hall somewhat to try to remove some of the students from the area.**

**When I came back, Dave Edmond was in the athletic director's office with Assistant Principal Conlon.**

Q Could you describe how you left the area?

A **Walked away.**

Q When you say "walked away," you turned around?

A **Yes. I didn't want to be anywhere near, should he have gotten away.**

Q Back of your head facing David Edmond and Scott Partlow?

A **Yes, I believe so. I walked down the hallway.**

Q Where did you go?

A **South.**

Q What was your final destination?

A **Back where the incident occurred, when it settled down.**

Q I guess tell me about your walk south, back to the incident. Where did you go?

A **Short walk away from the incident, trying to keep students from entering this area, making it more chaotic. Once I realized that Dave was out of the hallway and in with Assistant Principal Conlon, I came back. He was behind glass doors; I then walked away.**

Q Crowd control?

A **Yes.**

Q So as soon as David Edmond was subdued, you went back to control?

A **Yes.**

Q Just show me how you controlled the crowd after David Edmond was subdued?

A **No. I don't remember.**

Q Did you engage anyone else with your arms outstretched?

A **I might have. It would be on**

**camera, though, so we could find out that if we needed to.**

Q And I appreciate that, but I'm looking for you to recall?

A **I don't recall exactly how I addressed the other students that might have been in the area at that point.**

Q Did you physically engage anyone?

A **No.**

Q After David Edmond?

A **No.**

**MS. LINEEN: Note my objection to form.**

Q Did you grab anyone's jacket after David Edmond?

A **No.**

Q Did you speak with anyone between your walk south and back to the area?

A **No.**

**(Whereupon, there was a brief discussion held off the record.)**

Q After David was in Ms. Conlon's

Scott Reese

233

office, with whom did you discuss this matter?

A **I don't know if he was in Ms. Conlon's office. I don't know what office he ended up in. He was in the athletic office with Ms. Conlon, which was the one that was right, at this moment, where it all occurs. She just removed him from the area.**

**I'm actually thinking he ended up in Ms. Merkle's office -- I'm not certain -- possibly Ms. Conlon. I don't remember. Who did I discuss it with, likely just the building principal, Dr. Castro.**

Q Dr. Maria Castro; is that right?

A **Yes.**

Q Was anyone else in the athletic office beside David and Ms. Conlon?

A **Clerical staff. And I do recall seeing Ms. Curiale there as well -- Gina Curiale, athletic director at the time.**

Q What did you do after you witnessed this?

A **I left. Went back to my office, likely.**

Rich Moffett Court Reporting

Scott Reese

234

Q Did you speak to anyone about the events that just occurred?

MS. LINEEN: Note my objection to form.

A **At what moment?**

Q What did you do when you went to your office?

A **Likely regrouped. And closed the door for a little while.**

Q Anything else?

A **Probably called my building principal.**

Q Dr. Castro?

A **Yes.**

Q Anything else?

A **Not that I recall.**

Q Get on the computer?

A **No.**

Q Send an e-mail?

A **No, not right in that moment.**

Q Do you recall the events to anyone?

A **No.**

Q Did you speak to Mrs.[sic]

Rich Moffett Court Reporting

Scott Reese

235

Castro about the events that occurred on June 4, 2015?

A **Yes.**

Q Did you do so in your office at that time?

A **I don't recall the location.**

Q And when you went back to your office, please tell me the sum and substance of the conversation with Dr. Maria Castro?

A **Likely was a description of the incident that I just described to you.**

Q When you say "likely," do you remember?

A **No.**

Q Any notes to refresh your recollection?

A **No.**

Q Is there anything that would refresh your recollection?

A **I was directed to write a statement; that's what I did.**

Q When you say "directed," who told you that?

A **Dr. Castro.**

Rich Moffett Court Reporting

Scott Reese

236

Q What did you write?

A **I believe I wrote initially as an e-mail to her.**

Q You sent that e-mail within that hour?

MS. LINEEN: Objection.

A **I don't recall the time.**

Q When did you send the e-mail?

MS. LINEEN: Objection.

MR. MORRIS: What's the objection?

MS. LINEEN: He just said he doesn't remember. You asked when did he send the e-mail.

Q Do you know when you sent the e-mail?

A **Sometime before the end of school that day.**

Q Do you remember what period?

A **No.**

Q Did you speak to anyone else about the events?

A **Ever?**

Q That day?

Rich Moffett Court Reporting

59 of 156 sheets Page 233 to 236 of 583

Scott Reese

237

A **Likely my colleagues as well. Other assistant principals.**
Q Who?
A **It's typically something that all of us would discuss at the end of the day.**
Q I'm asking you to what you recall?
A **I don't remember specifically who was there.**
Q You don't remember a single name of anyone that you spoke to in regards to this event on June 4th?
A **Melissa Conlon.**
Q Who else?
A **Definitively, I don't know who else.**
Q What about not definitively?
A **Alicia Smith. Barbara Markle.**
Q Who else?
A **Dr. Castro, as previously stated. That's it.**
Q Suffolk County Police assist?
A **When?**

Rich Moffett Court Reporting

Scott Reese

238

Q Did Suffolk County Police assist on June 4, 2015, in response to the events that occurred between you and David Edmond?
A **Assist how?**
Q Did they come to the school?
A **After the incident?**
Q On June 4, 2015?
A **I don't recall.**
Q Do you know if anyone called the police?
A **I don't know.**
Q Did you see police there?
A **I don't remember.**
Q Any notes or documentation that would refresh your recollection?
A **No.**
Q As you sit here today, you don't know if the Suffolk County Police Department came to the Longwood High School on June 4, 2015?
A **No, I don't.**
Q Were you aware that a student called on the Suffolk County Police on June 4, 2015?

Rich Moffett Court Reporting

Scott Reese

239

A **No.**
Q Were students allowed to use their cell phones at school?
A **At that point, they weren't supposed to, but that's an impossibility to enforce.**
Q Explain what you mean?
A **Students take out a cell phone, do whatever they want with it.**
Q Students are allowed to call people within the school?
A **Call each other?**
Q Make a phone call?
A **They're not supposed to at that point.**
Q Students -- so in other words, there's a possibility that student can't make --
A **At that point, there was a pretty strict cell phone/non-electronic device policy.**
Q Are students allowed to call 911?
A **They are, if they feel it's**

Rich Moffett Court Reporting

Scott Reese

240

**warranted.**
Q Is there's a policy that's -- withdrawn.
Is that a written policy of any sort?
A **Not that I know of.**
Q Is a prohibition on cellular phone use in a written policy?
A **At that time, there was.**
Q What policy is that?
A **It was a building practice. It wasn't a board policy.**
Q How did students become aware of this policy?
A **Pretty much every adult in the building would make it clear that cell phones were not allowed to be seen, used, texts -- nothing. They were supposed to be invisible from the start of school to the end of school. Was that a reality at the time; absolutely not. It's impossible to enforce in a building with 3,000 students.**
Q In other words, I don't want to put words in your mouth. Tell me what was

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 237 to 240 of 502 60 of 156 sheets

PageID #: 3971

Scott Reese
241

impossible to enforce?

A **The nonuse of a cellular phone during the school day by 3,000 or whatever number of students we had in the building.**

Q So in other words, you wouldn't physically engage a student if they used a cell phone?

A **No.**

Q Would you expect any member of your staff to physically engage with a Longwood High School student if they used a cellular phone?

A **No.**

Q Would that person, that staff member be written up if they physically engaged a Longwood High School student for using a cellular phone?

A **It would be dependent on the incident.**

Q Cellular phone use -- by itself or by a Longwood High School student -- if a staff member uses physical force in any degree, would that staff member be met with repercussions?

Rich Moffett Court Reporting

Scott Reese
242

A **It depends.**

Q So there's no written policy regarding cellular phone use, correct?

A **There's a building practice that was in writing about cell phone use and how to handle it as a staff member.**

MR. MORRIS: I respectfully request production of that cellular phone building practice.

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

Q After you wrote that e-mail to Dr. Castro, what did you do next?

A **I don't remember.**

Q What was the next thing you remember?

A **I don't know. I went home.**

Q That's it?

A **Yes. An incident that -- where it went? We discussed it; I wrote it up, end of day.**

Q Is that before or after you spoke to the assistant principals?

Rich Moffett Court Reporting

Scott Reese
243

A **After.**

Q What did you do after you spoke to the assistant principals?

A **I don't remember.**

Q Did you leave early that day?

A **I don't think so.**

Q Do you remember?

A **No, I didn't leave early.**

Q So you did not leave early. Did you speak to James Perrotta.

A **Don't recall.**

Q Is there anything that would refresh your recollection?

A **No.**

Q Did you make any notes regarding any of the conversations that day?

A **No.**

Q Aside from that e-mail that you discussed earlier, any other writings about the -- withdrawn.

Any other writings on June 4, 2015 after the events involving David Edmond?

A **Not that I recall.**

Rich Moffett Court Reporting

Scott Reese
244

Q Any telephone calls?

A **No.**

Q Any telephone calls, aside from the conversation you had with Dr. Castro regarding the events on June 4, 2015?

A **No.**

Q Any facsimiles?

MS. LINEEN: Note my objection to form.

A **No, not that I recall.**

Q Did you have a discussion with the superintendent on that day?

A **No.**

Q Did the superintendent try and contact you on June 4, 2015?

A **No.**

Q Did you attend any meetings that day regarding the events that occurred?

A **No.**

Q Aside from the e-mail, did you create any documentation on June 4, 2015 regarding the events that occurred?

A **Not that I recall.**

Q Did you create any documentation

Rich Moffett Court Reporting

61 of 156 sheets Page 241 to 244 of 502 01/03/2018 09:38:23 AM

Scott Reese

245

at all, aside from that e-mail, on June 4, 2015?

A **No.**

Q Did you attend any meetings regarding the event on June 4, 2015?

MS. LINEEN: Objection.

A **No.**

Q Subsequent to June 4, 2015, did you attend any meetings regarding the events that occurred at Longwood High School on June 4, 2015?

A **We had the central office hearings that were scheduled for some of the individuals involved, if that counts.**

Q Anything else?

A **No.**

Q So aside from the central office hearings, that's -- there are no other meetings that you attended regarding this event?

A **No.**

Q You ever meet with the superintendent regarding the events on June 4, 2015?

Rich Moffett Court Reporting

Scott Reese

246

A **No, not directly.**

Q Explain what you mean by that?

A **I know I met with him since, but it wasn't about that.**

Q What was it about?

A **He meets with us at the end of the year, and just talks about goals and stuff.**

Q Do you recall when you met with him? June or?

A **No.**

Q Was it at the end of the 2014-2015 school year?

A **I can't say definitively, but it usually comes around that time, to have an end-of-the-year meeting with him.**

Q Explain what that end-of-the-year meeting entails?

A **Goals, thing we want to improve upon, and et cetera. Things of that nature.**

Q Who's "we"?

A **Just me and the superintendent. He goes around to all the administrators in the district.**

Rich Moffett Court Reporting

Scott Reese

247

Q How did you have this meeting?

A **In our offices, usually. If he comes in the building, he'll stop and go into our offices.**

Q Is your office --

A **My office.**

Q What goals did you discuss?

A **I don't remember.**

Q Did you discuss anything else?

A **No. They're pretty brief and informal.**

Q Was there any mention of the events on June 4, 2015?

A **Not that I recall.**

Q Anything that would refresh your recollection?

A **No.**

Q Did you take any notes at that meeting?

A **No.**

Q As you sit here today, you can't recall any details of that meeting, correct?

MS. LINEEN: Objection.

A **I can remember that we discussed**

Rich Moffett Court Reporting

Scott Reese

248

**our goals.**

Q Aside from goals?

A **No.**

Q Did you meet with any assistant superintendents regarding the events of June 4, 2015?

A **No.**

Q Did you meet with any students regarding the events of June 4, 2015?

A **No.**

Q Did you interview any students regarding the events of June 4, 2015?

A **No.**

Q Did you instruct any of your colleagues to interview any students regarding the events of June 4, 2015?

A **No.**

Q Were you interviewed by anyone from school staff?

A **I guess in discussion with the building principal, we would consider an interview.**

Q Anyone else?

A **No.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 245 to 248 of 502 62 of 156 sheets

Scott Reese
249

Q Did you interview anyone from the staff at Longwood High School?
A **No.**
Q When did you have that discussion with Dr. Castro?
A **I don't recall. The day of, likely.**
Q Anything besides the day of?
A **Not that I recall.**
Q Anyone else present?
A **Not that I recall.**
Q Do you recall if it was still the morning or the afternoon on June 4, 2015 when you had that conversation with Dr. Castro?
A **Probably the afternoon.**
Q You provided her with a written statement, correct?
A **Yes.**
MS. LINEEN: Objection to form.
Q Did you or her speak to the Suffolk County Police Department?
A **On that day?**
Q Yes.

Rich Moffett Court Reporting

Scott Reese
250

A **I did not.**
Q Do you know if Dr. Castro spoke to the Suffolk County Police Department?
A **I don't know.**
Q Do you know if anyone spoke to the Suffolk County Police Department who was employed by Longwood High School on that day?
A **I don't know.**
Q Were you contacted by the Suffolk County Police Department on June 4, 2015?
A **No.**
Q Did you receive any electronic mailings regarding the events of June 4, 2015?
MS. LINEEN: Note my objection to form.
A **From whom?**
MS. LINEEN: I'm just not sure. Did he receive the electronic mailing on that date, or any electronic mailing at any point regarding the event?

Rich Moffett Court Reporting

Scott Reese
251

MR. MORRIS: So let's start -- we'll break it down.
Q Did you receive any electronic mailings on June 4, 2015?
A **Not that I recall.**
Q Did you receive any e-mails regarding the events that occurred on June 4, 2015?
A **Ever? Yes.**
Q Have all those e-mails been produced to defense counsel?
A **Yes.**
Q Tell me again, what e-mails were produced from what e-mail address?
A **I believe staff member Sean Hughes reached out to me. And possibly Kristin Garrett, who oversaw senior scholarships at that point, reached out to me. And possibly Grace Iona [phonetic].**
Q From what e-mail address did you produce those e-mails?
A **Scott.Reese@Longwood CSD.org.**
Q Those were the only e-mails that you produced from that e-mail address?

Rich Moffett Court Reporting

Scott Reese
252

A **That I recall.**
Q Did you produce any e-mails from your other e-mail address?
A **No.**
Q Why not?
A **Personal e-mail, I don't use for work.**
Q Did anyone contact you regarding the events of June 4, 2015 on that personal e-mail?
A **Not that I recall.**
Q You don't recall? Have you preserved those e-mails?
A **No.**
MS. LINEEN: Objection.
Q So you did not preserve those e-mails in or around June 4th on your personal e-mail; is that right?
MS. LINEEN: Objection.
A **I don't have any e-mails on my personal e-mail.**
Q Were you asked to preserve e-mails, text messages, voicemails, electronic communications in regard to this

Rich Moffett Court Reporting

63 of 156 sheets Page 249 to 252 of 502 01/03/2018 09:38:23 AM

Scott Reese
253

lawsuit prior to today?
A **Yes.**
Q When?
A **My first meeting with counsel.**
Q Was that -- was that before or after 2015?
A **After.**
Q So you were not told to preserve documentation in 2015?
A **No.**
Q Ever contacted by Internal Affairs at the Suffolk County Police Department?
A **Yes.**
Q When?
A **I don't know the date. I think the end of last school year.**
Q Who contacted you?
A **I don't remember his name.**
Q Was it a he?
A **Yes.**
Q Was he a detective, a lieutenant; do you recall?
A **No.**

Rich Moffett Court Reporting

Scott Reese
254

Q How did he contact you?
A **Phone.**
Q What phone number did he call?
A **(631)345-2914.**
Q What number is that?
A **My desk line.**
Q Did he leave a voice mail?
A **No.**
Q Did he get your secretary?
A **No. He spoke to me directly.**
Q What did he say?
A **I believe he informed me that the case brought up against them has been dismissed.**
Q What else did he say?
A **That was pretty much it.**
Q Did he ask you about the events that occurred on June 4, 2015?
A **No.**
Q Do you know why he called you?
A **No.**
Q He just told you that the case against them -- what did he say?
A **I believe there was a case**

Rich Moffett Court Reporting

Scott Reese
255

**brought against the Seventh Precinct as well, and that it was dismissed.**
Q Did he tell you anything else?
A **No.**
Q How did he end that phone call?
A **That was it.**
Q Did he hang up or you hang up?
A **I don't remember.**
Q Aside from that, do you remember anything about that phone call?
A **That's it. It was pretty brief.**
Q Did they contact you previously for that?
A **No.**
Q So that was the only time --
A **Internal Affairs didn't; is that what you mean?**
Q Yes.
A **No, they haven't.**
Q That was the only contact you had with the Suffolk County Police Department Internal Affairs unit; is that right?
A **Yes.**

Rich Moffett Court Reporting

Scott Reese
256

Q Were you ever contacted by the Office of Civil Rights in regards to these events?
A **No.**
MR. MORRIS: Let's break.
Don't discuss your testimony with anyone. You're still under oath.
MS. LINEEN: 1:33.
MR. MORRIS: 1:33, and we're going off.
(Whereupon, a lunch break was taken.)
MR. MORRIS: We are back on the record. It's approximately 2:10.
Q Mr. Reese, you know you're still under oath, correct?
A **Yes.**
Q Did you discuss your testimony with anyone during the break?
A **No.**
Q Any documentation that you may recall with regards to earlier questioning that you didn't remember earlier may be responsive to some of the questions I asked?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 253 to 256 of 502 64 of 156 sheets

Scott Reese
257

A No.

Q We were discussing the rest of that day, the date June 4, 2015. Is it fair to say the only written -- withdrawn.

Is it fair to say that the only written recollection you have of that day was sent to Dr. Castro?

MS. LINEEN: Objection to form.

A **It is. But I believe it was copied and sent to others as well.**

Q When you say "sent to others," to whom was it sent?

A **I think it was sent to some staff members.**

Q Any other written statements made that day regarding the events of June 4, 2015?

A **No.**

Q You ever come to learn that a complaint was filed by the students of Longwood High School against some of the staff members of Longwood High School on June 4, 2015?

A **No.**

*Rich Moffett Court Reporting*

Scott Reese
258

MS. LINEEN: Objection to form.

Q Ever become aware that David Edmond made a complaint that he got, quote, "choked down by a security guard," end quote?

MS. LINEEN: Note my objection to form.

A **No.**

Q Ever seen the student incident report filed by David Edmond?

MS. LINEEN: Note my objection to form.

A **No.**

Q I'm going to hand you what's been marked Plaintiff's 48.

MR. MORRIS: Counsel, here's a copy for you.

Q Have you ever seen this document, Plaintiff's 48?

A **No.**

Q You ever come to learn that there was an investigation about the, quote/unquote, "getting choked out by a security guard" that was filed by David

*Rich Moffett Court Reporting*

Scott Reese
259

Edmond?

MS. LINEEN: Note my objection to form.

A **Investigation by whom?**

Q By Longwood High School?

A **I wasn't familiar with it.**

Q When you say you weren't familiar with it, do you know if an investigation occurred as a result of that student incident report?

A **It looks like it was signed off or investigated by Alicia Smith.**

Q Who is Alicia Smith?

A **Assistant principal at the time.**

Q Were you contacted by Alicia Smith?

A **No.**

Q To be clear, did you give any statement in regards to the student incident report?

A **No.**

Q Let put this aside.

You said you only knew David Edmond in passing; is that right?

*Rich Moffett Court Reporting*

Scott Reese
260

A **Yes.**

Q Nothing prior to June 4, 2015?

A **No.**

Q How did you know David Edmond prior to June 4, 2015?

A **I knew he was a lacrosse player, had a lacrosse background. I think saw him in his jersey one day, and I said "hi" or something minor.**

Q You ever have an appointment with David Edmond's parents?

A **No.**

Q Do you know what an online appointment notification is?

A **No.**

(Whereupon, Plaintiff's 49 for identification, E-Mails, Bates Stamped LCSD-2126 to LCSD-2134, was so marked.)

Q I'm handing you what's been marked Plaintiff's Exhibit 49. Plaintiff's Exhibit 49 appears to be e-mails bearing Bates Stamp LCSD-2126 to LCSD-2134.

A **Oh, I know. Okay.**

MS. LINEEN: Wait for a

*Rich Moffett Court Reporting*

65 of 156 sheets Page 257 to 260 of 502 01/03/2018 09:38:23 AM

Scott Reese
261

question.

THE WITNESS: Okay.

Q Do you have personal knowledge of this e-mail being sent?

A **No.**

Q Is this your electronic e-mail address?

A **Could I explain? Or just answer that question? This is our AppointmentPlus program that automatically sends an e-mail when a teacher makes a -- parent make an appointment to see a teacher during open house.**

Q Who is S. Reese?

A **I oversee the program. All the e-mails come to me.**

Q In other words, this is an automated e-mail process?

A **Yes.**

Q Who if anyone manages this automated e-mail process?

A **I guess that would be me.**

Q Were you aware of these e-mails being received?

*Rich Moffett Court Reporting*

Scott Reese
262

A **No. There are literally thousands of these appointments and e-mails that are created during the open house.**

Q And I noticed that SReese@LongwoodCSD.com; you indicated there were two e-mails earlier. Is this one of those two e-mails?

A **No. This one -- this is our old e-mail system. They switched to the full Scott.Reese e-mail system; it's dot org. So I didn't realize -- I was certain at this point that it was the dot org version. But this is our previous e-mail. This was probably the last year of that SReese e-mail.**

Q Did you produce SReese e-mails to defense counsel?

A **Did I or could I?**

Q Did you?

A **No.**

MR. MORRIS: I'm going to request for production of all SReese e-mails, as previously requested in several of our discovery demands, be

*Rich Moffett Court Reporting*

Scott Reese
263

produced.

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

Q Tell me a little bit more about this online appointment notification system?

A **Spring open house, it is broken into five-minute appointments that are made online through our AppointmentPlus program. I oversee the program and its night event and afternoon event. So from 11 o'clock to 2 o'clock, every five minutes -- no, I'm sorry. I think it's every ten minutes -- that appointment can be made. And it's initiated by the parent. So this was a parent-initiated appointment to see Mr. Macarius [phonetic] at 11:00 a.m. from David's mother, Carol.**

Q Was this e-mail utilized for any other purpose?

A **No.**

Q Any other e-mails that you now remember that you didn't before, that you were utilized by you?

*Rich Moffett Court Reporting*

Scott Reese
264

MS. LINEEN: Objection to form.

A **No. But again, during this point, she might have made the appointments. I would have gotten an e-mail of all of them like this. But again, this is not something that I would respond to or have anything to do with this prior to the incident.**

Q Any other e-mail addresses that you used in the past five years?

A **No.**

Q So just to be clear, what are the three e-mail addresses that you used within the past five years?

A **SReese@LongwoodCSD.com, Scott.Reese@LongwoodCSD.org, and** [redacted]

Q Did there come a time that you were made aware that -- withdrawn.

Did you ever make a recommendation as to the discipline that David Edmond should receive as a result of the June 4, 2015 event?

MS. LINEEN: Objection.

A **I made a recommendation to our**

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 261 to 264 of 502 66 of 156 sheets

Scott Reese
265

**principal, yes.**
Q Dr. Castro, right?
A **Yes.**
Q What was that recommendation?
A **Five days out-of-school suspension with a central office hearing.**
Q When did you make that recommendation?
A **At the end of my initial statement to her in the e-mail.**
Q Did you speak to any staff members before you made that?
A **It was after we spoke to a colleague and debriefed. But in my experience, and when something like that happens, that's a very typical recommendation.**
Q And I appreciate that. But I'm more concerned with who you spoke with. Who did you speak with before you made that recommendation?
A **I don't recall.**
Q Did you make any notes?
A **No.**

Rich Moffett Court Reporting

Scott Reese
266

Q Any independent recollection?
A **No.**
Q Anything that would refresh your recollection?
A **No.**
Q So after that vivid description, you spoke with some of your colleagues; is that right?
A **Yes.**
MS. LINEEN: Objection to form.
A **Yes.**
Q And your colleagues, how many colleagues do you recall?
A **No.**
Q Do you know what their position was?
A **Assistant principals.**
Q Did you speak to any of the security guards?
A **Likely, but I don't know who exactly. I almost certainly spoke to James Perrotta.**
Q What did you and James Perrotta discuss?

Rich Moffett Court Reporting

Scott Reese
267

A **The incident. He was there.**
Q Please tell me what happened. What was the discussion?
A **The description is exactly what I explained before, what happened in the incident. I told him what happened, leading up to the security staff intervening.**
Q What did he tell you?
A **I don't recall his response.**
Q Aside from your description of the event, what else did you discuss with James Perrotta on June 4, 2015?
A **Nothing.**
Q Did you discuss police intervention?
A **No.**
Q Did you discuss the amount of discipline that David should receive?
A **No.**
Q So you did not discuss the consequence or discipline of David Edmond with James Perrotta?
A **No. We don't talk to him about that.**

Rich Moffett Court Reporting

Scott Reese
268

Q To whom did you speak to about the consequences of discipline of David Edmond?
A **Assistant principals and the principal.**
Q Did they agree with your recommendations, or did they make a recommends or something else?
A **Our building principal agreed with my recommendation.**
Q You say "building principal." Dr. Castro?
A **Yes.**
Q When did she agree?
A **I don't know.**
Q Was it that day?
A **I don't know.**
Q Did you receive something in writing, did she tell you verbally, or something else?
A **Don't recall. I wouldn't get anything in writing.**
Q Aside from consulting with the assistant principals, what other faculty did

Rich Moffett Court Reporting

67 of 156 sheets Page 265 to 268 of 502 01/03/2018 09:38:23 AM

Scott Reese
269

you consider in the discipline of David Edmond for the June 4, 2015 event?

MS. LINEEN: Objection to form.

A **My experiences.**

Q Anything else?

A **No.**

Q Did you ever review his prior background?

A **I didn't need to.**

Q Why not?

A **This incident was so egregious, that even if it stood alone as a single disciplinary, I would have recommended the same thing.**

Q Anyone discuss the events that precipitated David Edmond's conduct with you?

A **No.**

Q Anyone discuss his and other students' accusations against you on June 4, 2015?

A **No.**

Q Dr. Castro adopted your position, correct?

Rich Moffett Court Reporting

Scott Reese
270

MS. LINEEN: Note my objection to form.

A **Not only mine, but my -- yes. Her determination, I believe, agreed with mine.**

Q How do you know that?

A **I'm not the only one that recommended he get a central office hearing, five-day DLSN.**

Q Who else agreed?

A **Likely, the entire administrative team, after discussing the incident.**

Q Who is the administrative team?

A **Six assistant principals, or whoever was involved that day. Specifically, likely Alicia Smith, Melissa Conlon, and Barbara Merkle were almost certainly there and involved. I can't speak for the others.**

Q So six assistant principals. Who else?

A **At that time, actually there might have been five; I'm sorry. We were**

Rich Moffett Court Reporting

Scott Reese
271

**down an AP for a couple of years. And building principal.**

Q That being Dr. Castro?

A **Yes.**

Q Dr. Castro making the final decision?

A **Yes.**

Q Where did the administrative team meet?

A **Main office conference room.**

Q When?

A **That day.**

Q What time?

A **Don't know.**

Q Was it after 10 o'clock?

A **After the incident.**

Q Was it before two?

A **Yes.**

Q Was it 1 o'clock?

A **Don't know.**

Q Was it 12 o'clock?

A **Don't know.**

Q Fair to say it occurred after the incident but before two?

Rich Moffett Court Reporting

Scott Reese
272

A **Yes.**

Q How long was it?

A **Don't recall.**

Q Was it more or less an hour?

A **Don't recall.**

Q More or less two hours?

A **Less.**

Q More or less than an hour and a half?

MS. LINEEN: Objection.

A **Don't know.**

Q Anything that would refresh your recollection?

A **No.**

Q Did you take notes at this meeting?

A **No.**

Q Any documents passed around at this meeting?

A **No.**

Q Did you review the records or any sort of electronics during this meeting?

A **Not that I recall.**

Q Just to be clear, you never

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 269 to 272 of 502 68 of 156 sheets

Scott Reese

273

reviewed a video at this meeting?

A I don't know if we had the video at that moment.

Q You don't know or you don't remember?

A Don't remember.

Q Did you have to make a request for the video?

MS. LINEEN: Objection.

A Security provided it.

Q You met with security that day, right?

MS. LINEEN: Objection to form.

Q Withdrawn.

You met with James Perrotta that day, right?

MS. LINEEN: Objection.

A We spoke.

Q Did he give you a video?

A Handed me something?

Q Did he give you a video?

A No.

Q Did you speak with any other security guards that day?

Rich Moffett Court Reporting

Scott Reese

274

A Yes, but I don't recall who specifically. It was -- the whole security team was involved.

Q Did you speak with the whole security team?

A No.

Q Did anyone from the security team give you a video?

A No.

Q Did anyone present a video at this administrative meeting?

A I don't recall.

Q Was it a capability to have a video at that meeting?

A Yes.

Q Do you recall what violations of the code of conduct were lodged against David Edmond?

A I believe it was insubordination. That's the only one I can definitely say was likely lodged. Probably inciting/instigating discord.

Q Anything else you could recall?

A No. I wouldn't -- I'm not his

Rich Moffett Court Reporting

Scott Reese

275

administrator, so I wouldn't make that recommendation. Dr. Castro would make the final determination on the charges.

Q Did you recommend charges to Dr. Castro?

A I think I recommended gross insubordination and inciting, possibly.

Q A lot of thing are possible. Do you recall, as you sit here today, if you recommended something to Dr. Castro?

A I can definitely say I recommended insubordination. There might have been more.

Q Can you remember?

A No.

Q Anything that would refresh your recollection?

A No.

Q Did you make any notes?

A No.

Q Was anyone else there when you gave her this information?

MS. LINEEN: Note my objection.

A No.

Rich Moffett Court Reporting

Scott Reese

276

Q Did you do it verbally or somewhere else?

A I believe it was at the end of my e-mail.

Q Did you make a recommendation for B[redacted] W[redacted]?

A Don't think so, no.

Q Did you make accusations against B[redacted] W[redacted]?

A No.

Q Did you ever direct B[redacted] W[redacted] -- withdrawn.

Did you ever give direction to B[redacted] W[redacted] on June 4, 2015?

A No.

(Whereupon, Plaintiff's 51 for identification, Suspension Letter for B[redacted] W[redacted], was so marked.)

Q I'm going to show what was previously marked -- show you what's been previously marked as Plaintiff's Exhibit 51.

Do you recognize this document?

A It's a principal's suspension letter regarding B[redacted] W[redacted].

Rich Moffett Court Reporting

69 of 156 sheets

Scott Reese

277

Q Have you ever seen this document before?

A **No.**

Q I'd ask you to peruse this document and tell me if there's anything you disagree with in this document, being Plaintiff's Exhibit 51.

MS. LINEEN: Objection to form.

A **(Reading).**

Q Is there anything you disagree with, within the text of Plaintiff's 51?

A **Yes.**

Q What did you disagree with?

A **Looks like they said that I told B[redacted] directly to stop. I don't recall doing that.**

Q Did you tell anyone?

A **I was telling the group of students to stop. B[redacted] W[redacted] was in that group, so I don't know if this is entirely accurate. So I guess that last statement there.**

Q Anything else?

A **No. Everything else looked**

Rich Moffett Court Reporting

Scott Reese

278

**accurate.**

Q Just to be clear, Plaintiff's 51, is this a document that is regularly distributed -- withdrawn.

Is this a document that's produced within the course of business at the Longwood School District?

A **Yes.**

Q How do you recognize it as such?

A **It's a typical principal suspension letter.**

Q Do you recognize that signature at the bottom of the page?

A **Yes.**

Q Whose signature is that?

A **Dr. Castro.**

Q Dr. Castro is the building principal, correct?

A **Yes.**

Q Has it ever been made clear to you -- withdrawn.

Have you ever brought to the attention of Dr. Castro that this could be incorrect, that being the statements lodged

Rich Moffett Court Reporting

Scott Reese

279

again B[redacted] W[redacted]?

MS. LINEEN: Objection to form.

A **I didn't see it at that time. I'm not any of these students' administrators, so it would have been gone to their APs. So I wasn't involved in any of that.**

Q So nobody consulted with you as to whether you directed B[redacted] W[redacted] to stop chanting "asshole"?

MS. LINEEN: Note my objection to form.

A **No.**

(Whereupon, Plaintiff's 50 for identification, Principal Suspension Letter, was so marked.)

Q Show you what's been marked Plaintiff's Exhibit 50. Do you recognize this document?

A **Same thing. It's different? It's B[redacted] W[redacted] again?**

MS. LINEEN: You can't ask any questions. If you think you need to see the other one, to compare, you can

Rich Moffett Court Reporting

Scott Reese

280

ask counsel.

Q I think we'll get to it, but do you recognize this document?

A **I've never seen this document. This is, again, a principal suspension letter.**

Q Do you recognize the signature at the bottom of this document?

A **Yes, Maria Castro.**

Q The building principal, correct?

A **Yes.**

Q And is this document regularly -- withdrawn.

Is this document produced in the regular course of business at Longwood Central School District?

A **Yes.**

Q How do you recognize it as such?

A **I've seen it before.**

Q If you see underneath the "regarding" line, that being "Re: B[redacted] W[redacted]"?

A **Revised, yes.**

Q Did you speak to anyone before

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 277 to 280 of 502 70 of 156 sheets

Scott Reese
281

this document was revised?
A I don't recall.
Q Did anyone approach you as to whether, as we stated before, you directed B[redacted] W[redacted] to stop chanting "asshole"?
A Say that again?
Q I'll withdraw the question.
As we stated before, nobody approached you and asked you if B[redacted] -- if you directed B[redacted] W[redacted] to stop chanting "asshole," correct?
A Correct.
MS. LINEEN: Note my objection to form.
Q Could you tell me what date this was sent?
A June 4, 2015.
Q That would be the day of the events in question in this lawsuit?
A Yes.
Q So that being these charges were sent out the same day, correct?
A Appears that way.
Q Did you need an administrative

Rich Moffett Court Reporting

Scott Reese
282

meeting to discuss the discipline of B[redacted] W[redacted]?
A Likely was discussed at the same meeting, the entire incident.
Q Was this before or after an internet video was produced, depicting the events that occurred on June 4, 2015?
MS. LINEEN: Objection to form.
A Before.
Q In other words, you determined this discipline before you saw that video?
A Which video? Internet or school?
Q We'll call it an internet video.
A Yes.
Q Would you agree with me that Dr. Castro determined the discipline before seeing that video, that internet video?
MS. LINEEN: Objection to form.
A I don't know.
Q Do you know if Dr. Castro had seen the video before sending this out?
MS. LINEEN: Objection to form.
A Don't know.

Rich Moffett Court Reporting

Scott Reese
283

Q Did you ever speak to her -- withdrawn.
Did you ever speak to Dr. Castro about the internet video?
A No.
Q She never mentioned it to you?
A She may have; I don't know. I can't say specifically whether or not she definitely spoke to me or not.
Q So operating indefinitive? You're under oath.
Do you remember if she spoke to you about an internet video depicting David Edmond being choked by a security guard?
MS. LINEEN: Objection to form.
A I can say it probably happened. But I can't say definitively that, yes, it did.
MS. LINEEN: He doesn't want you to guess. No one wants you to guess.
THE WITNESS: So no.
Q She didn't speak to you about that video, right?
A No.

Rich Moffett Court Reporting

Scott Reese
284

Q Did you speak to anyone else about that internet video?
MS. LINEEN: Objection to form.
A Yes.
MS. LINEEN: You keep saying "internet video." For me, I don't understand what that is, so I'm lodging an objection to the form.
MR. MORRIS: Let's agree that the internet video refers to the video that was put on the internet, depicting the events of June 4, 2015 involving David Edmond. Can we agree on that?
MS. LINEEN: Same objection. I don't know what that refers to.
THE WITNESS: I've got to say no, too. There were several.
Q Okay. Let's talk about that.
How many videos did you see regarding David Edmond on June 4, 2015?
A I saw the one on News 12. And I don't know if it was the same video that got forwarded to News 12, but I think another

Rich Moffett Court Reporting

71 of 156 sheets Page 281 to 284 of 502 01/03/2018 09:38:23 AM

Scott Reese

285

**video with similar incidents was also out there circulating.**

Q When you say "out there circulating," how did you see it?

A **Someone's phone, likely. I don't recall who, though.**

Q You picked up somebody's phone?

A **No. It was shown to me, likely.**

Q How?

A **By their phone.**

Q Whose phone?

A **I don't know.**

Q You don't recall who showed you a video?

A **No. I know it was at the tail end of the events, so I didn't pay much attention to the video, who showed it to me. It's not an accurate depiction of the entire event.**

Q How about this? Do you remember when you saw News 12?

A **I don't know if the story came out the day of or the next day, but I saw it on News 12 whenever they ran it.**

Rich Moffett Court Reporting

Scott Reese

286

Q Were you at your house, at somebody's else's house, the school?

A **I believe I was at my house.**

Q So you remember watching News 12 video at your house?

A **Which was the student-generated video.**

Q What are you referring to, "on somebody's phone"? Do you remember what day you saw that video?

A **No.**

Q Was it the same video?

A **I can't say definitely, but likely.**

Q So there wasn't more than one internet video; is that right?

MS. LINEEN: Note my objection.

A **Yes, that's right.**

Q It was just one internet video?

A **Yes.**

MS. LINEEN: Objection.

Q Do you recall where on the internet that video was?

A **No.**

Rich Moffett Court Reporting

Scott Reese

287

Q Do you recall what day you saw that video?

A **No.**

Q You didn't see that video before this went out, correct?

A **No.**

Q When I say "this," I'm referring to Plaintiff's Exhibit 50, right?

A **Correct.**

Q Put that aside for now.

Anyone give you instruction to stop David Edmond on June 4, 2015?

A **When.**

Q At any point?

A **No.**

(Whereupon, Plaintiff's 53 for identification, Discipline Recommendation from S. Reese to M. Castro, was so marked.)

Q Show you what's been marked Plaintiff's Exhibit 53. Have you ever seen Plaintiff's Exhibit 53 before?

A **No.**

Q Bears LCSD-260. Was this document produced within the ordinary course

Rich Moffett Court Reporting

Scott Reese

288

of business at Longwood School District?

A **Yes.**

Q Do you know when this document was created?

A **No.**

Q Do you know the signature at the bottom of this document?

A **Maria Castro, building principal.**

Q I'll give you an opportunity to read this document. Please let me know if there's anything with which you disagree in this document.

A **(Reading.)**

**Looks accurate.**

Q Is there anything that -- as you sit here today, that you would change as inaccurate?

A **No.**

Q Is this the recommendation, as you gave it, to Dr. Castro in regard to discipline?

MS. LINEEN: Note my objection.

Q Withdrawn.

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 285 to 288 of 502 72 of 156 sheets

Scott Reese

289

This discipline that you see here -- you see discipline in this letter?

A **Yes.**

Q Is that the same discipline that you recommended to Dr. Castro?

A **Yes.**

Q Anything different than what you recommended to Dr. Castro?

A **No.**

Q This is dated June 4th, 2015, correct?

A **Yes.**

Q Put that document aside, please.

You ever become aware that the Suffolk County Police contacted James Perrotta on June 4, 2015?

A **No.**

Q Do you know who Police Officer -- withdrawn.

Do you know who Crime Control Investigator Zimmerman [phonetic] is?

A **I recognize the name, but I don't know him personally.**

Q Have you ever met with him prior

Rich Moffett Court Reporting

Scott Reese

290

to June 4, 2015?

A **No.**

Q Have you ever had correspondence with him prior to June 4, 2015?

A **No.**

(Whereupon, Plaintiff's 55 for identification, E-Mail to S. Reese, was so marked.)

Q I show you what's marked Plaintiff's Exhibit 55.

Did you receive this e-mail?

A **Yes. I'm on it.**

Q Let me step back for a second. Can you identify request Plaintiff's Exhibit 55, Bates-stamped LCSD-2435 to LCSD-2438?

A **Say that again?**

Q Can you identify Plaintiff's Exhibit 55?

A **What do you mean, can I identify it?**

Q What is it?

A **It's an e-mail.**

Rich Moffett Court Reporting

Scott Reese

291

Q Do you know when you received this e-mail?

A **Looks like June 4th at 10:35 at night.**

Q Do you what the e-mail address of the sender is?

A **Mr. Perrotta.**

Q Do you recognize any identifying marks on the e-mail?

MS. LINEEN: Objection.

A **What do you mean?**

Q Do you recognize any identifying marks, e-mail addresses, anything of that like?

MS. LINEEN: Objection.

A **Yes. I recognize all the names.**

Q When did you receive this e-mail?

A **June 4, 10:35 p.m.**

Q At what e-mail address was this e-mail received?

A **Scott.Reese@LongwoodCSD.org.**

Q How do you know that?

A **I'm looking down and I see Maria**

Rich Moffett Court Reporting

Scott Reese

292

**Castro's in that form, so I know I'm in that form as well.**

Q Does this document refresh your recollection as to whether you received notice of crime control -- whether Crime Control Investigator Zimmerman contacted you on June 4, 2015?

MS. LINEEN: Objection.

A **He didn't contact me. He contacted James Perrotta, who contacted all of us. And then it was -- looks like it was re-sent by Dr. Castro the next morning at 6:40 a.m.**

Q Is that true that the police had a sector cop stationed at the Longwood High School at 6:40?

A **I don't recall, but likely.**

Q Did you regularly receive such correspondence about police intervention at Longwood Central School District?

MS. LINEEN: Objection to form.

A **I do.**

Q Have you received any such correspondence as it relates to David

Rich Moffett Court Reporting

73 of 156 sheets Page 289 to 292 of 502

Scott Reese

293

Edmond?

A **No.**

Q Is that something that you remember here or something that you're speculating?

A **I can say, pretty definitively, no.**

Q If you look at LCSD-2437, LCSD-2438, do you recognize what these images are?

A **No.**

Q You don't know what these images are, this text?

A **This right here?**

Q The two pages; do you know what this is?

A **No.**

Q Did you ever ask to speak to the person depicted in LCSD-2437 or LCSD-2438?

MS. LINEEN: Objection.

A **No.**

Q That being Brad?

MS. LINEEN: Note my objection to form.

Rich Moffett Court Reporting

Scott Reese

294

A **No.**

Q Do you know what -- referring to 2438, do you know what this text is referring to, quote, "prank on the security guard that slammed nut," end quote?

A **No.**

Q When you received this, what if any response did you provide?

A **I don't recall getting it.**

Q How do you know you got it?

A **I don't know; I might have. But I wouldn't respond to this stuff.**

Q What do you do when you receive such e-mails?

A **What do you mean? What would I do if we got stuff like this?**

Q Did you delete this e-mail, did you keep this e-mail or something else?

MS. LINEEN: Note my objection to form.

A **I likely read it and deleted it.**

Q Do you know how it was provided here today?

A **No.**

Rich Moffett Court Reporting

Scott Reese

295

Q You ever provide this e-mail to counsel?

A **No.**

Q Let's put that aside.

Do you know if Longwood High School monitored the students' social media?

A **I don't know.**

Q Have you had an opportunity to see students' social media?

A **Yes.**

Q Who provided you with students' social media?

A **A student.**

Q Do you recall the name of the student who provided to you on that particular incident?

A **Oh, that information? No, I didn't get anything on that incident from a student.**

Q But a student would show you social media?

A **Are you talking about ever?**

Q Yes?

A **Yes.**

Rich Moffett Court Reporting

Scott Reese

296

Q Let's narrow it down to June of 2015. Do you recall receiving or being shown social media within the month of June 2015?

A **No.**

Q You didn't see anything on social media in June 2015?

A **I chose to isolate myself after the incident.**

Q Who is Denise Doyen?

A **Staff member who is retired. Special ed teacher.**

Q What if any relationship do you share?

A **Professional. Colleague.**

Q Was she retired in 2015?

A **No.**

Q Was she working in 2015?

A **I don't know. It might have been the year that she left. It was right around when she retired.**

Q Did you speak with Denise Doyen on June 4, 2015?

A **I may have. We spoke**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 293 to 296 of 502 74 of 156 sheets

Scott Reese

297

**frequently.**

Q Do you know if you spoke with her on June 4, 2015?

A **I don't know, definitively.**

Q Do you know undefinitively?

MS. LINEEN: Objection to form.

A **I have to say no. I don't know. I don't recall.**

Q You can't recall?

A **No.**

(Whereupon, Plaintiff's 56 for identification, E-mail to S. Reese, was so marked.)

Q Let me show you what's been marked Plaintiff's 56, bearing Bates Stamp LCSD-2434.

What is Plaintiff's 56?

A **You're asking me?**

Q Yes.

A **Looks like an e-mail from Denise Doyen to me the next morning -- well, actually, it says it's 7:50 at night, the day of the incident. She writes, "Just a quick note to say I'm very sorry you had to**

*Rich Moffett Court Reporting*

Scott Reese

298

**deal with such a difficult situation today. Appreciate all your efforts to keep the building running in a safe manner. Have a good night." I responded the next morning, 6:30 a.m., "Thank you."**

Q What is the e-mail he address of the sender?

A **It would be D -- Denise -- dot, Doyne@LongwoodCSD.org.**

Q How do you know that?

A **Because my e-mail's in that format. She must have been using -- so she has to be using the same.**

Q And you received this e-mail, correct?

A **Yes.**

Q And you responded to this e-mail, correct?

A **Yes.**

Q Did you ever discuss what she meant by, quote, "keep the building running in a safe manner," end quote?

A **No.**

Q Did you have any discussion with

*Rich Moffett Court Reporting*

Scott Reese

299

her about June 4th, 2015?

A **No.**

Q Does this e-mail reference June 4, 2015?

A **Yes.**

Q Did you receive any e-mails, other than this, referencing June 4, 2015?

A **Yes, similar.**

Q Have you produced all those e-mails to defense counsel?

A **Yes.**

Q Put this aside.

Did you ever become aware -- withdrawn.

Did you become aware at any time that, on June 4, 2015, Mr. Cipp tried to barricade the door with his body?

A **I was aware eventually, but not that day.**

Q Tell me how you became aware of that?

A **In preparation for the central office hearing, we viewed a video.**

Q What did you see?

*Rich Moffett Court Reporting*

Scott Reese

300

A **I saw a large group of students with their phones out, again, at this time. They were trying to take a very hard stance on student cell phone use, in particular video use of staff. That was an issue for us, kids filming staff members.**

**It looked like Mr. Cipp noticed another student filming the incident. He attempted to address that. The students were ignoring his requests. Another teacher assisted Mr. Huey in returning those students back to Mr. Cipp. A security guard was present as well in this video.**

**I can't hear what's happening in the video, but it appears as though they're having a hard time trying to get that phone back from the student, so they could get the video and get it deleted off the student's phone, which had staff members on it. At that point, staff was very touchy about them being filmed.**

Q Explain to me what you mean by "touchy"?

A **They didn't like it at all. It**

*Rich Moffett Court Reporting*

75 of 156 sheets Page 297 to 300 of 502 01/03/2018 09:38:23 AM

Scott Reese
301

**was being posted; there would be comments then, and it wasn't something that was welcomed by them.**
Q Explain what you mean by "posted"?
A **It would end up on social media.**
Q How do you know that?
A **I would hear about it.**
Q Did you ever see it?
A **No.**
Q You just heard about it; you never saw it?
A **Correct.**
Q Do you know anyone who did see such postings?
A **No.**
Q So filming staff members was a concern at the time; is that right?
MS. LINEEN: Objection.
A **It was one of many concerns, yes.**
Q A concern on June 4, 2015, correct?
A **It appeared that way in the**

Rich Moffett Court Reporting

Scott Reese
302

**video.**
Q I'm not saying what appeared in the video. I'm saying to you, to your knowledge, do you know if any staff was an issue on June 4th, 2015?
A **It appears to be.**
Q When you say "appears to be," can you explain what you mean?
A **On the video, you see the student holding his phone up, filming everyone.**
Q Who?
A **I believe that student's last name is F[redacted].**
Q Is that C[redacted] F[redacted] [phonetic]?
A **Yes.**
Q Not David Edmond, correct?
A **No.**
Q On June 4, 2015, when you say "appeared to be," aside from that event, is there anything else that would formulate that belief, that filming staff members was an issue?

Rich Moffett Court Reporting

Scott Reese
303

A **What do you mean?**
Q Did you receive complaints from staff members?
A **Prior to this event?**
Q Yes?
A **Yes.**
Q Anything in writing?
A **No. It was typically, "I was being filmed in class. Can you please check this kid's phone, delete the video," stuff like that. If we didn't get it or teachers tried to deal with it themselves, it would end up out there. And that's when they would come in the next day or two later and complain to administration -- not just me -- that this happened in class surreptitiously, and it ended up on the internet.**
Q When you say "out there," you never saw the social media, correct?
A **I personally didn't need to see it. I would take the teacher's word that this happened.**
Q Did you reprimand any of these students?

Rich Moffett Court Reporting

Scott Reese
304

A **Personally, no. I don't recall ever getting to a point where I needed to reprimand or discipline any of these students. Did it happen? I'm sure it has.**
Q Were you aware that there was an allegation that the gym teachers, including but not limited to Mr. Cipp, engaged in physical force against Longwood High School students?
MS. LINEEN: Objection.
A **On that day?**
Q On June 4, 2015?
A **I wasn't aware of that.**
Q Were you aware that an allegation was made against you that you, quote, "randomly grabbed David Edmond, for no reason. He grabbed him by the neck, and that's when I yelled, you can't do that," end quote?
MS. LINEEN: Objection to form.
A **No.**
Q Anyone make you aware of any complaint lodged against you for your actions on June 4, 2015?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 301 to 304 of 502 76 of 156 sheets

Scott Reese

305

A Not that I recall, no.

Q As you sit here today, do you recall -- withdrawn.

As you sit here today, is there anything that would refresh your recollection?

A No.

Q Did you take any notes in regards to any of these complaints?

A No.

Q Are you aware that another student, on June 4, 2015, made a complaint, quote "he saw two security and teachers slam my friend and put him in a headlock," end quote?

A No.

MS. LINEEN: Objection to form.

Q Would you -- withdrawn.

As assistant principal at the Longwood High School, would you expect to know if a student was being placed in a headlock?

A **Not in this incident, because I was intimately involved. This would be**

*Rich Moffett Court Reporting*

Scott Reese

306

**handled by other administrators to address and decide whether or not they were warranted to investigate further. And in my video presented and my video in particular, it shows I come nowhere near David Edmond's neck.**

Q You said you were "intimately involved"; is that right?

A **In this incident.**

Q When you say "intimately involved," were you separated from this incident by any administration?

MS. LINEEN: Note my objection to form.

Q Let me withdraw that question.

Were you separated from decision-making as it related to consequence in this incident on June 4, 2015?

A **Yes.**

Q By whom?

A **I made a recommendation and left it at that.**

Q I'm sorry. Who removed you from --

*Rich Moffett Court Reporting*

Scott Reese

307

A **No one removed me. I just wasn't consulted, and I made a recommendation, and that's it. It's up to the building principal to either go with it or not.**

Q The building principal knew you were intimately involved in the situation, as you said before?

A **Yes.**

Q But yet she adopted your position?

MS. LINEEN: Objection to form.

A **She adopted my position, yes.**

Q Aside from your e-mail on Dr. Castro, did you make any other notations of your reference in any other form?

A **No.**

MS. LINEEN: Objection to form.

Q For instance, did you create a misconduct report for David Edmond?

A **No. That's generated by a clerical staff member in preparation for a central office hearing.**

(Whereupon, Plaintiff's 57 for

*Rich Moffett Court Reporting*

Scott Reese

308

identification, Statement/Recommendations from S. Reese to Principal, was so marked.)

Q Before I hand you what's been marked Plaintiff's Exhibit 57, how did you report your statement of events on June 4, 2015?

A **E-mail.**

Q Are you familiar with this document -- I think Plaintiff's Exhibit 57? Bates-stamped LCSD-626?

A **Yes.**

Q What is this?

A **My statement and my recommendations to the principal.**

Q How do you recognize it to be your statement and recommendations to the principal?

A **I recognize that I wrote this.**

Q Do you know when this document was created?

A **No. I'm assuming the same day, though.**

Q Is Exhibit 57 the same or substantially the same as when it was

*Rich Moffett Court Reporting*

77 of 156 sheets Page 305 to 308 of 502 01/03/2018 09:38:23 AM

Scott Reese

309

created?

A **It was either that day or the day after, yes.**

Q You said that this was created on June 4, 2015, right?

A **Or the day after, at the latest.**

Q When was this -- withdrawn.

When were your words created that are used in this Plaintiff's Exhibit 57?

A **I don't know.**

Q As you sit here today, you don't remember when you made this statement?

A **I recall it being either that day or the day after.**

Q When you say "the day after," June 5, 2015?

A **Yes.**

Q Or June 4th, 2015?

A **Yes.**

Q Plaintiff's Exhibit 57 was create either on the 4th or the 5th of June of 2015, correct?

MS. LINEEN: Objection to form.

Rich Moffett Court Reporting

Scott Reese

310

A **Yes.**

Q Anything that you would change in this statement here?

A **(Reading).**

**No.**

Q It says "David Edmonds" here?

A **Yes. It's -- yeah, take off the "S". I was going to mention that.**

Q David Edmond, I'm representing to you, is spelled E-D-M-O-N-D, correct?

A **Okay.**

Q So aside from that spelling, is there anything you would change?

A **No.**

Q So B[redacted] W[redacted] came at me, yelling in my face, quote, "I couldn't touch him, et cetera," end quote; is that accurate?

A **Yes.**

Q Were you told by Longwood High School students that you couldn't touch David Edmond on June 4, 2015?

MS. LINEEN: Note my objection to form.

Rich Moffett Court Reporting

Scott Reese

311

A **Yes.**

Q You were saying before that you recalled certain code of conduct violations against David Edmond on June 4, 2015; is that right?

A **Yes.**

Q Do you see them here?

A **I do.**

Q What are those code of conduct violations that you allege David Edmond violated on June 4th?

A **Insubordination, inciting students, discord.**

Q Anything else?

A **I think that's what I've mentioned before. I didn't put those charges on here. Again, that wouldn't be my call -- the building principal's.**

Q Earlier, you saw B[redacted] W[redacted] -- withdrawn.

Earlier, you saw a letter sent to B[redacted] W[redacted] home; is that right?

A **Yes.**

Q Looks like your statement here.

Rich Moffett Court Reporting

Scott Reese

312

It says, quote, "I'm recommending the following for both," end quote?

A **Uh-huh.**

Q Is this recommendation what you made for not only David Edmond, but B[redacted] W[redacted]?

A **Yes.**

Q Did you evaluate B[redacted] W[redacted] prior conduct at Longwood High School before making this recommendation?

A **No.**

Q Did you evaluate David Edmond's prior conduct before?

A **No.**

Q I know it's tedious.

A **I answered that already.**

Q Sorry.

Aside from the spelling error here, any other changes you would make to this document?

MS. LINEEN: Note my objection to form.

A **I don't know if it matters, but I guess, yes. Where I wrote that I put my**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 309 to 312 of 502 78 of 156 sheets

Scott Reese
313

**hand on his shirt to stop him. That's not -- actually, when I put my hand out, he walked into my hand. So, I don't know if that matters.**

Q Just to be clear, this statement was written in 2015, correct?

A **Yes.**

Q It's now 2017, correct?

A **Yes.**

Q Who have you told that that statement was inaccurate?

A **No one.**

Q So this is the first time here today that you said that that statement is inaccurate?

MS. LINEEN: Note my objection to form.

A **The spelling is inaccurate of his name, and my description of that small piece of this could have been worded differently. It doesn't mean the whole statement is inaccurate.**

Q Just to be clear, you're stating here under oath that you did not put your

*Rich Moffett Court Reporting*

Scott Reese
314

hand on David Edmond's chest to stop him, correct?

A **Correct.**

Q Plaintiff's Exhibit 57, was that communicated in an e-mail to several people?

A **Yes. That statement went out to several.**

Q Did it go out to several people within the hour that this incident occurred on June 4, 2015?

A **I don't recall the time it went out.**

Q Maybe this will refresh your recollection.

58.

(Whereupon, Plaintiff's 58 for identification, E-mail from S. Reese to Various Administrators, Longwood High School, was so marked.)

Q Mr. Reese, I present to you what's marked Plaintiff's Exhibit 58.

Do you know what that document is?

A **It's an e-mail from me to my**

*Rich Moffett Court Reporting*

Scott Reese
315

**building principal, Maria Castro; Melissa Conlon; Alicia Smith; and Renee Lopez.**

Q How do you know it's an e-mail from your e-mail address?

A **It says it on top.**

Q Plaintiff's 58, that bearing Bates Stamp LCSD-2400; did you know the recipient of all these e-mails?

A **Yes.**

Q Why did you send this e-mail to James Perrotta?

A **He was involved, and scholarship night was an event that was coming up. And Grace Iona oversees that as well. She was giving B[redacted] W[redacted] a scholarship, so she needed to be involved as well. In letting her know what happened, I let her make the determination whether or not she wanted to give him that scholarship.**

Q How do you know B[redacted] W[redacted] was obtaining a scholarship at 10:30 a.m. on June 4, 2015?

A **I was contacted probably by my -- either my counselor, who oversaw the**

*Rich Moffett Court Reporting*

Scott Reese
316

**thing, or my secretary, who might have recognized that his name was in the program that was coming up very shortly.**

Q To be clear, June 4, 2015, at 10:38 was within 45 minutes of this incident occurring, correct?

A **Yes.**

Q That being the incident involving B[redacted] W[redacted] and David Edmond?

A **Correct.**

Q So for 45 minutes, you already knew that B[redacted] W[redacted] had a scholarship that he would lose?

A **Yes.**

MS. LINEEN: Objection to form.

THE WITNESS: Yes.

MR. MORRIS: Sorry. I'm going to try the best I can to finish these questions before injections -- before you answer. Stay with me.

Q This decision was made within 45 minutes of the incident on June 4, 2015, correct?

MS. LINEEN: Objection to form.

*Rich Moffett Court Reporting*

79 of 156 sheets Page 313 to 316 of 502

Scott Reese

317

A **No decision was made. My office oversees scholarships. My secretary, Renee Lopez, who is on this, knew immediately what happened. We are intimately involved; we know the names of the individuals who are receiving scholarships. It's part of the day before our scholarship night.**

**She immediately recognized that B[redacted] W[redacted] was supposed to get a beauty scholarship, so I had to let Ms. Iona know what happened, and let her make a determination on what she wanted to do.**

Q And I appreciate that, but what I'm saying is this statement was made within 45 minutes?

A **Okay. Now, we know what the statement was written. Okay?**

Q Would you agree that the statement was made within 45 minutes of the date?

A **Yes.**

Q Is Plaintiff's 58 substantially different from Plaintiff's 57?

A **No.**

Rich Moffett Court Reporting

Scott Reese

318

MS. LINEEN: Do you need to them to look at?

THE WITNESS: The statements? No, they're the same.

Q They're the same statements, correct?

A **Yes.**

Q Do you know who altered Plaintiff's 58, that being this e-mail, to look like Plaintiff's 57, that being the statement bearing the confidential LCSD-626?

MS. LINEEN: Note my objection to form.

A **It's modified, did you say?**

Q Do you know who modified it?

A **I thought it was exactly the same.**

Q Do you know who removed the e-mail format, as we see in Plaintiff's Exhibit 58?

A **That was probably -- been done in a Word document. And copied into an e-mail.**

Q So to be clear, did you provide

Rich Moffett Court Reporting

Scott Reese

319

a Word document to anyone?

A **I may have written it up in Word, and then copied and pasted it into an e-mail. I may do that, just for ease of typing.**

Q Where do you keep these Word documents?

A **On my computer.**

Q Where is your computer located?

A **In my office.**

Q Do you still use this computer?

A **Yes.**

Q Does anyone else have access to this computer?

A **No. I guess our technical people, if they wanted to get into my account, they could.**

MR. MORRIS: We're going to ask for the continued preservation and production of all the meta data and electronic data that was stored on Mr. Reese's computer for the events of June 4, 2015, up until June 4, 2016.

MS. LINEEN: Please follow up in

Rich Moffett Court Reporting

Scott Reese

320

writing. We'll take it under advisement.

Q Did anyone express concern as to the statements -- the recipients of this e-mail -- as it relates to your independent involvement in the events that occurred on June 4, 2015?

A **No.**

Q Did anyone ask that you remove yourself from the decision-making processes that would occur against David Edmond and/or B[redacted] W[redacted], because of your involvement on June 4, 2015?

A **No.**

Q Was there any policies that guided or they include great consequences for either B[redacted] W[redacted] or David Edmond, because of your involvement in regards to the events of June 4, 2015?

A **No.**

Q Did you give this statement to the superintendent at the time?

A **Not that I recall. It may have gotten to him through our building**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 317 to 320 of 502 80 of 156 sheets

PageID #: 3991

Scott Reese
321

principal.
Q The folks who are carbon copied on this e-mail, or to whom it is sent, are these the assistant principals of which you mentioned earlier on the administrative team?
A **Some. Some clericals involved in beauty, where the scholarship came from, and there are some clerical levels that are going to be involved in scholarship night.**
Q Was this before or after the meeting with the administrative team?
A **After.**
Q So this e-mail was created after the meeting with the administrative team; is that right?
A **Actually, 45 minutes after. I know we met them right after.**
**Yes. That's a yes.**
Q So just to be clear, the incident occurred between you and David Edmond somewhere around ten o'clock on June 4, 2015; is that right?
A **Yes.**

Rich Moffett Court Reporting

Scott Reese
322

Q Immediately thereafter, you had a -- you had a meeting with the administrative team regarding what occurred between David Edmond and you on June 4, 2015, correct?
A **Yes.**
Q After that meeting, you created this electronic correspondence that's Plaintiff's 58; is that right?
A **Yes.**
Q Is it fair to say that that meeting took place in between 10:00 a.m. and 10:38 a.m. on June 4, 2015?
A **Yes.**
MS. LINEEN: Objection to form.
Q So within about 38 minutes, you had made a determination as to both David Edmond and B[redacted] W[redacted], as it relates to the events of June 4, 2015?
MS. LINEEN: Objection to form.
A **I made a recommendation.**
Q This recommendation was made within 30 minutes of the incident?

Rich Moffett Court Reporting

Scott Reese
323

A **Yes.**
Q After the administrative team met?
A **Yes.**
Q Is it fair to say that you didn't have the video within minutes after the occurrence?
A **Yes, fair to say.**
Q Does that refresh your recollection as to there being no video shortly after this occurrence?
MS. LINEEN: Note my objection to form.
A **I can't say definitively, but likely not.**
Q You said there were some administrative people on this e-mail?
A **Yes.**
Q Could you identify slowly, for Mr. Moffett?
A **Maria Castro, Melissa Conlon, Alicia Smith, James Crenshaw, Barbara Merkle.**
Q Those individuals, those are the

Rich Moffett Court Reporting

Scott Reese
324

assistant principals; is that right?
A **Yes. All but Maria Castro, who was building principal at the time.**
Q You also have a carbon copy here, James Perrotta. Who was he?
A **Director of security.**
Q You have a carbon copy here, Ann Marie Knight [phonetic]. Who is she?
A **Clerical to Barbara Merkle.**
Q You also have Roberta Chaudin, C-H-A-U-D-I-N, carbon copied here. Who is she?
A **Clerical to James Crenshaw.**
Q Needless to say, you provided this to all the administrative staff -- withdrawn.
Needless to say, you provided this to all the assistant principals, as well as the building principal, correct?
MS. LINEEN: Objection to form.
A **Yes, it appears so.**
Q You were told to write this as per Dr. Castro, correct?

Rich Moffett Court Reporting

81 of 156 sheets Page 321 to 324 of 502 01/03/2018 09:38:23 AM

Scott Reese

325

A Yes.

MR. MORRIS: Are you all right?

THE REPORTER: If we can we take five minutes? This would be a good time.

MR. MORRIS: We are going off the record at 3:14.

(Whereupon, a break was taken in the proceedings.)

MR. MORRIS: Back on the record. The time now is 3:21.

Q Mr. Reese, we talked about your statement earlier on June 4, 2015. I want to talk about the events that followed. Aside from that e-mail, did you send, receive, or reply to any e-mails on June 4, 2015, other than that e-mail of your statement?

MS. LINEEN: Note my objection.

A **Likely.**

Q As you sit here today, do you recall any of those e-mails?

A **No.**

Q Did you send or receive e-mail

Rich Moffett Court Reporting

Scott Reese

326

regarding the B-U-T-Y Scholarship?

A **Yes.**

Q Did you send e-mail regarding C[redacted] F[redacted], F[redacted], on June 4, 2015?

A **If he was receiving a scholarship, likely.**

Q Did anyone express concern about your decision to remove Mr. W[redacted] from scholarship on June 4, 2015?

MS. LINEEN: Objection to form.

A **No.**

Q Did you speak to Grace Iona about the B-U-T-Y Scholarship on June 4, 2015?

A **I e-mailed her.**

Q Did you e-mail her regarding C[redacted] F[redacted] and/or B[redacted] W[redacted] on June 4, 2015?

A **If they were receiving scholarships, they were likely involved as well.**

Q Was that shortly after the events that occurred on June 4, 2015?

Rich Moffett Court Reporting

Scott Reese

327

A **Yes.**

Q Did you cool down at all before you sent these e-mails?

MS. LINEEN: Objection to form.

A **Yes.**

Q Nobody indicated that you should not be making these decisions because of your personal involvement in the incidents on June 4, 2015; is that right?

MS. LINEEN: Objection to form.

A **I didn't make a decision.**

Q Did Dr. Castro tell you -- withdrawn.

Did Dr. Castro have anything to say about the fact that you're personally involved in these incidents and making these recommendations?

MS. LINEEN: Note my objection.

A **I didn't make any recommendations regarding the scholarships.**

Q Let's take a look.

Can I have this marked, please.

(Whereupon, Plaintiff's 59 for identification, Correspondence between S. Reese

Rich Moffett Court Reporting

Scott Reese

328

and G. Iona, was so marked.)

Q Mr. Reese, I'm showing you what's been marked as Plaintiff's 59. Do you recognize this document?

A **Yes.**

Q This document bears LCSD-2404. It goes on to LCSD-2405; is that right?

A **Yes.**

Q What is Plaintiff's Exhibit 59?

A **Correspondence between me and Grace Ilona, who oversees the BUTY Scholarships. She heard of the incident; I gave her a description of the incident, and I told her it was her decision on the money. Not to be too late with it, though; we can always call and inform them that this latest incident was egregious, that punishment needs to fit the violation regarding C[redacted] F[redacted], who was also there, quote, "trying to help." I instructed him several times to leave; he refused the requests to leave.**

Q Did you send this e-mail to Grace Iona, Maria Castro, Melissa Conlon --

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 325 to 328 of 502 82 of 156 sheets

Scott Reese
329

A **Yes.**
Q Alicia Smith?
A **Right.**
Q Renee Lopez, James Crenshaw, and Barbara Merkle?
A **Yes.**
Q For what purpose did you send this e-mail?
A **It was requested. Her middle statement there is asking what she should do. I let her -- told her the decision of money is hers.**
Q When did you send this e-mail?
A **June 4, 10:50 a.m.**
Q Is it fair to say that you sent this e-mail within an hour of the events' occurrence?
A **Yes.**
Q That being the incident that occurred between you and David Edmond on June 4, 2015; is that right?
A **Yes.**
Q You state that you instructed him to leave several times. So what are you

*Rich Moffett Court Reporting*

Scott Reese
330

referring on your June 4, 2015, 10:50 a.m. e-mail?
A **C[redacted] F[redacted].**
Q Explain when you did that?
A **After the incident had occurred, he was still in the area.**
Q So tell me, when the incident occurred, at what point before you walked south did you instruct --
A **Right before I walked south.**
Q Tell me what you saw and how you did that, please?
A **I instructed him to leave the area several times.**
Q Tell me how you did that?
A **I said, please leave the area.**
Q You say several times; was that all you said?
A **Yes.**
Q Because it says, quote, "he refused the first three requests to leave," end quote; is that correct?
A **Yes.**
Q Did you make three requests for

*Rich Moffett Court Reporting*

Scott Reese
331

C[redacted] F[redacted] to leave?
A **Likely, more. But I probably wrote just three.**
Q You said, quote, "trying to help," end quote?
A **That was what his response was when I was telling him to leave.**
Q What was C[redacted] F[redacted] trying to do?
A **I don't know.**
MS. LINEEN: Objection.
Q What was C[redacted] F[redacted] doing on June 4, 2015?
A **He looked as if he was getting in the middle of a guard, trying to restrain B[redacted] W[redacted].**
Q When you say "restrain," what did you observe?
A **A guard just keeping a student -- using their body between B[redacted] W[redacted] and me.**
Q You say "guard using his body"; did the guard physically touch B[redacted] W[redacted]?

*Rich Moffett Court Reporting*

Scott Reese
332

A **I don't recall.**
Q Do you recall who that guard was?
A **No.**
Q When you say "trying to help," in quotes, what was C[redacted] F[redacted] doing when that was occurring?
MS. LINEEN: Objection.
A **He was getting in the middle of a guard trying to do his job.**
Q Explain to me what you saw him do?
MS. LINEEN: Objection.
A **I mean, I saw him kind of physically trying to get in between B[redacted] and the guard.**
Q Did it look like he was trying to remove the guard from B[redacted]?
A **He was trying to remove B[redacted] from the area. The guard was trying to do as well.**
Q So why wasn't he trying to help?
A **Because when students get involved, it doesn't help.**

*Rich Moffett Court Reporting*

83 of 156 sheets Page 329 to 332 of 502 01/03/2018 09:38:23 AM

Scott Reese
333

MS. LINEEN: Objection.

Q Was he committing an infractions of the Longwood School District code of conduct by, quote, "trying to help," end quote, as you put it in LCSD-2404, that being [redacted] [redacted]?

A **No.**

Q Was [redacted] [redacted] the subject of discipline on June 4, 2015?

A **Yes, I believe so.**

Q Did you make clear that he was not violating any code of conduct provision?

A **He was insubordinate.**

Q How was he insubordinate?

A **By refusing to listen to my directives to leave.**

Q How much time did you give him to listen to those directives to leave?

A **I don't remember.**

Q Was it more or less than a minute?

A **Less.**

Q When you say, quote, "punishment needs to fit the violation," end quote, are

*Rich Moffett Court Reporting*

Scott Reese
334

you referring to the punishment you suggested in your Thursday, June 4, 2015 e-mail that went out at 10:37 a.m.?

MS. LINEEN: Objection.

A **Looks like it, yes.**

Q I just want to clarify when you say it looks like -- do you feel that punishment you suggested on 10:37 a.m., June 4, 2015 fit that violation?

A **Yes.**

Q Did you forward this statement, that being the June 4, 2015, 10:37 a.m. statement. Did you forward the statement to anyone else, other than the recipients of that 10:37 -- withdrawn.

That 10:38 e-mail?

A **Yes.**

Q To whom else did you refer?

A **William Sean Hughes and Kristin Garrett.**

Q Why did you do that?

A **Kristin Garrett was also involved with scholarship night. Mr. Hughes is a colleague that I am close with, and was**

*Rich Moffett Court Reporting*

Scott Reese
335

**concerned and was hearing different things. So I wanted him to hear my side of it.**

Q When you say "hearing different things," when did you hear -- withdrawn.

When did you learn that Mr. Hughes was hearing different things about the June 4, 2015 incident?

A **I don't recall.**

Q Did he write something to you?

A **I believe he reached out to me, yes.**

Q How did he do that?

A **E-mail.**

Q Do you recall on what date?

A **No.**

Q Tell me, what was the purpose of sending that e-mail to Sean Hughes?

A **I believe he was concerned for me.**

Q Did you feel that individuals were making accusations against you that were not true regarding the June 4, 2015 event?

A **I don't recall.**

*Rich Moffett Court Reporting*

Scott Reese
336

MS. LINEEN: Objection to form.

Q Did anybody make rumors against you regarding the June 4, 2015 event?

A **I don't know.**

Q You ever ask for the support of other Longwood Central School District employees regarding the events that occurred on June 4, 2015?

A **No.**

**MR. MORRIS: Can we have this marked.**

(Whereupon, Plaintiff's 60 for identification, E-Mail from S. Reese to S. Hughes, was so marked.)

MR. MORRIS: Off the record for a moment. The time is 3:32.

(Whereupon, a break was taken in the proceedings.)

MR. MORRIS: Back on the record. It's 3:34.

Q Mr. Reese, I'm placing before you what's been marked Plaintiff's Exhibit 60. What is Plaintiff's Exhibit 60?

A **E-mail to Sean Hughes.**

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 333 to 336 of 502 84 of 156 sheets

Scott Reese

337

Q Did you write this e-mail to Sean Hughes?

A **Yes.**

Q When did you write this e-mail to Sean Hughes?

A **June 5, 9:59 a.m.**

Q What is the subject of this e-mail?

A **It's a description of the event that I sent him. I said to share with staff members. We need the teachers to know the real story, squash the rumors and student versions that are out there. The support of security and I would be greatly appreciated.**

Q What is Sean Hughes' e-mail address?

A **Sean.Hughes@LongwoodCSD.org.**

Q Did you send this e-mail to that address on Friday, June 5, 2015, at 9:59 a.m.?

A **Yes.**

Q For what purpose did you send those e-mails?

A **Because there were a lot of**

Rich Moffett Court Reporting

Scott Reese

338

**rumors and videos out there, not depicting the events completely, and felt that it was unfair, the depictions of the events that occurred.**

Q Why is this subject "Just Sent"?

A **I don't know.**

Q As you sit here today, you don't know why the subject is "Just Sent"?

A **No.**

Q Is it because, quote, "I sent you a description of events from yesterday," end quote?

MS. LINEEN: Note my objection.

A **Possibly.**

Q As you sit here today, you don't know what this e-mail refers to?

MS. LINEEN: Objection.

A **No.**

Q Why did you feel that you need teachers to, quote, "know the real story and squash the rumors and student versions that are out there," end quote?

A **I think that's pretty clear. The student versions were partial, not the**

Rich Moffett Court Reporting

Scott Reese

339

**full story, inaccurate.**

Q What student versions have you heard of?

A **Basically, descriptions of the video, that the guards were excessive, physical.**

Q What do you mean by "excessive, physical"?

A **The video depicted or showed an interaction between a guard and a student struggling mightily, as I previously described. To some people, that looks like the guard is excessive; to others, it appears to be something else.**

Q Did you hear from student eyewitnesses?

A **No.**

Q Did you see a student eyewitness or a testimonial from someone who saw it firsthand?

A **No.**

Q Did you ever speak to any students?

A **No.**

Rich Moffett Court Reporting

Scott Reese

340

Q Did you ever interview any students?

A **No.**

Q Did you see any pictures taken by students?

A **No.**

Q Any videos taken by any student?

A **The video that was on News 12.**

Q Again, we're referring to June 4, 2015 at Longwood High School.

Did you take any statements from any of the students?

A **No. I was removed from the investigation in that I was involved.**

Q Who removed you from that investigation?

A **No one. Typical protocol.**

Q Okay. If you were removed from the investigation, why would you ask for this letter to be sent to others to squash the rumors and student versions?

MS. LINEEN: Note my objection to form.

A **I don't see why I wouldn't. The**

Rich Moffett Court Reporting

85 of 156 sheets Page 337 to 340 of 503

**reality of the situation is as I described, not what the students and other people were saying and what the media portrayed.**

Q Do you feel that your involvement in this matter would have tainted your perspective on what really occurred?

MS. LINEEN: Objection.

A **No. Professional. I have nothing against David Edmond, and never did even on the day of the incident.**

Q Do you feel that you could be fair and impartial in determining the discipline or determining the results of an investigation regarding the June 4, 2015 incident?

A **I could, but I wasn't.**

Q Who was?

A **Dr. Castro.**

Q Dr. Castro adopted your recommendation on June 4, 2015, correct?

MS. LINEEN: Objection.

A **Correct.**

Q Sean Hughes, do you know who he

disseminated your statement to?

A **No.**

Q Do you know which -- withdrawn.

What rumors did you hear between June 4, 2015 at 10:00 a.m. and June 5th, 2015 at 10:00 a.m.? Let's start there.

A **Rumors of -- like I said before, of partial descriptions of the incident.**

Q From who did you hear those rumors?

A **I don't recall.**

Q As you sit here today, you can't recall a single name of one individual who provided you a rumor of what occurred on June 4, 2015?

A **No.**

Q Is there anything that would refresh your recollection?

A **No.**

Q Did you take any notes in regards to these rumors?

A **No.**

Q What about student versions? What student versions did you seek,

regarding the events of June 4, 2015 in between June 4, 2015 at 10:00 a.m. and June 5, 2015 at 10:00 a.m.

A **I saw none.**

MS. LINEEN: Objection to form.

Q I'm sorry?

A **I saw none.**

Q So you didn't see any student versions?

A **No.**

Q Did you see any sworn statements made by students?

A **No.**

Q Did you see any unsworn statements made by students?

A **No.**

Q At any point from today, all the way back to June 4, 2015, have you seen any statements by a student regarding the events on June 4, 2015?

A **No.**

Q Your support of -- quote, "your support of security and I would be greatly appreciated," end quote. To what were you

referring in Plaintiff's Exhibit 60, LCSD-2447, in terms of your support of security?

A **Squash the rumors and the partial truths that were out there, and the exaggerations of the incident.**

Q When you say "exaggerations of the incident," to what are you referring?

A **Student descriptions of the incident that were not accurate, that were being discussed in classes and talked about amongst teachers and staff.**

Q Could you describe what if anything that was being said?

A **No.**

Q As you sit here today, you don't remember or you don't know?

A **I don't remember.**

Q Did you come to learn that David Edmond was -- withdrawn.

Did you come to learn that David Edmond went to the hospital on June 4, 2015?

A **I did, yes.**

Q How did you know that?

Scott Reese
345

A I don't recall.
Q When did you learn that?
A I don't know.
Q Did you learn what if anything was wrong with David Edmond as a result of the events on June 4, 2015?
A No.
Q Did you ever inquire?
A No.
Q Security harmed David Edmond. Would you still request a support of security?
MS. LINEEN: Note my objection.
A Yes.
Q Why?
A From the small piece that I recall that I saw, they were doing everything they could do to restrain him, appropriately.
Q When you say "restrain him appropriately," how is their restraint appropriate? What did they do?
A Well, they started with like a bear-hug type from behind, and we would say

Rich Moffett Court Reporting

Scott Reese
346

that would be it. But mostly, since David Edmond struggled -- again, mightily -- against security staff and fought wildly to get away, that very easily can result in injury. It can happen to anybody.
Q So tell me what you observed, because before it seem unclear. Tell me about that bear hug. Who bear-hugged David Edmond?
A I don't know who initially interacted with him.
Q Could you describe who bear-hugged David Edmond?
A No.
Q As you sit here today, you don't knee who bear-hugged David Edmond?
A No.
Q But you saw someone bear-hug David Edmond?
A I saw him removed from the area quickly, from behind. I'm assuming it was a bear hug.
Q Tell me what happened right after you saw the bear hug?

Rich Moffett Court Reporting

Scott Reese
347

A That was a little foggy at that point, but I remember looking to the left, noticing the interaction between B[redacted] W[redacted] and another student. I noticed David Edmond, again, struggling against the guards there that were trying to keep him away from me.
Q When you say "struggle," describe what you saw?
A I saw what you would typically picture as a student struggling against someone trying to restrain them.
Q Were they on the ground, were they in the air?
A At first they started in the air, but I think they ended up on the ground.
Q Who was in the air?
A Standing. Not in the air. Standing; is that what "in the air" means?
Q Was David ever lifted off the ground?
A Not that I saw.
Q What did you see?

Rich Moffett Court Reporting

Scott Reese
348

MS. LINEEN: Objection.
A I saw him removed from the area. I took my eyes off for a second; I looked back. Students and staff were on the ground.
Q Start with the bear hug. Tell me about where you took your eyes off from David Edmond?
A He was removed from my proximity. The other student was removed. I looked to the left, looked back to the right. David Edmond was on the ground, struggling against the security staff.
Q Did you see how he was placed on the ground?
A No.
Q Did you see if he was slammed to the ground?
A No.
Q So after the bear hug, what if anything did you see, in between the interaction of David Edmond and security guards?
A I saw them on the ground.

Rich Moffett Court Reporting

87 of 156 sheets Page 345 to 348 of 583

Scott Reese
349

Q Do you know if the security guard was a male?
**A Male.**
Q Can you describe him?
**A It was Scott Partlow. I knew who that was at that point, yes.**
Q So it Scott Partlow who bear hugged David Edmond?
MS. LINEEN: Objection to form.
**A I don't know. I don't know who initially removed him from me.**
Q What did you see Scott Partlow do, in regards to David Edmond?
**A Trying to restrain him while he fought wildly against him.**
Q Show me what he did to restrain him?
MS. LINEEN: No. Describe it.
THE WITNESS: I don't remember.
Q Describe what he did to restrain him?
**A I don't know. He was trying to get ahold of him.**
Q How?

Rich Moffett Court Reporting

Scott Reese
350

**A With his hands.**
Q So where did his hands -- Scott Partlow's -- go on David Edmond's body?
**A I can't speak to that.**
Q Because you don't know?
**A Yeah, I don't know.**
Q So you don't know who bear-hugged David Edmond?
**A No.**
Q I see here it says "LCSD golf outing chairman." What is that?
**A It's a charity golf outing I organize every year.**
Q You still do that?
**A Yes.**
Q Just to be clear, supportive of security here, do you still support the security officer who bear-hugged David Edmond, as you saw it?
MS. LINEEN: Objection to form.
**A Yes.**
Q Why?
**A Because had he not been there, I likely would have been struck.**

Rich Moffett Court Reporting

Scott Reese
351

Q And you were concerned with school safety, right?
**A And my own.**
Q What about David Edmond's?
**A Yeah, of course. If he had complied, like every other student, typically, then he would be fine.**
Q Because he didn't comply, he wasn't fine; is that right?
MS. LINEEN: Objection to form.
**A Initially or during the altercation with the security guard?**
Q At any point?
**A If he initially complied, we wouldn't be here right now.**
Q So if he complied, no physical action would have come upon David Edmond?
**A No, of course not.**
Q When you say "comply," comply with what?
**A To stop.**
Q When you say "stop," explain?
**A When you say stop, it means stop. Stop going down the hall, chanting**

Rich Moffett Court Reporting

Scott Reese
352

**"asshole."**
Q And that insubordination led to this?
**A Yes.**
Q Do you recall if you sent another e-mail to Sean Hughes on June 5, 2015?
**A I don't.**
Q Do you recall if you received any other e-mails on June 5, 2015 as it relates to this event?
**A I don't recall.**
Q Do you recall responding in an e-mail, quote, "nice kid," end quote, regarding David Edmond?
**A Yes.**
Q Would you explain what you meant by that?
**A I meant sarcastically, because he just cursed out a staff member.**
Q Do you remember the context of which he cursed out that staff member initially?
**A I believe the staff member was**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 349 to 352 of 502 88 of 156 sheets

Scott Reese

353

asking him to get off his phone in class, and he told her to fuck off.

Q Do you know if David Edmond had to call the police on June 4, 2015?

A No.

Q Do you know if David Edmond had to call a lawyer on June 4, 2015?

A No.

Q Would there have been any acceptable reason for him to be on his phone?

A No.

MS. LINEEN: Note my objection.

A Not an acceptable response.

Q I understand the answer that you've given to a question that was not asked. But my question was, do you know if he was on his phone regarding his lawyer or the police on June 4, 2015?

MS. LINEEN: He answered both of those.

THE WITNESS: No.

Q Would that be acceptable for him to call the police and be on his phone

Rich Moffett Court Reporting

Scott Reese

354

June 4, 2015?

A No.

MS. LINEEN: Objection.

Q Would it be acceptable for him to call the police?

MS. LINEEN: Objection.

A Well, he could. But he could also respond to someone without cursing them out.

Q Bear with me. Let's separate the two.

I heard what you're saying, in terms of the response. Is David Edmond allowed to call the police on June 4, 2015?

A Yes.

Q Do you create log entries in the PowerSchool program?

A Typically, a clerical function.

Q Did you create one in regards to David Edmond on June 4, 2015?

A I don't think so.

Q Do you know who did?

A Likely my clerical.

Q Who is your clerical?

Rich Moffett Court Reporting

Scott Reese

355

A Renee Lopez.

Q Did you ever get a chance to speak to David Edmond's parents?

A No.

Q You consider this a serious incident, correct?

A Very.

Q Why didn't you speak to David Edmond's parents?

MS. LINEEN: Note my objection.

A I would have liked to, at the central hearing, but we weren't given that opportunity.

Q Did you ever provide David Edmond's parents a copy of the school video depicting the events that occurred on June 4, 2015?

A No.

Q Why not?

A Not my job.

Q Whose job was it?

A It's no one's.

Q Were they allowed to access the video that occurred, depicting the events

Rich Moffett Court Reporting

Scott Reese

356

that occurred on June 4, 2015?

A They would need to do that through a lawyer. I believe it needs to be subpoenaed, then all that needs to be involved. I don't want to be involved in that.

Q Do you recall an e-mail chain entitled "1600 hallway incident"?

A No.

Q Do you recall how many e-mails you received between June 4, 2015 and the weeks that followed?

A No.

Q Have you preserved all those e-mails?

A No. I don't preserve e-mails. If I read them, respond to them, I delete them.

Q Are you aware if anyone in Longwood Central School District preserved the e-mails regarding this incident on your account?

A I'm not aware. That was a different e-mail system, I believe, at that

Rich Moffett Court Reporting

89 of 156 sheets Page 353 to 356 of 502

Scott Reese

357

**time. I don't know if it's still around.**

Q Did the e-mail system change from June 4, 2015 to today?

A **They have. I know we had a recently new -- we now use Google Gmail. We switched over to that, I believe, last year.**

Q Did you ever refer to anyone in Longwood School District as Doc, D-O-C?

A **It could have been Dr. Castro or Dr. Lonergan.**

Q Do you refer to both Dr. Lonergan and Dr. Castro as Doc?

MS. LINEEN: Objection.

A **Not always. It depends.**

Q Do you refer to anyone else as Doc?

A **A few people have doctoral degrees that we work with. I don't know.**

Q So Doc is an euphemism that you give to certain people with doctoral degrees?

A **Yes.**

Q Did you speak to any parents regarding the events that occurred on June

Rich Moffett Court Reporting

Scott Reese

358

4, 2015?

A **No.**

Q Were you instructed not to speak to parents regarding --

A **No.**

Q Were you instructed not to speak to parents regarding the events that occurred on June 4, 2015?

A **No.**

Q Did you ever share e-mail correspondence with parents regarding the events that occurred on June 4, 2015?

A **No, not that I recall.**

Q Would anything refresh your recollection?

A **No.**

MR. MORRIS: Let's have this marked. 60?

THE REPORTER: 61.

(Whereupon, Plaintiff's 61 for identification, E-Mail from D. Just to Longwood High School Administrative Team, was so marked.)

Q I'm handing you what's been marked as Exhibit 61. Do you recognize this

Rich Moffett Court Reporting

Scott Reese

359

document?

A **(Reading).**

**It rings a bell. It's an e-mail from a parent to the administrative team at the time.**

Q Was it to anyone else?

A **It looks like -- I'm guessing Scott just her husband -- family member, full administrative team.**

Q Who's Scott Just?

A **I don't know. It's from Dawn Just. So, I'm assuming her husband.**

Q So, you don't know?

A **No.**

Q Do you know who Scott Just is?

A **No.**

Q Do you know who News12LI@News12.com is?

A **No.**

Q Did you receive this e-mail?

A **Yes.**

Q Did you respond to this e-mail?

A **Yes. On top, I wrote, "Thank you. You don't know how much your support**

Rich Moffett Court Reporting

Scott Reese

360

**means."**

Q To be clear, Plaintiff's Exhibit 61, you have personal knowledge of this e-mail being sent, that being Friday, June 5, 2015, at 10:15 a.m.?

A **No.**

Q You have personal knowledge of you sending this e-mail to Dawn Just on Friday, June 5, 2015, at 10:58 a.m.?

A **That was my response to her. She sent it to me and the rest of the team. My response was just thank you.**

Q Yes, that's what I am saying. Did you respond to her e-mail?

A **I did.**

Q You respond, "TY." Is that what you're referring to when you say thank you?

A **Yes.**

Q You see Plaintiff's Exhibit 61 consists of two pages, LCSD-2448 and LCSD-2449.

Did you produce this e-mail to counsel?

A **Did I? No.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 357 to 360 of 502 90 of 156 sheets

PageID #: 4001

Scott Reese
361

Q Do you know who did?
**A No.**
Q For what purpose did you send this e-mail?
**A I didn't. I responded to her e-mail to me.**
Q I apologize. For what purpose did you send this reply to Dawn Just's e-mail.
**A I appreciate her support.**
Q Did you review the message of which she sent you?
**A Yes.**
Q Is there anything that you disagree with in her message?
**A (Reading.)**
**It looks accurate to me, as far as I know.**
Q Do you know what Ms. Just was referring to when she said, "chokeholds," et cetera?
**A No.**
Q To be clear, this statement looks accurate to you; is that right?

*Rich Moffett Court Reporting*

Scott Reese
362

MS. LINEEN: Note my objection to form.
**A It's an opinion she's writing to News 12. Whether or not it's accurate, what's she's hearing from her son, it looks like -- I don't know.**
Q Did he come to learn anything about chokeholds occurring at Longwood June 4, 2015?
**A No.**
Q Did he come to learn of an unapproved senior prank on June 4, 2015?
**A As stated earlier, about a period earlier, we heard about it.**
Q Did he come to learn that Suffolk County Police came to the school to help the security?
**A I don't remember them coming that day; it doesn't mean that they weren't there. They might have been there the whole time. I don't know.**
Q What forms the basis for that statement?
**A Because sometimes they're there,**

*Rich Moffett Court Reporting*

Scott Reese
363

**and I don't realize they're there.**
Q Do you know if any other responses were made to Ms. Just's June 5, 2015 10:56 a.m. e-mail?
**A I don't.**
MR. MORRIS: It's all right if we take a two-minute break?
MS. LINEEN: 3:59.
MR. MORRIS: 3:59. Going off the record.
(Whereupon, a break was taken in the proceedings.)
MR. MORRIS: The time now is 4:06. We're back on the record.
Mr. Moffett, could you repeat the last question that was asked?
(Whereupon, the last question and answer were read back by the court reporter.)
Q Any other parents reach out to you or any other administrative staff regarding the June 4, 2015 event?
**A Not that I recall.**
Q Anything that would refresh your recollection?

*Rich Moffett Court Reporting*

Scott Reese
364

**A No.**
Q Did you make any notes, or did anyone else provide any notes in regards to such messages being sent to you?
**A No.**
Q Did you ever ask for guards to be by your office after the events of June 4, 2015?
**A I may have.**
Q Do you recall, as you sit here today, whether that occurred?
**A Possibly. I don't recall.**
Q Is there anything that would refresh your recollection?
**A An e-mail.**
Q Anything else?
**A No.**
Q Did you typically request guards by your office, or is this a unique event?
**A It's unique.**
Q To whom did you make that request?
**A I would likely have made that request to James Perrotta.**

*Rich Moffett Court Reporting*

91 of 156 sheets Page 361 to 364 of 502 01/03/2018 09:38:33 AM

Q Do you recall why you made such a request to Mr. Perrotta after the June 4, 2015 event?
A **Just so no foolishness happened.**
Q What do you mean by foolishness?
A **I can't describe what a student may have done at that point, but who knows.**
Q Do you feel that an educator should have security guards at their office because of events that occur in the school district?
MS. LINEEN: Objection.
A **No.**
Q Was that the reason that the state trooper was on post at the Longwood Central School District?
MS. LINEEN: Objection.
A **No.**
Q Why was that state trooper rejected by the Longwood Central School District?
A **That was just a summer. I know. That was a whole month thing. Again, our superintendent rallied against that**

**strongly, stating that it wasn't needed. And Governor Cuomo redacted that trooper involvement.**
Q Why was it not needed?
A **We don't have a gang issue. That's what it was supposed to stress after the incident in Central Islip.**
Q But you had an issue that would require guards after the June 4, 2015 event; is that right?
MS. LINEEN: Objection to form.
A **No. There's a possibility that something might happen, but nothing did.**
Q But you requested guards after June 4, 2015, correct?
A **I may have.**
Q You don't know?
A **It's not definitive; I don't recall.**
(Whereupon, Plaintiff's 62 for identification, E-mails to S. Reese from J. O'Malley and from S. Reese to J. Perrotta, was so marked.)
Q I'm handing you what's been

marked Plaintiff's Exhibit 62. Do you know what Plaintiff's Exhibit 62 is?
A **It's an e-mail from a counselor sent to me. And I just forwarded it to James Perrotta and said, how about a few guards by my office.**
Q You sent this e-mail to James Perrotta on June 5, 2015?
A **It was sent to me from Justin O'Malley, and I forwarded it to James Perrotta.**
Q What was the purpose of this communication?
A **Which?**
Q This communication, LCSD-2440, Plaintiff's Exhibit 62?
A **My communication to Mr. Perrotta, what was the purpose?**
Q Yes.
A **So that nothing would happen outside my door.**
Q And you asked Mr. Perrotta, quote, "have a few guards by my office today," end quote, on June 5, 2015, at

7:45 a.m.; is that right?"
A **Yes.**
Q Why?
A **A counselor indicated that there were a lot of rumors out there that something was going to happen by my office. So in an effort to avoid that, we thought it would be a good idea to have some guards there.**
Q Is this the rumors of which you mentioned earlier?
A **No.**
Q Okay. This is not one of the rumors of which you mentioned earlier?
MS. LINEEN: Objection.
A **I don't think so, no.**
Q What is in Justin O'Malley's e-mail; how would you characterize that?
A **What is in it?**
Q Yes?
A **It looks like typical social media nonsense that kids write, to look like they're something that they're not. And it's not very -- taken too seriously,**

**typically, but my e-mail to Mr. Perrotta, which is kind of a preventative measure, just in case.**
Q So you took this e-mail from Justin O'Malley seriously, in other words?
A **I guess. I didn't ignore it.**
Q Did you receive any other e-mails like this?
A **I don't recall --**
MS. LINEEN: Objection to form.
A **-- I don't recall any others.**
Q So is it fair to say this is the only e-mail that you received regarding social media threats after the June 4, 2015 incident?
MS. LINEEN: Objection to form.
A **As far as I can remember.**
Q Was that a question or a statement?
A **Statement.**
Q Do you know to what this Longwood student is referring when he says, "friends that got bodied for a little joke?
A **No.**

Q Do you know what it means when someone, quote, "gets bodied," end quote?
A **No.**
Q Did you ever inquire as to that student what he meant?
A **No.**
Q Did you ever find out which student made this statement contained within the LCSD-2440?
A **No.**
Q Do you know what he meant when he said, quote, "I dare you to touch me, man then (RT)," end quote?
A **No.**
Q Did you do anything else in regards to this e-mail?
A **No.**
Q Let's put this aside, then.
Did you forward this e-mail to anybody else?
A **Not that I recall.**
Q As you sit here today, do you have any independent recollection of what you did in response to this e-mail?

MS. LINEEN: Objection.
A **No.**
Q Do you have any independent recollection of the events that surrounded the June 4, 2015 events, as it relates to the week after that event?
A **No.**
Q Do you remember if you sent any messages of social media threats to Dr. Castro?
A **I don't; I may have. But I don't remember if I did that.**
Q Did anything refresh your recollection?
A **If you have an e-mail showing I did.**
Q Is an e-mail something that would refresh your recollection?
A **Yes.**
Q Were e-mails regularly disseminated about social media threats?
MS. LINEEN: Objection to form.
A **Not regularly.**
Q Were e-mails already --

withdrawn.
Were e-mails disseminated about the June 4th, 2015 incident, including but not limited to threats, on social media?
MS. LINEEN: Note my objection to form.
THE WITNESS: What's the question again?
MR. MORRIS: Can you repeat the question.
(Whereupon, the last question was read back by the court reporter.)
A **To clarify, if other e-mails came in threatening me, did I disseminate them to someone else?**
Q Did you receive anything else?
A **I don't recall.**
Q Have you produced these e-mails to counsel or preserve them in any fashion?
MS. LINEEN: Objection.
A **Anything that we had that we researched was produced.**
Q Did you delete these e-mails after you received them?

Scott Reese

373

MS. LINEEN: Objection.

A **I always delete my e-mails, yes.**

Q Did anyone tell you at any point during the 2014 to 2015 year to preserve your e-mails?

A **No. I believe they all are preserved somewhere.**

Q Who is Justin O'Malley again?

A **Counselor.**

Q He's a counselor. Guidance counselor?

A **Yes. School counselor, they prefer to go by now.**

Q Did you refer the threats that came to you after June 4, 2015 to Dr. Castro?

A **I don't recall.**

Q Any independent recollection, aside from the documents that I'm producing or providing e-mails to Dr. Castro, after June 4, 2015 but before July 2015?

MS. LINEEN: Objection to form.

A **No.**

(Whereupon, Plaintiff's 63 for

Rich Moffett Court Reporting

Scott Reese

374

identification, E-mail from S. Reese to M. Castro, was so marked.)

Q I'm handing you what's been marked Plaintiff's Exhibit 63. Do you recognize Plaintiff's Exhibit 63 bearing LCSD-2439?

A **Yes.**

Q What is this?

A **It's the same e-mail we just talked about. I did forward it to Dr. Castro just as an FYI.**

Q So to be clear, on June 5, 2015, at 7:42 a.m., you forwarded an e-mail received from Justin O'Malley on June 5th, 2015, at 7:33 a.m. to Dr. Marie Castro?

A **Yes.**

Q Why?

A **She's the building principal. She should know that this is out there. If something did happen and we had this and she didn't know, I would be reprimanded likely for not letting her know what was going on.**

Q Did you have a duty to report all these incidents?

Rich Moffett Court Reporting

Scott Reese

375

MS. LINEEN: Note my objection to form.

A **Not a duty; just common sense response after experience. Keep your building principal in the loop when you feel something might happen.**

Q When you say you would be reprimanded, can you explain what you mean by that?

A **She would probably be like what are you thinking, why didn't you show me that e-mail, something like that. It wouldn't be anything formal; I wouldn't get written up. But it would be, don't do that again.**

Q Let's go back.

Did you receive any write-ups while you were at the Longwood Central School District?

A **Regarding?**

Q Anything?

MS. LINEEN: Note my objection.

A **The DWI.**

Q Anything else?

Rich Moffett Court Reporting

Scott Reese

376

A **I think I used school letterhead for something. And I was told not to do that.**

Q Any other warnings?

A **Not that I know of.**

Q Any other write-ups?

A **No.**

Q Any other complaints lodged against you of discrimination, harassment, or anything else?

A **No.**

MS. LINEEN: Objection to form.

Q So you forwarded this to Dr. Castro as a precaution; is that fair?

A **To inform her, yes.**

Q Tell me, after this string of e-mails that seems to span to 10 o'clock, 11 o'clock, did guards eventually come to your door?

A **The day after?**

Q On June 5, 2015?

A **I don't remember. But likely. Typically, a request like that is warranted or followed through.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 373 to 376 of 502 94 of 156 sheets

Scott Reese

377

Q When you say "typically," have you done this before, or was this the first time you made a request for security guards?
**A I think it's the first time.**
Q So how do you formulate that belief?
**A I haven't had an incident like this before, prior to this. So it was unique. I don't think I would have requested them any other time.**
Q After these e-mails went back and forth on June 5, 2015, what happened for the duration of the day?
**A What day?**
Q June 5, 2015?
**A The day was relatively quiet, from what I recall.**
Q Did you leave early on June 5, 2015?
**A I may have. But it was a previous -- it had nothing to do with the incident. I was going away that week.**
Q Where were you going?
**A Tough Mudder, up in Vermont.**

Rich Moffett Court Reporting

Scott Reese

378

Q Did this incident, that being the incident on June 4, 2015, prevent you from attending any of the school events at Longwood High School?
**A Which ones?**
Q Any?
**A Didn't prevent me, no.**
Q Did you choose not to attend certain events?
**A Yes.**
Q What events?
**A I didn't go to prom that year, and I didn't go to graduation.**
Q Why not?
**A Those students were present. I didn't want to cause any disruption.**
Q Just to be clear, you asked that no prom be given to these students; is that right?
**A Correct.**
Q So how do you know they were present at the prom?
**A That request recommendation was not followed. Building principal decided**

Rich Moffett Court Reporting

Scott Reese

379

**they could go to prom.**
Q As you sit here today, you believe that David Edmond went to the prom on the 2014-2015 school year.
**A I don't know if David -- but I think B[redacted] W[redacted] and maybe one of the other students involved. Maybe just B[redacted] W[redacted]; I think he was going to the prom.**
Q How did you come to learn that?
**A I don't recall exactly. I just...**
Q Did you have a roster?
**A We would get a roster to approve prior to. But he wasn't in my caseload, so I wouldn't have even seen that. It probably was in a conversation with the admin team.**
**I also believe, now that I think back, it might have been a part of the -- the no-contest pleas that might have been worked out with respect lawyers.**
**No. I'm sorry. There was no prom for all of them, I believe. But they could all attend graduation, if I'm accurate.**

Rich Moffett Court Reporting

Scott Reese

380

Q So with that clarification, why didn't you attend prom?
**A They have a lot of friends; I didn't want to be a distraction. There's no need for me to be there. There's plenty of other admins, security, police.**
Q I'm sorry. Did you say police?
**A Yes. We always have plainclothes police officers at our proms.**
Q When you say "plainclothes police officers," Suffolk County Police officers?
**A Typically.**
Q I guess there's some sort of memorandum or understanding, anything that guides their presence at Longwood High School?
**A That's just the choice of the advisors that oversee the prom. It creates an atmosphere where the students generally behave themselves and arrive in an appropriate fashion, knowing that there's police presence there. It's been very effective.**

Rich Moffett Court Reporting

95 of 156 sheets Page 377 to 380 of 502 01/03/2018 09:38:23 AM

Scott Reese
381

Q So you made clear or -- withdrawn.
So Longwood High School has made this clear that there's police presence at the school at times?
MS. LINEEN: Objection to form.
A **Yes.**
Q How do they do that?
A **I'm sorry. Do what?**
Q How does Longwood High School tell parents that there's police at the school?
A **I don't know if they tell them directly. I believe it is in their prom packet, though, when they sign up for the prom, I believe. Someone mentioned it now; I'm not positive, though.**
**I know the advisors do mention it to all the students, verbally, in that pre-prom meeting with them. They say that over and over again. It's made very clear that that's a Longwood thing that's been going on for as long as I've been there.**
Q Aside from that prom packet, is

Rich Moffett Court Reporting

Scott Reese
382

there anything else that informs parents of police presence at Longwood High School?
MS. LINEEN: Note my objection.
A **Not that I know of.**
Q You're one of the assistant principals at Longwood High School, correct?
A **Yes.**
Q You don't know if there's anything going out to the parents regarding police presence in the school?
A **No. Something that would come from our superintendent or principal, likely. I don't know if they send something out. It wouldn't be something I would get.**
Q You said you didn't "want to be a distraction." What did you mean by that?
A **They have friends, so I didn't feel it was appropriate for me to be there. I don't need to be there.**
Q Who are "they"?
A **The individuals involved in this incident from June 4th.**
Q When you say they have friends, do you feel that their friends believe that

Rich Moffett Court Reporting

Scott Reese
383

the individuals involved in June 4, 2015 might have been treated unfairly?
MS. LINEEN: Objection.
A **Likely.**
Q How do you know that?
A **I don't.**
Q Why do you feel that way?
A **That's -- they heard their side of the story.**
Q Now, would you agree with me that there was a conflict of what actually occurred on June 4, 2015 between the students and the employees of Longwood High School?
MS. LINEEN: Objection to the form.
A **I would agree that there's a conflict there, yes.**
Q Anyone do anything to resolve that conflict?
A **I believe our lawyers and lawyers here right now are trying to resolve that conflict.**
Q Any statement issued by Longwood

Rich Moffett Court Reporting

Scott Reese
384

High School?
A **To?**
Q To resolve that conflict between the students' version of events and the faculty's version of events?
A **I don't recall.**
MS. LINEEN: Note my objection to form.
Q Was there any Longwood School District Board of Education meeting regarding the events that occurred on June 4, 2015?
A **I don't know.**
Q Were you present at any board meeting of the Longwood School District Board of Education in regard to this June 4, 2015 event?
A **No.**
Q Were you ever asked by the Board of Education of the Longwood School District to explain what occurred on June 4, 2015?
A **No.**
Q You said you didn't attend graduation. Same reason, distraction?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 381 to 384 of 502 96 of 156 sheets

Scott Reese

385

A Yes. I knew those students were going to be at graduation.

Q You didn't want to see those students involved; is that right?

MS. LINEEN: Note my objection to form.

A I didn't want to see them involved in graduation?

MR. MORRIS: Can you repeat the question, please.

(Whereupon, the last question was read back by the court reporter.)

Q Do you understand that question?

A No.

Q Did you not want to see the students that were involved in the events that occurred on June 4, 2015 at graduation?

A No, I did not. I recommended they not be there.

Q Anyone else discuss the events that occurred on June 4, 2015 with you, we haven't mentioned so far?

MS. LINEEN: Objection.

A I don't think so.

Rich Moffett Court Reporting

Scott Reese

386

Q Did you send your statement to anyone else that we haven't mentioned so far on June 4, 2015?

A I don't think we talked about Kristin Garrett right after her statement involved.

Q Aside from Kristin Garrett, did you send it to anybody else?

A Not that I recall.

Q Anything that would refresh your recollection?

A An e-mail.

(Whereupon, Plaintiff's 65 for identification, E-mail from S. Reese to B. Makarius, was so marked.)

Q Mr. Reese, I'm handing you what's been marked Plaintiff's Exhibit 65. Do you recognize this document?

A Yes. It looks like an e-mail between me and Bryan Makarius, M-A-K-A-R-I-U-S.

Q That Plaintiff's Exhibit 65, bearing LCSD-2457, did you send this e-mail to Bryan Makarius on June 5, 2015 at

Rich Moffett Court Reporting

Scott Reese

387

12:24 p.m.?

A Yes.

Q You were still in the school at that time?

A Appear to be, yes.

Q Do you have access to your school e-mail from your house?

A No.

Q What about your phone?

A No.

Q So the only way you could send these school e-mails is within the building itself; is that right?

A Yes.

Q After you sent this e-mail, did you delete it?

A Yes. Doesn't mean it's gone. I mean, as I said, I don't leave any mail in my inbox.

Q I understand. So -- just a question to ask.

What was the purpose of this communication?

A He was checking down to see if I

Rich Moffett Court Reporting

Scott Reese

388

was okay. This is a staff member that I'm closer to than most.

Q Did you receive a reply to this e-mail?

A What do you mean?

Q After you sent this e-mail to Bryan Makarius on June 5, 2015 at 12:24 p.m., did you receive a reply to this e-mail?

A He stopped down to see if I was okay. I said, "sorry, I missed you." Then I said, it looks like -- oh -- sorry, I missed you. So he must have stopped down in person. That was my initial e-mail to him.

He wanted -- then he wrote, "just wanted to stop by and see if you were okay." And then my response is on top; I said, "I'm good."

Q Did you produce this e-mail to counsel?

A I didn't personally, no.

Q In LCSD-2457, did you state, quote, "don't let the kids talk shit about me/security. Squash the BS," end quote.

Rich Moffett Court Reporting

97 of 156 sheets Page 385 to 388 of 502 01/03/2018 09:38:23 AM

Scott Reese
389

Did you say that?
A **Yes.**
Q What do you mean by that?
A **Exactly what it says. There was a version that the kids had out there. It wasn't accurate. It was being spread around.**
Q What version wasn't accurate?
A **The partial version, the exaggerated version.**
Q Can you explain what you mean by that?
A **The version that was captured and shown on News 12.**
Q So you're not referring to eyewitness events?
A **No.**
Q When you say "BS," to what are you referring?
A **Bullshit.**
Q Why did you call it bullshit?
A **Because it was out there as partial truth.**
Q Although you didn't see all of

Rich Moffett Court Reporting

Scott Reese
390

the events, you turned away at some point, You said, quote, "what really happened," end quote. Is that right?
A **Yes.**
Q Did you feel it important to obtain any other eyewitness statements, aside from your vantage point?
A **No.**
Q When you said "don't let the kids talk shit about me/security," what were they talking -- in terms of, as you put it, shit -- about security?
MS. LINEEN: Note my objection to form.
A **They were mentioning that it was -- they seemed excessive, I would say.**
Q Did anyone make a determination whether security acted in an excessive manner on June 4, 2015?
A **Not that I know of.**
Q Were you a part of an investigation to see if security acted excessive on June 4, 2015?
A **No.**

Rich Moffett Court Reporting

Scott Reese
391

Q Do you know if an investigation was undertaken to see if security acted excessive on June 4, 2015?
A **According to previous document it appears there was an investigation by Alicia Smith.**
Q Do you know the determination of the investigation by Alicia Smith?
A **No.**
Q Did Alicia Smith create a report in regards to the investigation?
A **Not that I know of.**
Q Have you ever requested a report regarding the investigation?
A **No.**
Q Do you know if anyone else has seen a report regarding the investigation?
A **No.**
Q Do you know if Alicia Smith made any notes regarding her investigation?
A **No.**
Q The investigation done is something that is kept in the ordinary course of business at Longwood High School?

Rich Moffett Court Reporting

Scott Reese
392

MS. LINEEN: Note my objection to form.
A **Don't know.**
MR. MORRIS: At this point, we're going to request all documents, notes, reports created by Alicia Smith as it relates to this purported investigation.
MS. LINEEN: Please follow up in writing. We'll take it under advisement.
Q When you say, quote, "TY so much for your support," end quote, what support are you referring to?
A **The fact that he stopped down to check on me.**
Q Anything else?
A **No.**
Q Anyone else check on you on June 5, 2015?
A **I don't recall.**
Q As you sit here today, do you have any independent recollection as to what occurred on June 5, 2015?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 389 to 392 of 502 98 of 156 sheets

Scott Reese
393

A **No.**
Q Who is Scott Schuster, S-C-H-U-S-T-E-R?
A **Current building principal.**
Q I'm sorry?
A **Current building principal.**
Q Who was Scott Schuster in the 2014-2015 school year?
A **I don't know if he was with us then. I think he was in Sayville. Director of special ed; he is a friend of mine.**

MR. MORRIS: Let's have this marked.

(Whereupon, Plaintiff's 66 for identification, E-mail from S. Reese to S. Schuster, was so marked.)

Q Mr. Reese, I'm handing you what's been previously marked as Plaintiff's 66. Do you know what this document is?
A **An e-mail between me and Scott Schuster.**
Q Did you send this e-mail to Scott Schuster on June 10, 2015 at 8:48 a.m.?

Rich Moffett Court Reporting

Scott Reese
394

A **I responded to his e-mail, yes.**
Q That being his e-mail sent on June 10, 2015 at 8:43 a.m., correct?
A **Yes.**
Q And this document, that being Plaintiff's 66, bears Bates Stamp LCSD-2473, correct?
A **Yes.**
Q What was the purpose of this reply e-mail?
A **It looks like -- again, he's another friend checking in on me.**
Q Do you know to what e-mail address you replied, that being Scott Schuster's e-mail address?
A **No. I don't think he was in district at this point.**
Q Fair to say that you received out-of-district e-mails on your district e-mail address?
A **Yes.**
Q Is there any policy guiding the receipt and sending of e-mails from the Longwood Central School district e-mail

Rich Moffett Court Reporting

Scott Reese
395

address?
A **No.**
Q Did you receive personal e-mails -- withdrawn.

Did you receive e-mails that were personal in nature at the Longwood Central School District e-mail address?
A **Do I, or have I ever?**
Q Have you?
A **Yes.**
Q Do you know what he was referring to, quote, "just checking in to see how you are doing after all that nonsense," end quote?
A **He was referring to the incidents from June 4th.**
Q Do you know what he's referring to when he's quoting, it looks like a few good men?
A **I see the quote.**
Q Did you agree with that quote, as he's put it there in this e-mail?
A **I don't know what he's referring to.**

Rich Moffett Court Reporting

Scott Reese
396

Q But you don't know what he's inferring or referring?
A **Not really, no.**
Q Did you say that it was one of your favorite movies?
A **Yes.**
Q Do you recall the quote in that movie?
A **Yes.**
Q Who says that quote?
A **Jack Nicholson.**
Q You say, quote," really appreciate the support," end quote?
A **Yes.**
Q What happened to Jack Nicholson at the end of that movie?
A **He gets arrested.**
Q Who's Renee Lopez again?
A **My secretary.**
Q Renee Lopez, R-E-N-E-E, L-O-P-E-Z.

Do you know when you informed Longwood School District that you were no longer going to the prom?

Rich Moffett Court Reporting

99 of 156 sheets Page 393 to 396 of 502 01/03/2018 09:38:23 AM

Scott Reese

397

A **No.**
Q Do you know who you informed?
A **Likely Dr. Castro.**
Q Do you know what reason you gave Dr. Castro for your reason not going to the prom?
A **No.**
Q Were you concerned about an unexpected disruption at the prom?
A **Likely.**
Q Is that what you stated to Dr. Castro?
A **I don't recall.**
Q Does anything refresh your recollection?
A **An e-mail.**
MR. MORRIS: Let's get this marked, then.
(Whereupon, Plaintiff's 67 for identification, E-mail from S. Reese to R. Grossman, was so marked.)
Q I'd like to hand you what's been previously marked as Plaintiff's 67. Do you recognize this document?

*Rich Moffett Court Reporting*

Scott Reese

398

A **Yes.**
Q What is this document?
A **It's an e-mail to the building principal, Randy Grossman, who oversees the senior prom. He was senior class advisor at the time.**
Q Was this e-mail sent from your e-mail address?
A **Yes.**
Q What did you mean when you said, quote, "I don't want my presence to distract from the event or cause an unexpected disruption. Sorry for the late notice," end quote?
A **Typo -- I meant to say "and" on the unexpected disruption. But it's pretty self-explanatory. I didn't think my presence, as I stated earlier, was not necessary. Therefore, no need for me to be there.**
Q This was on June 8, 2015, correct?
A **Looks like it, yes.**
Q Was there anything that

*Rich Moffett Court Reporting*

Scott Reese

399

precipitated this e-mail?
A **No.**
Q Were students still upset at the fact -- withdrawn.
Were students still upset at the events that occurred on June 4, 2015?
MS. LINEEN: Objection to form.
A **Don't know.**
Q So what precipitated this e-mail?
MS. LINEEN: Objection.
A **Again, my presence is not needed. So I felt like taking a chance of some student doing something.**
Q You missed the prom on any other year?
A **I don't think so.**
Q You've been at the prom every year?
A **I enjoy going there.**
Q Except June 4, 2014?
A **Yes.**
Q Fair to say you've gone to every prom, except for this prom?

*Rich Moffett Court Reporting*

Scott Reese

400

A **Yes.**
Q Do you know if Dr. Castro ever responded to Dawn Just's e-mail?
A **I don't know.**
MR. MORRIS: Could I have this marked, please.
(Whereupon, Plaintiff's 68 for identification, E-mail, was so marked.)
Q Sir, I'm just handing what's been marked Plaintiff's Exhibit 68.
Did you send this e-mail on June 5, 2015, to Maria Castro?
A **Yes.**
Q I apologize. Plaintiff's Exhibit 68, is this an e-mail that you sent?
A **Yes.**
Q Bears LCSD-2459 to LCSD-2460. Does this refresh your recollection as to whether you -- whether Dr. Castro responded to Ms. Dawn Just's e-mail concerning the events that occurred on June 4, 2015?
A **It does.**
Q Any other correspondence between parents and the administration of Longwood

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 397 to 400 of 502 100 of 156 sheets

PageID #: 4011

Scott Reese
401

High School in regards to June 4, 2015?

A **Not that I recall.**

Q Did you have any correspondence with any parents?

A **Not that I recall.**

Q Aside from Dawn Just on June 5, 2015, correct?

A **Correct.**

Q Put that aside.

MR. MORRIS: Could we have this marked, please.

(Whereupon, Plaintiff's 69 for identification, E-mail from S. Reese to R. Lopez, so was marked.)

Q Mr. Reese I'm handing you what's been marked Plaintiff's 69. What is Plaintiff's Exhibit 69?

A **It looks like it starts off on the second page with some scholarship award information.**

Q Is it an e-mail that you sent to Renee Lopez on June 5, 2015?

A **Yes.**

MS. LINEEN: Objection to form.

Rich Moffett Court Reporting

Scott Reese
402

Q That being the document that spans LCSD-2461 to LCSD-2462, correct?

A **Yes.**

Q Do you see a redaction on this document?

A **What does that mean?**

Q Do you see a long black strip next to the text that was blacked out?

A **Yes.**

Q Do you recall what that text consisted of?

A **No.**

Q Did that text contain any student names?

A **I don't recall.**

Q Do you see where it says, Scott Reese to Renee Lopez, Friday, June 5, 2015, 11:31 a.m., on top of LCSD-2461?

A **Yes.**

Q You see where it says, quote, "Need to get away from all of this shit. Thank you for your support through this. Speak to as many parents as you can about what really happened. The community

Rich Moffett Court Reporting

Scott Reese
403

needs/deserves to know the truth," end quote?

A **Yes.**

Q What did you mean by that?

A **Again, pretty self-explanatory. As I said before, the partial truth, some exaggerations were out there. Ms. Lopez is a community member; she speaks to a lot of community members. And I thought the community needs to know not the News 12 version, but the real version of what happened.**

Q Did you ever say that to Dr. Castro?

A **I don't know.**

Q You don't know?

A **No.**

Q Did you ever say that to Dr. Lonergan?

A **No.**

Q Did you say that to any superintendent, principal, board member -- anyone at all in the higher-up of Longwood Central School District -- that the

Rich Moffett Court Reporting

Scott Reese
404

community really needs to know?

A **No.**

MS. LINEEN: Note my objection to form.

Q In fact, you told many of the students that -- withdrawn.

In fact, you told many of the teachers, many subordinate employees at Longwood Central School District that the community needs to know; is that right?

MS. LINEEN: Note my objection to form.

A **What's many? Like a handful?**

Q More than one.

A **More than one, yes.**

Q Do you know how many you told?

A **No.**

Q Do you agree it's more than one?

A **Yes.**

Q You told them to tell them, quote, "the truth"?

A **Yes.**

Q Were you concerned about them knowing the truth, in terms of a hearing, or

Rich Moffett Court Reporting

101 of 156 sheets Page 401 to 404 of 502 01/03/2018 09:38:23 AM

Scott Reese
405

the truth, in terms of your statement?

MS. LINEEN: Objection to form.

A **I was concerned that the community doesn't get the full picture. They get partial truths, and they get the media version, which is inaccurate.**

Q Did Longwood Central School District ever come forward and give the accurate version?

A **No.**

Q Did you ever come forward and give the accurate version?

A **No.**

Q Did any of the administration at Longwood High School come forward with the accurate version?

A **No.**

Q Do you know if Renee Lopez, as she indicated in her Friday, June 5, 2015 e-mail of 11:43 a.m. to you, quote, "let anyone know who asks know exactly what happened," end quote?

A **I don't know.**

Q Have you ever followed up this

Rich Moffett Court Reporting

Scott Reese
406

e-mail with a conversation?

A **No.**

Q Did you ever ask her who, quote, "people are genuinely expressing concern for your well-being," end quote?

A **No.**

Q Did you ever ask her to see -- to look at the calls and texts asking how you are?

A **No.**

Q Do you know if she received calls and texts, asking how you are?

A **I believe she wrote that.**

Q Then she says, quote, "I wish we would release a full disclosure statement. We don't look so good issuing what we did yesterday," end quote.

What is she referring to?

A **I don't know. We're very limited about what we can say to the media. And it looks like we're trying to hide, like all school districts, when they're put in this position, are.**

Q The top of this e-mail indicates

Rich Moffett Court Reporting

Scott Reese
407

a name, Carolyn L. Zacko [phonetic]. Did you ever provide these e-mails to Carolyn L. Zacko?

A **No.**

Q Do you know if she received these e-mails?

A **No.**

Q In response to "I wish we would release a full disclosure statement," do you know what statement was issued?

A **No.**

Q Are you aware that a statement was issued?

A **No.**

MS. LINEEN: Objection.

MR. MORRIS: At this point, we're going to call for not only for the production of redacted e-mails bearing LCSD-2461 to LCSD-2462. We're also going to call for the statement of references, as well as the text messages, as well as all other electronic communications relating to this incident, by Renee Lopez, as

Rich Moffett Court Reporting

Scott Reese
408

indicated here in this e-mail.

MS. LINEEN: Okay. Please follow up in writing with the specific nature and scope of your request. We'll take it under advisement.

Q As you sit here today, you don't know what the redacted portion of this e-mail states?

A **No.**

Q Does it address Ms. Lopez's statement that you would -- she wishes they would release a full disclosure statement?

MS. LINEEN: Objection.

A **Don't know.**

Q No independent recollection, correct?

A **No.**

Q Put that aside.

(Whereupon, Plaintiff's 70 for identification, Request for Production of Records from S. Reese, was so marked.)

Q I'd like to hand you what's been marked Plaintiff's Exhibit 70. Have you ever received Plaintiff's Exhibit 70?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 405 to 408 of 502 102 of 156 sheets

Scott Reese
409

A **Did you show this to me in our first meeting?**

MS. LINEEN: I can't answer any questions. Just answer as best you can.

A **Yes.**

Q When did you see Plaintiff's Exhibit 70?

A **I don't recall the date.**

Q Was it after September 5, 2017?

A **I would say yes, probably.**

Q When you saw this, Plaintiff's Exhibit 70, were you asked to, quote, "produce all relevant records and documents that set out the answer to Plaintiff's Exhibit 70, as well as the complaint," end quote?

MS. LINEEN: Note my objection to form.

A **Yes.**

Q Were you asked to produce all correspondence, records, notes, texts, and instant messages, social media postings, voicemail statements, and all memoranda

Rich Moffett Court Reporting

Scott Reese
410

related to the subject matter, which is the basis of this litigation?

MS. LINEEN: Objection to form.

A **Yes, several times.**

Q Were you asked for copies of any formal and informal complaints, write-ups, reprimands, disciplinary actions concerning or involving you to the department?

A **Yes.**

Q Were you asked to produce any and all complaints made by Longwood Central School District students and/or parents against defendants and/or defined -- that being you -- copies of any and all video recordings from June 4, 2015 which occurred at Longwood High School?

MS. LINEEN: Note my objection to form.

A **Yes.**

Q Were you asked to produce photos?

A **Yes.**

Q And did you produce those items?

A **I produced everything I had**

Rich Moffett Court Reporting

Scott Reese
411

**access to. I searched all my files, my e-mails; anything that was related, I produced.**

Q Did you produce all communications, memorandum, letters, blogs, e-mails, social media posts, texts or instant messages by and between the defendant, Longwood Central School District superintendent Michael R. Lonergan, principal Maria Castro, assistant principal Scott Reese, security guards John and Jay Doe, school resource officer/Suffolk County Police Department and you, the deponent, concerning plaintiffs, David Edmond, Carol Edmond, and Tom Edmond?

MS. LINEEN: Note my objection to form.

A **Yes.**

Q What day did you produce those document?

A **I don't know.**

Q Between today and after September 5, 2017?

MS. LINEEN: Objection to form.

Rich Moffett Court Reporting

Scott Reese
412

A **The request was made a couple of times. Each time, I searched my files and my e-mail. Both every time was requested of me, and I searched whatever I could.**

Q Did you indicate to counsel that --

MS. LINEEN: Don't answer.

A **Withdrawn.**

**Did you indicate that e-mails might have been deleted in response to this request.**

MS. LINEEN: To whom?

Q Did you state, in response to your request to produce e-mails, that they might have been deleted?

MS. LINEEN: Anyone, excluding counsel?

MR. MORRIS: To anyone.

MS. LINEEN: Don't go notifying -- you told me or any other counsel.

A **No.**

Q You never told anyone that the e-mails were deleted?

Rich Moffett Court Reporting

103 of 156 sheets Page 409 to 412 of 502 01/03/2018 09:38:23 AM

Scott Reese

413

MS. LINEEN: Objection.
A **No.**
Q Do you remember speaking to police?
A **Yes.**
Q When did you speak to the police?
A **I don't know the date.**
Q Who was present when you spoke to the police?
A **I remember several police officers and myself.**
Q Did you provide the police a statement that you produced to Dr. Castro?
A **I don't think so.**
Q Was that statement the truth, as you put it, to your colleagues?
A **As I recall, yes.**
Q Why didn't you provide the truth, that being your statement, to the police?
A **I believe they wanted to just do it again separately from my initial statement.**

Rich Moffett Court Reporting

Scott Reese

414

Q Was anyone with you when you gave the police a statement?
A **No.**
Q Were you with counsel?
A **No.**
Q Were you with anyone from the school district?
A **No.**
Q Were you with anyone from your union?
A **No.**
Q Is there anything that you told the police that wasn't true and accurate?
A **No.**
MR. MORRIS: 71? I've got a copy.
(Whereupon, Plaintiff's 71 for identification, Statement by S. Reese, was so marked.)
Q I'm handing you what's been marked Plaintiff's Exhibit 71. Do you recognize Plaintiff's Exhibit 71?
A **Yes.**
Q What is Plaintiff's Exhibit 71?

Rich Moffett Court Reporting

Scott Reese

415

A **It's a statement that I gave to Officer Zimmerman, who's investigating this case.**
Q Is that your signature at the bottom of the page here?
A **Yes.**
Q It's dated June 10, 2015, correct?
A **Yes.**
Q If you look onto the next page here, it says page 2 out of 3 at the top right corner; is that right?
A **Correct.**
Q And again, is that your signature at the bottom of the page?
A **Yes.**
Q Looking forward again, the next page bearing 3 of 3 at the top right corner. Is that your signature at the bottom right-hand side?
A **Yes.**
Q Is this statement true and accurate?
A **Yes.**

Rich Moffett Court Reporting

Scott Reese

416

Q Was it a sworn statement?
A **Yes.**
Q Did you give an oath to tell the truth, just like the oath you gave here today?
A **Yes.**
Q Is Plaintiff's Exhibit 71 the same or substantially the same as when you signed it?
A **Yes.**
Q When was this document created?
A **It looks like 6/10/15.**
Q How did you learn that Officer Zimmerman was at Longwood High School on June 10, 2015?
A **I don't recall.**
Q Do you know why he was there?
A **No.**
Q Did you ask him?
A **When I got there, yes.**
Q What did he tell you?
A **He was investigating a claim from David Edmond.**
Q What was that claim?

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 413 to 416 of 502 104 of 156 sheets

PageID #: 4015

Scott Reese
417

MS. LINEEN: Objection.
A **I don't recall.**
Q Did you learn what the prank was, prior to June 10, 2015, that occurred on June 4, 2015?
A **Was information obtained after the fact? On what the prank's intention was?**
Q Prior to writing the statement, did you come to learn what the prank was that occurred on June 4, 2015?
MS. LINEEN: Note my objection.
A **Yes. I think it was something -- to go outside and play tag. Something like that, if I recall.**
Q And the senior -- that was a senior class prank; is that right?
A **Yes.**
Q Earlier that day, on June 4, 2015, you attempted to prevent the seniors from doing that class prank, correct?
A **Correct.**
MS. LINEEN: Objection.
Q Here in your statement -- I'll

Rich Moffett Court Reporting

Scott Reese
418

give you a chance to peruse this. Please let me know if there's anything that you would change in this statement.
MS. LINEEN: Just peruse it.
A **(Reading).**
**It's accurate. I wouldn't change anything.**
Q You understand that, as it denotes in the bottom of this document here, on all three pages, that false statements are punishable as a class A misdemeanor, correct?
A **Yes.**
Q I'd like to direct your attention to page 2 of 3, Plaintiff's Exhibit 71. And you made this within a week of June 4, 2015, correct?
A **Yes.**
Q You swore to its truth, correct?
A **Yes.**
Q Did David Edmond say, get your hands off of me?
A **He may have.**
Q You said here in your statement

Rich Moffett Court Reporting

Scott Reese
419

to the police, on June 10, 2015?
A **Said, you can't touch me. He said a lot of other things that I don't recall. The one thing I do definitely remember was, you can't touch me. He might have said that as well.**
Q Does he say anywhere in here that -- as you said earlier, that you replied to him, yes, I can?
A **I don't know if that's in that statement anywhere.**
Q Take your time and read. Let's confirm that it's not.
A **(Reading.)**
**On the third page, I wrote -- my statement reads, "I would like to add that when I first tried to stop David Edmond with my outstretched arm, he walked into it and tried to step around it. So he immediately told me to get hands off him, and I could not touch him. I informed him that I could touch him, and he again tried to get past my outstretched arm. I then grabbed hold of the jacket shirt he was wearing.**

Rich Moffett Court Reporting

Scott Reese
420

**I read the foregoing statement, and that it's true and accurate.**
Q Do you know who was suspended on June 4, 2015?
A **What do you mean?**
Q Do you know what students were suspended as a result of the incident of June 4, 2015?
A **David Edmond, B[redacted] W[redacted] -- I believe F[redacted] and the other student you mentioned previously.**
Q What is the race of David Edmond, W[redacted] and F[redacted]?
A **African-American.**
Q Are you aware of the allegations in this complaint?
MS. LINEEN: Objection to form.
A **There was a fourth student suspended. He was white.**
Q Do you know his name?
A **Z[redacted] something, I believe. Something Z[redacted]**
Q Do you know why he was suspended?

Rich Moffett Court Reporting

105 of 156 sheets Page 417 to 420 of 502 01/03/2018 09:38:23 AM

Scott Reese

421

A **Insubordination.**
Q Why was he charged with insubordination?
A **Reviewed to comply with directives of staff members.**
Q Could you be more specific than that?
A **I don't recall. I believe it was interaction with Mr. Cipp down the hallway.**
Q Do you know if Mr. Cipp was reprimanding one of the African-American Longwood High School students for carrying a phone?
A **No, he wasn't.**
Q No, he wasn't that you don't know? Or no, he wasn't reprimanding an African-American --
A **He was trying to obtain a phone, from what I believe.**
Q Was he trying to obtain the phone of an African-American student from Longwood High School?
A **Yes.**

Rich Moffett Court Reporting

Scott Reese

422

Q Who was that student?
A **I believe that was C[redacted] F[redacted].**
Q One of the students later suspended on June 4, 2015, correct?
A **Yes.**
Q Are you aware of the allegations in the federal complaint filed in this lawsuit?
A **No.**
Q I'll show that to you in a second.
So to be clear, is there anything that you would add or remove from this statement, that being Plaintiff's Exhibit 71?
A **No.**
Q Did you ever speak to the police after giving this statement?
A **Just Internal Affairs that we spoke of earlier.**
Q Aside from that one conversation with Internal Affairs, any other conversations with the police since June 4,

Rich Moffett Court Reporting

Scott Reese

423

2015?
A **No.**
Q I show what's been previously marked as Plaintiff's Exhibit 3. Are you familiar with Plaintiff's Exhibit 3?
A **Yes, from what we saw previously.**
Q What is Plaintiff's Exhibit 3?
A **I don't know. It looks like a complaint against myself and several other Longwood staff members from the law office of Cory Morris, representing the Edmond family.**
Q Have you ever read this document?
A **Not completely.**
Q Were you aware that a notice of claim was filed in this action?
A **I don't know what that is.**
Q Were you aware that within 90 days of June 4, 2015, a notice of lawsuit, an intention to start a lawsuit, was filed against the Longwood School District?
MS. LINEEN: Note my objection

Rich Moffett Court Reporting

Scott Reese

424

to form.
A **I don't recall that I was informed.**
Q Have you ever read Plaintiff's Exhibit 3?
A **No.**
Q When were you notified of Plaintiff's Exhibit 3's existence?
A **I don't recall the date.**
Q How were you notified?
A **By our attorneys.**
Q What was your response?
A **I don't recall.**
Q Were you surprised?
MS. LINEEN: Note my objection.
A **I don't remember.**
Q Were you aware of the allegations of use of force that is contained within this complaint?
A **No.**
Q Have you ever read this complaint?
MS. LINEEN: Objection.
A **No.**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 421 to 424 of 502 106 of 156 sheets

Scott Reese

425

Q Let's go through this together.

I'd like to direct your attention to page 11, Plaintiff's 3, paragraph 35.

Is paragraph 35 a true statement?

MS. LINEEN: Objection.

MR. MORRIS: What's the objection?

MS. LINEEN: You're asking him to -- the paragraph phrase is, was he lawfully present. That's basically a legal conclusion, if a fact witness.

MR. MORRIS: I'm asking if it's a true statement.

MS. LINEEN: Right. Whether the legal conclusion there is true. Therefore, you're asking for a legal conclusion.

Q Was plaintiff David Edmond lawfully present and enrolled in Longwood High School on June 4, 2015?

MS. LINEEN: Objection.

A **He was present. I don't know if**

Rich Moffett Court Reporting

Scott Reese

426

**he was lawful or not.**

Q Do you know how his presence at the school would be unlawful or not?

MS. LINEEN: Objection.

A **Yes.**

Q How?

A **If he was suspended prior and didn't belong in school that day; if he was dropped from the rolls.**

Q Was he either suspended and didn't belong in school on June 4th?

A **No.**

Q Was he dropped from the rolls on June 4th?

A **No.**

Q Was he lawfully present on June 4, 2015?

MS. LINEEN: Objection to the form.

A **He was present.**

Q Do you agree with paragraph 36; is that a true statement?

MS. LINEEN: Note my objection.

A **It's not entirely accurate, no.**

Rich Moffett Court Reporting

Scott Reese

427

Q What's inaccurate about it?

A **Student from Longwood High School would engage in a trade custom of a senior prank. It's not a trade or a custom that we promote or endorse in any way. Exterior of the property -- they barely -- I would say a handful of students actually got to the exterior of the property before they returned back into the building.**

Q Would you agree with paragraph 37 of Plaintiff's 3 on page 11?

A **It wouldn't form around. They formed in the hallway.**

Q You disagree with that statement?

A **Just the one word.**

Q Do you agree with paragraph 38?

MS. LINEEN: Objection to form.

A **I agree.**

Q Do you agree with paragraph 40 on page 12 of Plaintiff's 3?

MS. LINEEN: Note my objection to form.

A **No.**

Rich Moffett Court Reporting

Scott Reese

428

Q To what don't you agree in paragraph 40?

A **My name is spelled wrong, and I didn't alert security. And we didn't approach the crowd of students in the hallway. I just went to that hallway. I was alerted by another assistant principal.**

Q Which assistant principal?

A **Smith.**

Q Did you grab David Edmond shortly thereafter?

MS. LINEEN: Note my objection to form.

A **David Edmond walked into my hand. And then as he tried to spun, to get by me, I grabbed his jacket to restrain him for approximately three seconds.**

Q So you did grab him, right?

MS. LINEEN: Objection.

A **I grabbed his jacket.**

Q You agree with paragraph 44?

A **No. My hand was nowhere near his collar. Other than that, the rest is about accurate.**

Rich Moffett Court Reporting

Scott Reese
429

Q Do you know if paragraph 46 is accurate?
MS. LINEEN: Objection.
A **No.**
Q You were asked, when inquired or learned, that plaintiff David Edmond was placed in fear and apprehension being touched, harmed, assaulted or battered by your actions.
A **Say that again?**
Q I'll repeat it.
Do you know now or have you learned that your actions on June 4, 2015 placed plaintiff David Edmond in fear and apprehension of being touched, harmed, assaulted, and/or battered?
MS. LINEEN: Objection to form.
A **I didn't know until now.**
Q Do you know now that your actions placed David Edmond in fear?
MS. LINEEN: Objection.
A **No.**
Q Do you know if paragraph 47, absent of spelling error, is accurate?

*Rich Moffett Court Reporting*

Scott Reese
430

MS. LINEEN: Objection to form.
A **He did not authorize, no.**
Q You agree with that statement, correct?
A **Yes.**
Q That David Edmond didn't authorize you to touch him?
A **No.**
Q That David Edmond did not provide consent to your actions?
MS. LINEEN: Note my objection to form.
A **Yes.**
Q Do you agree with paragraph 48, page 13 of Plaintiff's 3?
A **Yes.**
Q Do you agree with the allegations in paragraph 49?
MS. LINEEN: Objection.
A **No.**
Q Did you see defendant security guard Scott's [sic] actions, as alleged in paragraph 49? ^^DOES HE MEAN PARTLOW?
MS. LINEEN: Objection.

*Rich Moffett Court Reporting*

Scott Reese
431

A **No.**
Q Do you agree with paragraph 50 in Plaintiff's 3, page 13?
A **No.**
Q Do you agree with paragraph 51, Plaintiff's Exhibit 3, page 13?
A **No.**
Q Did you see defendant Scott pick David Edmond up off the ground?
A **No.**
Q Did you see defendant Scott slam David Edmond into the ground?
A **No.**
Q Did you hear plaintiff David Edmond protest that he was unable to breathe and that he was in pain?
A **No.**
Q Are you aware or -- withdrawn.
Do you agree with paragraph 56 on page 13, Plaintiff's 3?
A **No.**
MS. LINEEN: Note my objection.
Q Sorry. What was your answer?
A **Had. No.**

*Rich Moffett Court Reporting*

Scott Reese
432

Q Do you agree that student [redacted] witnessed the entire event, as it occurred on June 4, 2015?
MS. LINEEN: Note my objection.
A **No.**
Q Were you aware of the facts contained in paragraph 58?
MS. LINEEN: I'm going to object.
THE WITNESS: What is that 58 asking, if these people gave accounts of the incident?
Q Are you aware of these accounts?
A **No.**
Q Are you aware that a student said, quote, "David Edmond was held down in a chokehold and unable to breathe by the security guard Scott," end quote?
A **No.**
Q Are you aware of the statement now?
A **I am now.**
Q Are you aware of MGS stating, as contained in Plaintiff's 3, page 14, that,

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 429 to 432 of 502 108 of 156 sheets

Scott Reese

433

quote, "Scott continued to hold him down and force all of his weight on David, even after repeated pleas from him and others to stop," end quote.

MS. LINEEN: Note my objection.

A **I'm aware of it now.**

Q Are you aware of the allegation made by ND, as you see it on page 146, Plaintiff's 3?

MS. LINEEN: Note my objection.

A **I haven't seen this statement before.**

Q Are you aware of the statement now?

A **Yes.**

Q Are you aware of the statement that follows ND's statement -- JT -- that, quote, "David Edmond was held down in chokehold and was unable to breathe by the security guard Scott," end quote?

MS. LINEEN: Objection.

THE WITNESS: I'm aware of it now.

Q Are you aware of the statement

Rich Moffett Court Reporting

Scott Reese

434

that follows it?

MS. LINEEN: Same objection. You can answer.

A **I'm aware of it now.**

Q Following on -- you see there's a number of other statements that span from page 14 to 15. Can you please read those statements to yourself?

A **Uh-huh.**

**(Reading.)**

**I'm aware of them now.**

Q Now that you're aware of these statements, will you set the record straight and show them the truth, as you indicated earlier today?

MS. LINEEN: Objection.

A **What are you asking me to do, recount the event again?**

Q No, no. I'm asking you whether you're going to investigate this and set the record straight?

A **No.**

MS. LINEEN: Objection.

Q Are you aware of these competing

Rich Moffett Court Reporting

Scott Reese

435

accounts as to your truth, as was stated in your e-mail on June 4, 2015?

A **I am.**

MS. LINEEN: Objection to form.

A **I am now.**

Q What if anything will you do, as a school teacher/administrator of Longwood High School, now that you know this?

A **Nothing. There's nothing to do. They're all inaccurate.**

Q Going onto paragraph 15 -- page 15, paragraph 60, Plaintiff's 3.

On or about June 29, 2015, you received notice to preserve all documentation as it relates to claims that occurred on June 4, 2015?

A **I believe so.**

Q By whom?

A **I don't recall.**

Q Did you, in fact, preserve that material?

A **Anything that I had, I kept. There was nothing for me to hide.**

Q When did you produce that

Rich Moffett Court Reporting

Scott Reese

436

material?

MS. LINEEN: Objection.

A **I produced it the first time it was requested. The second and third time, I researched and researched my files and e-mails. Whatever came up that I thought might have been remotely related or anyway related, I submitted.**

MR. MORRIS: I call for the production of everything that was initially submitted, as testified by this deponent.

MS. LINEEN: Please follow up in writing. We'll take it under advisement.

Q Do you agree with paragraph 70 on page 17, Plaintiff's 3?

A **Which one?**

Q Paragraph 70?

A **No.**

Q Do you agree with paragraph 72 on page 18 of Plaintiff's 3?

MS. LINEEN: Note my objection.

A **What is that statement saying,**

Rich Moffett Court Reporting

109 of 155 sheets Page 433 to 436 of 592

Scott Reese

437

just that he was there? **Yes, he was there.**

Q Do you agree with paragraph 73, Plaintiff's 3, on page 18?

MS. LINEEN: Note my objection to form.

A **No.**

Q Do you have knowledge whether or not that occurred?

A **No.**

Q Is that because you walked away?

A **I didn't hear everything that was said.**

Q Did you see Beowlay, B-E-O-W-L-A-Y, [phonetic] Williams on June 4, 2015?

A **Yes.**

Q When did you see him?

A **Immediately after the incident, he was there.**

Q Where was he?

A **There, where the incident occurred. 1600 hallway.**

Q Did you see him assist David Edmond?

Rich Moffett Court Reporting

Scott Reese

438

A **No.**

Q Did you see him touch David Edmond?

A **No.**

Q Who is Mr. Castiglione, C-A-S-T-I-G-L-I-O-N-E?

A **Phys ed teacher.**

Q Did you ever speak to Mr. Castiglione, as it relates to the events that occurred on June 4, 2015?

A **No.**

Q Did you ever hear Mr. Castiglione state what's written in paragraph 75 of Plaintiff's 3?

A **No.**

Q Do you have knowledge of paragraph 76, in that did it take several interveners to remove defendant Scott and the security guard at Longwood High School from plaintiff David Edmond?

MS. LINEEN: Objection to form.

THE WITNESS: No.

Q Did you know if plaintiff David Edmond feared for his life and eventually

Rich Moffett Court Reporting

Scott Reese

439

was removed from chokehold?

A **No. I don't know.**

Q Did you ever learn how David Edmond was taken to the athletic office?

A **No.**

Q Did you know that David Edmond was seen by the high school nurse?

A **No.**

Q Do you know that David Edmond suffered injury as a result of the events on June 4, 2015?

MS. LINEEN: Objection to form.

A **No.**

MS. LINEEN: By my calculation, you have 15 minutes left of the seven hours.

MR. MORRIS: I have seven hours on the record.

MS. LINEEN: Right. Have you been keeping track?

MR. MORRIS: I have.

Q Do you have knowledge of paragraph 81 on page 19 of Plaintiff's 3?

A **No.**

Rich Moffett Court Reporting

Scott Reese

440

Q Do you know if David Edmond was force to make a statement on June 4, 2015?

MS. LINEEN: Objection.

A **No.**

Q I'd like to direct your attention to paragraph 86 on page 20 of Plaintiff's 3.

Did you come to learn that David Edmond's parents came to Longwood High School on June 4, 2015?

A **Did not know.**

Q Did you know that plaintiff David Edmond was required to give a statement on June 4, 2015?

A **No.**

Q I'd like to direct your attention to paragraph 80 on page 21 of Plaintiff's 3.

Do you agree with that statement?

A **No.**

Q What don't you agree with that statement?

A **Likely not "demand" that give a**

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 437 to 440 of 502 110 of 156 sheets

Scott Reese
441

**statement. Likely encouraged.**

Q When you say "encouraged," is there a policy, practice, guideline, or procedure that encourages such statements be given under these circumstances?

MS. LINEEN: Objection to form.

A **No.**

Q Do you agree with paragraph 90?

MS. LINEEN: Note my objection.

A **I don't know.**

Q You don't know because you don't have knowledge?

A **I wasn't at that conversation.**

Q Were you aware of the allegations in paragraphs 91 and 92?

MS. LINEEN: Objection.

A **I wasn't aware.**

Q I'd like to point you to paragraph 97 on page 22. Were you aware of that allegation?

MS. LINEEN: Objection to form.

A **I was aware.**

Q When did you become aware of such an allegation?

Rich Moffett Court Reporting

Scott Reese
442

A **Meeting with my attorney.**

Q What if anything did you do in response to learning of that allegation?

A **I don't recall my reaction.**

Q Do you agree with paragraph 103 on page 24 of Plaintiff's 3?

A **That's a suspension letter.**

Q So you agree with that paragraph?

A **Yes.**

Q That paragraph is true; is that right?

A **Yes.**

Q I'd like to direct your attention to paragraph 105 on the same page. Do you have knowledge whether that occurred?

A **No. I wasn't present for any conversation with the parents.**

Q What if anything have you done in regards to these allegations, as asked and answered in Plaintiff's 3?

MS. LINEEN: Objection.

A **I attempted to get the records that were requested.**

Rich Moffett Court Reporting

Scott Reese
443

MR. MORRIS: Okay. It's 5:23.

MS. LINEEN: 5:28.

MR. MORRIS: I'm sorry. It's 5:28.

MS. LINEEN: How long are you breaking for? That would be ten more minutes.

MR. MORRIS: I'm going to go off the record; is that all right?

MS. LINEEN: That's fine.

(Whereupon, a break was taken in the proceedings.)

MR. MORRIS: Back on the record at 5:33.

Q Mr. Reese, anything done about the allegations of disproportion in racial treatment to the students at Longwood on June 4, 2015?

A **No.**

**MS. LINEEN: Objection.**

Q Now, that you know these allegations, is there anything at all that has occurred after June 4, 2015, that corresponds in determining whether

Rich Moffett Court Reporting

Scott Reese
444

discipline is equally doled out amongst the races at Longwood High School?

MS. LINEEN: Objection.

THE WITNESS: I don't know what that question is asking exactly.

Q Since June 4, 2015, has anyone looked at the consequences that Longwood High School students receive, in terms of discipline?

A **It happened before June 4th and it has happened since. It happens regularly from the state, as mentioned previously.**

Q Is there a change in the audit process, as it relates to race?

A **Not a change in the audit process, no.**

Q Is there anything finding or any study that shows if there is a disproportionality between treatment, as it relate to a race, and consequences for discipline?

MS. LINEEN: Objection to form.

A **The audit looks at race. It looks at students with disabilities. And as**

Rich Moffett Court Reporting

111 of 156 sheets Page 441 to 444 of 502 01/03/2018 09:38:23 AM

Scott Reese

445

**stated previously, we were cited, I believe three or four years ago, that our African-American males, Special Ed -- specifically, that group of students -- was suspended at a disproportionate rate. Since then, we've been doing everything in our power to decrease that with alternate measures and alternatives to suspension.**

Q How have you done that?

A **With counseling through proactive measures, through teacher discussions, through teaming. We've hired an outside source that has come in and assisted us with this as well.**

Q Who was that outside source?

A **A person that we deal with all the time; her name is Ali Weiner [phonetic].**

Q Who is Ali Weiner?

A **She is an outside contractor; she's actually from Arizona. I'm guessing at some point she won a bidding process, where she would come in and just give us alternatives to suspension, proactive measures in dealing with all students.**

*Rich Moffett Court Reporting*

Scott Reese

446

Q Has she promulgated that and sent any sort of written rules, guidelines, procedures?

MS. LINEEN: Objection to form.

A **No.**

Q She's not reduced any of her recommendations to writing?

A **She has. But, I wouldn't be able to produce them. I don't know.**

MR. MORRIS: Don't worry. We're going to request production of all the documents of which you mentioned, including but not limited, to what she produced in writing.

MS. LINEEN: Please follow up in writing. Clarify the specific nature and go -- we'll take it under advisement.

Q On the night you got a felony DWI, did you come from a bar?

MS. LINEEN: Objection.

Don't answer that.

MR. MORRIS: Instructing him not to answer?

*Rich Moffett Court Reporting*

Scott Reese

447

MS. LINEEN: Yes.

MR. MORRIS: I'm going to reserve our right to recall this witness.

MS. LINEEN: For that question?

MR. MORRIS: We're reserving our right.

Would you like to inquire of the witness?

MS. LINEEN: Yes. I'm not agreeing to bring the witness back for anything. I have a couple of questions.

* * *

EXAMINATION

BY MS. LINEEN:

Q You testified a little while ago about a white student, who was also disciplined around the June 4, 2015 incident; I think you mentioned the name Zachary. But does the named B[redacted] Z[redacted] [phonetic] sound familiar?

A **Yes.**

MR. MORRIS: Objection.

*Rich Moffett Court Reporting*

Scott Reese

448

A **Yes.**

Q Is that the student you're referring to?

A **Yes.**

Q As you sit here today, are you certain whether or not Alicia Smith conducted an investigation of the June 4, 2015 incident?

MR. MORRIS: Objection.

A **No.**

Q Counsel has asked you a question about whether you had done anything to get the accurate version of events out there. By testifying today and making the statements that we've talked about today, and that counsel has shown you, was that relaying the accurate version of events, as you recall it?

A **Yes.**

Q Do you have Exhibits 57 and 58?

I can show him what I have marked.

MR. MORRIS: (Hand to counsel.)

Q I'm going to ask you to take a

*Rich Moffett Court Reporting*

01/03/2018 09:38:23 AM Page 445 to 448 of 502 112 of 156 sheets

Scott Reese
449

look at what was marked earlier today and testified about, Exhibit 57, Plaintiff's Exhibit 57.

Now, as you sit here today, are you certain whether or not you had that as a Word document on your computer?

MR. MORRIS: Objection.

A **Not certain.**

Q Of whether you created it in a Word document form?

A **Not certain.**

Q And the couple of points -- I think in the testimony you mentioned a meeting following the June 4, 2015 incident with the administrative team.

As you sit here today, are you certain whether or not a meeting occurred following the incident on that day?

A **No, I'm not.**

MS. LINEEN: I don't have any other further questions.

MR. MORRIS: I'd like to briefly inquire.

Rich Moffett Court Reporting

Scott Reese
450

EXAMINATION
BY MR. MORRIS:

Q It seems like you're not certain of a lot of things that might have had occurred on June 4, 2015; is that right?

MS. LINEEN: Objection to form.

A **No.**

Q Your independent recollection -- is there anything you'd like to add that we haven't discussed that occurred on June 4, 2015?

A **No. It's been covered thoroughly.**

Q It sounds like you didn't recall if there was a meeting that occurred on June 5, 2015; is that right?

A **That's accurate.**

Q Tell me everything that you remember that occurred on June 5, 2015?

MS. LINEEN: June 5th, 2015?

MR. MORRIS: Yes.

THE WITNESS: The day after?

MR. MORRIS: Yes.

A **I don't remember anything that**

Rich Moffett Court Reporting

Scott Reese
451

**occurred on that day. It was two years ago. We went through all the e-mails that occurred on that day. I don't know what else there is.**

Q Aside from those e-mails, you have any independent recollection of the events of June 5, 2015?

A **No.**

Q Aside from what we discussed, you have an independent recollection of a meeting that occurred after an incident on June 4, 2015?

A **I'm not certain that a meeting occurred.**

Q Are you certain that you sent an e-mail shortly thereafter the June 4, 2015 event?

A **Yes.**

Q Are you certain that you made a statement within 45 minutes of the June 4, 2015 event?

A **Yes.**

Q Are you certain that Maria Castro adopted a statement in determining

Rich Moffett Court Reporting

Scott Reese
452

the discipline of David Edmond?

MS. LINEEN: Objection to form.

A **I'm not certain.**

Q Was the punishment the same as your statement?

MS. LINEEN: Objection to the form.

A **Partially.**

Q What wasn't?

A **They were allowed to go to graduation.**

Q Aside from that, it was the same?

A **Yes.**

MR. MORRIS: Okay. Again, the same thing. I'm going to reserve the right to recall this witness.

MS. LINEEN: I'm not agreeing to bring the witness back. You had more than seven hours with him, adequate time to depose him on anything relevant to this case.

MR. MORRIS: Okay. There's still outstanding documentation in

Rich Moffett Court Reporting

Scott Reese
453

discovery.

MS. LINEEN: You can make whatever application you'd like to make. I'm not agreeing to bring him back.

MR. MORRIS: I understand. You've made yourself quite clear. Again, we're stating on the record we're reserving the right.

MS. LINEEN: Great. I'm going to make a couple of statements on the record. We reserve the witness' right, pursuant to the federal rules, to review and sign the transcript. We do not concede the admissibility or the use of this video footage for any reason, but we are demanding a copy of the video.

And we are demanding a copy of the video of the depositions of Ms. Sears, Mr. Chan, Mr. Smith, and Dr. Castro. We are also demanding that the witnesses, Sears and Castro, be provided an opportunity to review and

Rich Moffett Court Reporting

Scott Reese
454

sign the transcripts, pursuant to the federal rules, as we have not received them. That's it.

MR. MORRIS: Counsel, please follow up your requests in writing.

MS. LINEEN: They're on the record.

MR. MORRIS: Please let me finish.

Pursuant to the federal rules of civil procedure, please follow up your requests in writing. We provided documents for counsel's signature of -- I believe it was Mr. Cipp and Mr. Chan. We still have not yet received them.

MS. LINEEN: Okay. But I'm asking for the transcripts for Sears and Dr. Castro, and I'm asking for copies of the videos of all the witnesses we deposed so far, and I have not gotten those.

MR. MORRIS: Please follow up in writing. I'm going to close the

Rich Moffett Court Reporting

Scott Reese
455

record. Thank you.

And we're done.

MS. LINEEN: Okay. For the record, I have 5:43.

(END TIME: 5:43 p.m.)

Rich Moffett Court Reporting

Scott Reese
456

A C K N O W L E D G E M E N T

STATE OF NEW YORK )
:ss
COUNTY OF )

I, SCOTT REESE, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of November 28, 2017; that the transcript is a true, complete and correct record of my testimony, and that the answers on the record as given by me are true and correct.

________________________
SCOTT REESE

Signed and subscribed to before me, this day of , 2018

________________________
Notary Public, State of New York

Rich Moffett Court Reporting

01/03/2018 09:38:23 AM Page 453 to 456 of 502 114 of 156 sheets

-----------------I N D E X-----------------

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| SCOTT REESE | MR. MORRIS | 5 |
| | MS. LINEEN | 447 |
| | MR. MORRIS | 450 |

DIRECTIONS: PAGES 26,27,145,153,154,154,166,417

RULINGS: None

MOTIONS: None

---------------DOCUMENT REQUEST---------------

PAGE 24 Production of that documentation.

PAGE 31 Production of that testimony.

PAGE 39 Production of the civil suit.

PAGE 68 Production of the documentation of which this deponent speaks, the New York State data on the disparity of treatment of African-American males in special ed.

PAGE 71 All documents the witness referring to in disciplinary referrals. All documents have been forwarded in these disciplinary referral guidelines to superintendent and all related documentation. So basically, the

meeting and any notes that are taken in regards to determining discipline.

PAGE 73 Production of that.

PAGE 131 Production of those notes as testified by this deponent.

PAGE 242 Production of that cellular phone building practice.

PAGE 263 Production of all SReese e-mails, as previously requested in several of our discovery demands, be produced.

PAGE 320 Continued preservation and production of all the meta data and electronic data that was stored on Mr. Reese's computer for the events of June 4, 2015, up until June 4, 2016.

PAGE 392 All documents, notes, reports created by Alicia Smith as it relates to this purported investigation.

PAGE 407 Call for not only for the production of redacted e-mails bearing LCSD-2461 to LCSD-2462. We're also going to call for the statement of references, as well as the text messages, as well as all other electronic communications relating to

this incident, by Renee Lopez, as indicated here in this e-mail.

PAGE 436 Production of everything that was initially submitted, as testified by this deponent.

PAGE 446 Production of all the documents of which you mentioned, including but not limited, to what she produced in writing.

---------INFORMATION TO BE FURNISHED--------

None

------------------EXHIBITS------------------

| PLAINTIFF'S FOR I.D. | | PAGE |
|---|---|---|
| 43 | Policy Manual, 12/18/14 | 118 |
| 44 | VADIR reports | 124 |
| 45 | Article, 10/2/07 | |
| 46 | Letter to Scott Reese from Allan Gerstenlauer, Superintendent | 162 |
| 47 | Policy Manual, 12/18/14 (VDIR) | 171 |
| 48 | Student Incident Report | 190 |
| 49 | E-mail, 1/28/12, 27 pages | 260 |

| | | |
|---|---|---|
| 50 | Letter from Maria Castro (revised) to Parent of B[redacted] W[redacted], 3 pages | 279 |
| 51 | Letter from Maria Castro to Parent of B[redacted] W[redacted] 3 pages | 276 |
| 52 | Letter from Michael Gargiulo to Parent of David Edmond, 6/8/15 | |
| 53 | Letter from Maria Castro to Parent of David Edmond, 6/4/15 | 287 |
| 54 | Letter from Maria Castro to Parent of David Edmond, 6/4/15 | |
| 55 | E-mails, 12 pages | 290 |
| 56 | E-mails from Scott Reese to Denise Doyen, 6/5/15, 4 pages | 297 |
| 57 | Statement/Recommendations from Scott Reese to Principal | 308 |
| 58 | E-mail from Scott Reese to Maria Castro, 6/4/15 | 314 |
| 59 | E-mail from Scott Reese, 6/4/15, 2 pages | 328 |
| 60 | E-mail from Scott Reese, 4 pages | 336 |
| 61 | E-mail from Scott Reese, 5 pages | 359 |
| 62 | E-mail from Scott Reese to James Perrotta, 1 page | 367 |

63 E-mail from Scott Reese to Maria Castro 374

64 E-mail from Scott Reese to Renee Lopez

65 E-mail from Scott Reese to Brian Makarius 386

66 E-mail from Scott Reese to Scott Schuster, 6/10/15 393

67 E-mail from Scott Reese to Maria Castro, 6/8/15 398

68 E-mail from Scott Reese to Maria Castro, 6/5/15, 2 pages 400

69 E-mail from Scott Reese to Renee Lopez, 6/5/15, 2 pages 401

70 Notice of Deposition of Scott Reese 409

71 PDCS Statement of Scott Reese, 3 pages 415

C E R T I F I C A T E

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

I, RICH MOFFETT, a Notary Public within and for the State of New York, do hereby certify:

That SCOTT REESE, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of November, 2017.

-------------------------

RICH MOFFETT

#

**#1-10** [1] - 1:17

$

**$10,000** [2] - 157:2, 160:2
**$300** [1] - 25:12

'

**'97** [1] - 15:5
**'98** [1] - 15:5
**'address** [1] - 60:20

1

**1** [12] - 48:19, 48:25, 49:16, 53:5, 86:8, 88:3, 88:7, 90:21, 97:4, 97:6, 271:20, 460:25
**1-10** [2] - 1:11, 1:16
**1-A** [1] - 133:18
**1/28/12** [1] - 459:25
**10** [9] - 144:16, 271:16, 376:18, 393:24, 394:4, 415:8, 416:16, 417:5, 419:2
**10-4s** [1] - 194:4
**10/2/07** [1] - 459:20
**103** [1] - 442:6
**105** [1] - 442:16
**10601** [1] - 3:12
**10:00** [5] - 322:13, 342:6, 342:7, 343:3, 343:4
**10:15** [1] - 360:6
**10:30** [1] - 315:22
**10:35** [2] - 291:4, 291:20
**10:37** [4] - 334:4, 334:9, 334:13, 334:16
**10:38** [3] - 316:6, 322:14, 334:17
**10:50** [2] - 329:15, 330:2
**10:56** [1] - 363:5
**10:58** [1] - 360:10
**11** [5] - 190:23, 263:12, 376:19, 425:4, 427:12
**11/27** [1] - 147:24
**1102** [1] - 3:11
**114** [1] - 2:22
**11501** [1] - 2:23
**11746** [2] - 1:21, 3:6
**11795** [1] - 5:15
**118** [1] - 459:18
**11:00** [1] - 263:18
**11:08** [1] - 106:22
**11:17** [1] - 107:2
**11:31** [1] - 402:19
**11:43** [1] - 405:21
**12** [14] - 47:16, 213:4, 271:22, 284:23, 284:25, 285:22, 285:25, 286:5, 340:9, 362:5, 389:15, 403:11, 427:22, 460:13
**12/18/14** [2] - 459:18, 459:23
**124** [1] - 459:19
**12:24** [2] - 387:2, 388:8
**12:38** [1] - 190:23
**12:39** [2] - 190:24, 190:25
**12:42** [2] - 191:7, 191:9
**13** [10] - 17:22, 17:24, 17:25, 41:6, 85:25, 88:8, 430:16, 431:4, 431:7, 431:21
**131** [1] - 458:5
**14** [2] - 432:25, 434:8
**146** [1] - 433:9
**15** [7] - 108:7, 108:8, 108:11, 434:8, 435:12, 435:13, 439:16
**16-CV-2871** [1] - 141:15
**1600** [8] - 195:25, 196:4, 199:2, 217:18, 218:15, 224:14, 356:9, 437:23
**1600's** [1] - 225:10
**1600s** [3] - 199:9, 199:11, 199:22
**162** [1] - 459:21
**17** [4] - 185:11, 185:14, 185:19, 436:18
**171** [1] - 459:23
**18** [4] - 108:14, 118:15, 436:23, 437:4
**18-year-old** [2] - 209:5, 228:23
**19** [1] - 439:24
**190** [1] - 459:24
**1989** [1] - 17:3
**1994** [1] - 16:24
**1997** [3] - 25:3, 26:6, 29:11
**1:33** [2] - 256:9, 256:10

2

**2** [8] - 85:13, 206:10, 263:13, 415:12, 418:16, 460:21, 461:13, 461:15
**20** [1] - 440:7
**2000** [3] - 57:5, 57:7, 169:3
**2004** [3] - 18:8, 18:17, 169:5
**2005** [1] - 169:7
**2006** [1] - 169:9
**2007** [3] - 158:5, 166:4, 169:11
**2007-2008** [3] - 39:14, 165:16, 165:24
**2008** [4] - 33:10, 33:12, 158:5, 169:13
**2008-2009** [1] - 160:10
**2010** [6] - 57:6, 57:7, 57:14, 57:16, 168:21, 169:3
**2013** [1] - 173:24
**2014** [25] - 55:5, 55:10, 55:18, 59:19, 86:22, 88:10, 90:25, 94:5, 94:13, 108:14, 109:9, 117:14, 118:14, 118:15, 123:10, 132:13, 132:16, 133:13, 133:25, 134:25, 173:21, 173:24, 174:3, 373:5, 399:22
**2014-15** [2] - 125:13, 132:22
**2014-2015** [6] - 88:25, 117:3, 172:22, 246:14, 379:5, 393:9
**2014-2015-year** [1] - 132:9
**2015** [275] - 35:11, 35:12, 42:7, 43:17, 45:2, 55:2, 59:20, 86:22, 88:10, 91:2, 94:5, 94:14, 109:9, 117:15, 123:10, 132:13, 132:17, 133:13, 133:25, 135:2, 173:21, 175:12, 175:20, 176:14, 177:9, 178:15, 178:25, 179:15, 179:20, 180:6, 180:9, 180:12, 180:15, 180:23, 181:2, 181:5, 181:8, 186:15, 187:17, 187:21, 189:8, 189:19, 190:9, 190:12, 190:15, 191:12, 235:3, 238:3, 238:8, 238:21, 238:25, 243:23, 244:6, 244:16, 244:22, 245:3, 245:6, 245:9, 245:12, 245:25, 247:14, 248:7, 248:10, 248:13, 248:17, 249:14, 250:13, 250:17, 251:5, 251:9, 252:10, 253:7, 253:10, 254:19, 257:4, 257:18, 257:24, 260:3, 260:6, 264:23, 267:13, 269:3, 269:22, 276:15, 281:18, 282:8, 284:13, 284:22, 287:13, 289:11, 289:17, 290:2, 290:5, 292:8, 296:3, 296:5, 296:8, 296:17, 296:19, 296:24, 297:4, 299:2, 299:5, 299:8, 299:17, 301:23, 302:6, 302:21, 304:13, 304:25, 305:13, 306:19, 308:7, 309:6, 309:18, 309:20, 309:24, 310:23, 311:5, 313:7, 314:11, 315:23, 316:5, 316:23, 319:24, 320:8, 320:14, 320:20, 321:24, 322:6, 322:14, 322:20, 325:14, 325:18, 326:6, 326:11, 326:16, 326:20, 326:25, 327:10, 329:22, 330:2, 331:14, 333:10, 334:3, 334:10, 334:13, 335:8, 335:23, 336:4, 336:9, 337:20, 340:11, 341:16, 341:22, 342:6, 342:7, 342:16, 343:2, 343:3, 343:4, 343:19, 343:21, 344:23, 345:7, 352:8, 352:11, 353:5, 353:8, 353:20, 354:2, 354:15, 354:21, 355:18, 356:2, 356:12, 357:4, 358:2, 358:9, 358:13, 360:6, 360:10, 362:10, 362:13, 363:5, 363:22, 364:9, 365:4, 366:10, 366:16, 367:9, 367:25, 369:15, 371:6, 372:4, 373:5, 373:16, 373:22, 374:13, 374:16, 376:22, 377:13, 377:16, 377:20, 378:3, 383:2, 383:13, 384:13, 384:18, 384:22, 385:18, 385:22, 386:4, 386:25, 388:8, 390:20, 390:24, 391:4, 392:21, 392:25, 393:24, 394:4, 398:22, 399:7, 400:13, 400:22, 401:2, 401:8, 401:23, 402:18, 405:20, 410:16, 415:8, 416:16, 417:5, 417:6, 417:12, 417:21, 418:18, 419:2, 420:5, 420:9, 422:6, 423:2, 423:22, 425:23, 426:18, 429:14, 432:4, 435:3, 435:14, 435:17, 437:16, 438:11, 439:12, 440:3, 440:11, 440:15, 443:19, 443:24, 444:7, 447:20, 448:9, 449:15, 450:6, 450:12, 450:17, 450:20, 450:21, 451:8, 451:13, 451:17, 451:22, 458:15
**2016** [3] - 54:22, 319:24, 458:16
**2017** [7] - 1:22, 54:20,

313:9, 409:11, 411:24, 456:10, 462:22
**2018** [1] - 456:22
**21** [1] - 440:18
**22** [1] - 441:20
**23-page** [1] - 118:9
**24** [3] - 15:22, 442:7, 457:13
**242** [1] - 458:7
**2438** [1] - 294:4
**26,27,145,153,154, 154,166,417** [1] - 457:8
**260** [1] - 459:25
**263** [1] - 458:9
**27** [1] - 459:25
**276** [1] - 460:5
**279** [1] - 460:2
**28** [2] - 1:22, 456:10
**287** [1] - 460:9
**28th** [1] - 462:21
**29** [1] - 435:14
**290** [1] - 460:13
**297** [1] - 460:14
**2:10** [1] - 256:15
**2:16-cv-2871** [1] - 1:6

**3**

**3** [31] - 206:10, 415:12, 415:19, 418:16, 423:5, 423:6, 423:9, 424:6, 425:4, 427:12, 427:22, 430:16, 431:4, 431:7, 431:21, 432:25, 433:10, 435:13, 436:18, 436:23, 437:4, 438:15, 439:24, 440:8, 440:19, 442:7, 442:22, 460:4, 460:6, 461:18
**3's** [1] - 424:9
**3,000** [2] - 240:23, 241:4
**30** [2] - 202:13, 322:25
**3020-A** [4] - 159:9, 159:12, 159:13, 159:15
**308** [1] - 460:16
**31** [1] - 457:14
**310** [2] - 1:21, 3:5
**314** [1] - 460:18
**320** [1] - 458:12
**328** [1] - 460:20
**33** [2] - 1:21, 3:5
**336** [1] - 460:22
**34** [1] - 5:14
**3489-2007** [1] - 164:16
**35** [2] - 425:5, 425:6
**359** [1] - 460:23
**36** [1] - 426:22
**367** [1] - 460:24
**37** [1] - 427:12
**374** [1] - 461:2
**38** [2] - 322:17, 427:18
**386** [1] - 461:6
**39** [1] - 457:15
**392** [1] - 458:17
**393** [1] - 461:8
**398** [1] - 461:10
**3:14** [1] - 325:8
**3:21** [1] - 325:12
**3:32** [1] - 336:17
**3:34** [1] - 336:21
**3:59** [2] - 363:9, 363:10

**4**

**4** [211] - 35:12, 43:17, 45:2, 118:14, 175:12, 175:20, 176:13, 177:8, 178:15, 178:25, 179:15, 179:20, 180:6, 180:9, 180:12, 180:15, 180:23, 181:2, 181:5, 181:8, 186:15, 187:17, 187:21, 189:8, 189:19, 190:9, 190:12, 190:15, 191:12, 235:3, 238:3, 238:8, 238:20, 238:25, 243:22, 244:6, 244:16, 244:22, 245:2, 245:6, 245:9, 245:12, 245:25, 247:14, 248:7, 248:10, 248:13, 248:17, 249:14, 250:12, 250:16, 251:5, 251:9, 252:10, 254:19, 257:4, 257:18, 257:24, 260:3, 260:6, 264:23, 267:13, 269:3, 269:21, 276:15, 281:18, 282:8, 284:13, 284:22, 287:13, 289:17, 290:2, 290:5, 291:20, 292:8, 296:24, 297:4, 299:5, 299:8, 299:17, 301:23, 302:21, 304:13, 304:25, 305:13, 306:19, 308:6, 309:6, 310:23, 311:5, 314:11, 315:23, 316:5, 316:23, 319:24, 320:8, 320:14, 320:20, 321:24, 322:5, 322:14, 322:20, 325:14, 325:17, 326:5, 326:11, 326:15, 326:20, 326:25, 327:10, 329:15, 329:22, 330:2, 331:14, 333:10, 334:3, 334:10, 334:13, 335:8, 335:23, 336:4, 336:9, 340:11, 341:16, 341:22, 342:6, 342:16, 343:2, 343:3, 343:19, 343:21, 344:23, 345:7, 353:5, 353:8, 353:20, 354:2, 354:15, 354:21, 355:18, 356:2, 356:12, 357:4, 358:2, 358:9, 358:13, 362:10, 362:13, 363:22, 364:9, 365:3, 366:10, 366:16, 369:15, 371:6, 373:16, 373:22, 378:3, 383:2, 383:13, 384:13, 384:17, 384:22, 385:18, 385:22, 386:4, 390:20, 390:24, 391:4, 399:7, 399:22, 400:22, 401:2, 410:16, 417:6, 417:12, 417:20, 418:18, 420:5, 420:9, 422:6, 422:25, 423:22, 425:23, 426:18, 429:14, 432:4, 435:3, 435:17, 437:16, 438:11, 439:12, 440:3, 440:11, 440:15, 443:19, 443:24, 444:7, 447:20, 448:8, 449:15, 450:6, 450:11, 451:13, 451:17, 451:21, 458:15, 458:16, 460:15, 460:22
**40** [3] - 202:14, 427:21, 428:3
**400** [1] - 461:12
**401** [1] - 461:14
**407** [1] - 458:20
**409** [1] - 461:16
**415** [1] - 461:17
**43** [5] - 117:23, 118:2, 118:5, 118:10, 459:18
**436** [1] - 459:4
**44** [9] - 124:3, 124:6, 124:7, 124:10, 124:13, 125:14, 135:8, 428:22, 459:19
**445** [1] - 3:11
**446** [1] - 459:7
**447** [1] - 457:5
**45** [10] - 153:7, 153:8, 316:6, 316:12, 316:23, 317:16, 317:20, 321:18, 451:21, 459:20
**450** [1] - 457:6
**46** [6] - 162:4, 162:5, 162:9, 162:11, 429:2, 459:21
**47** [7] - 171:3, 171:4, 171:5, 171:8, 171:13, 429:24, 459:23
**48** [5] - 190:17, 258:16, 258:20, 430:15, 459:24
**49** [6] - 260:17, 260:21, 260:22, 430:19, 430:24, 459:25
**4:06** [1] - 363:15
**4th** [16] - 42:8, 237:14, 252:18, 289:11, 291:4, 299:2, 302:6, 309:20, 309:23, 311:12, 372:4, 382:23, 395:17, 426:12, 426:15, 444:11

**5**

**5** [32] - 309:18, 337:7, 337:20, 343:4, 352:7, 352:11, 360:6, 360:10, 363:4, 367:9, 367:25, 374:13, 376:22, 377:13, 377:16, 377:19, 386:25, 388:8, 392:21, 392:25, 400:13, 401:7, 401:23, 402:18, 405:20, 409:11, 411:24, 450:17, 450:20, 451:8, 457:4, 460:23
**5-10** [2] - 44:20, 217:11
**50** [7] - 170:9, 202:21, 279:15, 279:19, 287:9, 431:3, 460:2
**51** [7] - 276:17, 276:22, 277:8, 277:12, 278:4, 431:6, 460:5
**516-280-4664** [1] - 2:23
**52** [1] - 460:7
**53** [4] - 287:17, 287:21, 287:22, 460:9
**54** [1] - 460:11
**55** [5] - 290:8, 290:12, 290:17, 290:21, 460:13
**56** [5] - 297:12, 297:16, 297:18, 431:20, 460:14
**57** [13] - 307:25, 308:5, 308:10, 308:24, 309:11, 309:22, 314:5, 317:24, 318:11, 448:21, 449:3, 449:4, 460:16
**58** [12] - 314:16, 314:17, 314:22, 315:7, 317:23, 318:10, 318:21, 322:10, 432:8, 432:11, 448:21, 460:18
**59** [4] - 327:24, 328:4, 328:10, 460:20
**5:23** [1] - 443:2
**5:28** [2] - 443:3, 443:5
**5:33** [1] - 443:15
**5:43** [2] - 455:5, 455:6
**5th** [4] - 309:23, 342:6, 374:15, 450:21

**6**

**6** [1] - 197:9

**6/10/15** [2] - 416:13, 461:9
**6/4/15** [4] - 460:10, 460:12, 460:19, 460:20
**6/5/15** [3] - 460:15, 461:13, 461:15
**6/8/15** [2] - 460:8, 461:11
**60** [7] - 336:13, 336:24, 344:2, 358:19, 435:13, 460:22
**61** [6] - 358:20, 358:21, 358:25, 360:4, 360:20, 460:23
**62** [5] - 366:21, 367:2, 367:3, 367:17, 460:24
**63** [4] - 373:25, 374:5, 374:6, 461:2
**630** [1] - 2:22
**631)345-2914** [1] - 254:5
**64** [1] - 461:4
**65** [4] - 386:14, 386:18, 386:23, 461:6
**66** [4] - 393:15, 393:20, 394:7, 461:8
**67** [3] - 397:20, 397:24, 461:10
**68** [5] - 400:8, 400:11, 400:16, 457:16, 461:12
**69** [4] - 401:13, 401:17, 401:18, 461:14
**6:30** [1] - 298:6
**6:40** [2] - 292:14, 292:17

## 7

**7** [2] - 60:16, 125:23
**70** [9] - 408:20, 408:24, 408:25, 409:9, 409:14, 409:17, 436:17, 436:20, 461:16
**71** [10] - 414:16, 414:18, 414:22, 414:23, 414:25, 416:8, 418:17, 422:17, 457:20, 461:17
**72** [1] - 436:22
**73** [2] - 437:3, 458:4
**75** [1] - 438:15
**76** [1] - 438:18
**7:33** [1] - 374:16
**7:42** [1] - 374:14
**7:45** [1] - 368:2
**7:50** [1] - 297:23

## 8

**8** [1] - 398:22
**80** [1] - 440:18
**81** [1] - 439:24
**86** [1] - 440:7
**8:43** [1] - 394:4
**8:48** [1] - 393:25

## 9

**90** [2] - 423:21, 441:9
**91** [1] - 441:16
**911** [3] - 128:19, 128:20, 239:24
**92** [1] - 441:16
**97** [1] - 441:20
**9:30** [1] - 1:23
**9:55** [1] - 191:17
**9:59** [2] - 337:7, 337:20

## A

**a.m** [28] - 1:23, 263:18, 292:14, 298:6, 315:22, 322:13, 322:14, 329:15, 330:2, 334:4, 334:9, 334:13, 337:7, 337:21, 342:6, 342:7, 343:3, 343:4, 360:6, 360:10, 363:5, 368:2, 374:14, 374:16, 393:25, 394:4, 402:19, 405:21
**able** [7] - 7:6, 9:17, 52:14, 86:3, 98:18, 218:5, 446:10
**Absent** [1] - 83:8
**absent** [1] - 429:25
**absolutely** [5] - 51:12, 132:3, 141:14, 197:14, 240:22
**abuse** [5] - 50:11, 133:4, 164:6, 164:11, 186:24
**academically** [1] - 44:10
**accept** [1] - 18:11
**acceptable** [5] - 82:15, 353:11, 353:15, 353:24, 354:5
**accepted** [1] - 159:22
**access** [7] - 181:22, 182:2, 192:25, 319:14, 355:24, 387:7, 411:2
**accessible** [1] - 87:6
**accident** [9] - 13:22, 13:23, 13:24, 14:3, 14:5, 29:21, 52:10, 156:5, 166:4
**accompany** [1] - 199:21
**accordance** [4] - 54:2, 91:25, 114:4, 116:10
**according** [1] - 391:5
**account** [3] - 46:3, 319:18, 356:23
**accounts** [4] - 125:16, 432:12, 432:14, 435:2
**accurate** [42] - 9:15, 10:8, 132:6, 134:14, 136:12, 136:22, 143:24, 146:17, 148:22, 148:24, 148:25, 153:11, 153:17, 153:21, 153:23, 163:18, 277:22, 278:2, 285:19, 288:16, 310:19, 344:11, 361:18, 361:25, 362:5, 379:25, 389:7, 389:9, 405:10, 405:13, 405:17, 414:14, 415:24, 418:7, 420:3, 426:25, 428:25, 429:3, 429:25, 448:14, 448:18, 450:18
**accurately** [1] - 9:19
**accusations** [3] - 269:21, 276:9, 335:22
**accuse** [1] - 40:20
**accused** [1] - 14:9
**acknowledge** [2] - 121:2, 186:5
**Act** [12] - 104:23, 107:6, 108:14, 108:18, 109:17, 110:11, 115:19, 116:13, 117:2, 117:14, 185:16, 185:20
**act** [3] - 50:14, 103:21, 161:2
**acted** [4] - 176:3, 390:19, 390:23, 391:3
**acting** [1] - 223:19
**action** [8] - 110:25, 111:2, 111:3, 112:20, 113:25, 351:18, 423:19, 462:17
**actions** [11] - 50:12, 95:9, 95:16, 101:4, 304:25, 410:8, 429:10, 429:14, 429:21, 430:11, 430:23
**actor** [1] - 112:10
**actual** [6] - 26:15, 74:17, 79:10, 79:14, 119:22, 153:20
**add** [5] - 9:7, 147:11, 419:17, 422:15, 450:10
**addendum** [1] - 87:13
**addendums** [5] - 87:15, 87:25, 88:11, 88:17, 88:24
**additional** [1] - 9:4
**address** [32] - 5:13, 46:5, 46:7, 60:7, 61:5, 63:9, 113:25, 129:12, 129:19, 130:4, 152:18, 211:7, 251:15, 251:21, 251:25, 252:4, 261:8, 291:6, 291:21, 298:7, 300:10, 306:2, 315:5, 337:17, 337:20, 394:15, 394:16, 394:21, 395:2, 395:8, 398:9, 408:11
**addressed** [2] - 64:17, 232:7
**addresses** [5] - 46:14, 105:14, 264:9, 264:13, 291:14
**adequate** [1] - 452:21
**adequately** [1] - 107:18
**adhere** [2] - 121:5, 121:9
**admin** [4] - 129:24, 130:4, 130:23, 379:17
**administer** [1] - 4:16
**administered** [1] - 178:22
**administration** [4] - 303:16, 306:13, 400:25, 405:15
**administrative** [19] - 15:21, 18:12, 18:13, 270:13, 270:15, 271:9, 274:12, 281:25, 321:6, 321:13, 321:16, 322:4, 323:3, 323:18, 324:16, 359:5, 359:10, 363:21, 449:16
**Administrative** [1] - 358:23
**administrator** [7] - 15:13, 15:15, 47:24, 72:20, 200:2, 206:23, 275:2
**administrators** [6] - 70:6, 70:10, 78:2, 246:24, 279:6, 306:2
**Administrators** [2] - 158:25, 314:19
**admins** [1] - 380:7
**admissibility** [1] - 453:16
**admissible** [3] - 146:24, 146:25, 154:10
**adopted** [6] - 118:15, 269:24, 307:11, 307:14, 341:21, 451:25
**adrenaline** [1] - 228:6
**adult** [4] - 201:19, 206:24, 229:8, 240:16
**adult-size** [1] - 229:8
**adults** [1] - 201:23
**advancement** [1] - 169:17
**advertises** [1] - 179:7
**advisement** [17] - 24:16, 31:23, 40:5, 68:13, 71:19, 89:4, 94:18, 115:9, 132:2, 155:25, 242:13, 263:5, 320:3, 392:12, 408:6, 436:16, 446:19
**advisor** [1] - 398:6
**advisors** [2] - 380:20, 381:19
**Affairs** [5] - 253:13, 255:17, 255:23, 422:21, 422:24
**African** [10] - 44:21, 67:7, 68:10, 217:12, 420:15, 421:13, 421:19, 421:23, 445:4, 457:19

African-American [10] - 44:21, 67:7, 68:10, 217:12, 420:15, 421:13, 421:19, 421:23, 445:4, 457:19
afternoon [7] - 142:8, 151:16, 151:20, 249:14, 249:17, 263:12
afterwards [3] - 173:22, 199:13, 221:14
age [1] - 119:8
aggression [1] - 79:20
aggressive [2] - 84:11, 85:11
aggressor [1] - 110:21
ago [12] - 6:21, 13:2, 13:4, 13:20, 35:11, 55:21, 66:21, 144:17, 168:9, 445:3, 447:18, 451:2
agree [49] - 50:13, 50:17, 59:22, 60:4, 60:15, 61:3, 61:4, 61:16, 61:22, 91:22, 111:22, 111:24, 112:18, 113:8, 113:21, 119:19, 179:22, 268:7, 268:15, 282:17, 284:10, 284:14, 317:19, 383:11, 383:18, 395:22, 404:19, 426:22, 427:11, 427:18, 427:20, 427:21, 428:2, 428:22, 430:4, 430:15, 430:18, 431:3, 431:6, 431:20, 432:2, 436:17, 436:22, 437:3, 440:20, 440:23, 441:9, 442:6, 442:9
AGREED [3] - 4:3, 4:9, 4:14
agreed [3] - 268:10, 270:5, 270:11
agreeing [4] - 6:9, 447:12, 452:19, 453:5
Agreement [2] - 162:6, 163:14
agreement [5] - 162:12, 162:16, 163:19, 163:25, 165:2
agrees [1] - 75:7
ahead [2] - 140:9, 148:11
ahold [1] - 349:24
air [5] - 347:15, 347:17, 347:19, 347:20, 347:21
airlifted [2] - 136:7, 156:3
alcohol [2] - 9:25, 153:10
alcohol-related [1] - 153:10
alcove [1] - 208:5
alert [3] - 187:22, 189:4, 428:5
alerted [1] - 428:8
Ali [2] - 445:18, 445:19
Alicia [14] - 259:13, 259:14, 259:16, 270:18, 315:3, 323:23, 329:3, 391:7, 391:9, 391:11, 391:20, 392:7, 448:7, 458:18
alicia [1] - 237:20
Allan [2] - 161:19, 459:21
allan [1] - 161:20
allegation [6] - 304:7, 304:16, 433:8, 441:21, 441:25, 442:4
allegations [14] - 34:14, 40:17, 42:9, 114:2, 114:16, 114:19, 420:16, 422:8, 424:19, 430:19, 441:16, 442:21, 443:17, 443:23
allege [2] - 114:16, 311:11
alleged [1] - 430:23
allow [11] - 28:5, 82:22, 138:19, 140:3, 144:8, 144:19, 145:5, 146:18, 147:16, 167:16, 215:13
allowed [18] - 38:20, 38:23, 51:18, 53:25, 62:7, 83:4, 83:9, 143:18, 146:7, 149:19, 161:2, 239:3, 239:11, 239:23, 240:18, 354:15, 355:24, 452:11
almost [2] - 266:22, 270:19
alone [1] - 269:13
altercation [9] - 78:19, 78:24, 79:2, 79:15, 86:2, 86:4, 211:11, 211:17, 351:13
altercations [3] - 73:22, 79:10, 81:12
altered [1] - 318:9
alternate [1] - 445:8
alternatives [2] - 445:9, 445:24
Amendment [2] - 154:14, 166:20
American [10] - 44:21, 67:7, 68:10, 217:12, 420:15, 421:13, 421:19, 421:23, 445:4, 457:19
amount [1] - 267:18
AND [6] - 1:11, 1:16, 1:16, 4:2, 4:8, 4:13
and-a-half [1] - 19:10
Ann [1] - 324:8
answer [62] - 7:3, 8:16, 8:25, 9:8, 9:14, 9:15, 9:18, 10:2, 12:19, 19:24, 26:11, 27:4, 27:16, 31:2, 37:15, 38:16, 38:25, 43:2, 49:18, 51:11, 51:22, 52:3, 52:17, 52:24, 57:25, 58:14, 82:19, 117:17, 122:9, 137:9, 138:6, 138:13, 139:20, 144:6, 144:8, 144:19, 145:3, 145:5, 146:19, 153:22, 153:25, 154:5, 154:16, 166:9, 166:22, 167:2, 167:6, 171:25, 191:24, 192:3, 261:9, 316:21, 353:16, 363:19, 409:4, 409:5, 409:16, 412:8, 431:24, 434:4, 446:23, 446:25
answered [5] - 37:13, 103:25, 312:17, 353:21, 442:22
answering [7] - 7:14, 9:12, 143:20, 144:12, 149:5, 151:6, 218:11
answers [4] - 6:25, 7:4, 8:7, 456:13
anticipate [7] - 58:23, 83:19, 84:10, 84:15, 84:19, 85:8, 90:7
anyway [1] - 436:8
AP [1] - 271:2
apologize [5] - 37:16, 90:8, 161:14, 361:8, 400:15
apology [1] - 161:12
appear [1] - 387:6
appearance [2] - 44:10, 44:16
appeared [3] - 301:25, 302:3, 302:22
applicable [1] - 114:4
application [3] - 23:21, 143:5, 453:4
applies [1] - 59:17
apply [1] - 59:12
appointment [6] - 260:11, 260:15, 261:13, 263:7, 263:15, 263:17
AppointmentPlus [2] - 261:10, 263:10
appointments [3] - 262:3, 263:9, 264:4
appreciate [9] - 58:22, 80:22, 204:5, 232:4, 265:19, 298:3, 317:14, 361:11, 396:14
appreciated [2] - 337:15, 343:25
apprehension [2] - 429:8, 429:16
approach [2] - 281:4, 428:6
approached [1] - 281:10
appropriate [6] - 75:11, 114:3, 178:12, 345:23, 380:23, 382:19
appropriately [3] - 107:25, 345:20, 345:22
approve [3] - 69:16, 75:8, 379:14
APs [1] - 279:7
arcane [1] - 90:9
area [18] - 199:5, 208:7, 215:16, 228:8, 228:22, 230:7, 230:9, 230:14, 231:10, 232:8, 232:21, 233:9, 330:7, 330:15, 330:17, 332:21, 346:21, 348:3
arguably [1] - 146:24
Arizona [1] - 445:21
arm [12] - 196:22, 198:3, 198:13, 205:17, 205:19, 205:23, 208:3, 216:5, 218:23, 219:7, 419:19, 419:24
arms [7] - 196:12, 196:13, 203:11, 206:2, 206:20, 223:11, 231:24
arrest [12] - 26:16, 26:17, 30:10, 30:13, 33:16, 144:16, 145:2, 146:16, 146:21, 153:10, 161:8, 166:6
arrested [7] - 24:20, 25:2, 25:4, 144:21, 146:8, 146:9, 396:18
arrests [2] - 146:6, 146:14
arrival [1] - 73:24
arrive [1] - 380:22
article [7] - 136:4, 136:18, 144:14, 144:15, 146:13, 147:24, 156:18
Article [1] - 459:20
arts [3] - 14:25, 15:7, 16:15
ascertain [1] - 9:17
aside [46] - 10:25, 13:10, 34:9, 45:7, 45:12, 46:17, 96:2, 96:6, 97:19, 102:25, 116:21, 123:13, 156:16, 163:24, 165:12, 171:2, 243:19, 244:4, 244:21, 245:2, 245:18, 248:3, 255:10, 259:23, 267:11, 268:24, 287:11, 289:14, 295:5, 299:13, 302:22, 307:15, 310:13, 312:19, 325:16, 370:19, 373:20, 381:25, 386:8, 390:8, 401:7, 401:10, 408:19, 451:6, 451:10, 452:13
Aside [5] - 35:20, 44:24, 46:13, 164:20, 422:23
asphyxia [1] - 182:24

**asphyxiation** [1] - 52:9
**assault** [3] - 28:19, 160:18, 160:21
**assaulted** [2] - 429:9, 429:17
**asshole** [29] - 196:7, 196:10, 199:16, 201:4, 202:11, 202:22, 203:2, 203:5, 203:8, 203:17, 203:22, 203:23, 203:24, 204:8, 204:9, 204:13, 204:22, 205:2, 205:3, 205:5, 205:7, 212:11, 212:18, 224:20, 224:22, 279:11, 281:6, 281:12, 352:2
**assholes** [2] - 204:12, 224:5
**assist** [7] - 196:5, 199:14, 229:15, 237:24, 238:2, 238:5, 437:24
**ASSISTANT** [1] - 1:13
**Assistant** [2] - 230:12, 231:12
**assistant** [63] - 17:15, 18:2, 18:18, 21:15, 56:14, 56:20, 59:11, 59:15, 59:23, 60:6, 60:18, 61:6, 62:23, 63:2, 63:10, 63:13, 63:14, 63:18, 69:9, 69:10, 69:13, 70:11, 70:13, 78:6, 78:8, 78:16, 81:20, 82:5, 82:6, 85:24, 92:22, 102:7, 102:21, 103:17, 121:13, 124:25, 130:24, 157:24, 160:7, 161:3, 168:18, 176:18, 178:8, 192:19, 195:23, 237:3, 242:25, 243:4, 248:5, 259:15, 266:18, 268:5, 268:25, 270:16, 270:22, 305:20, 321:5, 324:2, 324:19, 382:6, 411:11, 428:8, 428:9
**assisted** [2] - 300:12, 445:15
**ASSOCIATES** [1] - 3:9
**Association** [1] - 159:2
**associations** [1] - 20:25
**assume** [2] - 74:8, 226:21
**assuming** [6] - 201:20, 201:22, 222:15, 308:22, 346:22, 359:13
**athlete** [1] - 209:5
**athletic** [8] - 44:21, 208:8, 228:24, 230:11, 233:6, 233:17, 233:21, 439:5
**atmosphere** [1] - 380:21
**attached** [1] - 55:25
**attain** [1] - 16:14
**attained** [3] - 15:8, 15:20, 16:19
**attempted** [4] - 225:17, 300:10, 417:21, 442:24
**attempting** [1] - 225:23
**attend** [7] - 244:18, 245:5, 245:10, 378:9, 379:24, 380:3, 384:24
**attendance** [1] - 164:8
**attended** [1] - 245:20
**attending** [1] - 378:4
**attention** [18] - 59:4, 60:24, 61:10, 87:9, 96:4, 112:15, 125:22, 132:5, 152:6, 163:13, 175:11, 278:24, 285:18, 418:16, 425:4, 440:7, 440:18, 442:16
**attorney** [23] - 7:11, 39:5, 45:8, 74:7, 141:2, 141:8, 144:18, 145:4, 145:6, 145:17, 146:22, 151:7, 151:9, 151:10, 154:8, 154:25, 158:19, 158:21, 163:4, 166:16, 167:15, 167:19, 442:2
**attorney's** [1] - 157:17
**attorney/client** [1] - 39:2
**Attorneys** [2] - 3:4, 3:10
**attorneys** [4] - 4:3, 45:12, 45:14, 424:12
**audio** [1] - 45:18
**audit** [13] - 66:6, 97:19, 98:3, 98:12, 98:19, 99:3, 99:14, 101:5, 101:15, 101:24, 444:14, 444:16, 444:24
**audits** [3] - 97:21, 99:19, 100:3
**authorize** [2] - 430:3, 430:8
**authorized** [1] - 4:16
**automated** [2] - 261:19, 261:22
**automatically** [1] - 261:11
**available** [1] - 192:21
**Avenue** [2] - 3:11, 16:21
**avoid** [1] - 368:8
**award** [1] - 401:20
**aware** [65] - 41:22, 112:20, 113:15, 114:15, 135:22, 182:18, 182:21, 182:23, 183:3, 186:14, 186:19, 186:22, 187:3, 187:10, 187:24, 188:19, 188:22, 211:10, 211:16, 211:21, 211:25, 238:23, 240:14, 258:3, 261:24, 264:19, 289:15, 299:14, 299:16, 299:19, 299:21, 304:6, 304:14, 304:15, 304:23, 305:12, 356:20, 356:24, 407:13, 420:16, 422:8, 423:18, 423:21, 424:18, 431:19, 432:7, 432:14, 432:16, 432:21, 432:24, 433:7, 433:8, 433:14, 433:17, 433:23, 433:25, 434:5, 434:12, 434:13, 434:25, 441:15, 441:18, 441:20, 441:23, 441:24
**awareness** [1] - 116:12

**B**

**bachelor** [2] - 16:15
**bachelor's** [2] - 16:17, 16:23
**backed** [2] - 197:7, 216:16
**background** [4] - 78:9, 105:15, 260:8, 269:9
**backpacks** [2] - 84:24, 85:14
**backward** [1] - 219:5
**backwards** [2] - 14:22, 218:22
**bad** [1] - 206:23
**bags** [1] - 85:15
**ballpark** [1] - 72:21
**bandage** [2] - 219:24, 219:25
**bar** [1] - 446:21
**Barbara** [5] - 237:20, 270:19, 323:23, 324:10, 329:6
**barbecues** [1] - 170:5
**barely** [1] - 427:7
**barking** [4] - 197:16, 216:18, 216:20, 222:13
**barricade** [1] - 299:18
**based** [11] - 65:25, 66:23, 96:22, 98:3, 98:22, 100:12, 101:5, 133:2, 134:7, 135:12, 135:16
**basis** [12] - 25:8, 27:10, 64:14, 96:22, 119:8, 119:22, 126:6, 167:7, 167:9, 172:10, 362:23, 410:3
**Bates** [7] - 260:18, 260:23, 290:17, 297:16, 308:11, 315:8, 394:7
**Bates-stamped** [2] - 290:17, 308:11
**bathroom** [1] - 191:3
**battered** [2] - 429:9, 429:17
**battle** [1] - 230:3
**BE** [1] - 459:13
**bear** [13] - 345:25, 346:9, 346:14, 346:17, 346:19, 346:23, 346:25, 348:7, 348:21, 349:8, 350:9, 350:19
**Bear** [1] - 354:11
**bear-hug** [2] - 345:25, 346:19
**bear-hugged** [5] - 346:9, 346:14, 346:17, 350:9, 350:19
**bearing** [11] - 118:9, 125:15, 260:22, 297:16, 315:7, 318:12, 374:6, 386:24, 407:20, 415:19, 458:21
**bears** [6] - 134:17, 147:24, 287:24, 328:7, 394:7, 400:18
**Beatrice** [1] - 104:14
**beauty** [2] - 317:10, 321:9
**became** [1] - 299:21
**become** [9] - 112:20, 187:10, 187:24, 240:14, 258:3, 289:15, 299:14, 299:16, 441:24
**began** [9] - 193:12, 196:21, 198:5, 198:13, 205:16, 208:14, 216:4, 218:21
**begin** [1] - 7:13
**beginning** [7] - 116:19, 121:16, 146:4, 169:23, 174:16, 174:18, 198:18
**behave** [1] - 380:22
**Behavior** [1] - 82:12
**behavior** [6] - 82:17, 82:24, 84:18, 84:19, 170:21, 179:24
**behind** [7] - 165:10, 199:24, 200:17, 212:12, 231:13, 345:25, 346:22
**belief** [3] - 83:23, 302:24, 377:7
**bell** [2] - 194:24, 359:4
**belong** [3] - 20:24, 426:9, 426:12
**below** [1] - 153:13
**benefits** [1] - 53:11
**Beowlay** [1] - 437:14
**BEOWLAY** [1] - 437:15
**beside** [2] - 10:17, 233:18
**best** [8] - 70:7, 134:15, 174:19, 192:4, 194:12, 194:14, 316:19, 409:5
**better** [1] - 8:19

**Between** [1] - 162:6
**between** [39] - 4:3, 20:10, 20:13, 25:22, 57:15, 79:3, 79:10, 79:15, 95:21, 127:11, 157:19, 162:12, 164:3, 169:2, 211:13, 232:20, 238:4, 321:22, 322:5, 322:13, 327:25, 328:11, 329:21, 331:21, 332:16, 339:11, 342:5, 343:3, 347:4, 348:22, 356:12, 383:13, 384:4, 386:21, 393:21, 400:24, 411:8, 411:23, 444:20
**beyond** [2] - 16:10, 103:3
**bias** [8] - 104:7, 104:21, 105:3, 105:7, 105:12, 105:14, 105:16, 105:19
**biases** [1] - 60:20
**bidding** [1] - 445:22
**big** [1] - 219:25
**bio** [1] - 18:4
**biology** [2] - 16:16, 18:23
**birthdays** [1] - 170:5
**bit** [2] - 199:3, 263:6
**black** [1] - 402:8
**blacked** [1] - 402:9
**blocked** [1] - 195:18
**blogs** [1] - 411:6
**blood** [1] - 462:17
**blow** [1] - 26:8
**blows** [5] - 198:13, 205:16, 212:20, 216:24, 218:23
**Board** [12] - 49:2, 49:4, 49:5, 49:7, 87:17, 119:5, 119:20, 164:24, 171:6, 384:11, 384:17, 384:20
**board** [8] - 22:20, 97:14, 130:21, 171:10, 171:13, 240:13, 384:15, 403:23
**bodied** [2] - 369:24, 370:3
**body** [7] - 65:22, 83:15, 206:21, 299:18, 331:21, 331:23, 350:4
**bold** [1] - 153:13
**book** [2] - 50:20, 118:11
**boom** [4] - 213:7
**boss** [2] - 63:10, 134:25
**bothering** [2] - 110:13, 140:24
**bottom** [7] - 278:14, 280:9, 288:8, 415:6, 415:16, 415:20, 418:10
**bound** [16] - 48:7, 48:9, 48:11, 49:24, 72:24, 89:5, 89:9, 89:12, 89:15, 89:19, 109:14, 109:15, 112:25, 113:6, 118:19, 171:22
**boy** [1] - 228:24
**boys** [1] - 202:25
**brad** [1] - 158:17
**Brad** [1] - 293:23
**brand** [1] - 72:19
**brand-new** [1] - 72:19
**Brandon** [50] - 211:11, 211:17, 212:2, 217:7, 217:8, 225:10, 226:12, 276:7, 276:10, 276:12, 276:15, 276:18, 276:25, 277:16, 277:20, 279:2, 279:10, 279:22, 280:22, 281:6, 281:10, 281:11, 282:2, 310:16, 311:20, 311:23, 312:6, 312:9, 315:16, 315:21, 316:10, 316:13, 317:10, 320:13, 320:18, 322:19, 326:19, 331:17, 331:21, 331:24, 332:16, 332:19, 332:20, 347:4, 379:7, 379:8, 420:10, 447:22, 460:3, 460:6
**break** [16] - 8:21, 73:25, 106:24, 190:21, 191:4, 196:23, 198:14, 251:3, 256:6, 256:12, 256:20, 325:9, 336:18, 363:8, 363:12, 443:12
**breaking** [1] - 443:7
**breathe** [6] - 52:14, 52:21, 61:24, 431:16, 432:18, 433:20
**brewing** [1] - 199:8
**Brian** [1] - 461:6
**brief** [4] - 186:12, 232:23, 247:11, 255:12
**briefly** [1] - 449:23
**bring** [5] - 6:10, 152:6, 447:12, 452:20, 453:5
**broken** [1] - 263:8
**Brook** [3] - 15:3, 136:8, 156:4
**brothers** [1] - 215:7
**brought** [8] - 60:23, 96:4, 149:2, 188:4, 218:24, 254:14, 255:2, 278:23
**brush** [1] - 52:11
**Bryan** [3] - 386:21, 386:25, 388:8
**BS** [2] - 388:25, 389:19
**build** [2] - 44:21, 44:22
**building** [62] - 15:14, 16:6, 47:12, 67:10, 75:6, 75:9, 75:19, 75:20, 77:18, 78:3, 86:2, 89:5, 89:8, 102:8, 102:22, 103:14, 103:20, 110:6, 126:19, 172:8, 192:16, 194:10, 194:19, 195:13, 198:23, 199:4, 201:19, 233:14, 234:12, 240:12, 240:17, 240:23, 241:5, 242:5, 242:10, 247:4, 248:22, 268:10, 268:12, 271:3, 278:18, 280:11, 288:9, 298:4, 298:22, 307:5, 307:7, 311:19, 315:2, 320:25, 324:4, 324:20, 374:19, 375:6, 378:25, 387:13, 393:5, 393:7, 398:4, 427:10, 458:8
**bullshit** [2] - 389:21, 389:22
**bullying** [7] - 53:4, 112:2, 112:21, 113:11, 113:14, 113:23, 134:7
**Bullying** [1] - 41:3
**bumping** [1] - 224:4
**bunch** [1] - 192:12
**burn** [2] - 197:2, 219:20
**burned** [3] - 218:25, 219:21, 220:7
**business** [10] - 15:13, 86:15, 86:18, 87:3, 118:23, 171:17, 278:7, 280:16, 288:2, 391:25
**BUT** [1] - 190:19
**BUTY** [3] - 326:2, 326:15, 328:12
**BY** [6] - 3:7, 3:13, 5:8, 447:17, 450:3, 457:3

**C**

**calculation** [1] - 439:15
**camera** [8] - 217:19, 217:23, 219:5, 219:19, 220:2, 221:7, 225:10, 232:2
**cameras** [2] - 47:12, 85:25
**campus** [1] - 72:23
**candidates** [1] - 179:12
**cannot** [3] - 10:8, 61:24, 145:4
**capability** [1] - 274:14
**capacities** [3] - 1:10, 1:11, 1:17
**capacity** [5] - 1:12, 1:13, 1:14, 1:15, 1:16
**captured** [1] - 389:14
**car** [9] - 13:23, 14:7, 128:22, 129:3, 136:5, 153:14, 153:15, 166:24
**carbon** [4] - 321:3, 324:5, 324:8, 324:12
**career** [1] - 92:4
**carewell** [1] - 185:2
**Carol** [2] - 263:19, 411:15
**CAROL** [1] - 1:5
**CAROLINE** [1] - 3:13
**Carolyn** [2] - 407:2, 407:3
**carrying** [1] - 421:14
**case** [18] - 37:5, 37:7, 37:8, 37:12, 38:9, 52:25, 65:7, 115:21, 141:13, 152:9, 155:12, 157:10, 254:14, 254:23, 254:25, 369:4, 415:4, 452:23
**caseload** [1] - 379:15
**cases** [1] - 59:25
**CASTIGLIONE** [1] - 438:7
**Castiglione** [1] - 438:6
**castiglione** [2] - 438:10, 438:14
**Castro** [78] - 67:20, 68:4, 99:2, 178:16, 233:14, 233:15, 234:14, 235:2, 235:10, 235:25, 237:22, 242:15, 244:5, 249:6, 249:16, 250:3, 257:8, 265:3, 268:13, 269:24, 271:4, 271:6, 275:3, 275:6, 275:11, 278:17, 278:18, 278:24, 280:10, 282:18, 282:22, 283:4, 287:19, 288:9, 288:22, 289:6, 289:9, 292:13, 307:16, 315:2, 323:22, 324:3, 324:25, 327:13, 327:15, 328:25, 341:20, 341:21, 357:10, 357:13, 371:11, 373:17, 373:21, 374:2, 374:12, 374:16, 376:15, 397:4, 397:6, 397:13, 400:3, 400:13, 400:20, 403:15, 411:11, 413:15, 451:25, 453:23, 453:24, 454:20, 460:2, 460:5, 460:9, 460:11, 460:19, 461:3, 461:11, 461:13
**CASTRO** [1] - 1:13
**Castro's** [1] - 292:2
**Castrostro** [1] - 68:3
**caught** [1] - 72:22
**Cedar** [1] - 5:14
**cell** [7] - 239:4, 239:9, 239:21, 240:17,

241:8, 242:6, 300:5
**cellular** [8] - 240:8, 241:3, 241:13, 241:18, 241:21, 242:4, 242:9, 458:7
**center** [3] - 15:19, 220:25, 221:3
**Center** [2] - 136:8, 156:4
**central** [9] - 16:5, 24:6, 245:13, 245:18, 265:7, 270:9, 299:23, 307:24, 355:13
**Central** [41] - 23:3, 24:5, 24:9, 48:14, 49:7, 49:9, 50:21, 54:3, 58:11, 60:5, 60:19, 61:18, 61:24, 85:20, 86:19, 87:3, 92:5, 96:8, 96:15, 98:7, 100:4, 162:7, 164:24, 171:17, 172:19, 185:6, 280:17, 292:21, 336:7, 356:21, 365:17, 365:21, 366:8, 375:19, 394:25, 395:8, 403:25, 404:10, 405:8, 410:12, 411:9
**CENTRAL** [1] - 1:8
**certain** [27] - 38:25, 54:2, 61:16, 72:12, 100:14, 144:12, 165:9, 182:18, 185:23, 222:23, 222:25, 233:12, 262:12, 311:4, 357:21, 378:10, 448:7, 449:6, 449:9, 449:12, 449:18, 450:4, 451:14, 451:16, 451:20, 451:24, 452:4
**certainly** [4] - 201:11, 216:24, 266:22, 270:20
**certificate** [1] - 186:7
**certification** [3] - 4:6, 134:12, 134:18
**certifications** [4] - 15:10, 15:11, 15:23, 17:7
**certify** [4] - 134:13, 456:8, 462:9, 462:15
**cetera** [5] - 67:4, 85:15, 246:21, 310:18, 361:22
**chain** [1] - 356:8
**chairman** [1] - 350:12
**chambers** [1] - 142:13
**Chan** [1] - 453:22
**chan** [1] - 454:16
**chance** [3] - 355:3, 399:14, 418:2
**change** [9] - 88:4, 288:18, 310:3, 310:14, 357:3, 418:4, 418:8, 444:14, 444:16
**changed** [2] - 69:22, 70:8
**changes** [3] - 87:12, 87:16, 312:20
**chanted** [1] - 204:13
**chanting** [18] - 201:3, 202:9, 202:10, 202:22, 202:25, 203:4, 203:8, 203:22, 204:8, 205:2, 212:11, 212:18, 224:22, 279:11, 281:6, 281:12, 351:25
**chants** [1] - 204:21
**chaos** [1] - 199:7
**chaotic** [5] - 195:25, 199:3, 199:8, 199:15, 231:10
**characteristics** [1] - 119:11
**characterization** [1] - 213:9
**characterize** [1] - 368:19
**charge** [3] - 26:14, 146:9, 147:4
**charged** [4] - 28:7, 144:21, 160:17, 421:3
**charges** [6] - 25:23, 166:14, 275:4, 275:5, 281:22, 311:18
**charity** [1] - 350:13
**chatter** [1] - 194:8
**Chaudin** [1] - 324:11
**CHAUDIN** [1] - 324:12
**check** [3] - 303:10, 392:17, 392:20
**checking** [3] - 387:25, 394:13, 395:13
**chemical** [1] - 26:5
**chest** [7] - 196:16, 198:9, 205:14, 220:23, 227:13, 314:2
**child** [2] - 52:13, 52:20
**choice** [2] - 202:13, 380:19
**choke** [2] - 51:18, 51:24
**choked** [3] - 258:5, 258:24, 283:15
**chokehold** [4] - 229:12, 432:18, 433:20, 439:2
**chokeholds** [2] - 361:21, 362:9
**chokes** [2] - 51:8, 51:15
**choking** [6] - 51:3, 52:8, 52:12, 52:20, 61:23
**choose** [1] - 378:9
**chose** [4] - 193:13, 194:11, 211:8, 296:9
**Chris** [5] - 28:25, 29:4, 29:24, 30:6, 163:4
**CIPP** [1] - 211:22
**Cipp** [9] - 195:14, 211:22, 299:17, 300:8, 300:13, 304:8, 421:10, 421:12, 454:15
**circulating** [2] - 285:3, 285:5
**circumstances** [7] - 51:19, 54:2, 144:25, 146:15, 146:18, 166:15, 441:6
**cited** [1] - 445:2
**city** [1] - 20:9
**civil** [13] - 14:16, 31:6, 32:5, 37:18, 37:23, 38:9, 39:13, 39:24, 154:20, 156:8, 156:13, 454:12, 457:15
**Civil** [1] - 256:3
**civilly** [1] - 32:16
**claim** [4] - 151:5, 416:23, 416:25, 423:19
**claims** [2] - 133:3, 435:16
**clarence** [1] - 330:4
**Clarence** [12] - 302:16, 326:5, 326:19, 328:20, 331:2, 331:9, 331:13, 332:7, 333:7, 333:9, 422:3, 432:3
**clarification** [3] - 9:5, 44:13, 380:2
**clarify** [9] - 51:23, 65:6, 94:16, 102:24, 131:24, 148:15, 334:7, 372:14, 446:17
**class** [10] - 100:14, 192:12, 194:19, 303:10, 303:17, 353:2, 398:6, 417:18, 417:22, 418:12
**classes** [5] - 95:6, 96:18, 100:22, 121:18, 344:12
**clear** [44] - 32:7, 36:12, 38:22, 39:12, 43:5, 49:14, 53:19, 58:7, 66:5, 95:17, 102:2, 105:18, 128:6, 133:24, 178:15, 203:21, 206:13, 207:14, 209:8, 216:9, 218:14, 240:17, 259:19, 264:12, 272:25, 278:3, 278:21, 313:6, 313:24, 316:5, 318:25, 321:21, 333:12, 338:24, 350:17, 360:3, 361:24, 374:13, 378:18, 381:2, 381:5, 381:22, 422:14, 453:8
**clenched** [2] - 84:23
**clerical** [8] - 23:20, 233:19, 307:23, 321:10, 324:10, 354:19, 354:24, 354:25
**Clerical** [1] - 324:14
**clericals** [1] - 321:8
**CLERK** [22] - 141:6, 141:11, 141:16, 141:19, 141:24, 142:2, 142:5, 142:17, 143:8, 145:7, 145:23, 147:7, 147:10, 147:20, 149:13, 150:7, 150:22, 151:14, 151:18, 152:4, 152:11, 152:20
**close** [6] - 197:17, 227:14, 227:15, 228:12, 334:25, 454:25
**Close** [1] - 227:19
**closed** [2] - 165:10, 234:9
**closer** [2] - 220:6, 388:3
**clubs** [1] - 20:24
**co** [1] - 170:7
**co-workers** [1] - 170:7
**code** [33] - 47:25, 48:5, 48:10, 48:13, 49:2, 49:25, 59:17, 59:20, 59:24, 61:16, 61:18, 66:3, 71:2, 86:5, 87:10, 88:2, 88:25, 89:10, 89:12, 89:15, 89:19, 89:22, 90:5, 90:10, 90:12, 104:4, 114:5, 127:6, 274:18, 311:4, 311:10, 333:4, 333:13
**coincides** [1] - 133:22
**collar** [1] - 428:24
**colleague** [17] - 78:5, 167:25, 168:2, 168:3, 168:15, 168:16, 168:21, 168:23, 169:2, 169:5, 169:7, 169:9, 169:11, 169:13, 265:15, 296:16, 334:25
**colleagues** [11] - 56:5, 56:11, 58:16, 58:21, 181:20, 237:2, 248:16, 266:8, 266:13, 266:14, 413:18
**college** [2] - 19:17, 20:13
**color** [5] - 64:15, 96:22, 99:21, 119:8, 119:23
**column** [4] - 133:11, 133:17, 133:20
**coming** [10] - 47:10, 194:16, 196:6, 196:14, 199:15, 212:5, 220:14, 315:14, 316:4, 362:19
**command** [1] - 201:24
**commands** [1] - 207:4
**comment** [1] - 110:16
**comments** [3] - 110:20, 165:20, 301:2
**commissioner** [3] - 91:25, 92:6, 116:11
**commissioner's** [1] - 92:2
**committee** [2] - 97:10, 97:14
**committees** [1] -

104:3
committing [1] - 333:3
common [1] - 375:4
communicate [2] - 46:20, 192:22
communicated [3] - 195:6, 195:8, 314:6
communicating [1] - 193:12
communication [7] - 181:20, 195:21, 199:2, 367:14, 367:16, 367:18, 387:24
communications [4] - 252:25, 407:24, 411:6, 458:25
community [8] - 28:17, 402:25, 403:9, 403:10, 403:11, 404:2, 404:11, 405:5
company [5] - 20:18, 43:11, 155:2, 155:3, 155:16
compare [1] - 279:25
competing [1] - 434:25
complain [2] - 62:22, 303:16
complained [3] - 186:20, 186:23, 187:4
complaint [26] - 41:7, 63:2, 63:6, 63:8, 63:15, 63:20, 65:9, 65:14, 65:18, 79:18, 80:14, 92:6, 92:14, 92:16, 115:24, 116:5, 257:21, 258:4, 304:24, 305:13, 409:17, 420:17, 422:9, 423:11, 424:20, 424:23
complaints [29] - 41:13, 41:23, 62:8, 62:12, 62:15, 63:19, 63:25, 64:7, 64:11, 64:16, 65:2, 81:12, 81:22, 91:23, 93:5, 109:18, 113:11, 117:6, 120:6, 120:10, 132:13, 135:13, 135:16, 170:21, 303:3, 305:10, 376:9, 410:7, 410:12
complete [5] - 8:6, 10:8, 134:14, 164:14, 456:11
completed [1] - 99:20
completely [4] - 9:19, 201:11, 338:3, 423:17
completion [1] - 186:8
compliance [2] - 119:17, 173:2
compliant [2] - 225:25, 226:21
complied [3] - 351:7, 351:15, 351:17
comply [8] - 48:12, 49:15, 109:21, 113:21, 351:9, 351:20, 421:5
composed [1] - 22:20
computer [9] - 129:8, 234:18, 319:9, 319:10, 319:12, 319:15, 319:23, 449:7, 458:14
concede [1] - 453:16
concern [5] - 301:19, 301:23, 320:4, 326:9, 406:5
concerned [7] - 265:20, 335:2, 335:19, 351:2, 397:9, 404:24, 405:4
concerning [5] - 63:6, 189:8, 400:21, 410:8, 411:15
concerns [1] - 301:21
conclusion [5] - 67:5, 67:6, 425:14, 425:18, 425:20
conditions [2] - 49:15, 49:25
conduct [38] - 15:24, 48:2, 48:5, 48:10, 48:13, 49:3, 49:25, 59:17, 59:20, 59:24, 66:3, 71:3, 86:6, 87:10, 88:2, 88:25, 89:10, 89:13, 89:16, 89:19, 89:23, 90:5, 90:11, 90:12, 99:2, 99:13, 104:4, 114:5, 127:6, 179:24, 269:17, 274:18, 311:4, 311:10, 312:10, 312:14, 333:5, 333:13
conducted [6] - 98:13, 100:3, 112:6, 115:21, 174:17, 448:8
conducting [2] - 174:13, 175:5
conducts [1] - 104:10
conference [1] - 271:11
confidential [1] - 318:12
confidentiality [1] - 157:18
confirm [1] - 419:14
conflict [5] - 383:12, 383:19, 383:21, 383:24, 384:4
confused [1] - 138:8
confusing [1] - 138:10
conjunction [2] - 109:5, 109:8
Conlon [10] - 230:12, 231:13, 233:7, 233:12, 233:18, 237:15, 270:19, 315:3, 323:22, 328:25
Conlon's [2] - 232:25, 233:5
consent [1] - 430:11
consequence [6] - 74:25, 101:5, 103:3, 176:13, 267:22, 306:18
consequences [13] - 66:7, 74:23, 95:12, 95:18, 95:21, 96:21, 100:13, 100:21, 135:16, 268:3, 320:17, 444:8, 444:21
consider [9] - 51:9, 53:14, 73:9, 76:14, 77:7, 77:10, 248:22, 269:2, 355:6
consideration [1] - 75:25
considered [15] - 32:6, 51:25, 52:12, 52:14, 58:18, 59:14, 66:4, 74:2, 76:23, 77:4, 77:15, 77:17, 78:10, 95:18, 111:6
considering [1] - 74:13
consisted [1] - 402:12
consists [1] - 360:21
constitute [1] - 111:17
construction [2] - 19:25, 20:3
consult [2] - 151:6, 151:9
consulted [2] - 279:9, 307:3
consulting [2] - 145:6, 268:24
consumed [1] - 9:23
contact [13] - 111:16, 133:5, 133:6, 180:11, 207:21, 207:23, 207:25, 244:16, 252:9, 254:2, 255:13, 255:21, 292:10
contacted [10] - 250:11, 253:12, 253:19, 256:2, 259:16, 289:16, 292:7, 292:11, 315:24
contain [1] - 402:14
contained [7] - 53:4, 124:21, 172:25, 370:9, 424:20, 432:8, 432:25
containing [1] - 9:24
contains [1] - 72:6
content [3] - 107:12, 107:13, 107:14
contest [1] - 379:20
context [3] - 110:10, 141:23, 352:22
continue [7] - 137:18, 140:15, 140:19, 148:15, 164:10, 196:24, 197:8
CONTINUED [1] - 1:25
continued [7] - 200:20, 205:11, 210:22, 224:18, 319:20, 433:2, 458:12
continues [1] - 110:18
continuing [2] - 208:10, 208:23
contractor [4] - 20:7, 20:8, 20:9, 445:20
contractors [1] - 20:15
contribute [3] - 96:25, 97:5, 123:16
control [3] - 231:15, 231:18, 292:6
Control [2] - 289:21, 292:7
controlled [1] - 231:20
conversation [18] - 39:4, 39:11, 42:25, 67:15, 137:18, 140:16, 140:19, 140:22, 177:16, 187:13, 235:10, 244:5, 249:15, 379:17, 406:2, 422:23, 441:14, 442:19
conversations [3] - 188:10, 243:17, 422:25
convicted [1] - 161:4
conviction [7] - 135:23, 147:4, 147:5, 154:11, 161:24, 165:16, 165:23
convictions [1] - 146:6
cool [1] - 327:3
coordination [1] - 218:6
coordinator [1] - 117:2
cop [1] - 292:16
copied [5] - 257:11, 318:23, 319:4, 321:3, 324:12
copies [5] - 87:21, 87:25, 410:6, 410:15, 454:21
copy [10] - 87:11, 145:21, 163:18, 258:18, 324:5, 324:8, 355:16, 414:17, 453:18, 453:20
corner [3] - 147:25, 415:13, 415:19
corporal [13] - 50:6, 50:8, 50:13, 51:3, 51:9, 51:15, 51:25, 52:5, 52:15, 52:22, 91:24, 92:18, 174:23
Corporal [1] - 90:16
correct [89] - 11:12, 16:8, 23:16, 33:16, 33:17, 40:7, 42:13, 52:22, 53:12, 72:13, 74:16, 77:8, 90:12, 103:16, 104:5, 104:6, 109:25, 110:22, 112:11, 126:7, 134:3, 134:4, 170:13, 172:7, 204:23, 204:25, 206:4, 207:21, 207:22, 209:9, 209:19, 212:7, 242:4, 247:23, 249:19, 256:17, 269:25, 278:19, 280:11, 281:12, 281:13, 281:23, 287:6, 287:10, 289:12, 298:16, 298:19, 301:14, 301:24, 302:19,

303:20, 309:24, 310:11, 313:7, 313:9, 314:3, 314:4, 316:7, 316:11, 316:24, 318:7, 322:6, 324:20, 324:25, 330:23, 341:22, 341:24, 355:7, 366:16, 378:21, 382:7, 394:4, 394:8, 398:23, 401:8, 401:9, 402:3, 408:17, 415:9, 415:14, 417:22, 417:23, 418:13, 418:18, 418:20, 422:6, 430:5, 456:12, 456:14
**Correct** [3] - 70:16, 112:12, 205:25
**correspondence** [8] - 290:4, 292:20, 292:25, 322:9, 358:12, 400:24, 401:4, 409:23
**Correspondence** [2] - 327:25, 328:11
**corresponds** [1] - 443:25
**Cory** [5] - 5:18, 6:14, 141:2, 141:8, 423:13
**CORY** [2] - 3:3, 3:7
**cough** [1] - 9:23
**Counsel** [8] - 26:19, 138:5, 146:12, 147:14, 148:14, 148:19, 157:16, 454:5
**counsel** [35] - 38:23, 39:9, 42:12, 42:16, 42:18, 42:20, 42:22, 43:7, 59:4, 100:8, 118:14, 137:8, 143:15, 143:16, 143:17, 144:4, 148:2, 151:25, 251:12, 253:5, 258:17, 262:18, 280:2, 295:3, 299:11, 360:24, 372:20, 388:21, 412:6, 412:18, 412:22, 414:5, 448:12, 448:17, 448:24
**counsel's** [1] - 454:14
**counseling** [2] - 164:10, 445:11
**counselor** [7] - 315:25, 367:4, 368:5, 373:10, 373:11, 373:12, 373:13
**Counselor** [2] - 117:24, 213:20
**Country** [1] - 2:22
**counts** [2] - 22:7, 245:15
**COUNTY** [6] - 1:9, 1:9, 1:10, 456:5, 462:5
**County** [24] - 29:5, 29:22, 30:7, 61:19, 127:12, 129:13, 129:16, 129:19, 181:23, 181:25, 237:24, 238:2, 238:19, 238:24, 249:23, 250:4, 250:7, 250:12, 253:13, 255:22, 289:16, 362:17, 380:12, 411:13
**county** [2] - 29:24, 33:4
**couple** [7] - 93:4, 176:18, 271:2, 412:2, 447:13, 449:13, 453:12
**course** [15] - 26:17, 86:15, 86:18, 87:3, 118:23, 144:3, 149:4, 171:17, 185:8, 278:7, 280:16, 287:25, 351:6, 351:19, 391:25
**court** [9] - 6:24, 7:24, 14:14, 99:7, 101:13, 208:18, 363:19, 372:13, 385:13
**COURT** [1] - 1:2
**Court** [19] - 2:5, 2:22, 4:19, 36:20, 138:4, 138:9, 138:14, 139:22, 140:8, 140:12, 140:15, 140:16, 140:20, 140:22, 140:23, 148:5, 149:6, 152:15
**cousin** [1] - 28:25
**cover** [3] - 194:6, 194:10, 198:5
**covered** [1] - 450:13
**covering** [1] - 194:9
**covers** [1] - 85:9
**coworker** [1] - 170:4
**coworkers** [2] - 169:18, 169:21
**CPI** [1] - 182:8
**create** [8] - 116:8, 244:22, 244:25, 307:20, 309:23, 354:17, 354:20, 391:11
**created** [20] - 49:12, 69:20, 116:15, 118:17, 124:17, 125:2, 180:4, 189:7, 262:4, 288:5, 308:21, 309:2, 309:5, 309:9, 321:15, 322:8, 392:7, 416:12, 449:10, 458:17
**creates** [1] - 380:20
**creating** [2] - 47:25, 208:11
**creation** [3] - 125:4, 125:7, 164:25
**credits** [3] - 15:8, 15:20, 15:22
**creed** [2] - 119:8, 119:24
**Crenshaw** [3] - 323:23, 324:14, 329:5
**Crime** [2] - 289:21, 292:6
**crime** [4] - 14:11, 25:13, 29:13, 292:6
**criminal** [12] - 31:5, 51:16, 144:18, 145:4, 146:5, 146:22, 151:9, 154:8, 166:14, 166:16, 167:15, 184:12
**Crisis** [2] - 182:5, 182:7
**crisis** [3] - 182:11, 182:14, 184:23
**criteria** [1] - 179:11
**crowd** [3] - 231:15, 231:21, 428:6
**crowded** [1] - 210:20
**CSD.org** [1] - 251:23
**Cuomo** [2] - 128:6, 366:3
**Curiale** [2] - 233:20, 233:21
**current** [2] - 393:5, 393:7
**cursed** [2] - 352:21, 352:23
**cursing** [2] - 197:16, 354:9
**cusp** [1] - 33:9
**custom** [2] - 427:4, 427:5
**cyber** [1] - 134:7
**cyber-bullying** [1] - 134:7

## D

**D-A-S-A** [1] - 93:23
**damage** [1] - 136:9
**danger** [3] - 83:7, 210:15, 210:18
**dangerous** [1] - 208:12
**dare** [1] - 370:13
**DASA** [4] - 93:23, 104:22, 104:25, 105:22
**data** [14] - 66:13, 66:15, 68:8, 121:20, 124:20, 125:7, 134:13, 171:11, 172:18, 319:21, 319:22, 457:18, 458:13
**date** [18] - 13:19, 30:14, 31:3, 57:10, 67:4, 93:3, 136:19, 148:25, 190:2, 250:23, 253:17, 257:4, 281:16, 317:21, 335:15, 409:10, 413:9, 424:10
**dated** [2] - 289:11, 415:8
**Dave** [5] - 217:10, 217:16, 228:20, 230:10, 231:11
**David** [159] - 43:17, 44:3, 44:16, 45:2, 65:8, 114:12, 117:6, 175:12, 175:13, 175:19, 176:4, 176:13, 177:8, 178:9, 178:24, 180:5, 187:3, 196:9, 201:9, 203:13, 204:18, 204:23, 205:5, 206:14, 207:15, 207:20, 207:22, 209:2, 210:3, 210:16, 211:18, 211:23, 212:3, 212:6, 212:15, 212:16, 214:7, 220:17, 221:6, 223:12, 223:19, 225:7, 225:10, 225:23, 226:3, 226:24, 229:15, 229:19, 230:20, 231:17, 231:21, 232:12, 232:17, 232:25, 233:18, 238:4, 243:23, 258:3, 258:11, 258:25, 259:24, 260:5, 260:12, 264:22, 267:19, 267:22, 268:3, 269:2, 269:17, 274:19, 283:14, 284:14, 284:22, 287:13, 292:25, 302:19, 304:17, 306:6, 307:21, 310:7, 310:10, 310:23, 311:5, 311:11, 312:6, 312:13, 314:2, 316:10, 320:12, 320:18, 321:22, 322:5, 322:18, 329:21, 341:11, 344:20, 344:22, 345:6, 345:11, 346:2, 346:9, 346:14, 346:17, 346:20, 347:5, 347:22, 348:9, 348:13, 348:23, 349:9, 349:14, 350:4, 350:9, 350:19, 351:5, 351:18, 352:16, 353:4, 353:7, 354:14, 354:21, 355:4, 355:9, 355:15, 379:4, 379:6, 411:15, 416:24, 418:22, 419:18, 420:10, 420:13, 425:21, 428:11, 429:7, 429:15, 429:21, 430:7, 430:10, 431:10, 431:13, 431:15, 432:17, 433:3, 433:19, 437:24, 438:3, 438:21, 438:24, 439:4, 439:7, 439:10, 440:2, 440:9, 440:14, 452:2, 460:8, 460:10, 460:12
**david** [1] - 428:15
**DAVID** [1] - 1:5
**David's** [1] - 263:19
**Dawn** [10] - 104:14, 117:4, 117:5,

117:12, 359:12, 360:9, 361:9, 400:4, 400:21, 401:7
**days** [4] - 75:15, 103:22, 265:6, 423:22
**deal** [4] - 78:21, 298:2, 303:13, 445:17
**Dealing** [1] - 82:11
**dealing** [3] - 82:16, 445:25
**death** [1] - 182:19
**debriefed** [1] - 265:15
**decade** [5] - 33:7, 57:4, 57:13, 168:24, 173:18
**December** [3] - 108:14, 118:14, 118:15
**decide** [3] - 78:8, 200:22, 306:3
**decided** [2] - 203:17, 378:25
**deciding** [1] - 70:7
**decision** [23] - 65:25, 68:18, 75:7, 76:6, 76:23, 78:3, 98:2, 98:10, 98:19, 102:3, 102:14, 103:11, 200:22, 207:10, 271:7, 306:18, 316:22, 317:2, 320:11, 326:10, 327:12, 328:15, 329:12
**decision-maker** [1] - 102:14
**decision-making** [2] - 306:18, 320:11
**decisions** [1] - 327:8
**decrease** [1] - 445:8
**defend** [3] - 54:5, 54:11, 197:13
**Defendant** [1] - 2:4
**defendant** [9] - 139:11, 143:15, 143:19, 143:20, 411:9, 430:22, 431:9, 431:12, 438:19
**defendants** [1] - 410:14
**Defendants** [2] - 1:18, 3:10
**defense** [5] - 143:14, 143:15, 251:12, 262:18, 299:11
**defined** [1] - 410:14
**definitely** [10] - 94:10, 109:12, 132:14, 151:21, 224:17, 274:22, 275:12, 283:10, 286:14, 419:5
**definition** [1] - 52:8
**definitive** [1] - 366:19
**definitively** [9] - 202:20, 203:14, 237:17, 237:19, 246:15, 283:18, 293:7, 297:5, 323:15
**degree** [4] - 14:21, 16:14, 65:17, 241:24
**degrees** [3] - 15:9, 357:19, 357:22
**delete** [6] - 294:18, 303:11, 356:18, 372:24, 373:3, 387:17
**deleted** [5] - 294:22, 300:19, 412:11, 412:16, 412:25
**demand** [1] - 440:25
**demanding** [3] - 453:18, 453:20, 453:23
**demands** [2] - 262:25, 458:11
**demonstrate** [6] - 213:10, 213:16, 213:23, 214:4, 214:6, 214:7
**Denise** [5] - 296:11, 296:23, 297:21, 298:9, 460:15
**denotes** [2] - 67:17, 418:10
**denumeration** [1] - 164:21
**Department** [15] - 29:6, 30:7, 61:20, 127:12, 181:23, 182:2, 185:7, 238:19, 249:23, 250:4, 250:7, 250:12, 253:14, 255:23, 411:14
**DEPARTMENT** [1] - 1:9
**department** [3] - 62:2, 172:18, 410:9
**dependent** [1] - 241:19
**depicted** [2] - 293:20, 339:10
**depicting** [6] - 282:7, 283:14, 284:13, 338:2, 355:17, 355:25
**depiction** [1] - 285:19
**depictions** [1] - 338:4
**deponent** [8] - 68:7, 131:19, 133:20, 411:14, 436:13, 457:17, 458:6, 459:6
**depose** [1] - 452:22
**deposed** [15] - 6:16, 6:19, 13:14, 13:18, 13:21, 14:14, 14:16, 30:23, 30:24, 32:2, 36:25, 37:9, 37:19, 42:4, 454:22
**Deposition** [1] - 461:16
**deposition** [28] - 4:6, 4:14, 5:24, 6:15, 6:22, 10:12, 11:5, 11:9, 12:13, 36:19, 45:5, 47:10, 47:21, 137:13, 140:3, 141:3, 142:3, 143:4, 146:5, 150:12, 150:13, 151:15, 152:22, 155:8, 157:12, 456:10, 462:11, 462:13
**depositions** [4] - 32:25, 149:14, 149:15, 453:21
**Describe** [1] - 349:19
**describe** [20] - 32:16, 43:24, 44:3, 44:15, 126:22, 212:21, 213:12, 213:14, 213:18, 214:10, 217:5, 217:8, 225:20, 230:13, 344:14, 346:13, 347:10, 349:5, 349:21, 365:7
**described** [6] - 16:11, 46:25, 90:21, 235:12, 339:13, 341:2
**describing** [1] - 44:9
**description** [9] - 74:18, 235:11, 266:7, 267:5, 267:11, 313:20, 328:14, 337:10, 338:12
**descriptions** [3] - 339:5, 342:9, 344:10
**desk** [6] - 69:12, 81:21, 128:21, 128:23, 129:5, 254:7
**DeStefano** [4] - 104:15, 117:4, 117:5, 117:12
**destination** [1] - 231:2
**destructive** [5] - 121:25, 122:6, 122:13, 172:11, 180:4
**details** [3] - 222:6, 228:7, 247:23
**detective** [1] - 253:23
**detentions** [3] - 102:19, 102:25
**determination** [14] - 69:7, 69:13, 121:22, 175:22, 178:21, 178:24, 200:12, 270:5, 275:4, 315:19, 317:13, 322:18, 390:18, 391:8
**determine** [9] - 73:18, 85:4, 99:20, 100:5, 101:6, 101:16, 101:23, 188:12, 210:23
**determined** [3] - 211:5, 282:11, 282:18
**determining** [9] - 71:16, 107:7, 175:13, 179:11, 341:14, 341:15, 443:25, 451:25, 458:3
**developed** [2] - 78:20, 105:13
**device** [2] - 26:8, 239:22
**dictate** [1] - 72:12
**dictated** [1] - 107:15
**difference** [1] - 25:22
**different** [18] - 56:14, 65:15, 77:15, 77:16, 89:22, 115:23, 141:19, 141:23, 149:11, 203:8, 228:3, 279:21, 289:8, 317:24, 335:2, 335:4, 335:7, 356:25
**differently** [2] - 73:13, 313:22
**difficult** [2] - 9:25, 298:2
**difficulty** [1] - 12:15
**diffuse** [1] - 230:6
**Dignity** [13] - 104:22, 106:14, 107:5, 108:13, 108:18, 109:17, 110:11, 115:18, 116:12, 116:25, 117:14, 185:15, 185:19
**diligent** [1] - 188:6
**Dina** [5] - 141:6, 141:7, 141:25, 143:6, 143:24
**diploma** [1] - 16:20
**direct** [22] - 26:10, 27:3, 27:15, 59:4, 61:9, 84:2, 87:8, 90:14, 112:14, 125:21, 132:4, 145:2, 153:21, 154:5, 163:12, 175:10, 276:12, 418:15, 425:3, 440:6, 440:17, 442:15
**directed** [6] - 204:22, 235:21, 235:23, 279:10, 281:5, 281:11
**directing** [3] - 138:6, 154:15, 166:21
**direction** [2] - 196:15, 276:14
**DIRECTIONS** [1] - 457:8
**directives** [3] - 333:17, 333:19, 421:6
**directly** [7] - 70:19, 70:23, 203:16, 246:2, 254:11, 277:16, 381:15
**director** [7] - 81:23, 82:2, 126:14, 174:17, 233:21, 324:7, 393:11
**director's** [2] - 208:8, 230:11
**disabilities** [1] - 444:25
**disability** [3] - 119:9, 119:25, 133:3
**disagree** [6] - 277:7, 277:11, 277:14, 288:13, 361:16, 427:15
**disapprove** [1] - 69:16
**disciplinary** [17] - 65:25, 68:17, 69:2, 71:9, 71:11, 103:2, 114:3, 121:22, 164:2, 175:19, 175:22, 178:2, 178:9, 269:14, 410:8, 457:21, 457:23
**Disciplinary** [2] - 68:24, 94:23
**Discipline** [1] - 287:18

**discipline** [54] - 65:19, 65:20, 66:7, 66:25, 71:16, 73:10, 73:14, 73:19, 74:8, 74:23, 76:11, 76:16, 77:23, 78:21, 79:6, 95:5, 95:12, 95:22, 96:17, 97:20, 97:22, 98:4, 98:20, 99:20, 101:6, 101:17, 102:3, 102:15, 157:5, 160:14, 165:15, 165:23, 177:8, 178:21, 264:21, 267:19, 267:22, 268:3, 269:2, 282:2, 282:12, 282:18, 288:23, 289:2, 289:3, 289:5, 304:4, 333:10, 341:15, 444:2, 444:10, 444:22, 452:2, 458:3
**disciplined** [2] - 20:21, 447:20
**disciplining** [1] - 176:4
**disclosure** [3] - 406:16, 407:10, 408:13
**discord** [2] - 274:23, 311:14
**discovery** [9] - 137:5, 144:3, 145:13, 147:22, 149:4, 149:9, 262:25, 453:2, 458:11
**discretion** [6] - 74:3, 74:9, 74:24, 75:24, 78:13, 78:16
**discriminate** [2] - 119:7, 119:21
**discriminated** [1] - 62:9
**discrimination** [23] - 40:21, 60:8, 60:22, 61:5, 65:9, 92:21, 93:22, 94:13, 112:2, 112:21, 113:12, 113:15, 113:24, 114:9, 114:13, 114:17, 114:20, 115:25, 117:7, 120:6, 120:11, 132:7, 376:10
**Discrimination** [1] - 118:13
**discuss** [20] - 78:8, 184:7, 184:12, 233:2, 233:13, 237:6, 247:8, 247:10, 256:7, 256:19, 266:25, 267:12, 267:15, 267:18, 267:21, 269:16, 269:20, 282:2, 298:21, 385:21
**discussed** [13] - 40:18, 71:2, 135:12, 135:15, 135:21, 165:9, 242:22, 243:20, 247:25, 282:4, 344:12, 450:11, 451:10
**discussing** [10] - 12:22, 65:2, 70:7, 131:10, 144:15, 144:16, 146:14, 146:15, 257:3, 270:13
**discussion** [9] - 42:15, 69:9, 186:13, 232:24, 244:12, 248:21, 249:6, 267:4, 298:25
**discussions** [2] - 39:3, 445:13
**dismissed** [2] - 254:15, 255:3
**disparities** [1] - 95:21
**disparity** [3] - 67:18, 68:9, 457:18
**disproportion** [1] - 443:17
**disproportionality** [1] - 444:20
**disproportionate** [1] - 445:6
**disruption** [4] - 378:17, 397:10, 398:14, 398:17
**disseminate** [1] - 372:15
**disseminated** [3] - 342:2, 371:22, 372:3
**distract** [1] - 398:12
**distraction** [3] - 380:5, 382:17, 384:25
**distributed** [11] - 65:21, 66:7, 95:6, 96:17, 98:21, 99:21, 100:21, 101:7, 108:15, 120:8, 278:5
**district** [27] - 15:14, 15:15, 16:5, 21:20, 34:9, 91:23, 111:25, 112:3, 112:4, 112:5, 112:7, 112:19, 116:8, 127:6, 158:2, 159:22, 159:24, 160:3, 163:5, 164:3, 246:25, 365:12, 394:18, 394:20, 394:25, 414:8
**DISTRICT** [3] - 1:2, 1:3, 1:8
**District** [60] - 16:8, 23:4, 24:5, 24:9, 30:16, 30:19, 48:10, 48:14, 49:6, 49:7, 49:9, 50:21, 54:3, 58:11, 60:5, 60:19, 61:18, 61:25, 85:20, 86:19, 87:4, 92:5, 92:17, 96:3, 96:8, 98:7, 100:4, 157:7, 162:7, 162:13, 164:24, 167:4, 169:21, 170:22, 171:18, 172:19, 185:6, 278:8, 280:17, 288:2, 292:21, 333:4, 336:7, 356:21, 357:9, 365:17, 365:22, 375:20, 384:11, 384:16, 384:21, 395:8, 396:24, 403:25, 404:10, 405:9, 410:13, 411:9, 423:24
**district's** [1] - 114:5
**Districting** [1] - 96:16
**districts** [1] - 406:23
**division** [1] - 16:20
**Dix** [2] - 1:21, 3:6
**DLSN** [1] - 270:10
**do..** [1] - 77:11
**Doc** [4] - 357:9, 357:13, 357:17, 357:20
**DOC** [1] - 357:9
**Docket** [1] - 1:5
**doctoral** [2] - 357:18, 357:21
**document** [104] - 6:5, 11:2, 48:20, 49:11, 53:5, 68:23, 69:18, 69:20, 70:4, 71:3, 71:22, 72:6, 72:16, 72:17, 73:3, 87:18, 108:17, 108:20, 108:24, 118:6, 118:9, 118:16, 118:20, 118:25, 121:7, 121:10, 121:24, 122:5, 124:13, 124:16, 132:11, 132:20, 137:4, 137:11, 139:18, 143:13, 143:14, 143:24, 144:9, 144:13, 145:10, 145:11, 145:17, 147:15, 147:19, 147:21, 148:14, 148:18, 148:20, 149:3, 149:17, 149:25, 150:4, 150:15, 150:19, 152:3, 152:16, 162:16, 163:17, 185:12, 186:11, 258:20, 276:23, 277:2, 277:6, 277:7, 278:4, 278:6, 279:20, 280:4, 280:5, 280:9, 280:13, 280:15, 281:2, 287:25, 288:4, 288:8, 288:12, 288:14, 289:14, 292:4, 308:10, 308:20, 312:21, 314:23, 318:23, 319:2, 328:5, 328:7, 359:2, 386:19, 393:20, 394:6, 397:25, 398:3, 402:2, 402:6, 411:21, 416:12, 418:10, 423:16, 449:7, 449:11
**DOCUMENT** [1] - 457:12
**document)** [2] - 48:22, 53:6
**documentation** [25] - 6:7, 22:4, 22:7, 23:15, 23:19, 23:24, 24:13, 55:25, 58:19, 68:7, 71:13, 91:8, 93:19, 127:17, 180:18, 238:15, 244:22, 244:25, 253:10, 256:22, 435:16, 452:25, 457:13, 457:16, 457:25
**documents** [29] - 9:13, 9:16, 9:18, 10:11, 10:14, 10:15, 11:11, 12:11, 12:24, 13:10, 23:9, 55:12, 55:16, 71:8, 71:10, 149:8, 171:23, 272:19, 319:8, 373:20, 391:5, 392:6, 409:15, 446:13, 454:14, 457:20, 457:22, 458:17, 459:7
**DOE** [1] - 1:17
**Doe** [1] - 411:13
**DOES** [3] - 1:11, 1:16, 430:24
**doled** [3] - 66:25, 95:12, 444:2
**domestic** [1] - 119:12
**don't..** [1] - 81:24
**done** [31] - 16:2, 38:5, 59:7, 61:12, 64:25, 65:13, 66:19, 71:5, 78:4, 82:12, 94:25, 95:4, 95:11, 100:11, 101:24, 104:20, 115:11, 125:24, 143:21, 148:5, 149:14, 149:15, 318:22, 365:8, 377:3, 391:23, 442:20, 443:16, 445:10, 448:13, 455:3
**door** [6] - 194:21, 194:24, 234:10, 299:18, 367:22, 376:20
**doors** [2] - 165:10, 231:14
**dot** [3] - 262:11, 262:13, 298:9
**down** [52] - 62:5, 82:9, 113:19, 152:17, 173:7, 196:5, 196:6, 196:20, 196:21, 196:24, 197:8, 198:13, 199:16, 200:13, 200:15, 201:3, 202:6, 205:3, 205:16, 208:11, 209:16, 210:20, 212:5, 212:20, 213:5, 214:15, 214:18, 218:23, 219:8, 220:15, 223:20, 224:2, 224:14, 226:9, 230:7, 230:23, 231:4, 251:3, 258:5, 271:2, 291:25, 296:2, 327:3, 351:25, 387:25, 388:11, 388:14, 392:16, 421:10, 432:17, 433:2, 433:19
**Doyen** [4] - 296:11, 296:23, 297:22, 460:15

**Doyne@ LongwoodCSD.org** [1] - 298:10
**Dr** [65] - 67:20, 68:2, 68:4, 99:2, 99:13, 161:19, 161:20, 161:21, 178:16, 233:14, 233:15, 234:14, 235:10, 235:25, 237:22, 242:15, 244:5, 249:6, 249:15, 250:3, 257:8, 265:3, 268:13, 269:24, 271:4, 271:6, 275:3, 275:5, 275:11, 278:17, 278:18, 278:24, 282:17, 282:22, 283:4, 288:22, 289:6, 289:9, 292:13, 307:15, 324:25, 327:13, 327:15, 341:20, 341:21, 357:10, 357:11, 357:12, 357:13, 371:10, 373:16, 373:21, 374:11, 374:16, 376:14, 397:4, 397:6, 397:12, 400:3, 400:20, 403:14, 403:19, 413:15, 453:22, 454:20
**dragged** [4] - 219:4, 219:16, 219:18, 221:7
**dramatically** [1] - 200:19
**Drive** [1] - 5:14
**driver** [2] - 14:7, 14:8
**driver's** [2] - 17:9, 17:10
**driving** [3] - 25:25, 166:7
**dropped** [2] - 426:10, 426:14
**dropping** [1] - 84:24
**drops** [2] - 85:14, 85:15
**drugs** [1] - 9:23
**DUI** [7] - 25:5, 25:17, 25:21, 28:11, 29:8, 29:12, 32:8
**duly** [2] - 5:3, 462:12
**duration** [1] - 377:14
**during** [13] - 20:2, 20:4, 20:12, 26:17, 88:8, 241:4, 256:20, 261:13, 262:4, 264:3, 272:23, 351:12, 373:5
**During** [1] - 88:10
**duty** [2] - 374:24, 375:4
**DWI** [13] - 14:3, 14:9, 25:20, 25:21, 28:8, 28:10, 28:19, 29:12, 29:19, 31:4, 32:8, 375:24, 446:21

**E**

**E-mail** [24] - 290:9, 297:13, 314:18, 336:14, 358:22, 374:2, 386:15, 393:16, 397:21, 400:9, 401:14, 459:25, 460:18, 460:20, 460:22, 460:23, 460:24, 461:2, 461:4, 461:6, 461:8, 461:10, 461:12, 461:14
**e-mail** [169] - 11:16, 46:5, 46:7, 46:13, 46:17, 129:12, 129:14, 129:16, 129:19, 130:4, 234:20, 236:4, 236:5, 236:9, 236:15, 236:17, 242:14, 243:19, 244:21, 245:2, 251:15, 251:21, 251:25, 252:4, 252:7, 252:11, 252:19, 252:22, 261:5, 261:7, 261:11, 261:19, 261:22, 262:10, 262:11, 262:14, 262:16, 263:20, 264:5, 264:9, 264:13, 265:11, 276:5, 290:13, 290:25, 291:3, 291:6, 291:10, 291:14, 291:19, 291:21, 291:22, 294:18, 294:19, 295:2, 297:21, 298:7, 298:15, 298:19, 299:4, 307:15, 308:8, 314:6, 314:25, 315:4, 315:5, 315:11, 318:10, 318:20, 318:24, 319:5, 320:6, 321:4, 321:15, 323:18, 325:16, 325:18, 325:25, 326:4, 326:18, 328:24, 329:9, 329:14, 329:17, 330:3, 334:4, 334:17, 335:14, 335:18, 336:25, 337:2, 337:5, 337:9, 337:16, 337:19, 338:17, 352:7, 352:15, 356:8, 356:25, 357:3, 358:11, 359:4, 359:21, 359:23, 360:5, 360:9, 360:15, 360:23, 361:5, 361:7, 361:10, 363:5, 364:16, 367:4, 367:8, 368:19, 369:2, 369:5, 369:14, 370:17, 370:20, 370:25, 371:16, 371:18, 374:10, 374:14, 375:13, 386:13, 386:20, 386:24, 387:8, 387:16, 388:5, 388:7, 388:10, 388:15, 388:20, 393:21, 393:23, 394:2, 394:3, 394:11, 394:14, 394:16, 394:21, 394:25, 395:8, 395:23, 397:17, 398:4, 398:8, 398:9, 399:2, 399:11, 400:4, 400:12, 400:16, 400:21, 401:22, 405:21, 406:2, 406:25, 408:2, 408:9, 412:4, 435:3, 451:17, 459:3
**e-mail's** [1] - 298:12
**e-mailed** [1] - 326:17
**E-mails** [4] - 260:18, 366:22, 460:13, 460:14
**e-mails** [65] - 11:16, 12:4, 46:14, 251:7, 251:11, 251:14, 251:22, 251:24, 252:3, 252:14, 252:18, 252:21, 252:24, 260:22, 261:17, 261:24, 262:3, 262:7, 262:8, 262:17, 262:24, 263:23, 294:15, 299:7, 299:11, 315:9, 325:17, 325:23, 327:4, 337:24, 352:11, 356:11, 356:16, 356:17, 356:22, 369:9, 371:21, 371:25, 372:3, 372:14, 372:19, 372:24, 373:3, 373:6, 373:21, 376:18, 377:12, 387:13, 394:20, 394:24, 395:5, 395:6, 407:3, 407:7, 407:19, 411:3, 411:7, 412:10, 412:15, 412:25, 436:7, 451:3, 451:6, 458:9, 458:21
**early** [5] - 6:6, 243:6, 243:9, 243:10, 377:19
**ease** [1] - 319:5
**easier** [1] - 137:2
**easily** [2] - 224:5, 346:5
**EASTERN** [1] - 1:3
**Ed** [6] - 49:2, 49:4, 49:5, 49:7, 87:17, 445:4
**ed** [8] - 16:16, 18:4, 68:10, 97:14, 296:13, 393:12, 438:8, 457:19
**Edmond** [141] - 5:19, 43:17, 44:3, 44:16, 45:2, 65:8, 114:12, 141:3, 141:9, 175:12, 175:14, 175:19, 176:4, 176:13, 178:10, 178:24, 180:6, 187:3, 196:9, 201:9, 203:13, 204:18, 204:23, 205:5, 206:14, 207:15, 207:20, 207:22, 209:2, 210:3, 210:17, 212:6, 212:15, 214:8, 216:19, 223:19, 225:7, 225:11, 226:3, 226:24, 228:20, 229:15, 229:19, 230:10, 230:21, 231:17, 231:21, 232:12, 232:17, 238:4, 243:24, 258:4, 258:11, 259:2, 259:25, 260:5, 264:22, 267:22, 268:4, 269:3, 274:19, 283:15, 284:14, 284:22, 287:13, 293:2, 302:19, 304:17, 307:21, 310:10, 310:23, 311:5, 311:11, 312:6, 316:10, 320:12, 320:18, 321:23, 322:5, 322:19, 329:21, 341:11, 344:21, 344:23, 345:6, 345:11, 346:3, 346:10, 346:14, 346:17, 346:20, 347:6, 348:9, 348:13, 348:23, 349:9, 349:14, 350:9, 350:20, 351:18, 352:16, 353:4, 353:7, 354:14, 354:21, 379:4, 411:15, 411:16, 416:24, 418:22, 419:18, 420:10, 420:14, 423:13, 425:21, 428:11, 428:15, 429:7, 429:15, 429:21, 430:7, 430:10, 431:10, 431:13, 431:16, 432:17, 433:19, 437:25, 438:4, 438:21, 438:25, 439:5, 439:7, 439:10, 440:2, 440:14, 452:2, 460:8, 460:10, 460:12
**EDMOND** [4] - 1:5, 1:5, 310:11
**Edmond's** [18] - 117:6, 177:8, 211:19, 211:23, 212:3, 220:17, 223:12, 260:12, 269:17, 306:6, 312:13, 314:2, 350:4, 351:5, 355:4, 355:10, 355:16, 440:10
**Edmonds** [1] - 310:7
**education** [8] - 14:20, 14:22, 16:10, 16:18,

18:23, 91:25, 92:7, 116:11
**Education** [6] - 119:6, 119:20, 172:18, 384:11, 384:17, 384:21
**educational** [2] - 53:10, 103:9
**educator** [1] - 365:9
**EDWARD** [1] - 1:10
**effect** [2] - 4:17, 157:9
**effective** [1] - 380:25
**effort** [2] - 54:5, 368:8
**efforts** [1] - 298:3
**egregious** [2] - 269:12, 328:18
**eight** [2] - 22:19, 185:7
**eight-hour** [1] - 185:7
**eighth** [1] - 19:7
**eighth-grade** [1] - 19:7
**either** [10] - 82:2, 142:25, 224:20, 307:5, 309:3, 309:15, 309:23, 315:25, 320:18, 426:11
**electronic** [13] - 190:5, 239:21, 250:15, 250:22, 250:23, 251:4, 252:25, 261:7, 319:22, 322:9, 407:24, 458:13, 458:25
**electronics** [1] - 272:23
**emergency** [1] - 181:7
**emotional** [2] - 53:11, 60:9
**employed** [3] - 29:4, 30:12, 250:8
**employee** [5] - 60:11, 96:3, 167:4, 188:23, 189:22
**employees** [13] - 49:20, 107:23, 109:25, 112:3, 119:6, 119:21, 121:17, 179:17, 186:25, 187:6, 336:8, 383:14, 404:9
**employment** [11] - 18:7, 19:19, 21:23, 23:3, 23:10, 30:19, 87:12, 108:21, 134:24, 162:14, 181:16
**encouraged** [2] - 441:2, 441:3
**encourages** [1] - 441:5
**END** [1] - 455:6
**end** [69] - 47:15, 50:16, 60:2, 60:13, 60:25, 90:20, 92:2, 112:7, 112:22, 113:17, 114:5, 120:2, 126:6, 134:15, 136:10, 153:10, 153:16, 172:15, 179:25, 228:24, 229:9, 236:18, 237:6, 240:21, 242:23, 246:7, 246:13, 246:17, 246:19, 253:18, 255:6, 258:5, 265:10, 276:4, 285:17, 294:6, 298:23, 301:7, 303:14, 304:20, 305:15, 310:18, 312:3, 330:23, 331:6, 333:5, 333:25, 338:13, 338:23, 343:25, 352:15, 367:25, 370:3, 370:14, 388:25, 390:3, 392:14, 395:15, 396:14, 396:17, 398:14, 403:2, 405:23, 406:6, 406:18, 409:17, 432:19, 433:5, 433:21
**end-of-the-year** [2] - 246:17, 246:19
**endangering** [1] - 82:20
**ended** [6] - 218:16, 225:13, 233:6, 233:10, 303:18, 347:17
**endorse** [1] - 427:6
**ends** [1] - 69:12
**energy** [1] - 226:10
**enforce** [5] - 59:24, 109:23, 239:7, 240:23, 241:2
**enforcement** [4] - 28:22, 30:4, 180:12, 180:14
**enforcing** [2] - 90:4, 90:10
**engage** [7] - 45:23, 197:3, 231:23, 232:9, 241:7, 241:11, 427:4
**engaged** [2] - 241:17, 304:8
**enjoy** [1] - 399:21
**enrolled** [1] - 425:22
**ensure** [16] - 59:25, 64:9, 64:13, 64:21, 65:2, 65:13, 65:20, 66:24, 95:5, 95:11, 96:21, 100:18, 100:20, 119:17, 121:6, 121:9
**ensuring** [2] - 96:16, 107:18
**entails** [1] - 246:19
**enter** [1] - 195:12
**entered** [3] - 18:17, 153:3, 157:18
**entering** [2] - 195:18, 231:10
**entire** [9] - 87:17, 88:6, 105:24, 183:10, 198:5, 270:12, 282:5, 285:19, 432:3
**entirely** [3] - 143:23, 277:22, 426:25
**entitled** [1] - 356:9
**entrance** [5] - 192:7, 192:9, 193:14, 193:19, 194:2
**entrances** [1] - 194:15
**entries** [1] - 354:17
**Equal** [1] - 118:12
**equal** [2] - 60:21, 96:22
**equally** [7] - 64:14, 64:22, 64:24, 65:14, 98:20, 100:19, 444:2
**error** [2] - 312:19, 429:25
**escalated** [1] - 200:19
**ESQ** [2] - 3:7, 3:13
**essentially** [2] - 119:2, 230:3
**established** [2] - 120:5, 120:9
**estimate** [3] - 22:19, 57:5, 202:15
**estimation** [2] - 215:4, 224:12
**et** [5] - 67:4, 85:15, 246:21, 310:18, 361:21
**eternity** [1] - 225:12
**ethnic** [2] - 67:7, 119:23
**ethnicity** [1] - 67:3
**euphemism** [1] - 357:20
**evaluate** [2] - 312:9, 312:13
**evaluated** [1] - 95:20
**evaluation** [1] - 96:9
**evaluator** [1] - 96:6
**evening** [2] - 167:5, 167:14
**evenly** [10] - 65:3, 65:21, 66:8, 66:25, 95:5, 95:13, 96:17, 99:21, 100:21, 101:6
**event** [33] - 40:6, 45:20, 172:13, 189:8, 198:15, 237:14, 245:6, 245:21, 250:25, 263:11, 263:12, 264:23, 267:12, 269:3, 285:20, 302:22, 303:5, 315:14, 335:24, 336:4, 337:10, 352:12, 363:22, 364:20, 365:4, 366:10, 371:7, 384:18, 398:13, 432:3, 434:19, 451:18, 451:22
**events** [75] - 8:4, 46:25, 132:16, 132:21, 133:25, 227:25, 229:6, 234:3, 234:22, 235:2, 236:23, 238:3, 243:23, 244:6, 244:19, 244:23, 245:10, 245:24, 247:14, 248:6, 248:10, 248:13, 248:17, 250:16, 251:8, 252:10, 254:18, 256:4, 257:17, 269:16, 281:20, 282:8, 284:13, 285:17, 308:6, 319:23, 320:7, 320:20, 322:20, 325:15, 326:25, 336:8, 338:3, 338:4, 338:12, 343:2, 343:20, 345:7, 355:17, 355:25, 357:25, 358:8, 358:13, 364:8, 365:11, 371:5, 371:6, 378:4, 378:10, 378:12, 384:5, 384:6, 384:12, 385:17, 385:21, 389:17, 390:2, 399:7, 400:22, 438:10, 439:11, 448:14, 448:18, 451:8, 458:15
**events'** [1] - 329:17
**eventually** [3] - 299:19, 376:19, 438:25
**evidence** [1] - 23:10
**evidences** [1] - 81:14
**exact** [5] - 13:19, 93:3, 149:20, 192:14, 193:22
**exactly** [16] - 44:13, 107:16, 168:20, 192:2, 210:6, 210:16, 214:20, 221:25, 232:6, 266:22, 267:5, 318:17, 379:11, 389:5, 405:22, 444:6
**exaggerated** [1] - 389:11
**exaggerations** [3] - 344:7, 344:8, 403:8
**EXAMINATION** [4] - 5:8, 447:16, 450:2, 457:3
**Examination** [1] - 2:3
**examined** [1] - 5:4
**except** [3] - 4:9, 399:22, 399:25
**excessive** [18] - 57:23, 58:4, 58:12, 58:18, 58:25, 75:11, 75:12, 91:17, 111:8, 196:22, 215:2, 339:6, 339:8, 339:14, 390:17, 390:19, 390:24, 391:4
**excluding** [1] - 412:17
**excuse** [1] - 29:12
**execute** [1] - 164:5
**exercising** [2] - 154:13, 166:19
**exhibit** [3] - 112:16, 135:20, 139:4
**Exhibit** [85] - 48:19, 48:25, 49:16, 53:5, 86:8, 88:3, 88:6, 90:21, 97:4, 97:6, 108:7, 108:8, 108:11, 118:5, 118:10, 124:6, 124:7, 124:10, 124:13, 125:14, 135:8, 153:7, 153:8, 162:9, 162:11,

171:8, 171:13, 185:11, 185:14, 185:19, 260:21, 260:22, 276:22, 277:8, 279:19, 287:9, 287:21, 287:22, 290:12, 290:17, 290:21, 308:5, 308:10, 308:24, 309:11, 309:22, 314:5, 314:22, 318:21, 328:10, 336:24, 344:2, 358:25, 360:4, 360:20, 367:2, 367:3, 367:17, 374:5, 374:6, 386:18, 386:23, 400:11, 400:16, 401:18, 408:24, 408:25, 409:9, 409:14, 409:17, 414:22, 414:23, 414:25, 416:8, 418:17, 422:17, 423:5, 423:6, 423:9, 424:6, 424:9, 431:7, 449:3, 449:4

**Exhibits** [1] - 448:21
**EXHIBITS** [1] - 459:16
**exist** [1] - 105:15
**existed** [1] - 95:21
**existence** [1] - 424:9
**exit** [1] - 194:5
**exits** [3] - 192:15, 193:13, 194:10
**exodus** [1] - 192:11
**expect** [3] - 200:11, 241:10, 305:21
**expected** [6] - 49:14, 109:16, 109:20, 109:23, 118:19, 121:4
**experience** [7] - 77:25, 83:15, 83:21, 85:22, 85:23, 265:16, 375:5
**experiences** [1] - 269:5
**Explain** [5] - 239:8, 246:18, 301:5, 330:5, 332:12
**explain** [18] - 27:16, 56:3, 70:24, 91:17, 140:23, 147:21, 194:13, 222:21, 223:24, 246:3, 261:9, 300:23, 302:9, 351:23,

352:18, 375:9, 384:22, 389:12
**explained** [2] - 43:6, 267:6
**explanatory** [2] - 398:18, 403:6
**express** [2] - 320:4, 326:9
**expressed** [3] - 110:15, 111:9, 111:10
**expresses** [1] - 111:15
**expressing** [1] - 406:5
**expression** [1] - 111:17
**extent** [2] - 27:2, 153:18
**exterior** [2] - 427:7, 427:9
**extra** [1] - 129:2
**eyes** [3] - 228:12, 348:4, 348:8
**eyewitness** [3] - 339:19, 389:17, 390:7
**eyewitnesses** [1] - 339:17

## F

**face** [13] - 85:13, 197:9, 197:16, 197:17, 204:20, 215:17, 216:16, 216:18, 216:20, 217:4, 222:12, 225:8, 310:17
**facing** [1] - 230:20
**facsimiles** [1] - 244:8
**fact** [8] - 327:16, 392:16, 399:5, 404:6, 404:8, 417:8, 425:14, 435:21
**facts** [2] - 8:5, 432:7
**faculty** [1] - 268:25
**faculty's** [1] - 384:6
**fair** [13] - 215:8, 257:4, 257:6, 271:24, 322:12, 323:6, 323:9, 329:16, 341:14, 369:13, 376:15, 394:19, 399:24
**fairly** [1] - 60:2
**false** [1] - 418:11
**familiar** [10] - 53:3, 145:19, 159:9, 171:7, 185:22, 259:7, 259:9, 308:9, 423:6, 447:23

**family** [5] - 5:19, 28:21, 30:15, 359:9, 423:14
**far** [7] - 185:18, 218:18, 361:18, 369:18, 385:23, 386:3, 454:22
**Farm** [2] - 155:4, 155:19
**fashion** [5] - 173:10, 178:11, 185:17, 372:20, 380:23
**favorite** [1] - 396:6
**fear** [7] - 85:2, 85:5, 197:11, 222:15, 429:8, 429:15, 429:21
**feared** [1] - 438:25
**federal** [4] - 422:9, 453:14, 454:3, 454:11
**Federal** [1] - 36:20
**feet** [4] - 85:13, 206:10, 217:20, 219:19
**felon** [1] - 161:4
**felony** [4] - 28:19, 33:15, 135:23, 446:20
**felt** [8] - 194:11, 197:17, 223:7, 224:14, 224:17, 225:12, 338:3, 399:14
**FENNER** [1] - 326:5
**Fenner** [16] - 302:15, 302:16, 326:5, 326:19, 328:20, 330:4, 331:2, 331:9, 331:13, 332:7, 333:7, 333:9, 420:11, 420:14, 422:4, 432:3
**few** [9] - 45:17, 54:25, 187:8, 187:9, 202:13, 357:18, 367:6, 367:24, 395:19
**field** [2] - 189:6, 228:18
**Fifth** [2] - 154:14, 166:20
**fifth** [1] - 113:19
**fight** [6] - 72:7, 73:11, 73:13, 77:22, 147:2, 228:4
**fight-or-flight** [1] - 228:4
**fights** [4] - 77:15, 77:16, 77:22

**file** [1] - 91:23
**filed** [11] - 40:13, 92:6, 92:16, 116:5, 186:15, 257:21, 258:11, 258:25, 422:9, 423:19, 423:23
**files** [3] - 411:2, 412:3, 436:6
**filing** [2] - 4:5, 92:13
**fill** [1] - 23:21
**filmed** [2] - 300:22, 303:10
**filming** [5] - 300:7, 300:9, 301:18, 302:11, 302:24
**final** [6] - 69:13, 178:21, 178:23, 231:2, 271:6, 275:4
**financial** [1] - 156:25
**financially** [1] - 156:23
**fine** [10] - 25:12, 145:15, 150:16, 157:2, 160:3, 164:20, 167:20, 351:8, 351:10, 443:11
**finger** [1] - 215:15
**finish** [9] - 7:13, 26:12, 38:3, 100:9, 138:22, 148:8, 181:14, 316:19, 454:10
**finished** [1] - 136:15
**fire** [1] - 219:22
**fired** [2] - 18:10, 21:8
**First** [1] - 136:24
**first** [24] - 13:17, 19:16, 24:25, 25:24, 26:12, 30:24, 45:9, 45:10, 69:21, 143:20, 145:9, 168:10, 199:25, 212:11, 217:6, 253:5, 313:14, 330:22, 347:16, 377:3, 377:5, 409:3, 419:18, 436:4
**first-year** [1] - 199:25
**firsthand** [1] - 339:21
**fist** [2] - 213:5, 214:17
**fists** [1] - 84:23
**fit** [3] - 328:19, 333:25, 334:10
**five** [20] - 9:2, 75:14, 81:20, 103:13, 103:22, 106:18, 106:19, 133:6, 164:15, 192:13, 202:19, 214:22,

225:13, 263:9, 263:13, 264:10, 264:14, 270:10, 270:25, 325:5
**Five** [1] - 265:6
**five-day** [2] - 103:13, 270:10
**five-minute** [1] - 263:9
**flight** [1] - 228:4
**floor** [1] - 228:21
**foggy** [1] - 347:2
**folded** [1] - 214:16
**folks** [3] - 45:17, 53:25, 321:3
**follow** [23] - 24:14, 28:2, 31:21, 40:3, 68:11, 71:17, 78:17, 89:2, 94:15, 106:8, 115:7, 155:23, 203:20, 242:11, 263:3, 319:25, 392:10, 408:4, 436:14, 446:16, 454:6, 454:12, 454:24
**followed** [7] - 68:25, 176:16, 325:15, 356:13, 376:25, 378:25, 405:25
**following** [4] - 312:3, 434:6, 449:15, 449:19
**follows** [3] - 5:5, 433:18, 434:2
**foolishness** [2] - 365:5, 365:6
**footage** [1] - 453:17
**FOR** [2] - 115:5, 459:17
**force** [35] - 4:17, 50:15, 54:15, 54:25, 55:2, 55:5, 55:18, 57:17, 57:20, 57:23, 58:4, 58:12, 58:25, 82:15, 82:23, 83:4, 83:9, 90:20, 91:3, 91:18, 179:16, 179:20, 184:8, 184:13, 186:20, 187:5, 196:22, 212:24, 215:2, 219:5, 241:23, 304:9, 424:19, 433:3, 440:3
**forearm** [1] - 213:2
**foregoing** [1] - 420:2
**forgot** [1] - 218:24
**forgotten** [1] - 197:2
**form** [208] - 4:10, 11:13, 21:6, 21:24,

23:11, 24:7, 29:9, 34:17, 35:3, 36:23, 40:9, 41:9, 44:5, 45:21, 47:22, 49:17, 54:17, 61:2, 62:3, 65:5, 71:24, 74:10, 75:3, 76:4, 76:8, 77:5, 77:12, 79:8, 81:5, 81:9, 81:16, 82:18, 84:16, 84:21, 86:24, 91:20, 92:9, 93:16, 94:2, 94:7, 97:24, 98:8, 98:24, 99:24, 100:6, 100:23, 107:10, 110:23, 111:4, 116:6, 117:9, 120:13, 122:3, 123:5, 126:24, 127:21, 128:10, 135:4, 135:10, 135:18, 135:25, 158:10, 158:14, 159:17, 160:15, 162:17, 165:3, 165:18, 173:5, 173:9, 175:16, 177:5, 178:4, 178:10, 178:14, 178:19, 180:16, 182:22, 182:24, 183:2, 184:9, 186:17, 195:10, 202:3, 202:17, 204:2, 204:10, 204:24, 206:16, 207:7, 207:16, 208:24, 209:20, 211:4, 212:8, 213:8, 216:7, 217:25, 219:12, 220:19, 223:4, 223:14, 224:11, 224:16, 232:15, 234:5, 244:10, 249:21, 250:19, 257:9, 258:2, 258:8, 258:13, 259:4, 264:2, 266:11, 269:4, 270:3, 273:14, 277:9, 279:3, 279:13, 281:15, 282:9, 282:20, 282:24, 283:16, 284:4, 284:9, 292:2, 292:3, 292:22, 293:25, 294:21, 297:7, 304:21, 305:18, 306:15, 307:13, 307:17, 307:19, 309:25, 310:25, 312:23, 313:18, 316:16, 316:25, 318:14, 322:16, 322:21, 323:14, 324:21, 326:12, 327:5, 327:11, 336:2, 340:24, 343:6, 349:10, 350:21, 351:11, 362:3, 366:12, 369:11, 369:17, 371:23, 372:7, 373:23, 375:3, 376:13, 381:7, 383:17, 384:9, 385:7, 390:15, 392:3, 399:8, 401:25, 404:5, 404:13, 405:3, 409:20, 410:4, 410:19, 411:18, 411:25, 420:18, 424:2, 426:20, 427:13, 427:19, 427:24, 428:14, 429:18, 430:2, 430:13, 435:5, 437:6, 438:22, 439:13, 441:7, 441:22, 444:23, 446:5, 449:11, 450:7, 452:3, 452:8

**formal** [5] - 57:19, 58:24, 174:12, 375:14, 410:7
**formally** [1] - 183:9
**format** [2] - 298:13, 318:20
**formed** [1] - 427:14
**former** [3] - 154:3, 167:25, 168:2
**forms** [2] - 111:25, 362:23
**formulate** [2] - 302:23, 377:6
**forth** [4] - 49:16, 194:9, 377:13, 462:12
**forward** [12] - 143:4, 150:23, 152:10, 162:13, 334:12, 334:14, 370:20, 374:11, 405:9, 405:12, 405:16, 415:18
**forwarded** [8] - 71:4, 71:11, 284:25, 367:5, 367:11, 374:14, 376:14, 457:22
**forwarding** [1] - 172:14
**fought** [2] - 346:4, 349:16
**four** [6] - 77:16, 209:22, 216:8, 219:4, 445:3
**fourth** [2] - 73:12, 420:19
**foyer** [4] - 217:19, 217:24, 218:3, 218:19
**free** [2] - 209:2, 230:4
**frequency** [1] - 121:22
**frequently** [3] - 34:5, 34:6, 297:2
**Friday** [5] - 337:20, 360:5, 360:10, 402:18, 405:20
**friend** [3] - 305:15, 393:12, 394:13
**friends** [8] - 21:19, 30:3, 30:18, 369:24, 380:4, 382:18, 382:24, 382:25
**front** [23] - 27:18, 50:19, 148:3, 149:23, 150:5, 196:8, 196:18, 201:9, 203:15, 203:18, 206:9, 206:11, 208:7, 209:21, 210:25, 211:2, 211:6, 211:8, 212:9, 212:14, 220:23, 225:19, 227:10
**fuck** [1] - 353:3
**full** [13] - 5:10, 8:6, 10:8, 114:9, 200:18, 212:24, 262:10, 339:2, 359:10, 405:5, 406:16, 407:10, 408:13
**fully** [2] - 113:24, 114:20
**function** [3] - 60:13, 172:13, 354:19
**functions** [1] - 112:5
**FURNISHED** [1] - 459:13
**FURTHER** [2] - 4:8, 4:13
**FYI** [1] - 374:12

## G

**gained** [1] - 200:20
**game** [1] - 205:2
**gang** [1] - 366:6
**Gargiulo** [1] - 460:7
**Garrett** [5] - 251:18, 334:21, 334:23, 386:6, 386:8
**gate** [1] - 127:2
**gender** [1] - 120:2
**general** [3] - 68:23, 72:2, 163:19
**General** [1] - 163:15
**generally** [1] - 380:21
**generated** [2] - 286:7, 307:22
**genetic** [1] - 119:11
**gentlemen** [1] - 203:7
**genuinely** [1] - 406:5
**Gerstenlauer** [3] - 161:19, 161:20, 459:22
**Gina** [1] - 233:20
**girls** [1] - 203:4
**given** [16] - 24:4, 24:8, 34:6, 34:10, 34:13, 35:22, 36:14, 85:20, 101:16, 162:19, 353:17, 355:13, 378:19, 441:6, 456:13, 462:14
**glass** [1] - 231:13
**Gmail** [1] - 357:6
**goal** [1] - 195:2
**goals** [5] - 246:8, 246:20, 247:8, 248:2, 248:3
**golf** [2] - 350:11, 350:13
**Google** [2] - 189:3, 357:6
**governed** [1] - 157:8
**Governor** [2] - 128:6, 366:3
**grab** [5] - 209:15, 220:22, 232:16, 428:11, 428:19
**grabbed** [23] - 196:17, 198:10, 202:5, 202:8, 205:14, 207:5, 208:12, 209:8, 209:11, 209:12, 210:4, 211:18, 220:5, 220:6, 220:15, 220:16, 220:25, 226:13, 304:17, 304:18, 419:24, 428:17, 428:21
**grabbing** [6] - 207:13, 207:17, 209:21, 211:23, 212:3, 223:12
**Grace** [5] - 251:20, 315:15, 326:14, 328:12, 328:25
**grade** [1] - 19:7
**graduate** [2] - 15:8, 16:25
**graduation** [7] - 378:14, 379:24, 384:25, 385:3, 385:9, 385:18, 452:12
**great** [1] - 320:17
**Great** [1] - 453:11
**greatly** [2] - 337:15, 343:24
**grievance** [2] - 120:5, 120:9
**gross** [2] - 202:4, 275:7
**Grossman** [2] - 397:22, 398:5
**ground** [21] - 226:25, 227:3, 227:4, 227:6, 227:8, 227:9, 229:4, 229:7, 229:10, 229:20, 229:25, 347:14, 347:18, 347:23, 348:6, 348:13, 348:16, 348:19, 348:25, 431:10, 431:13
**grounds** [4] - 146:7, 154:6, 154:17, 172:12
**group** [16] - 45:13, 183:23, 196:6, 199:15, 200:15, 201:10, 206:12, 210:19, 211:9, 212:9, 212:11, 224:2, 277:19, 277:21, 300:2, 445:5
**GUARD** [1] - 1:15
**guard** [29] - 173:13, 179:13, 194:22, 228:21, 229:19, 229:21, 230:2, 258:5, 258:25, 283:15, 294:6, 300:13, 331:16, 331:20, 331:23, 331:24, 332:3, 332:11, 332:17, 332:19, 332:21, 339:11, 339:14, 349:3, 351:13, 430:23, 432:19, 433:21, 438:20
**GUARDS** [1] - 1:15
**guards** [27] - 89:18,

90:2, 106:10, 110:4, 113:5, 173:9, 179:4, 179:8, 185:8, 188:3, 189:7, 266:20, 273:25, 339:6, 347:6, 348:24, 364:7, 364:19, 365:10, 366:10, 366:15, 367:7, 367:24, 368:9, 376:19, 377:4, 411:12

**guess** [24] - 17:6, 17:8, 32:6, 33:10, 33:11, 50:17, 52:25, 63:5, 74:5, 74:6, 74:7, 201:22, 208:20, 225:9, 231:5, 248:21, 261:23, 277:22, 283:21, 312:25, 319:16, 369:7, 380:15

**guessing** [2] - 359:8, 445:21

**Guidance** [1] - 373:11

**guide** [1] - 83:22

**guided** [3] - 68:22, 127:5, 320:17

**guideline** [3] - 79:5, 101:2, 441:4

**guidelines** [12] - 68:20, 71:12, 72:17, 73:17, 91:10, 116:9, 116:15, 116:23, 131:14, 177:14, 446:3, 457:23

**guides** [4] - 76:6, 79:6, 83:12, 380:17

**guiding** [2] - 177:19, 394:23

**guilty** [9] - 14:11, 25:13, 25:16, 28:16, 28:18, 29:7, 29:11, 37:17, 160:20

**guys** [2] - 141:17, 216:23

**gym** [1] - 304:7

## H

**H-5** [1] - 193:24

**half** [4] - 19:4, 19:10, 208:13, 272:10

**hall** [13] - 196:20, 197:8, 200:14, 201:3, 202:6, 205:3, 207:21, 217:23, 220:15, 223:21, 225:7, 230:7, 351:25

**halls** [1] - 224:14

**hallway** [31] - 196:4, 196:5, 196:7, 196:14, 196:24, 198:5, 199:3, 199:14, 199:16, 200:16, 205:12, 208:5, 208:11, 209:7, 209:17, 210:20, 210:21, 217:18, 218:16, 219:9, 224:3, 224:4, 230:23, 231:12, 356:9, 421:11, 427:14, 428:7, 437:23

**hallways** [3] - 43:21, 44:24, 188:4

**Hamilton** [1] - 3:11

**hand** [45] - 130:14, 153:6, 185:10, 196:16, 196:17, 196:23, 197:2, 197:4, 198:12, 198:14, 204:15, 205:10, 205:13, 205:14, 207:9, 212:23, 213:5, 213:6, 215:15, 218:25, 219:2, 219:11, 219:13, 219:23, 220:4, 220:7, 220:9, 220:12, 220:16, 220:17, 220:21, 258:15, 308:4, 313:2, 313:3, 313:4, 314:2, 397:23, 408:23, 415:21, 428:16, 428:23, 448:24, 462:21

**handbook** [1] - 177:15

**handed** [1] - 273:21

**handful** [2] - 404:14, 427:8

**handing** [11] - 118:4, 124:5, 260:20, 358:24, 366:25, 374:4, 386:17, 393:18, 400:10, 401:16, 414:21

**handle** [1] - 242:7

**handled** [7] - 64:11, 65:3, 65:14, 65:16, 73:12, 73:13, 306:2

**handouts** [1] - 106:4

**hands** [14] - 197:6, 197:21, 197:24, 198:4, 198:7, 198:9, 198:10, 201:10,

212:24, 218:19, 350:2, 350:3, 418:23, 419:21

**hang** [3] - 150:24, 255:8

**harassment** [21] - 40:23, 40:25, 53:4, 53:8, 53:15, 53:20, 60:8, 60:22, 61:6, 110:10, 110:12, 111:6, 111:18, 112:2, 112:9, 112:21, 113:12, 113:14, 113:23, 132:8, 376:10

**hard** [11] - 69:3, 212:24, 215:3, 215:5, 221:12, 221:15, 222:6, 228:7, 228:25, 300:4, 300:17

**harm** [2] - 51:13, 83:14

**harmed** [3] - 345:11, 429:9, 429:16

**HE** [1] - 430:24

**head** [3] - 7:7, 216:22, 230:20

**headlock** [2] - 305:15, 305:23

**health** [1] - 60:10

**hear** [17] - 7:4, 128:11, 151:13, 188:3, 188:14, 189:18, 300:15, 301:9, 335:3, 335:5, 339:16, 342:5, 342:10, 431:15, 437:12, 438:13

**heard** [10] - 6:11, 26:23, 141:16, 192:10, 301:12, 328:13, 339:4, 354:13, 362:15, 383:9

**hearing** [11] - 33:23, 265:7, 270:9, 299:24, 307:24, 335:2, 335:4, 335:7, 355:13, 362:6, 404:25

**hearings** [5] - 34:10, 35:21, 36:15, 245:14, 245:19

**hearsay** [1] - 188:2

**held** [11] - 17:19, 18:19, 20:13, 212:22, 216:6, 217:17, 219:10, 219:13, 232:24,

432:17, 433:19

**help** [14] - 9:14, 9:18, 84:15, 85:3, 85:7, 101:23, 328:21, 331:6, 332:6, 332:23, 332:25, 333:5, 362:18

**helpful** [1] - 194:25

**helping** [2] - 59:4, 158:14

**helps** [1] - 84:19

**Hempstead** [1] - 29:16

**HEREBY** [1] - 4:2

**hereby** [2] - 456:8, 462:9

**herein** [1] - 4:4

**hereinbefore** [1] - 462:11

**hereunto** [1] - 462:21

**Hi** [1] - 141:25

**hi** [1] - 260:9

**hide** [2] - 406:22, 435:24

**high** [6] - 16:20, 16:25, 20:2, 20:4, 20:11, 439:8

**High** [110] - 16:21, 17:16, 18:5, 24:4, 41:24, 48:8, 50:24, 51:8, 51:24, 54:16, 59:10, 61:7, 62:8, 63:7, 63:17, 65:12, 65:21, 66:8, 67:2, 70:15, 74:25, 78:22, 79:3, 79:4, 81:13, 92:22, 95:22, 96:7, 98:21, 102:4, 102:17, 103:17, 104:5, 106:13, 107:9, 107:24, 108:21, 109:9, 109:24, 113:5, 113:9, 113:21, 117:3, 118:23, 121:25, 122:7, 122:14, 127:13, 127:18, 127:23, 128:2, 128:14, 128:24, 132:8, 133:13, 134:2, 160:8, 161:3, 173:10, 173:13, 179:6, 179:13, 179:17, 181:16, 183:24, 186:24, 187:5, 188:23, 189:21, 238:20, 241:12, 241:17, 241:22, 245:11, 249:3, 250:8,

257:22, 257:23, 259:6, 292:16, 295:6, 304:9, 305:21, 310:21, 312:10, 314:19, 340:11, 358:23, 378:5, 380:17, 381:4, 381:11, 382:3, 382:7, 383:14, 384:2, 391:25, 401:2, 405:16, 410:17, 416:15, 421:14, 421:24, 425:23, 427:3, 435:9, 438:20, 440:10, 444:3, 444:9

**higher** [3] - 15:6, 67:8, 403:24

**higher-up** [1] - 403:24

**highest** [1] - 14:21

**highlighted** [1] - 126:3

**highway** [8] - 136:5, 136:6, 136:7, 153:15, 153:16, 156:2, 156:3, 156:12

**Hills** [2] - 1:21, 3:6

**himself** [6] - 51:13, 82:21, 83:7, 154:9, 166:18, 210:14

**hired** [3] - 23:14, 179:12, 445:13

**hiring** [2] - 24:18, 179:3

**history** [1] - 17:15

**hit** [2] - 216:22, 219:2

**hitting** [2] - 221:12, 221:14

**hockey** [1] - 205:2

**hold** [13] - 17:4, 18:3, 18:22, 19:5, 19:8, 19:11, 19:18, 141:4, 219:6, 226:9, 228:25, 419:24, 433:2

**holding** [2] - 216:10, 302:11

**home** [2] - 242:19, 311:23

**hoped** [1] - 201:16

**hopefully** [2] - 206:21, 211:6

**hoping** [6] - 197:7, 203:19, 206:10, 219:8, 221:20, 230:4

**hospital** [1] - 344:23

**hour** [6] - 185:7, 236:6, 272:5, 272:9, 314:10, 329:17

**hours** [6] - 9:3,

150:11, 272:7, 439:17, 439:18, 452:21
**house** [8] - 261:14, 262:4, 263:8, 286:2, 286:3, 286:4, 286:6, 387:8
**Huey** [1] - 300:12
**hug** [7] - 345:25, 346:9, 346:19, 346:23, 346:25, 348:7, 348:21
**hugged** [6] - 346:9, 346:14, 346:17, 349:9, 350:9, 350:19
**Hughes** [21] - 123:12, 123:14, 123:16, 127:2, 127:14, 127:18, 128:23, 130:3, 131:10, 131:13, 251:17, 334:20, 334:24, 335:7, 335:18, 336:14, 336:25, 337:3, 337:6, 341:25, 352:7
**Hughes'** [1] - 337:16
**hurt** [1] - 215:9
**husband** [2] - 359:9, 359:13

**I**

**I.D** [1] - 459:17
**idea** [5] - 72:21, 202:18, 206:24, 368:9
**identification** [25] - 118:3, 124:4, 162:6, 171:6, 190:18, 260:18, 276:18, 279:16, 287:18, 290:9, 297:13, 308:2, 314:18, 327:25, 336:14, 358:22, 366:22, 374:2, 386:15, 393:16, 397:21, 400:9, 401:14, 408:21, 414:19
**identified** [2] - 89:20, 196:9
**identify** [6] - 145:12, 150:14, 290:16, 290:20, 290:22, 323:20
**identifying** [2] - 291:9, 291:13
**ignore** [1] - 369:7
**ignored** [1] - 201:11
**ignoring** [2] - 139:21, 300:11
**Ilona** [1] - 328:12
**images** [2] - 293:11, 293:13
**Immediately** [1] - 322:2
**immediately** [10] - 144:5, 196:20, 197:4, 205:15, 208:13, 212:23, 317:4, 317:9, 419:20, 437:19
**imminent** [9] - 84:25, 197:12, 222:19, 223:3, 223:6, 223:20, 224:8, 224:15, 227:17
**impact** [1] - 156:20
**impaired** [1] - 26:2
**impartial** [2] - 62:18, 341:14
**implementation** [1] - 96:21
**implicate** [1] - 166:18
**implied** [5] - 105:3, 105:7, 105:12, 105:14, 105:19
**importance** [1] - 65:17
**important** [3] - 7:12, 174:21, 390:6
**imposed** [1] - 157:5
**imposition** [1] - 114:2
**impossibility** [1] - 239:6
**impossible** [2] - 240:22, 241:2
**improve** [1] - 246:20
**IN** [2] - 190:18, 462:20
**in-school** [2] - 75:16, 102:11
**inaccurate** [10] - 136:17, 288:19, 313:12, 313:16, 313:19, 313:23, 339:2, 405:7, 427:2, 435:11
**inbox** [1] - 387:20
**Inc** [1] - 2:22
**inches** [4] - 197:9, 216:20, 222:12, 227:16
**Incident** [1] - 459:24
**incident** [95] - 42:7, 47:11, 69:2, 73:7, 73:21, 74:19, 75:25, 76:2, 76:7, 77:8, 80:16, 92:21, 113:17, 122:13, 132:7, 132:25, 146:20, 153:9, 175:24, 176:10, 180:4, 180:5, 186:15, 188:15, 191:21, 192:6, 201:13, 231:3, 231:6, 231:9, 235:12, 238:7, 241:20, 242:21, 258:10, 259:11, 259:20, 264:8, 267:2, 267:7, 269:12, 270:14, 271:17, 271:25, 282:5, 295:17, 295:19, 296:10, 297:24, 300:9, 305:24, 306:10, 306:13, 306:19, 314:10, 316:6, 316:9, 316:23, 321:22, 322:25, 328:13, 328:14, 328:18, 329:20, 330:6, 330:8, 335:8, 341:12, 341:17, 342:9, 344:7, 344:9, 344:11, 355:7, 356:9, 356:22, 366:8, 369:16, 372:4, 377:8, 377:23, 378:2, 378:3, 382:23, 407:25, 420:8, 432:13, 437:19, 437:22, 447:21, 448:9, 449:15, 449:19, 451:12, 459:2
**incidents** [28] - 60:22, 66:4, 67:4, 68:15, 73:9, 74:14, 76:15, 76:21, 77:3, 81:4, 81:8, 93:5, 93:20, 121:25, 122:6, 132:25, 133:4, 133:6, 133:7, 133:9, 133:12, 134:6, 172:11, 285:2, 327:9, 327:17, 374:25, 395:17
**inciting** [2] - 275:8, 311:13
**inciting/instigating** [1] - 274:23
**include** [3] - 110:3, 121:21, 320:17
**includes** [1] - 53:9
**including** [9] - 59:23, 60:6, 60:18, 114:2, 170:5, 304:7, 372:4, 446:14, 459:8
**incorrect** [1] - 278:25
**incriminate** [2] - 154:9, 167:11
**incriminates** [1] - 167:17
**indefinitive** [1] - 283:11
**indemnified** [1] - 43:11
**independent** [11] - 184:19, 266:2, 320:6, 370:24, 371:4, 373:19, 392:24, 408:16, 450:9, 451:7, 451:11
**indicate** [6] - 74:18, 122:11, 122:16, 132:24, 412:6, 412:10
**indicated** [11] - 201:5, 201:7, 205:19, 206:2, 262:6, 327:7, 368:5, 405:20, 408:2, 434:15, 459:3
**indicates** [4] - 84:4, 84:25, 132:21, 406:25
**indicating** [3] - 197:23, 199:2, 221:3
**indictment** [1] - 164:16
**indirectly** [1] - 70:21
**individual** [14] - 1:10, 1:11, 1:12, 1:13, 1:14, 1:15, 1:16, 1:17, 69:3, 73:21, 110:13, 156:7, 156:11, 342:14
**individuals** [8] - 225:18, 229:8, 245:15, 317:6, 323:25, 335:21, 382:22, 383:2
**inferring** [1] - 396:3
**influence** [2] - 25:25, 65:24
**inform** [3] - 164:7, 328:17, 376:16
**informal** [14] - 55:24, 56:3, 56:17, 57:8, 57:17, 58:15, 58:20, 70:5, 91:6, 91:8, 164:11, 174:8, 247:12, 410:7
**informally** [2] - 90:22, 91:14
**information** [7] - 9:4, 76:21, 82:3, 275:23, 295:18, 401:21, 417:7
**INFORMATION** [1] - 459:13
**informed** [6] - 67:21, 254:13, 396:23, 397:3, 419:22, 424:4
**informs** [1] - 382:2
**infraction** [1] - 101:17
**infractions** [2] - 102:18, 333:3
**inhouse** [3] - 69:21, 71:3, 72:17
**initial** [3] - 265:10, 388:15, 413:24
**initiated** [3] - 111:16, 263:16, 263:17
**injections** [1] - 316:20
**injured** [4] - 25:6, 166:2, 190:15, 219:2
**injuries** [2] - 166:3, 200:23
**injuring** [1] - 136:6
**injury** [4] - 182:20, 196:25, 346:6, 439:11
**input** [1] - 48:4
**inquire** [4] - 345:9, 370:5, 447:9, 449:24
**inquired** [1] - 429:6
**inside** [2] - 194:21, 194:22
**instance** [8] - 36:5, 72:4, 72:11, 77:20, 107:6, 178:10, 189:4, 307:20
**instances** [1] - 113:14
**instant** [2] - 409:24, 411:8
**instead** [2] - 139:21, 197:8
**Institute** [1] - 182:7
**instruct** [4] - 195:12, 230:5, 248:15, 330:10
**instructed** [5] - 328:21, 329:24, 330:14, 358:4, 358:7
**instructing** [2] - 213:21, 446:24
**instruction** [2] - 183:23, 287:12
**insubordinate** [3] - 83:5, 333:14, 333:15
**insubordination** [9] - 202:5, 207:2, 274:21, 275:8, 275:13, 311:13, 352:3, 421:2, 421:4
**insurance** [4] - 43:11,

154:25, 155:3, 155:16
**insure** [2] - 77:21, 98:20
**intend** [3] - 200:25, 201:14, 206:18
**intended** [1] - 206:13
**intention** [4] - 194:17, 206:6, 417:8, 423:23
**interact** [3] - 169:20, 174:11, 174:20
**interacted** [2] - 170:4, 346:12
**interaction** [6] - 47:15, 54:13, 339:11, 347:4, 348:23, 421:10
**interactions** [1] - 81:15
**interested** [2] - 8:3, 462:18
**interfering** [1] - 53:9
**interjected** [1] - 143:16
**interjecting** [2] - 138:21, 148:3
**Internal** [4] - 253:12, 255:23, 422:21, 422:24
**internal** [2] - 99:19, 255:17
**internet** [18] - 46:14, 46:18, 46:19, 147:24, 282:7, 282:13, 282:15, 282:19, 283:5, 283:14, 284:3, 284:7, 284:11, 284:12, 286:17, 286:20, 286:24, 303:18
**internship** [3] - 15:23, 15:25, 16:2
**interoffice** [2] - 87:13, 87:24
**Interoffice** [2] - 87:21, 120:22
**interprets** [1] - 45:10
**interrupted** [1] - 150:21
**interrupting** [1] - 148:16
**interruption** [1] - 43:6
**intervened** [1] - 197:18
**interveners** [1] - 438:19
**intervening** [1] - 267:8
**intervention** [11] - 56:9, 164:6, 164:12, 182:11, 182:14, 184:23, 195:6, 195:10, 226:5, 267:16, 292:20
**interview** [12] - 22:8, 23:23, 34:24, 35:4, 35:14, 35:22, 36:15, 248:12, 248:16, 248:23, 249:2, 340:2
**interviewed** [4] - 22:14, 34:22, 34:25, 248:19
**interviewing** [1] - 63:22
**intimately** [5] - 305:25, 306:8, 306:11, 307:8, 317:5
**intimidation** [1] - 133:4
**introduce** [1] - 148:17
**introduction** [1] - 148:14
**investigate** [6] - 64:2, 79:16, 109:18, 116:2, 306:4, 434:21
**investigated** [6] - 62:13, 113:24, 114:20, 117:6, 117:13, 259:13
**investigating** [3] - 115:16, 415:3, 416:23
**investigation** [27] - 62:16, 62:18, 114:10, 114:24, 115:5, 115:11, 115:21, 115:23, 258:23, 259:5, 259:10, 340:15, 340:17, 340:20, 341:16, 390:23, 391:2, 391:6, 391:9, 391:12, 391:15, 391:18, 391:21, 391:23, 392:9, 448:8, 458:19
**Investigator** [2] - 289:22, 292:7
**investigator** [1] - 115:14
**invisible** [1] - 240:20
**involved** [33] - 69:11, 70:18, 79:11, 104:2, 176:18, 245:15, 270:17, 270:20, 274:4, 279:7, 305:25, 306:9, 306:12, 307:8, 315:13, 315:17, 317:5, 321:8, 321:11, 326:22, 327:17, 332:25, 334:24, 340:15, 356:6, 379:8, 382:22, 383:2, 385:5, 385:9, 385:17, 386:7
**involvement** [8] - 164:25, 165:6, 320:7, 320:13, 320:19, 327:9, 341:6, 366:4
**involving** [8] - 133:4, 133:6, 133:8, 180:5, 243:23, 284:14, 316:10, 410:9
**Iona** [6] - 251:20, 315:15, 317:11, 326:14, 328:2, 328:25
**irrelevant** [1] - 53:17
**irrespective** [1] - 112:10
**IS** [3] - 4:2, 4:8, 4:13
**Island** [1] - 158:25
**Islip** [2] - 5:15, 366:8
**isolate** [1] - 296:9
**ISS** [2] - 102:9, 102:20
**issue** [14] - 141:20, 141:22, 142:11, 145:24, 150:6, 150:8, 152:17, 161:11, 226:20, 300:6, 302:6, 302:25, 366:6, 366:9
**issued** [4] - 161:7, 383:25, 407:11, 407:14
**issues** [3] - 60:7, 151:15, 152:5
**issuing** [1] - 406:17
**IT** [3] - 4:2, 4:8, 4:13
**items** [1] - 410:24
**itself** [3] - 75:23, 241:21, 387:14
**IX** [1] - 94:23

## J

**Jack** [2] - 396:12, 396:16
**jacket** [33] - 196:17, 196:18, 196:23, 197:5, 198:11, 198:12, 198:14, 202:5, 202:8, 203:15, 205:15, 207:13, 207:18, 208:12, 209:11, 209:12, 209:15, 209:22, 210:4, 211:19, 211:23, 212:3, 212:22, 217:15, 217:17, 219:6, 220:18, 220:22, 223:12, 232:16, 419:25, 428:17, 428:21
**jackets** [1] - 84:24
**James** [23] - 129:18, 174:25, 180:25, 181:4, 183:6, 243:11, 266:22, 266:24, 267:13, 267:23, 273:16, 289:16, 292:11, 315:12, 323:23, 324:6, 324:14, 329:5, 364:25, 367:6, 367:8, 367:11, 460:24
**JANE** [3] - 1:11, 1:16, 1:16
**Jay** [1] - 411:12
**jersey** [1] - 260:9
**job** [9] - 8:17, 19:17, 21:11, 21:15, 156:20, 167:18, 332:11, 355:21, 355:22
**jobs** [2] - 20:2, 20:14
**JOHN** [3] - 1:11, 1:15, 1:16
**John** [1] - 411:12
**joined** [2] - 197:15, 216:17
**joke** [1] - 369:24
**JT** [1] - 433:18
**judge** [5] - 142:6, 142:19, 150:8, 151:15, 167:20
**Judge** [3] - 142:10, 142:12, 142:15
**judge's** [1] - 150:9
**July** [1] - 373:22
**jumped** [1] - 223:9
**June** [267] - 35:12, 42:8, 43:17, 45:2, 175:12, 175:20, 176:13, 177:8, 178:15, 178:25, 179:15, 179:20, 180:6, 180:9, 180:12, 180:15, 180:23, 181:2, 181:5, 181:8, 186:15, 187:17, 187:21, 189:8, 189:19, 190:9, 190:12, 190:15, 191:12, 235:3, 237:14, 238:3, 238:8, 238:20, 238:25, 243:22, 244:6, 244:16, 244:22, 245:2, 245:6, 245:9, 245:12, 245:25, 246:11, 247:14, 248:7, 248:10, 248:13, 248:17, 249:14, 250:12, 250:16, 251:5, 251:9, 252:10, 252:18, 254:19, 257:4, 257:17, 257:24, 260:3, 260:6, 264:23, 267:13, 269:3, 269:21, 276:15, 281:18, 282:8, 284:13, 284:22, 287:13, 289:11, 289:17, 290:2, 290:5, 291:4, 291:20, 292:8, 296:2, 296:5, 296:8, 296:24, 297:4, 299:2, 299:5, 299:8, 299:17, 301:23, 302:6, 302:21, 304:13, 304:25, 305:13, 306:19, 308:6, 309:6, 309:18, 309:20, 309:23, 310:23, 311:5, 311:12, 314:11, 315:23, 316:5, 316:23, 319:24, 320:8, 320:14, 320:20, 321:24, 322:5, 322:14, 322:20, 325:14, 325:17, 326:5, 326:11, 326:15, 326:20, 326:25, 327:10, 329:15, 329:22, 330:2, 331:14, 333:10, 334:3, 334:9, 334:13, 335:8, 335:23, 336:4, 336:9, 337:7, 337:20, 340:11, 341:16, 341:22, 342:6, 342:16, 343:2, 343:3, 343:4, 343:19, 343:21, 344:23, 345:7, 352:7, 352:11, 353:5, 353:8,

353:20, 354:2, 354:15, 354:21, 355:18, 356:2, 356:12, 357:4, 357:25, 358:9, 358:13, 360:6, 360:10, 362:10, 362:13, 363:4, 363:22, 364:9, 365:3, 366:10, 366:16, 367:9, 367:25, 369:15, 371:6, 372:4, 373:16, 373:22, 374:13, 374:15, 376:22, 377:13, 377:16, 377:19, 378:3, 382:23, 383:2, 383:13, 384:13, 384:17, 384:22, 385:18, 385:22, 386:4, 386:25, 388:8, 390:20, 390:24, 391:4, 392:20, 392:25, 393:24, 394:4, 395:17, 398:22, 399:7, 399:22, 400:13, 400:22, 401:2, 401:7, 401:23, 402:18, 405:20, 410:16, 415:8, 416:16, 417:5, 417:6, 417:12, 417:20, 418:18, 419:2, 420:5, 420:9, 422:6, 422:25, 423:22, 425:23, 426:12, 426:15, 426:18, 429:14, 432:4, 435:3, 435:14, 435:17, 437:16, 438:11, 439:12, 440:3, 440:11, 440:15, 443:19, 443:24, 444:7, 444:11, 447:20, 448:8, 449:15, 450:6, 450:11, 450:17, 450:20, 450:21, 451:8, 451:13, 451:17, 451:21, 458:15, 458:16

**Just's** [4] - 361:9, 363:4, 400:4, 400:21

**just..** [1] - 379:12

**Justin** [5] - 367:10, 368:18, 369:6, 373:9, 374:15

## K

**keep** [15] - 148:3, 192:15, 196:19, 208:2, 208:20, 221:11, 226:5, 231:9, 284:6, 294:19, 298:3, 298:22, 319:7, 347:7, 375:5

**keeping** [2] - 331:20, 439:21

**keeps** [1] - 147:14

**kept** [8] - 86:14, 86:17, 86:20, 87:2, 87:5, 171:16, 391:24, 435:23

**key** [1] - 126:18

**kicked** [2] - 190:12, 223:9

**kid** [2] - 72:2, 352:15

**kid's** [2] - 52:11, 303:11

**kids** [6] - 192:15, 300:7, 368:23, 388:24, 389:6, 390:11

**kind** [8] - 9:23, 72:20, 78:24, 210:6, 218:6, 230:3, 332:15, 369:3

**knee** [1] - 346:17

**knife** [2] - 72:9, 72:11

**Knight** [1] - 324:9

**knowing** [4] - 75:9, 200:16, 380:23, 404:25

**knowledge** [10] - 134:15, 261:4, 302:5, 360:4, 360:8, 437:8, 438:17, 439:23, 441:13, 442:17

**known** [1] - 182:8

**knows** [2] - 223:9, 365:8

**Kristin** [5] - 251:18, 334:20, 334:23, 386:6, 386:8

## L

**L-O-P-E-Z** [1] - 396:22

**labeled** [1] - 124:15

**lacrosse** [2] - 260:7, 260:8

**Lane** [4] - 19:3, 19:6, 19:12, 19:15

**language** [1] - 83:15

**large** [3] - 183:23, 199:15, 300:2

**last** [24] - 17:25, 39:12, 66:19, 66:20, 93:4, 93:6, 97:9, 99:6, 101:12, 111:23, 134:11, 139:5, 168:7, 168:11, 208:17, 253:18, 262:15, 277:22, 302:14, 357:7, 363:17, 363:18, 372:12, 385:12

**last..** [1] - 151:13

**lastly** [1] - 60:15

**late** [2] - 328:16, 398:14

**latest** [2] - 309:7, 328:17

**law** [7] - 28:21, 30:3, 114:4, 116:11, 180:11, 180:14, 423:12

**LAW** [1] - 3:3

**lawful** [1] - 426:2

**lawfully** [4] - 60:12, 425:13, 425:22, 426:17

**lawsuit** [21] - 8:5, 31:5, 31:6, 34:15, 39:14, 42:10, 43:14, 45:20, 45:24, 46:25, 47:4, 114:16, 154:20, 156:9, 156:13, 157:19, 253:2, 281:20, 422:10, 423:22, 423:23

**lawsuits** [1] - 40:13

**lawyer** [8] - 10:15, 11:10, 13:11, 39:19, 40:2, 353:8, 353:19, 356:4

**lawyers** [4] - 45:5, 379:21, 383:22, 383:23

**LCSD** [1] - 350:11

**LCSD-1** [1] - 50:21

**LCSD-11** [3] - 61:10, 82:10, 94:20

**LCSD-20** [2] - 90:15, 90:21

**LCSD-2126** [2] - 260:18, 260:23

**LCSD-2134** [2] - 260:19, 260:23

**LCSD-22** [1] - 87:9

**LCSD-233** [1] - 111:23

**LCSD-234** [2] - 112:15, 113:20

**LCSD-24** [1] - 172:8

**LCSD-2400** [1] - 315:8

**LCSD-2404** [2] - 328:7, 333:6

**LCSD-2405** [1] - 328:8

**LCSD-2434** [1] - 297:17

**LCSD-2435** [1] - 290:17

**LCSD-2437** [2] - 293:9, 293:20

**LCSD-2438** [3] - 290:18, 293:10, 293:20

**LCSD-2439** [1] - 374:7

**LCSD-2440** [2] - 367:16, 370:10

**LCSD-2447** [1] - 344:3

**LCSD-2448** [1] - 360:21

**LCSD-2449** [1] - 360:22

**LCSD-2457** [2] - 386:24, 388:23

**LCSD-2459** [1] - 400:18

**LCSD-2460** [1] - 400:18

**LCSD-2461** [4] - 402:3, 402:19, 407:20, 458:21

**LCSD-2462** [3] - 402:3, 407:20, 458:22

**LCSD-2473** [1] - 394:7

**LCSD-2475** [1] - 162:25

**LCSD-2477** [2] - 163:13, 163:17

**LCSD-2488** [1] - 163:22

**LCSD-2489** [1] - 163:18

**LCSD-260** [1] - 287:24

**LCSD-31** [1] - 118:9

**LCSD-5** [2] - 59:3, 60:17

**LCSD-626** [2] - 308:11, 318:12

**LCSD-72** [1] - 125:15

**LCSD-783** [1] - 125:16

**LCSD-79** [2] - 125:22, 126:3

**LCSD-80** [1] - 132:5

**LCSD-82** [1] - 134:5

**LCSD-83** [1] - 134:12

**leader** [3] - 15:15, 210:24, 211:3

**leading** [2] - 210:19, 267:7

**learn** [18] - 67:9, 85:19, 257:20, 258:22, 335:6, 344:20, 344:22, 345:3, 345:5, 362:8, 362:12, 362:16, 379:10, 416:14, 417:4, 417:11, 439:4, 440:9

**learned** [5] - 56:7, 56:23, 85:21, 429:7, 429:14

**learning** [1] - 442:4

**least** [1] - 230:6

**leave** [23] - 18:6, 137:17, 143:12, 198:19, 215:16, 216:15, 221:21, 243:6, 243:9, 243:10, 254:8, 328:22, 328:23, 329:25, 330:14, 330:17, 330:22, 331:2, 331:8, 333:17, 333:19, 377:19, 387:19

**led** [5] - 144:25, 146:15, 146:20, 210:21, 352:3

**left** [36] - 18:9, 74:23, 75:23, 78:12, 78:15, 136:6, 137:20, 147:25, 153:15, 169:15, 169:16, 196:22, 198:2, 198:7, 198:12, 198:13, 205:12, 205:15, 205:17, 205:19, 212:23, 212:25, 217:4, 218:15, 220:11, 220:16, 220:21, 230:3, 230:6, 230:13, 233:24, 296:21, 306:22, 347:3, 348:12, 439:16

**legal** [4] - 32:19, 425:14, 425:18, 425:19

**length** [2] - 72:12, 121:23

**Leonard** [1] - 168:12

**less** [8] - 202:21, 219:3, 272:5, 272:7, 272:8, 272:9, 333:21, 333:23

**Letter** [8] - 276:18, 279:16, 459:21, 460:2, 460:5, 460:7, 460:9, 460:11

**letter** [9] - 68:25, 176:16, 276:25, 278:12, 280:7, 289:3, 311:22, 340:21, 442:8
**letterhead** [1] - 376:2
**letters** [2] - 161:11, 411:6
**letting** [3] - 27:11, 315:17, 374:23
**level** [5] - 16:6, 16:18, 195:6, 198:10, 205:14
**levels** [1] - 321:10
**Levittown** [2] - 16:21, 19:3
**LGI** [1] - 183:23
**liability** [1] - 184:13
**liberal** [2] - 14:25, 15:7
**license** [2] - 17:9, 17:11
**licenses** [3] - 17:4, 17:7, 17:12
**lieutenant** [1] - 253:24
**life** [4] - 21:12, 40:7, 166:3, 438:25
**life-threatening** [1] - 166:3
**lifted** [1] - 347:22
**light** [1] - 217:11
**light-skinned** [1] - 217:11
**likely** [51] - 93:7, 94:8, 109:11, 120:22, 130:5, 130:8, 172:23, 176:17, 176:20, 179:2, 193:18, 193:20, 194:4, 194:8, 199:17, 200:18, 228:23, 229:9, 233:13, 233:25, 234:9, 235:11, 235:13, 237:2, 249:8, 266:21, 270:12, 270:18, 274:22, 282:4, 285:6, 285:9, 286:15, 292:18, 294:22, 323:16, 325:21, 326:8, 326:22, 331:3, 350:25, 354:24, 364:24, 374:22, 376:23, 382:14, 383:5, 397:4, 397:11, 440:25, 441:2
**limine** [1] - 147:3
**limited** [7] - 44:18, 72:16, 304:8, 372:5, 406:21, 446:14, 459:9
**line** [6] - 28:5, 128:21, 152:18, 221:4, 254:7, 280:22
**LINEEN** [521] - 3:13, 6:9, 11:13, 12:18, 13:5, 19:23, 21:5, 21:24, 23:11, 24:7, 24:14, 24:22, 25:14, 26:10, 26:22, 26:25, 27:7, 27:10, 27:19, 27:23, 28:3, 29:9, 30:12, 30:25, 31:7, 31:15, 31:17, 31:21, 32:13, 32:18, 32:22, 33:2, 33:13, 34:16, 35:3, 36:10, 36:17, 36:23, 37:6, 37:14, 37:21, 37:25, 38:4, 38:11, 38:14, 38:17, 38:20, 39:16, 40:3, 40:9, 40:11, 40:14, 41:9, 42:2, 42:18, 42:20, 43:2, 43:25, 44:5, 44:8, 45:21, 46:15, 46:21, 47:22, 49:17, 50:9, 51:5, 51:10, 51:21, 52:2, 52:16, 52:23, 53:16, 53:21, 54:4, 54:17, 57:24, 58:5, 58:13, 61:2, 62:3, 62:21, 65:4, 65:23, 67:24, 68:11, 71:17, 71:24, 72:14, 74:10, 75:3, 76:3, 76:8, 76:17, 77:5, 77:12, 77:24, 78:14, 79:7, 79:21, 79:23, 81:5, 81:9, 81:16, 82:4, 82:18, 82:25, 83:25, 84:16, 84:21, 86:24, 89:2, 91:19, 92:9, 93:15, 94:2, 94:6, 94:15, 95:8, 95:14, 96:10, 97:23, 98:8, 98:23, 99:4, 99:23, 100:6, 100:10, 100:23, 101:8, 102:6, 103:6, 103:23, 105:5, 105:9, 105:20, 107:10, 107:21, 108:4, 110:23, 111:4, 111:12, 111:20, 112:13, 113:3, 115:7, 116:6, 117:8, 120:12, 121:11, 122:3, 122:19, 122:24, 123:5, 125:19, 126:8, 126:24, 127:21, 128:10, 129:6, 129:20, 130:13, 130:15, 130:20, 131:4, 131:12, 131:20, 131:23, 132:19, 133:16, 135:3, 135:9, 135:18, 135:24, 136:13, 136:15, 136:24, 137:4, 137:8, 137:12, 137:22, 138:2, 138:5, 138:10, 138:23, 138:25, 139:7, 139:12, 139:15, 140:2, 140:5, 140:9, 140:13, 140:18, 141:25, 142:16, 143:10, 143:23, 145:22, 146:3, 147:8, 147:18, 148:9, 148:11, 148:19, 149:11, 150:3, 151:12, 151:17, 151:22, 152:13, 153:18, 154:4, 154:7, 154:15, 154:18, 154:22, 155:7, 155:15, 155:18, 155:23, 156:10, 156:17, 157:3, 157:14, 158:10, 159:7, 159:17, 160:15, 162:2, 162:17, 165:3, 165:18, 166:8, 166:13, 166:21, 167:2, 167:6, 167:9, 167:13, 170:10, 171:24, 173:4, 174:6, 175:15, 177:4, 177:22, 178:4, 178:14, 178:18, 180:16, 182:22, 182:25, 183:16, 184:9, 186:16, 190:24, 191:7, 191:23, 192:3, 195:11, 202:3, 202:16, 202:23, 204:2, 204:10, 204:24, 206:15, 207:7, 207:16, 208:24, 209:10, 209:20, 211:4, 212:8, 213:8, 213:12, 213:15, 213:18, 213:22, 214:5, 214:9, 214:24, 216:7, 217:21, 217:25, 218:8, 219:12, 220:19, 223:13, 224:10, 224:16, 225:4, 226:18, 232:14, 234:4, 236:7, 236:10, 236:13, 242:11, 244:9, 245:7, 247:24, 249:21, 250:18, 250:21, 252:16, 252:20, 256:9, 257:9, 258:2, 258:7, 258:12, 259:3, 260:25, 263:3, 264:2, 264:24, 266:11, 269:4, 270:2, 272:11, 273:10, 273:14, 273:18, 275:24, 277:9, 279:3, 279:12, 279:23, 281:14, 282:9, 282:20, 282:24, 283:16, 283:20, 284:4, 284:6, 284:16, 286:18, 286:22, 288:24, 291:11, 291:16, 292:9, 292:22, 293:21, 293:24, 294:20, 297:7, 301:20, 304:11, 304:21, 305:18, 306:14, 307:13, 307:19, 309:25, 310:24, 312:22, 313:17, 316:16, 316:25, 318:2, 318:13, 319:25, 322:16, 322:21, 323:13, 324:21, 325:20, 326:12, 327:5, 327:11, 327:19, 331:12, 332:9, 332:14, 333:2, 334:5, 336:2, 338:14, 338:18, 340:23, 341:9, 341:23, 343:6, 345:14, 348:2, 349:10, 349:19, 350:21, 351:11, 353:14, 353:21, 354:4, 354:7, 355:11, 357:14, 362:2, 363:9, 365:13, 365:18, 366:12, 368:16, 369:11, 369:17, 371:2, 371:23, 372:6, 372:21, 373:2, 373:23, 375:2, 375:23, 376:13, 381:7, 382:4, 383:4, 383:16, 384:8, 385:6, 385:24, 390:14, 392:2, 392:10, 399:8, 399:12, 401:25, 404:4, 404:12, 405:3, 407:16, 408:3, 408:14, 409:4, 409:19, 410:4, 410:18, 411:17, 411:25, 412:8, 412:13, 412:17, 412:20, 413:2, 417:2, 417:13, 417:24, 418:5, 420:18, 423:25, 424:16, 424:24, 425:8, 425:11, 425:17, 425:24, 426:5, 426:19, 426:24, 427:19, 427:23, 428:13, 428:20, 429:4, 429:18, 429:22, 430:2, 430:12, 430:20, 430:25, 431:23, 432:5, 432:9, 433:6, 433:11, 433:22, 434:3, 434:17, 434:24, 435:5, 436:3, 436:14, 436:24, 437:5, 438:22, 439:13, 439:15, 439:20, 440:4, 441:7, 441:10, 441:17, 441:22, 442:23, 443:3, 443:6, 443:11, 443:21, 444:4, 444:23, 446:5, 446:16, 446:22, 447:2, 447:6, 447:11, 447:17, 449:21, 450:7, 450:21, 452:3, 452:7, 452:19, 453:3, 453:11, 454:7, 454:18, 455:4, 457:5
**lines** [2] - 109:19,

110:18
**list** [2] - 71:25, 72:3
**listen** [4] - 139:15, 142:21, 333:16, 333:19
**listening** [1] - 207:3
**lists** [1] - 71:22
**literally** [3] - 56:18, 218:18, 262:2
**litigation** [4] - 138:15, 155:6, 155:9, 410:3
**local** [1] - 159:3
**located** [3] - 21:16, 125:17, 319:10
**location** [1] - 235:7
**lodge** [1] - 38:23
**lodged** [7] - 41:7, 41:13, 274:18, 274:22, 278:25, 304:24, 376:9
**lodging** [1] - 284:9
**log** [1] - 354:17
**logical** [1] - 109:13
**Lonegan** [1] - 135:17
**lonergan** [1] - 99:13
**LONERGAN** [1] - 1:12
**Lonergan** [7] - 134:22, 161:21, 161:23, 357:11, 357:13, 403:20, 411:10
**Longwood** [186] - 17:16, 17:23, 18:14, 18:17, 21:14, 23:3, 24:4, 24:5, 24:8, 30:15, 30:18, 41:6, 41:24, 47:24, 48:7, 48:9, 48:13, 49:6, 49:8, 50:21, 50:23, 51:8, 51:17, 51:24, 54:3, 54:15, 58:11, 59:9, 60:5, 60:18, 61:7, 61:18, 61:24, 62:8, 63:7, 63:17, 65:12, 65:21, 66:8, 67:2, 70:15, 74:25, 78:22, 79:3, 79:4, 81:13, 85:20, 86:18, 87:3, 92:5, 92:17, 92:22, 95:7, 95:22, 96:3, 96:7, 96:8, 96:15, 96:18, 98:6, 98:21, 100:4, 102:4, 102:16, 103:17, 104:5, 106:13, 107:8, 107:24, 108:21, 109:9, 109:24, 113:5, 113:8, 113:21, 115:16, 117:3, 118:23, 121:25, 122:7, 122:14, 127:13, 127:18, 127:23, 128:2, 128:13, 128:24, 132:8, 133:13, 134:2, 141:3, 141:9, 157:6, 160:7, 161:3, 162:7, 162:13, 164:23, 167:3, 167:12, 169:21, 170:22, 171:17, 172:19, 173:10, 173:13, 179:6, 179:13, 179:17, 179:22, 181:16, 183:24, 185:6, 186:24, 187:5, 188:23, 189:21, 238:20, 241:12, 241:17, 241:22, 245:11, 249:3, 250:8, 257:22, 257:23, 259:6, 278:8, 280:16, 288:2, 292:16, 292:21, 295:6, 304:9, 305:21, 310:21, 312:10, 314:19, 333:4, 336:7, 340:11, 356:21, 357:9, 358:22, 362:9, 365:16, 365:21, 369:23, 375:19, 378:5, 380:17, 381:4, 381:11, 381:23, 382:3, 382:7, 383:14, 383:25, 384:10, 384:16, 384:21, 391:25, 394:25, 395:7, 396:24, 400:25, 403:24, 404:10, 405:8, 405:16, 410:12, 410:17, 411:9, 416:15, 421:14, 421:24, 423:12, 423:24, 425:22, 427:3, 435:8, 438:20, 440:10, 443:18, 444:3, 444:8
**LONGWOOD** [5] - 1:8, 1:12, 1:13, 1:14, 1:15
**look** [22] - 38:7, 59:6, 61:12, 62:5, 67:3, 78:9, 82:12, 94:22, 94:24, 125:24, 133:11, 185:22, 293:9, 318:3, 318:11, 327:22, 332:18, 368:23, 406:9, 406:17, 415:11, 449:2
**looked** [14] - 196:9, 203:16, 203:25, 204:7, 204:12, 205:6, 228:19, 277:25, 300:8, 331:15, 348:4, 348:12, 444:8
**looking** [17] - 8:6, 8:8, 11:18, 21:17, 37:11, 44:14, 85:25, 112:17, 113:19, 133:10, 133:15, 144:10, 204:6, 232:5, 291:25, 347:3, 415:18
**looks** [37] - 49:2, 66:13, 66:14, 118:7, 171:10, 171:14, 185:16, 185:23, 205:22, 205:24, 217:9, 259:12, 277:15, 288:16, 291:4, 292:12, 297:21, 311:25, 334:6, 334:8, 339:13, 359:8, 361:18, 361:25, 362:6, 368:22, 386:20, 388:13, 394:12, 395:19, 398:24, 401:19, 406:22, 416:13, 423:10, 444:24, 444:25
**loop** [1] - 375:6
**loose** [1] - 198:14
**Lopez** [15] - 315:3, 317:4, 329:5, 355:2, 396:19, 396:21, 401:14, 401:23, 402:18, 403:8, 405:19, 407:25, 459:2, 461:5, 461:15
**Lopez's** [1] - 408:11
**lose** [1] - 316:14
**losing** [1] - 230:2
**luck** [1] - 152:21
**lunch** [2] - 102:19, 256:12
**lying** [1] - 182:23

## M

**M-A-K-A-R-I-U-S** [1] - 386:22
**Macarius** [1] - 263:18
**mail** [196] - 11:16, 46:5, 46:7, 46:13, 46:17, 87:21, 87:25, 120:22, 121:3, 129:12, 129:14, 129:16, 129:19, 130:4, 234:20, 236:4, 236:5, 236:9, 236:15, 236:17, 242:14, 243:19, 244:21, 245:2, 251:15, 251:21, 251:25, 252:4, 252:7, 252:11, 252:19, 252:22, 254:8, 261:5, 261:7, 261:11, 261:19, 261:22, 262:10, 262:11, 262:14, 262:16, 263:20, 264:5, 264:9, 264:13, 265:11, 276:5, 290:13, 290:25, 291:3, 291:6, 291:10, 291:14, 291:19, 291:21, 291:22, 294:18, 294:19, 295:2, 297:13, 297:21, 298:7, 298:15, 298:19, 299:4, 307:15, 308:8, 314:6, 314:18, 314:25, 315:4, 315:5, 315:11, 318:10, 318:20, 318:24, 319:5, 320:6, 321:4, 321:15, 323:18, 325:16, 325:18, 325:25, 326:4, 326:18, 328:24, 329:9, 329:14, 329:17, 330:3, 334:4, 334:17, 335:14, 335:18, 336:25, 337:2, 337:5, 337:9, 337:16, 337:19, 338:17, 352:7, 352:15, 356:8, 356:25, 357:3, 358:11, 359:4, 359:21, 359:23, 360:5, 360:9, 360:15, 360:23, 361:5, 361:7, 361:10, 363:5, 364:16, 367:4, 367:8, 368:19, 369:2, 369:5, 369:14, 370:17, 370:20, 370:25, 371:16, 371:18, 374:2, 374:10, 374:14, 375:13, 386:13, 386:15, 386:20, 386:24, 387:8, 387:16, 387:19, 388:5, 388:7, 388:10, 388:15, 388:20, 393:16, 393:21, 393:23, 394:2, 394:3, 394:11, 394:14, 394:16, 394:21, 394:25, 395:8, 395:23, 397:17, 397:21, 398:4, 398:8, 398:9, 399:2, 399:11, 400:4, 400:9, 400:12, 400:16, 400:21, 401:14, 401:22, 405:21, 406:2, 406:25, 408:2, 408:9, 412:4, 435:3, 451:17, 459:3, 459:25, 460:18, 460:20, 460:22, 460:23, 460:24, 461:2, 461:4, 461:6, 461:8, 461:10, 461:12, 461:14
**Mail** [3] - 290:9, 336:14, 358:22
**mail's** [1] - 298:12
**mailbox** [1] - 129:10
**mailed** [2] - 23:22, 326:17
**mailing** [2] - 250:22, 250:24
**mailings** [3] - 190:6, 250:16, 251:5
**Mails** [1] - 260:18
**mails** [68] - 11:16, 12:4, 46:14, 251:7, 251:11, 251:14, 251:22, 251:24, 252:3, 252:14, 252:18, 252:21, 252:24, 260:22, 261:17, 261:24, 262:3, 262:7, 262:8, 262:17, 262:24, 263:23, 294:15, 299:7, 299:11, 315:9, 325:17, 325:23, 327:4, 337:24, 352:11,

356:11, 356:16, 356:17, 356:22, 366:22, 369:9, 371:21, 371:25, 372:3, 372:14, 372:19, 372:24, 373:3, 373:6, 373:21, 376:18, 377:12, 387:13, 394:20, 394:24, 395:5, 395:6, 407:3, 407:7, 407:19, 411:3, 411:7, 412:10, 412:15, 412:25, 436:7, 451:3, 451:6, 458:9, 458:21, 460:13, 460:14
**Main** [1] - 271:11
**main** [7] - 192:7, 192:9, 193:14, 193:19, 193:25, 194:15, 198:22
**maintain** [1] - 118:22
**maintained** [2] - 88:18, 88:21
**maintains** [1] - 179:23
**Makarius** [5] - 386:16, 386:21, 386:25, 388:8, 461:7
**maker** [2] - 98:2, 102:14
**makers** [2] - 102:3, 103:11
**Malcolm** [1] - 142:11
**Malcolm's** [1] - 142:13
**male** [4] - 44:20, 217:12, 349:3, 349:4
**males** [4] - 67:7, 68:10, 445:4, 457:19
**man** [2] - 189:24, 370:13
**manages** [1] - 261:21
**mandated** [1] - 183:6
**manner** [4] - 60:24, 298:4, 298:23, 390:20
**Manual** [4] - 50:20, 118:3, 459:18, 459:23
**manual** [3] - 108:12, 118:7, 118:10
**maria** [1] - 323:22
**MARIA** [1] - 1:13
**Maria** [19] - 233:15, 235:10, 280:10, 288:9, 291:25, 315:2, 324:3, 328:25, 400:13, 411:11, 451:24, 460:2, 460:5, 460:9, 460:11, 460:18, 461:2, 461:10, 461:12
**Marie** [2] - 324:9, 374:16
**marital** [1] - 119:12
**mark** [2] - 117:20, 162:3
**marked** [65] - 48:19, 108:7, 118:3, 118:5, 124:4, 124:6, 129:3, 137:3, 153:6, 162:7, 171:6, 185:11, 190:18, 258:16, 260:19, 260:21, 276:19, 276:21, 276:22, 279:17, 279:18, 287:19, 287:20, 290:10, 290:11, 297:14, 297:16, 308:3, 308:5, 314:20, 314:22, 327:23, 328:2, 328:4, 336:12, 336:15, 336:23, 358:19, 358:23, 358:25, 366:24, 367:2, 374:3, 374:5, 386:16, 386:18, 393:14, 393:17, 393:19, 397:19, 397:22, 397:24, 400:7, 400:9, 400:11, 401:12, 401:15, 401:17, 408:22, 408:24, 414:20, 414:22, 423:5, 448:23, 449:2
**Markle** [1] - 237:20
**marks** [2] - 291:10, 291:14
**marriage** [1] - 462:17
**mass** [2] - 192:11, 220:25
**Massapequa** [3] - 16:3, 16:7, 18:5
**Master's** [2] - 14:23, 14:24
**master's** [3] - 15:7, 15:21, 16:13
**match** [1] - 221:10
**material** [5] - 132:7, 175:8, 185:21, 435:22, 436:2
**materials** [4] - 91:12, 106:2, 183:15, 183:19
**matter** [8] - 25:11, 141:10, 155:22, 170:15, 233:3, 341:6, 410:2, 462:19
**matters** [3] - 102:9, 312:24, 313:5
**Maureen** [1] - 104:14
**max** [1] - 219:4
**me/security** [2] - 388:25, 390:11
**mean** [56] - 12:21, 15:14, 29:14, 46:16, 48:11, 54:8, 56:4, 73:25, 74:17, 77:15, 79:25, 86:20, 88:4, 97:9, 105:6, 105:10, 109:20, 110:10, 126:23, 136:2, 149:13, 152:13, 175:21, 204:8, 214:21, 222:21, 226:7, 226:8, 228:3, 239:8, 246:3, 255:18, 290:22, 291:12, 294:16, 300:23, 301:5, 302:9, 303:2, 313:22, 332:15, 339:8, 362:20, 365:6, 375:9, 382:17, 387:18, 387:19, 388:6, 389:4, 389:12, 398:11, 402:7, 403:5, 420:6
**MEAN** [1] - 430:24
**means** [10] - 87:5, 109:15, 122:20, 159:8, 222:23, 224:9, 347:21, 351:24, 360:2, 370:2
**meant** [6] - 298:22, 352:18, 352:20, 370:6, 370:12, 398:16
**measure** [1] - 369:3
**measures** [4] - 114:3, 445:9, 445:12, 445:25
**media** [24] - 45:23, 46:2, 46:24, 188:12, 188:17, 188:20, 295:7, 295:10, 295:13, 295:22, 296:4, 296:8, 301:7, 303:20, 341:4, 368:23, 369:15, 371:10, 371:22, 372:5, 405:7, 406:21, 409:24, 411:7
**medical** [1] - 181:7
**Medical** [2] - 136:8, 156:4
**medications** [1] - 9:22
**medicine** [1] - 9:24
**meet** [5] - 45:4, 245:23, 248:5, 248:9, 271:10
**meeting** [42] - 45:9, 45:10, 45:11, 71:14, 130:17, 130:18, 130:21, 131:3, 131:7, 131:8, 131:9, 246:17, 246:19, 247:2, 247:20, 247:23, 253:5, 272:17, 272:20, 272:23, 273:2, 274:12, 274:15, 282:2, 282:5, 321:13, 321:16, 322:3, 322:8, 322:13, 381:21, 384:11, 384:16, 409:3, 442:2, 449:15, 449:18, 450:16, 451:12, 451:14, 458:2
**meetings** [8] - 70:20, 70:21, 130:6, 165:7, 244:18, 245:5, 245:10, 245:20
**meets** [1] - 246:7
**Melissa** [4] - 270:18, 315:2, 323:22, 328:25
**melissa** [1] - 237:15
**member** [25] - 23:20, 51:14, 51:17, 78:20, 78:25, 79:4, 79:19, 80:14, 84:3, 189:2, 241:10, 241:16, 241:23, 241:24, 242:7, 251:16, 296:12, 307:23, 352:21, 352:23, 352:25, 359:9, 388:2, 403:9, 403:23
**members** [16] - 51:7, 110:17, 112:19, 113:10, 257:15, 257:23, 265:13, 300:7, 300:20, 301:18, 302:24, 303:4, 337:12, 403:10, 421:6, 423:12
**memoranda** [1] - 409:25
**memorandum** [3] - 127:11, 380:16, 411:6
**men** [1] - 395:20
**mental** [1] - 53:11
**mention** [3] - 247:13, 310:9, 381:19
**mentioned** [19] - 17:6, 31:25, 35:20, 38:9, 39:15, 283:7, 311:17, 321:6, 368:12, 368:15, 381:17, 385:23, 386:3, 420:12, 444:13, 446:13, 447:21, 449:14, 459:8
**MENTIONED** [1] - 190:19
**mentioning** [1] - 390:16
**Merkle** [6] - 124:25, 125:6, 270:19, 323:24, 324:10, 329:6
**Merkle's** [1] - 233:11
**message** [2] - 361:12, 361:16
**messages** [7] - 252:24, 364:5, 371:10, 407:23, 409:24, 411:8, 458:24
**met** [9] - 45:13, 241:24, 246:4, 246:10, 273:12, 273:16, 289:25, 321:19, 323:4
**meta** [2] - 319:21, 458:13
**Methods** [1] - 82:10
**MGS** [1] - 432:24
**MICHAEL** [1] - 1:12
**Michael** [6] - 134:22, 135:17, 161:21, 161:23, 411:10, 460:7
**middle** [4] - 142:2, 329:10, 331:16, 332:10
**Middle** [3] - 19:3, 19:6, 158:25
**might** [39] - 7:9, 8:14, 9:13, 9:14, 9:25, 11:19, 38:24, 55:9, 55:12, 55:16, 56:2, 58:22, 72:20, 105:15, 169:14, 187:22, 189:19, 192:20, 214:15, 228:13, 231:25,

232:7, 264:4, 270:25, 275:13, 294:12, 296:20, 316:2, 362:21, 366:14, 375:7, 379:19, 379:20, 383:3, 412:11, 412:16, 419:6, 436:8, 450:5
**mightily** [7] - 79:12, 226:4, 226:7, 226:25, 228:21, 339:12, 346:3
**military** [1] - 119:10
**mind** [1] - 9:9
**mine** [4] - 176:10, 270:4, 270:6, 393:12
**Mineola** [1] - 2:23
**minor** [3] - 207:13, 228:7, 260:10
**minority** [2] - 100:14, 100:22
**minute** [4] - 190:21, 263:9, 333:22, 363:8
**minutes** [20] - 9:2, 106:18, 106:20, 130:17, 183:13, 263:13, 263:14, 316:6, 316:12, 316:23, 317:16, 317:20, 321:18, 322:17, 322:25, 323:7, 325:5, 439:16, 443:8, 451:21
**misconduct** [1] - 307:21
**misdemeanor** [1] - 418:12
**missed** [4] - 147:7, 388:12, 388:14, 399:16
**missing** [1] - 124:19
**Mission** [1] - 118:11
**mission** [2] - 108:12, 108:17
**mode** [1] - 228:4
**modified** [2] - 318:15, 318:16
**Moffett** [7] - 2:5, 2:22, 6:23, 7:9, 117:19, 323:21, 363:16
**MOFFETT** [2] - 462:7, 462:24
**moment** [6] - 197:3, 233:8, 234:6, 234:21, 273:4, 336:17
**moments** [1] - 211:18
**money** [3] - 38:12, 328:15, 329:13
**monitor** [1] - 188:11
**monitored** [3] - 188:17, 188:25, 295:7
**monitors** [1] - 188:24
**month** [2] - 296:4, 365:24
**morning** [9] - 5:16, 5:17, 140:25, 141:7, 191:17, 249:14, 292:13, 297:22, 298:5
**morris** [1] - 147:11
**Morris** [6] - 5:18, 6:14, 141:2, 141:8, 149:18, 423:13
**MORRIS** [153] - 3:3, 3:7, 5:9, 6:2, 6:12, 24:11, 26:19, 26:23, 27:2, 27:8, 27:13, 27:21, 27:25, 29:10, 31:16, 31:19, 38:2, 38:6, 38:22, 39:23, 42:23, 44:6, 68:5, 71:7, 73:4, 88:23, 94:11, 100:8, 101:10, 106:19, 106:22, 107:2, 115:3, 117:19, 117:25, 131:17, 131:21, 132:3, 137:6, 137:10, 137:16, 137:24, 138:3, 138:7, 138:17, 138:24, 139:5, 139:9, 139:13, 140:7, 140:11, 140:14, 140:25, 141:7, 141:14, 141:18, 141:21, 142:4, 143:6, 143:11, 145:20, 147:13, 147:23, 148:10, 148:12, 149:7, 149:21, 150:20, 151:23, 152:8, 152:23, 154:2, 154:6, 154:13, 154:17, 155:20, 156:19, 157:11, 157:15, 162:3, 166:11, 166:19, 167:7, 167:10, 171:3, 190:20, 190:25, 191:6, 191:8, 208:15, 213:20, 214:2, 218:12, 236:11, 242:8, 251:2, 256:6, 256:10, 256:14, 258:17, 262:22, 284:10, 316:18, 319:19, 325:3, 325:7, 325:11, 336:11, 336:16, 336:20, 358:18, 363:7, 363:10, 363:14, 372:10, 385:10, 392:5, 393:13, 397:18, 400:6, 401:11, 407:17, 412:19, 414:16, 425:9, 425:15, 436:10, 439:18, 439:22, 443:2, 443:4, 443:9, 443:14, 446:11, 446:24, 447:3, 447:7, 447:25, 448:10, 448:24, 449:8, 449:23, 450:3, 450:22, 450:24, 452:16, 452:24, 453:7, 454:5, 454:9, 454:24, 457:4, 457:6
**most** [2] - 194:16, 388:3
**mostly** [1] - 346:2
**mother** [1] - 263:19
**motion** [1] - 147:2
**MOTIONS** [1] - 457:10
**mouth** [2] - 72:5, 240:25
**move** [7] - 28:3, 143:3, 150:16, 152:9, 198:6, 208:6, 225:9
**moved** [1] - 217:18
**movement** [1] - 217:23
**movie** [2] - 396:9, 396:17
**movies** [1] - 396:6
**moving** [1] - 162:13
**MR** [152] - 5:9, 6:2, 6:12, 24:11, 26:19, 26:23, 27:2, 27:8, 27:13, 27:21, 27:25, 29:10, 31:16, 31:19, 38:2, 38:6, 38:22, 39:23, 42:23, 44:6, 68:5, 71:7, 73:4, 88:23, 94:11, 100:8, 101:10, 106:19, 106:22, 107:2, 115:3, 117:19, 117:25, 131:17, 131:21, 132:3, 137:6, 137:10, 137:16, 137:24, 138:3, 138:7, 138:17, 138:24, 139:5, 139:9, 139:13, 140:7, 140:11, 140:14, 140:25, 141:7, 141:14, 141:18, 141:21, 142:4, 143:6, 143:11, 145:20, 147:8, 147:13, 147:23, 148:10, 148:12, 149:7, 149:21, 150:20, 151:23, 152:8, 152:23, 154:2, 154:6, 154:13, 154:17, 155:20, 156:19, 157:11, 157:15, 162:3, 166:11, 166:19, 167:7, 167:10, 171:3, 190:20, 190:25, 191:6, 191:8, 208:15, 213:20, 214:2, 218:12, 236:11, 242:8, 251:2, 256:6, 256:10, 256:14, 258:17, 262:22, 284:10, 316:18, 319:19, 325:3, 325:7, 325:11, 336:11, 336:16, 336:20, 358:18, 363:7, 363:10, 363:14, 372:10, 385:10, 392:5, 393:13, 397:18, 400:6, 401:11, 407:17, 412:19, 414:16, 425:9, 425:15, 436:10, 439:18, 439:22, 443:2, 443:4, 443:9, 443:14, 446:11, 446:24, 447:3, 447:7, 447:25, 448:10, 448:24, 449:8, 449:23, 450:3, 450:22, 450:24, 452:16, 452:24, 453:7, 454:5, 454:9, 454:24, 457:4, 457:6
**Mrs.[sic** [1] - 234:25
**MS** [519] - 6:9, 11:13, 12:18, 13:5, 19:23, 21:5, 21:24, 23:11, 24:7, 24:14, 24:22, 25:14, 26:10, 26:22, 26:25, 27:7, 27:10, 27:19, 27:23, 28:3, 29:9, 30:12, 30:25, 31:7, 31:15, 31:17, 31:21, 32:13, 32:18, 32:22, 33:2, 33:13, 34:16, 35:3, 36:10, 36:17, 36:23, 37:6, 37:14, 37:21, 37:25, 38:4, 38:11, 38:14, 38:17, 38:20, 39:16, 40:3, 40:9, 40:11, 40:14, 41:9, 42:2, 42:18, 42:20, 43:2, 43:25, 44:5, 44:8, 45:21, 46:15, 46:21, 47:22, 49:17, 50:9, 51:5, 51:10, 51:21, 52:2, 52:16, 52:23, 53:16, 53:21, 54:4, 54:17, 57:24, 58:5, 58:13, 61:2, 62:3, 62:21, 65:4, 65:23, 67:24, 68:11, 71:17, 71:24, 72:14, 74:10, 75:3, 76:3, 76:8, 76:17, 77:5, 77:12, 77:24, 78:14, 79:7, 79:21, 79:23, 81:5, 81:9, 81:16, 82:4, 82:18, 82:25, 83:25, 84:16, 84:21, 86:24, 89:2, 91:19, 92:9, 93:15, 94:2, 94:6, 94:15, 95:8, 95:14, 96:10, 97:23, 98:8, 98:23, 99:4, 99:23, 100:6, 100:10, 100:23, 101:8, 102:6, 103:6, 103:23, 105:5, 105:9, 105:20, 107:10, 107:21, 108:4, 110:23, 111:4, 111:12, 111:20, 112:13, 113:3, 115:7, 116:6, 117:8, 120:12, 121:11, 122:3, 122:19, 122:24, 123:5, 125:19, 126:8, 126:24, 127:21, 128:10, 129:6, 129:20, 130:13, 130:15, 130:20, 131:4, 131:12, 131:20, 131:23, 132:19, 133:16, 135:3,

135:9, 135:18, 135:24, 136:13, 136:15, 136:24, 137:4, 137:8, 137:12, 137:22, 138:2, 138:5, 138:10, 138:23, 138:25, 139:7, 139:12, 139:15, 140:2, 140:5, 140:9, 140:13, 140:18, 141:25, 142:16, 143:10, 143:23, 145:22, 146:3, 147:18, 148:9, 148:11, 148:19, 149:11, 150:3, 151:12, 151:17, 151:22, 152:13, 153:18, 154:4, 154:7, 154:15, 154:18, 154:22, 155:7, 155:15, 155:18, 155:23, 156:10, 156:17, 157:3, 157:14, 158:10, 159:7, 159:17, 160:15, 162:2, 162:17, 165:3, 165:18, 166:8, 166:13, 166:21, 167:2, 167:6, 167:9, 167:13, 170:10, 171:24, 173:4, 174:6, 175:15, 177:4, 177:22, 178:4, 178:14, 178:18, 180:16, 182:22, 182:25, 183:16, 184:9, 186:16, 190:24, 191:7, 191:23, 192:3, 195:11, 202:3, 202:16, 202:23, 204:2, 204:10, 204:24, 206:15, 207:7, 207:16, 208:24, 209:10, 209:20, 211:4, 212:8, 213:8, 213:12, 213:15, 213:18, 213:22, 214:5, 214:9, 214:24, 216:7, 217:21, 217:25, 218:8, 219:12, 220:19, 223:13, 224:10, 224:16, 225:4, 226:18, 232:14, 234:4, 236:7, 236:10, 236:13, 242:11, 244:9, 245:7, 247:24, 249:21, 250:18, 250:21, 252:16, 252:20, 256:9, 257:9, 258:2, 258:7, 258:12, 259:3, 260:25, 263:3, 264:2, 264:24, 266:11, 269:4, 270:2, 272:11, 273:10, 273:14, 273:18, 275:24, 277:9, 279:3, 279:12, 279:23, 281:14, 282:9, 282:20, 282:24, 283:16, 283:20, 284:4, 284:6, 284:16, 286:18, 286:22, 288:24, 291:11, 291:16, 292:9, 292:22, 293:21, 293:24, 294:20, 297:7, 301:20, 304:11, 304:21, 305:18, 306:14, 307:13, 307:19, 309:25, 310:24, 312:22, 313:17, 316:16, 316:25, 318:2, 318:13, 319:25, 322:16, 322:21, 323:13, 324:21, 325:20, 326:12, 327:5, 327:11, 327:19, 331:12, 332:9, 332:14, 333:2, 334:5, 336:2, 338:14, 338:18, 340:23, 341:9, 341:23, 343:6, 345:14, 348:2, 349:10, 349:19, 350:21, 351:11, 353:14, 353:21, 354:4, 354:7, 355:11, 357:14, 362:2, 363:9, 365:13, 365:18, 366:12, 368:16, 369:11, 369:17, 371:2, 371:23, 372:6, 372:21, 373:2, 373:23, 375:2, 375:23, 376:13, 381:7, 382:4, 383:4, 383:16, 384:8, 385:6, 385:24, 390:14, 392:2, 392:10, 399:8, 399:12, 401:25, 404:4, 404:12, 405:3, 407:16, 408:3, 408:14, 409:4, 409:19, 410:4, 410:18, 411:17, 411:25, 412:8, 412:13, 412:17, 412:20, 413:2, 417:2, 417:13, 417:24, 418:5, 420:18, 423:25, 424:16, 424:24, 425:8, 425:11, 425:17, 425:24, 426:5, 426:19, 426:24, 427:19, 427:23, 428:13, 428:20, 429:4, 429:18, 429:22, 430:2, 430:12, 430:20, 430:25, 431:23, 432:5, 432:9, 433:6, 433:11, 433:22, 434:3, 434:17, 434:24, 435:5, 436:3, 436:14, 436:24, 437:5, 438:22, 439:13, 439:15, 439:20, 440:4, 441:7, 441:10, 441:17, 441:22, 442:23, 443:3, 443:6, 443:11, 443:21, 444:4, 444:23, 446:5, 446:16, 446:22, 447:2, 447:6, 447:11, 447:17, 449:21, 450:7, 450:21, 452:3, 452:7, 452:19, 453:3, 453:11, 454:7, 454:18, 455:4, 457:5

**Mudder** [1] - 377:25

**muscular** [1] - 44:21

**must** [8] - 60:7, 61:4, 103:3, 103:21, 113:10, 179:12, 298:13, 388:14

**my..** [1] - 208:14

**N**

**name** [25] - 5:10, 5:18, 6:13, 40:2, 104:12, 134:17, 155:2, 168:10, 168:11, 203:14, 204:19, 217:6, 237:12, 253:20, 289:23, 295:15, 302:15, 313:20, 316:3, 342:14, 407:2, 420:21, 428:4, 445:18, 447:21

**named** [4] - 43:14, 139:10, 143:19, 447:22

**names** [5] - 22:16, 170:3, 291:17, 317:6, 402:15

**narrow** [1] - 296:2

**Nassau** [2] - 29:17, 29:18

**NASSAU** [1] - 462:5

**national** [5] - 64:15, 96:23, 99:22, 119:9, 119:23

**nature** [6] - 81:22, 94:16, 246:21, 395:7, 408:5, 446:17

**ND** [1] - 433:9

**ND's** [1] - 433:18

**near** [3] - 230:19, 306:6, 428:23

**nearby** [1] - 87:6

**necessary** [1] - 398:20

**necessitating** [1] - 148:17

**neck** [4] - 52:11, 136:10, 304:18, 306:7

**need** [26] - 7:2, 8:21, 15:22, 87:18, 106:19, 111:10, 138:13, 140:18, 140:21, 149:18, 150:9, 151:18, 152:12, 152:14, 170:3, 269:10, 279:24, 281:25, 303:21, 318:2, 337:12, 338:20, 356:3, 380:6, 382:20, 398:20

**Need** [1] - 402:22

**needed** [7] - 148:15, 232:3, 304:3, 315:17, 366:2, 366:5, 399:14

**Needless** [2] - 324:15, 324:18

**needs** [11] - 64:3, 70:8, 75:21, 151:11, 328:19, 333:25, 356:4, 356:5, 403:11, 404:2, 404:11

**needs/deserves** [1] - 403:2

**negotiating** [1] - 159:15

**nets** [1] - 20:17

**networking** [1] - 46:19

**Never** [1] - 95:20

**never** [10] - 39:3, 95:17, 95:19, 272:25, 280:5, 283:7, 301:13, 303:20, 341:11, 412:24

**new** [2] - 72:19, 357:6

**NEW** [3] - 1:3, 456:4, 462:3

**New** [14] - 1:21, 2:6, 2:23, 3:6, 3:12, 5:15, 15:17, 66:12, 66:14, 68:8, 183:6, 456:23, 457:17, 462:8

**news** [4] - 135:22, 136:3, 144:15, 146:13

**News** [10] - 47:16, 284:23, 284:25, 285:22, 285:25, 286:5, 340:9, 362:5, 389:15, 403:11

**News12LI@News12.com** [1] - 359:19

**next** [17] - 54:25, 56:2, 58:23, 112:15, 128:2, 222:10, 229:24, 242:15, 242:17, 285:24, 292:13, 297:22, 298:5, 303:15, 402:9, 415:11, 415:18

**NEXT** [1] - 1:25

**nice** [2] - 174:21, 352:15

**Nicholson** [2] - 396:12, 396:16

**night** [11] - 136:9, 166:25, 263:11, 291:5, 297:23, 298:5, 315:14, 317:8, 321:11, 334:24, 446:20

**no-contest** [1] - 379:20

**nobody** [3] - 279:9, 281:9, 327:7

**non** [3] - 182:11,

182:14, 184:22
**Non** [1] - 118:13
**Non-Discrimination** [1] - 118:13
**non-violent** [2] - 182:11, 182:14
**none** [4] - 119:18, 133:23, 343:5, 343:8
**None** [3] - 457:9, 457:10, 459:14
**nonsense** [2] - 368:23, 395:15
**nonuse** [1] - 241:3
**normal** [1] - 145:14
**north** [6] - 192:7, 192:9, 193:14, 193:19, 193:25, 198:23
**Notary** [4] - 2:6, 5:4, 456:23, 462:7
**notations** [2] - 161:7, 307:16
**note** [60] - 19:23, 25:14, 43:25, 65:4, 76:3, 79:7, 91:19, 93:15, 94:6, 95:8, 97:23, 107:21, 135:24, 157:4, 173:4, 177:4, 182:25, 186:16, 244:9, 250:18, 258:12, 259:3, 270:2, 275:24, 288:24, 293:24, 297:25, 306:14, 312:22, 313:17, 318:13, 327:19, 338:14, 340:23, 345:14, 353:14, 372:6, 375:2, 375:23, 382:4, 384:8, 385:6, 392:2, 404:12, 409:19, 410:18, 411:17, 417:13, 423:25, 424:16, 426:24, 427:23, 428:13, 430:12, 431:23, 432:5, 433:11, 436:24, 437:5, 441:10
**Note** [25] - 21:5, 34:16, 96:10, 98:23, 99:23, 120:12, 175:15, 202:16, 217:21, 224:10, 232:14, 234:4, 258:7, 279:12, 281:14, 286:18, 294:20, 310:24, 323:13, 325:20, 355:11, 362:2, 390:14, 404:4, 433:6
**notes** [35] - 13:7, 24:17, 36:5, 55:8, 71:14, 81:3, 93:13, 101:22, 120:18, 131:2, 131:6, 131:18, 131:20, 131:21, 149:8, 176:23, 180:18, 189:16, 235:16, 238:15, 243:16, 247:19, 265:24, 272:16, 275:20, 305:9, 342:21, 364:3, 364:4, 391:21, 392:7, 409:23, 458:2, 458:5, 458:17
**NOTES** [1] - 190:19
**nothing** [20] - 7:20, 51:13, 55:24, 145:15, 149:16, 174:12, 195:8, 198:11, 198:24, 210:6, 240:19, 260:3, 267:14, 341:11, 366:14, 367:21, 377:22, 435:10, 435:24
**NOTHING** [1] - 190:19
**notice** [5] - 292:6, 398:14, 423:18, 423:22, 435:15
**Notice** [1] - 461:16
**noticed** [5] - 25:21, 228:20, 262:5, 300:8, 347:5
**noticing** [2] - 198:24, 347:4
**notification** [2] - 260:15, 263:7
**notified** [2] - 424:8, 424:11
**notifying** [1] - 412:21
**November** [3] - 1:22, 456:10, 462:22
**nowhere** [2] - 306:6, 428:23
**number** [8] - 133:8, 141:13, 164:16, 193:25, 241:5, 254:4, 254:6, 434:7
**numeral** [2] - 90:15, 94:22
**nurse** [1] - 439:8
**nut** [1] - 294:6

## O

**o'clock** [8] - 263:12, 263:13, 271:16, 271:20, 271:22, 321:23, 376:18, 376:19
**O'Malley** [5] - 366:23, 367:11, 369:6, 373:9, 374:15
**O'Malley's** [1] - 368:18
**Oakdale** [1] - 29:21
**oath** [11] - 4:17, 7:18, 7:23, 8:9, 256:8, 256:17, 283:12, 313:25, 416:4, 416:5, 456:10
**object** [3] - 27:9, 27:15, 432:10
**Objection** [19] - 54:4, 102:6, 113:3, 155:18, 159:7, 170:10, 206:15, 252:20, 273:18, 279:3, 291:16, 304:11, 349:10, 365:18, 371:23, 381:7, 429:18, 441:22, 443:21
**objection** [381] - 11:13, 12:18, 13:5, 19:23, 21:5, 21:24, 23:11, 24:7, 24:22, 25:14, 26:20, 26:24, 27:11, 27:20, 28:4, 29:9, 30:25, 31:7, 31:15, 32:13, 32:18, 32:22, 33:2, 33:13, 34:16, 35:3, 36:10, 36:17, 36:23, 37:6, 37:14, 37:21, 37:25, 38:11, 38:14, 38:21, 39:16, 40:9, 40:11, 40:14, 41:9, 42:2, 43:25, 44:5, 44:7, 45:21, 46:15, 46:21, 47:22, 49:17, 50:9, 51:5, 51:10, 51:21, 52:2, 52:16, 52:23, 53:16, 53:21, 54:17, 57:24, 58:5, 58:13, 61:2, 62:3, 62:21, 65:4, 65:23, 67:24, 71:24, 72:14, 74:10, 75:3, 76:3, 76:8, 76:17, 77:5, 77:12, 77:24, 78:14, 79:7, 79:21, 79:23, 81:5, 81:9, 81:16, 82:4, 82:18, 82:25, 83:25, 84:16, 84:21, 86:24, 91:19, 92:9, 93:15, 94:2, 94:6, 95:8, 95:14, 96:10, 97:23, 98:8, 98:23, 99:23, 100:6, 100:23, 101:8, 103:6, 103:23, 105:5, 105:9, 105:20, 107:10, 107:21, 108:4, 110:23, 111:4, 111:12, 111:20, 112:13, 116:6, 117:8, 120:12, 121:11, 122:3, 122:19, 122:24, 123:5, 125:19, 126:8, 126:24, 127:21, 128:10, 129:6, 129:20, 130:13, 130:15, 130:20, 131:4, 131:12, 132:19, 133:16, 135:3, 135:9, 135:18, 135:24, 143:3, 144:12, 151:3, 154:22, 155:7, 155:15, 156:10, 158:10, 159:17, 160:15, 162:2, 162:17, 165:3, 165:18, 166:8, 166:10, 166:12, 167:8, 171:24, 173:4, 174:6, 175:15, 177:4, 178:4, 178:14, 178:18, 180:16, 182:22, 182:25, 183:16, 184:9, 186:16, 195:11, 202:3, 202:16, 202:23, 204:2, 204:10, 204:24, 207:7, 207:16, 208:24, 209:10, 209:20, 211:4, 212:8, 213:8, 214:24, 216:7, 217:21, 217:25, 219:12, 220:19, 223:13, 224:10, 224:16, 225:4, 226:18, 232:14, 234:4, 236:7, 236:10, 236:12, 244:9, 245:7, 247:24, 249:21, 250:18, 252:16, 257:9, 258:2, 258:7, 258:12, 259:3, 264:2, 264:24, 266:11, 269:4, 270:2, 272:11, 273:10, 273:14, 275:24, 277:9, 279:12, 281:14, 282:9, 282:20, 282:24, 283:16, 284:4, 284:9, 284:16, 286:18, 286:22, 288:24, 291:11, 292:9, 292:22, 293:21, 293:24, 294:20, 297:7, 301:20, 304:21, 305:18, 306:14, 307:13, 307:19, 309:25, 310:24, 312:22, 313:17, 316:16, 316:25, 318:13, 322:16, 322:21, 323:13, 324:21, 325:20, 326:12, 327:5, 327:11, 327:19, 331:12, 332:9, 332:14, 333:2, 334:5, 336:2, 338:14, 338:18, 340:23, 341:9, 341:23, 343:6, 345:14, 348:2, 350:21, 351:11, 353:14, 354:4, 354:7, 355:11, 357:14, 362:2, 365:13, 366:12, 368:16, 369:11, 369:17, 371:2, 372:6, 372:21, 373:2, 373:23, 375:2, 375:23, 376:13, 382:4, 383:4, 383:16, 384:8, 385:6, 385:24, 390:14, 392:2, 399:8, 399:12, 401:25, 404:4, 404:12, 405:3, 407:16, 408:14, 409:19, 410:4, 410:18, 411:17, 411:25, 413:2, 417:2, 417:13, 417:24, 420:18, 423:25, 424:16, 424:24, 425:8, 425:10, 425:24, 426:5, 426:19, 426:24,

427:19, 427:23, 428:13, 428:20, 429:4, 429:22, 430:2, 430:12, 430:20, 430:25, 431:23, 432:5, 433:6, 433:11, 433:22, 434:3, 434:17, 434:24, 435:5, 436:3, 436:24, 437:5, 438:22, 439:13, 440:4, 441:7, 441:10, 441:17, 442:23, 444:4, 444:23, 446:5, 446:22, 447:25, 448:10, 449:8, 450:7, 452:3, 452:7

**objections** [6] - 4:9, 38:24, 145:25, 151:2, 218:5, 218:10

**observe** [1] - 331:19

**observed** [1] - 346:7

**obtain** [6] - 15:2, 15:16, 23:2, 390:7, 421:20, 421:22

**obtained** [1] - 417:7

**obtaining** [1] - 315:22

**obviously** [1] - 154:2

**occasion** [2] - 8:12, 143:22

**occur** [9] - 29:13, 66:17, 83:24, 98:4, 98:19, 191:22, 320:12, 365:11

**occurred** [70] - 55:10, 109:5, 109:8, 113:17, 132:16, 172:12, 194:7, 211:18, 212:21, 217:22, 217:24, 225:14, 231:4, 234:3, 235:2, 238:4, 244:19, 244:23, 245:11, 251:8, 254:19, 259:10, 271:24, 282:8, 314:10, 320:7, 321:22, 322:4, 326:25, 329:21, 330:6, 330:9, 336:8, 338:5, 341:8, 342:15, 355:17, 355:25, 356:2, 357:25, 358:9, 358:13, 364:12, 383:13, 384:12, 384:22, 385:18, 385:22, 392:25, 399:7, 400:22, 410:16, 417:5, 417:12, 432:4, 435:17, 437:9, 437:23, 438:11, 442:17, 443:24, 449:18, 450:6, 450:11, 450:16, 450:20, 451:2, 451:4, 451:12, 451:15

**occurrence** [3] - 323:8, 323:12, 329:18

**occurring** [6] - 133:2, 188:13, 199:8, 316:7, 332:8, 362:9

**occurs** [3] - 62:4, 86:2, 233:9

**odd** [1] - 20:2

**OF** [6] - 1:3, 3:3, 456:4, 456:5, 462:3, 462:5

**off-camera** [2] - 217:19, 219:19

**off-the-record** [1] - 186:13

**offer** [3] - 56:20, 159:22, 159:24

**office** [41] - 16:6, 62:24, 87:6, 88:22, 128:25, 156:24, 157:22, 158:2, 160:3, 208:8, 230:11, 233:2, 233:5, 233:7, 233:11, 233:18, 233:24, 234:8, 235:5, 235:9, 245:13, 245:18, 247:6, 247:7, 265:7, 270:9, 271:11, 299:24, 307:24, 317:2, 319:11, 364:8, 364:20, 365:10, 367:7, 367:24, 368:7, 423:12, 439:5

**Office** [1] - 256:3

**OFFICER** [1] - 1:10

**officer** [15] - 4:16, 122:17, 122:23, 123:3, 123:10, 125:17, 126:4, 126:5, 128:9, 128:15, 136:7, 156:2, 156:12, 180:22, 350:19

**Officer** [6] - 127:13, 127:18, 130:3, 289:20, 415:3, 416:14

**officer/Suffolk** [1] - 411:13

**officers** [6] - 119:6, 119:20, 380:10, 380:12, 380:13, 413:13

**OFFICERS** [1] - 1:11

**OFFICES** [1] - 3:3

**offices** [2] - 247:3, 247:5

**official** [8] - 1:10, 1:11, 1:12, 1:13, 1:14, 1:15, 1:16, 1:17

**officially** [1] - 109:12

**Old** [1] - 2:22

**old** [1] - 262:9

**ON** [1] - 1:25

**once** [11] - 35:16, 35:19, 59:6, 61:12, 73:11, 82:12, 111:11, 147:18, 150:23, 150:24, 231:11

**one** [81] - 13:12, 22:17, 25:24, 26:2, 45:11, 47:6, 51:7, 53:19, 56:21, 56:22, 56:24, 65:6, 66:20, 67:20, 73:12, 75:10, 75:18, 76:14, 78:4, 94:10, 102:19, 102:25, 103:8, 103:9, 122:21, 124:18, 125:9, 130:5, 133:7, 134:10, 141:12, 143:22, 146:14, 173:19, 175:4, 176:10, 176:17, 177:11, 178:2, 202:19, 206:11, 211:7, 213:6, 214:18, 216:23, 219:11, 219:13, 222:16, 225:14, 226:15, 229:9, 233:7, 260:9, 262:7, 262:9, 270:8, 274:21, 279:25, 283:21, 284:23, 286:16, 286:20, 301:21, 307:2, 313:13, 340:18, 342:14, 354:20, 368:14, 379:7, 382:6, 396:5, 404:15, 404:16, 404:19, 419:5, 421:13, 422:5, 422:23, 427:17, 436:19

**one's** [1] - 355:23

**one-day** [1] - 75:18

**oneonta** [1] - 16:16

**ones** [6] - 17:5, 40:18, 194:11, 194:13, 194:15, 378:6

**oneself** [1] - 54:11

**online** [5] - 21:17, 165:19, 260:14, 263:7, 263:10

**oOo** [1] - 4:21

**open** [3] - 261:13, 262:4, 263:8

**operating** [1] - 283:11

**opinion** [1] - 362:4

**opportunities** [1] - 53:10

**opportunity** [7] - 138:18, 151:8, 165:14, 288:11, 295:9, 355:14, 453:25

**Opportunity** [1] - 118:13

**opposed** [1] - 194:21

**opposing** [1] - 145:16

**or..** [1] - 28:2

**Order** [1] - 2:5

**order** [2] - 54:11, 157:9

**ordinary** [6] - 86:15, 86:18, 87:2, 171:16, 287:25, 391:24

**org** [2] - 262:11, 262:13

**organize** [1] - 350:14

**orientation** [3] - 119:10, 119:11, 119:25

**origin** [5] - 64:15, 96:23, 99:22, 119:9, 119:23

**original** [1] - 15:21

**OSS** [1] - 102:9

**otherwise** [3] - 60:23, 182:8, 191:13

**ounce** [1] - 226:10

**ourselves** [2] - 192:14, 193:13

**out-of-district** [1] - 394:20

**out-of-school** [2] - 102:11, 265:6

**outcome** [2] - 26:15, 462:18

**outing** [2] - 350:12, 350:13

**outset** [1] - 30:22

**outside** [14] - 39:10, 170:21, 192:6, 192:16, 194:21, 194:23, 195:3, 195:13, 199:4, 367:22, 417:15, 445:14, 445:16, 445:20

**outstanding** [2] - 6:5, 452:25

**outstretched** [9] - 203:11, 204:15, 205:20, 205:23, 206:3, 218:20, 231:24, 419:19, 419:24

**outstretching** [1] - 223:11

**oversaw** [2] - 251:18, 315:25

**oversee** [4] - 121:20, 261:16, 263:11, 380:20

**oversees** [4] - 315:15, 317:3, 328:12, 398:5

**own** [4] - 129:5, 129:8, 224:3, 351:4

## P

**P.C** [1] - 3:3

**p.m** [4] - 291:20, 387:2, 388:9, 455:6

**pack** [3] - 196:8, 203:16, 210:25

**packet** [2] - 381:16, 381:25

**page** [37] - 88:5, 112:15, 125:22, 134:11, 153:25, 163:14, 188:20, 278:14, 401:20, 415:6, 415:11, 415:12, 415:16, 415:19, 418:16, 419:16, 425:4, 427:12, 427:22, 430:16, 431:4, 431:7, 431:21, 432:25, 433:9, 434:8, 435:12, 436:18, 436:23, 437:4, 439:24, 440:7, 440:18, 441:20, 442:7, 442:16, 460:25

**PAGE** [17] - 1:25, 457:3, 457:13,

457:14, 457:15, 457:16, 457:20, 458:4, 458:5, 458:7, 458:9, 458:12, 458:17, 458:20, 459:4, 459:7, 459:17
**PAGES** [1] - 457:8
**pages** [15] - 87:18, 293:16, 360:21, 418:11, 459:25, 460:4, 460:6, 460:13, 460:15, 460:21, 460:22, 460:23, 461:13, 461:15, 461:18
**pain** [1] - 431:17
**panel** [4] - 22:15, 22:17, 22:21, 22:24
**paper** [7] - 74:17, 81:14, 87:21, 87:25, 93:24, 177:9, 177:12
**papers** [1] - 21:18
**paragraph** [40] - 62:6, 111:23, 112:17, 113:10, 113:20, 425:5, 425:6, 425:12, 426:22, 427:11, 427:18, 427:21, 428:3, 428:22, 429:2, 429:24, 430:15, 430:19, 430:24, 431:3, 431:6, 431:20, 432:8, 435:12, 435:13, 436:17, 436:20, 436:22, 437:3, 438:15, 438:18, 439:24, 440:7, 440:18, 441:9, 441:20, 442:6, 442:10, 442:12, 442:16
**paragraphs** [2] - 61:12, 441:16
**parent** [4] - 261:12, 263:16, 263:17, 359:5
**Parent** [5] - 460:3, 460:6, 460:8, 460:9, 460:11
**parent-initiated** [1] - 263:17
**parents** [19] - 165:22, 260:12, 355:4, 355:10, 355:16, 357:24, 358:5, 358:8, 358:12, 363:20, 381:12, 382:2, 382:10, 400:25, 401:5, 402:24, 410:13, 440:10, 442:19
**parked** [2] - 136:5, 153:15
**part** [20] - 21:23, 23:14, 23:25, 24:17, 32:5, 32:19, 53:13, 58:15, 90:2, 107:23, 108:21, 130:23, 175:12, 181:10, 181:15, 201:12, 220:22, 317:7, 379:19, 390:22
**partial** [7] - 338:25, 342:9, 344:6, 389:10, 389:24, 403:7, 405:6
**partially** [1] - 452:9
**participate** [2] - 97:16, 183:5
**participated** [3] - 184:6, 184:22, 185:5
**particular** [4] - 183:25, 295:17, 300:5, 306:5
**parties** [3] - 4:4, 157:19, 462:16
**Partlow** [5] - 229:22, 230:21, 349:6, 349:8, 349:13
**PARTLOW** [1] - 430:24
**Partlow's** [1] - 350:4
**party** [1] - 166:2
**pass** [2] - 21:22, 212:12
**passed** [2] - 200:18, 272:19
**passing** [3] - 43:20, 52:10, 259:25
**past** [6] - 163:10, 207:10, 207:12, 264:10, 264:14, 419:23
**pasted** [1] - 319:4
**path** [1] - 174:10
**patrol** [6] - 136:5, 136:7, 153:15, 156:2, 156:3, 156:12
**pay** [2] - 38:12, 285:17
**PDCS** [1] - 461:17
**peer** [1] - 168:15
**penalized** [1] - 156:23
**penalties** [2] - 146:11, 154:12
**Penalties** [1] - 94:23
**penalty** [4] - 72:12, 144:23, 156:25, 160:23
**pending** [2] - 8:23, 39:8
**people** [19] - 22:18, 46:20, 192:23, 193:8, 203:22, 214:6, 226:11, 226:17, 239:12, 314:6, 314:9, 319:17, 323:18, 339:13, 341:3, 357:18, 357:21, 406:5, 432:12
**people's** [1] - 46:23
**per** [2] - 87:16, 324:25
**perceived** [1] - 119:22
**percentage** [1] - 67:18
**perfectly** [1] - 150:15
**performance** [1] - 53:10
**perhaps** [1] - 9:4
**period** [5] - 190:3, 192:12, 192:14, 236:20, 362:15
**periods** [2] - 102:20, 103:2
**permitting** [1] - 164:6
**Perrotta** [30] - 129:18, 174:18, 174:25, 175:2, 180:25, 181:4, 183:6, 184:7, 184:12, 243:11, 266:23, 266:24, 267:13, 267:23, 273:16, 289:17, 291:8, 292:11, 315:12, 324:6, 364:25, 365:3, 366:23, 367:6, 367:9, 367:12, 367:19, 367:23, 369:2, 460:25
**persisted** [2] - 110:21, 111:3
**persists** [1] - 111:18
**person** [19] - 60:11, 63:3, 74:4, 74:14, 74:15, 76:10, 85:14, 110:25, 111:2, 111:18, 203:18, 211:6, 212:13, 213:23, 226:15, 241:15, 293:20, 388:15, 445:17
**person's** [1] - 105:15
**personal** [11] - 60:20, 252:7, 252:10, 252:19, 252:22, 261:4, 327:9, 360:4, 360:8, 395:4, 395:7
**personally** [8] - 43:14, 48:15, 95:23, 289:24, 303:21, 304:2, 327:16, 388:22
**personnel** [2] - 115:17, 129:2
**persons** [2] - 101:22, 104:16
**perspective** [1] - 341:7
**peruse** [5] - 59:3, 61:10, 277:5, 418:2, 418:5
**phone** [37] - 139:6, 150:25, 193:4, 239:9, 239:14, 240:9, 241:3, 241:8, 241:13, 241:18, 241:21, 242:4, 242:6, 242:10, 254:3, 254:4, 255:6, 255:11, 285:6, 285:8, 285:11, 285:12, 286:10, 300:5, 300:17, 300:20, 302:11, 303:11, 353:2, 353:12, 353:19, 353:25, 387:10, 421:15, 421:20, 421:23, 458:7
**phone/non** [1] - 239:21
**phone/non-electronic** [1] - 239:21
**phones** [3] - 239:4, 240:18, 300:3
**phonetic** [9] - 185:2, 195:15, 212:2, 226:13, 263:18, 289:22, 302:17, 437:15, 447:23
**phonetic]** [6] - 142:11, 142:15, 251:20, 324:9, 407:2, 445:18
**photos** [1] - 410:22
**phrase** [1] - 425:12
**phys** [1] - 438:8
**physical** [47] - 44:9, 44:15, 50:10, 50:14, 53:11, 60:10, 79:19, 82:15, 82:23, 83:4, 83:9, 83:13, 83:19, 83:23, 84:5, 84:15, 84:19, 85:8, 90:20, 91:3, 110:25, 111:2, 111:3, 111:7, 111:15, 133:5, 133:6, 186:20, 186:24, 187:5, 201:25, 202:2, 206:17, 207:15, 207:21, 207:23, 207:25, 209:18, 209:23, 210:15, 222:15, 224:6, 241:23, 304:9, 339:7, 339:9, 351:17
**physicality** [9] - 84:25, 197:12, 222:19, 223:3, 223:6, 223:20, 224:8, 224:15, 227:17
**physically** [11] - 71:2, 85:12, 195:17, 201:14, 206:14, 232:9, 241:7, 241:11, 241:16, 331:24, 332:16
**pick** [1] - 431:9
**picked** [1] - 285:8
**picture** [2] - 347:12, 405:5
**pictures** [1] - 340:5
**piece** [2] - 313:21, 345:17
**place** [4] - 166:17, 179:11, 218:9, 322:13
**placed** [7] - 157:25, 229:11, 305:22, 348:15, 429:8, 429:15, 429:21
**placing** [1] - 336:22
**plainclothes** [2] - 380:10, 380:11
**Plains** [1] - 3:12
**plaintiff** [12] - 43:16, 44:25, 143:17, 156:8, 156:13, 425:21, 429:7, 429:15, 431:15, 438:21, 438:24, 440:13
**Plaintiff's** [143] - 48:19, 48:25, 49:16, 53:5, 86:8, 88:2, 88:6, 90:21, 97:4, 97:6, 108:7, 108:8, 108:11, 118:2, 118:5, 118:10, 124:3, 124:6, 124:7, 124:10, 124:13, 125:14, 135:8, 153:7, 153:8, 162:4, 162:5, 162:9, 162:11, 171:5, 171:8, 171:12, 185:11, 185:14, 185:19, 190:17,

258:16, 258:20, 260:17, 260:21, 276:17, 276:22, 277:8, 277:12, 278:3, 279:15, 279:19, 287:9, 287:17, 287:21, 287:22, 290:8, 290:12, 290:16, 290:20, 297:12, 297:16, 297:18, 307:25, 308:5, 308:10, 309:10, 309:22, 314:5, 314:17, 314:22, 315:7, 317:23, 317:24, 318:10, 318:11, 318:20, 322:10, 327:24, 328:4, 328:10, 336:13, 336:23, 336:24, 344:2, 358:21, 360:3, 360:20, 366:21, 367:2, 367:3, 367:17, 373:25, 374:5, 374:6, 386:14, 386:18, 386:23, 393:15, 393:19, 394:7, 397:20, 397:24, 400:8, 400:11, 400:15, 401:13, 401:17, 401:18, 408:20, 408:24, 408:25, 409:8, 409:13, 409:16, 414:18, 414:22, 414:23, 414:25, 416:8, 418:16, 422:16, 423:5, 423:6, 423:9, 424:5, 424:9, 425:4, 427:12, 427:22, 430:16, 431:4, 431:7, 431:21, 432:25, 433:10, 435:13, 436:18, 436:23, 437:4, 438:15, 439:24, 440:8, 440:19, 442:7, 442:22, 449:3

**PLAINTIFF'S** [1] - 459:17

**Plaintiffs** [2] - 1:6, 3:4

**plaintiffs** [1] - 411:15

**platform** [2] - 46:19, 46:20

**play** [1] - 417:15

**player** [1] - 260:7

**plead** [6] - 14:11, 25:13, 25:16, 28:18, 29:7, 160:20

**pleas** [2] - 379:20, 433:4

**Pled** [1] - 28:16

**pled** [2] - 29:11, 37:17

**plenty** [1] - 380:6

**Point** [1] - 5:14

**point** [57] - 52:9, 55:20, 61:23, 78:13, 110:14, 126:9, 133:19, 142:10, 145:8, 163:7, 168:14, 184:5, 195:7, 196:17, 197:11, 197:18, 198:21, 199:6, 203:12, 203:14, 205:4, 206:8, 208:9, 208:10, 209:9, 215:14, 215:22, 218:25, 219:8, 219:10, 222:14, 228:4, 232:8, 239:5, 239:16, 239:20, 250:24, 251:19, 262:13, 264:4, 287:15, 300:21, 304:3, 330:9, 343:18, 347:3, 349:7, 351:14, 365:8, 373:4, 390:2, 390:8, 392:5, 394:18, 407:17, 441:19, 445:22

**points** [1] - 449:13

**poker** [1] - 219:22

**police** [45] - 11:22, 12:4, 34:22, 34:24, 35:2, 35:15, 35:18, 36:15, 62:2, 115:16, 115:23, 122:12, 122:17, 126:4, 181:5, 238:11, 238:13, 267:15, 292:15, 292:20, 353:5, 353:20, 353:25, 354:6, 354:15, 380:7, 380:8, 380:10, 380:12, 380:24, 381:5, 381:12, 382:3, 382:11, 413:5, 413:8, 413:11, 413:12, 413:14, 413:22, 414:3, 414:14, 419:2, 422:19, 422:25

**Police** [21] - 29:5, 30:7, 61:19, 127:12, 181:23, 181:25, 237:24, 238:2, 238:19, 238:24, 249:23, 250:4, 250:7, 250:12, 253:13, 255:22, 289:16, 289:19, 362:17, 380:12, 411:14

**POLICE** [3] - 1:9, 1:9, 1:11

**policies** [7] - 63:24, 64:5, 73:17, 104:4, 131:14, 179:11, 320:16

**policy** [47] - 50:5, 50:22, 50:23, 52:19, 52:22, 53:4, 54:3, 79:5, 82:22, 87:16, 97:2, 97:10, 97:14, 100:12, 100:18, 100:20, 100:25, 108:12, 109:14, 109:21, 109:24, 112:25, 113:6, 116:3, 118:7, 118:10, 119:17, 120:19, 120:21, 171:10, 171:13, 172:3, 172:25, 177:14, 177:19, 177:25, 179:23, 239:22, 240:3, 240:5, 240:9, 240:11, 240:13, 240:15, 242:3, 394:23, 441:4

**Policy** [5] - 50:20, 118:3, 171:6, 459:18, 459:23

**portion** [1] - 408:8

**portrayed** [1] - 341:4

**position** [22] - 17:20, 18:3, 18:12, 18:13, 18:16, 18:19, 18:23, 18:25, 19:5, 19:9, 19:11, 21:17, 158:18, 160:7, 166:17, 167:17, 194:20, 266:16, 269:25, 307:12, 307:14, 406:24

**positioned** [4] - 192:14, 196:12, 196:13, 205:11

**positioning** [3] - 193:13, 197:21, 206:21

**positions** [4] - 20:22, 21:4, 21:9, 121:17

**positive** [3] - 47:7, 109:11, 381:18

**possibility** [5] - 223:23, 223:25, 224:18, 239:18, 366:13

**possible** [7] - 36:3, 36:4, 80:23, 84:4, 93:9, 188:5, 275:9

**Possible** [1] - 82:10

**possibly** [30] - 12:14, 12:16, 41:17, 41:18, 46:18, 54:6, 54:18, 54:19, 55:14, 55:19, 67:11, 69:10, 71:25, 80:9, 80:21, 88:12, 88:13, 91:5, 99:25, 100:2, 136:11, 154:8, 177:10, 177:11, 233:12, 251:17, 251:20, 275:8, 338:15, 364:13

**post** [1] - 365:16

**posted** [2] - 301:2, 301:6

**postings** [2] - 301:16, 409:24

**posts** [1] - 411:7

**posture** [1] - 83:16

**postures** [1] - 85:12

**posturing** [1] - 84:12

**potential** [1] - 184:12

**potentially** [2] - 167:17, 224:6

**pounding** [2] - 212:25, 213:5

**power** [1] - 445:8

**PowerPoint** [2] - 185:16, 185:20

**Powers** [2] - 162:24, 163:4

**powers** [1] - 163:3

**PowerSchool** [1] - 354:18

**practice** [6] - 119:24, 240:12, 242:5, 242:10, 441:4, 458:8

**prank** [12] - 187:19, 187:22, 188:12, 189:19, 190:6, 294:5, 362:13, 417:4, 417:11, 417:18, 417:22, 427:5

**prank's** [1] - 417:8

**pranks** [1] - 188:5

**pre** [1] - 381:21

**pre-prom** [1] - 381:21

**precaution** [1] - 376:15

**Precinct** [1] - 255:2

**precipitated** [3] - 269:17, 399:2, 399:10

**predictor** [1] - 84:9

**prefer** [2] - 201:23, 373:14

**premises** [1] - 112:6

**preparation** [4] - 10:12, 47:4, 299:23, 307:23

**preparing** [2] - 172:9, 216:23

**presence** [11] - 127:17, 194:23, 380:17, 380:24, 381:5, 382:3, 382:11, 398:12, 398:19, 399:13, 426:3

**present** [27] - 32:24, 45:7, 48:18, 57:14, 70:25, 122:12, 122:17, 126:5, 177:2, 180:14, 180:23, 180:25, 225:11, 249:11, 274:11, 300:14, 314:21, 378:16, 378:23, 384:15, 413:10, 425:13, 425:22, 425:25, 426:17, 426:21, 442:18

**presented** [3] - 10:15, 143:14, 306:5

**preservation** [2] - 319:20, 458:12

**preserve** [8] - 252:17, 252:23, 253:9, 356:17, 372:20, 373:5, 435:15, 435:21

**preserved** [4] - 252:14, 356:15, 356:21, 373:8

**presume** [1] - 149:15

**Pretty** [1] - 40:6

**pretty** [17] - 11:24, 85:9, 206:8, 208:5, 220:7, 221:12, 221:14, 224:3, 239:21, 240:16, 247:11, 254:17, 255:12, 293:7, 338:24, 398:17, 403:6

**prevent** [7] - 60:20, 195:2, 200:22, 208:22, 378:3, 378:8, 417:21
**preventative** [1] - 369:3
**Prevention** [2] - 182:5, 182:7
**previous** [4] - 16:18, 262:14, 377:22, 391:5
**previously** [18] - 17:5, 108:7, 160:2, 185:11, 237:22, 255:13, 262:24, 276:21, 276:22, 339:12, 393:19, 397:24, 420:12, 423:4, 423:8, 444:13, 445:2, 458:10
**primary** [1] - 212:6
**PRINCIPAL** [2] - 1:13, 1:14
**Principal** [7] - 121:13, 124:25, 230:12, 231:12, 279:16, 308:3, 460:17
**principal** [95] - 10:22, 12:3, 17:16, 18:2, 18:18, 21:15, 59:9, 59:11, 59:15, 61:6, 63:2, 63:5, 63:7, 63:13, 63:14, 63:18, 67:10, 67:25, 69:9, 69:15, 70:12, 70:14, 75:6, 75:7, 75:9, 75:19, 75:21, 76:9, 76:24, 77:19, 78:4, 78:11, 81:23, 82:2, 85:24, 92:22, 102:7, 102:9, 102:16, 102:21, 102:22, 103:4, 103:15, 103:17, 103:21, 113:16, 130:25, 157:24, 160:7, 161:3, 168:18, 169:17, 172:9, 176:3, 176:7, 176:9, 177:17, 178:8, 195:23, 233:14, 234:13, 248:22, 259:15, 265:2, 268:6, 268:10, 268:12, 271:3, 278:11, 278:19, 280:6, 280:11, 288:10, 305:20, 307:5, 307:7, 308:15, 308:18, 315:2, 321:2, 324:4, 324:20, 374:19, 375:6, 378:25, 382:13, 393:5, 393:7, 398:5, 403:23, 411:11, 428:8, 428:9
**principal's** [6] - 60:24, 62:23, 69:12, 78:16, 276:24, 311:19
**principals** [33] - 56:14, 56:21, 59:22, 59:23, 60:6, 60:7, 60:17, 60:18, 69:10, 69:14, 70:11, 70:14, 78:6, 78:8, 81:20, 82:5, 82:7, 103:9, 130:24, 176:18, 192:19, 237:3, 242:25, 243:4, 266:18, 268:5, 268:25, 270:16, 270:22, 321:5, 324:2, 324:19, 382:7
**Principals** [3] - 59:5, 59:13, 60:16
**print** [1] - 153:14
**printed** [2] - 147:25, 185:16
**printed-out** [1] - 185:16
**private** [1] - 39:11
**privilege** [4] - 39:2, 143:3, 151:2, 151:3
**proactive** [2] - 445:12, 445:24
**probation** [3] - 28:16, 37:17, 164:15
**procedure** [4] - 68:22, 79:5, 441:5, 454:12
**procedures** [10] - 63:24, 64:6, 73:18, 78:20, 104:4, 120:5, 120:10, 131:14, 177:15, 446:4
**Procedures** [1] - 68:24
**proceed** [2] - 140:4, 151:24
**proceeded** [1] - 196:16
**proceeding** [9] - 158:9, 159:5, 159:13, 159:16, 159:20, 196:20, 200:15, 201:3, 202:6
**proceedings** [7] - 106:25, 164:2, 191:5, 325:10, 336:19, 363:13, 443:13
**process** [12] - 23:15, 24:18, 70:18, 79:6, 138:8, 138:11, 179:4, 261:19, 261:22, 444:15, 444:17, 445:22
**processes** [1] - 320:11
**produce** [19] - 132:10, 139:20, 145:11, 149:3, 251:22, 252:3, 262:17, 360:23, 388:20, 409:15, 409:22, 410:11, 410:21, 410:24, 411:5, 411:20, 412:15, 435:25, 446:10
**produced** [23] - 137:5, 143:13, 143:25, 144:2, 149:9, 251:12, 251:15, 251:25, 263:2, 278:7, 280:15, 282:7, 287:25, 299:10, 372:19, 372:23, 410:25, 411:4, 413:15, 436:4, 446:15, 458:11, 459:9
**producing** [1] - 373:20
**Production** [2] - 408:21, 457:13
**PRODUCTION** [1] - 115:6
**production** [32] - 6:6, 24:12, 31:20, 39:24, 39:25, 68:6, 71:8, 73:5, 88:24, 94:12, 115:4, 131:18, 145:9, 149:24, 155:21, 242:9, 262:23, 319:21, 407:19, 436:11, 446:12, 457:14, 457:15, 457:16, 458:4, 458:5, 458:7, 458:9, 458:12, 458:20, 459:4, 459:7
**profanities** [3] - 197:10, 216:21, 222:13
**profanity** [1] - 221:25
**professional** [4] - 15:11, 20:25, 296:16, 341:10
**program** [9] - 15:22, 182:15, 184:24, 261:11, 261:16, 263:10, 263:11, 316:3, 354:18
**programs** [2] - 96:20, 164:8
**progressive** [2] - 73:14, 73:19
**prohibited** [1] - 112:10
**prohibition** [1] - 240:8
**Prohibitive** [1] - 82:11
**prohibitive** [2] - 82:17, 82:23
**prohibits** [1] - 111:25
**prom** [21] - 378:13, 378:19, 378:23, 379:2, 379:4, 379:9, 379:23, 380:3, 380:20, 381:15, 381:17, 381:21, 381:25, 396:25, 397:7, 397:10, 398:6, 399:16, 399:19, 399:25
**promote** [1] - 427:6
**promptly** [1] - 59:25
**proms** [1] - 380:10
**promulgated** [2] - 48:13, 446:2
**property** [5] - 60:12, 112:4, 133:2, 427:7, 427:9
**protected** [1] - 157:12
**protective** [1] - 157:9
**protest** [1] - 431:16
**protocol** [1] - 340:18
**prove** [1] - 58:20
**proved** [1] - 228:25
**provide** [10] - 116:9, 294:9, 295:2, 318:25, 355:15, 364:4, 407:3, 413:14, 413:20, 430:11
**provided** [14] - 86:5, 87:10, 87:11, 105:23, 249:18, 273:11, 294:23, 295:12, 295:16, 324:15, 324:18, 342:15, 453:25, 454:13
**provider** [1] - 164:7
**providing** [1] - 373:21
**provision** [2] - 113:22, 333:13
**provocation** [1] - 73:23
**proximity** [3] - 84:22, 85:2, 348:11
**Proximity** [1] - 83:17
**psychologist** [1] - 105:14
**Public** [4] - 2:6, 5:4, 456:23, 462:7
**public** [1] - 161:8
**pulled** [1] - 29:15
**pulling** [3] - 218:22, 219:5, 221:10
**pumping** [1] - 228:6
**punched** [1] - 190:9
**punching** [3] - 216:5, 216:10, 219:7
**punishable** [1] - 418:12
**punishing** [1] - 50:16
**Punishment** [1] - 90:16
**punishment** [19] - 50:6, 50:8, 50:14, 51:4, 51:9, 51:16, 51:25, 52:6, 52:15, 52:22, 91:24, 92:18, 174:23, 178:17, 328:18, 333:24, 334:2, 334:9, 452:5
**purported** [2] - 392:8, 458:19
**purpose** [12] - 50:15, 181:18, 263:21, 329:8, 335:17, 337:23, 361:4, 361:8, 367:13, 367:19, 387:23, 394:10
**pursuant** [6] - 2:4, 52:19, 116:2, 117:13, 453:14, 454:2
**Pursuant** [1] - 454:11
**pursue** [1] - 219:8
**push** [2] - 53:25, 54:11
**pushed** [1] - 208:3
**pushes** [1] - 53:20
**pushing** [2] - 53:14, 207:8
**put** [30] - 72:5, 156:16, 165:12, 167:16, 171:2, 173:7, 177:20, 197:6, 201:10, 210:18, 240:25, 259:23, 284:12, 287:11, 289:14, 295:5, 299:13, 305:15, 311:17, 312:25, 313:3, 313:25, 333:6, 370:19,

390:12, 395:23, 401:10, 406:23, 408:19, 413:18
**putting** [4] - 177:12, 197:23, 198:7, 210:14

## Q

**quarters** [1] - 200:13
**questioned** [1] - 148:6
**questioning** [4] - 28:5, 28:6, 150:17, 256:23
**Questions** [1] - 138:21
**questions** [43] - 6:23, 6:24, 8:7, 8:18, 10:2, 26:11, 38:25, 54:25, 90:8, 138:19, 138:20, 139:3, 139:11, 139:14, 140:4, 143:16, 143:19, 143:21, 144:6, 144:9, 144:13, 144:20, 145:5, 145:25, 146:4, 146:7, 146:19, 147:16, 148:13, 148:16, 149:6, 149:23, 150:18, 152:2, 157:5, 191:10, 191:24, 256:25, 279:24, 316:20, 409:5, 447:14, 449:22
**quick** [3] - 200:12, 215:3, 297:25
**quickly** [5] - 8:25, 214:21, 218:20, 222:6, 346:22
**quiet** [1] - 377:17
**quit** [1] - 18:9
**quite** [3] - 198:17, 228:25, 453:8
**quote** [112] - 50:14, 50:16, 50:20, 59:24, 60:2, 60:7, 60:13, 60:17, 60:19, 60:25, 90:19, 90:20, 91:22, 92:2, 111:22, 111:24, 112:7, 112:18, 112:22, 113:9, 113:10, 113:17, 113:22, 114:6, 119:19, 120:2, 126:4, 126:7, 134:13, 134:15, 136:4, 136:10, 153:9, 153:10, 153:14, 153:16, 172:7, 172:15, 179:23, 179:25, 195:24, 199:7, 258:4, 258:6, 294:5, 294:6, 298:22, 298:23, 304:17, 304:20, 305:14, 305:16, 310:17, 310:18, 312:2, 312:3, 328:20, 330:21, 330:23, 331:5, 331:6, 333:5, 333:6, 333:24, 333:25, 338:11, 338:13, 338:21, 338:23, 343:23, 343:25, 352:15, 367:24, 367:25, 370:3, 370:13, 370:14, 388:24, 388:25, 390:3, 390:4, 392:13, 392:14, 395:13, 395:15, 395:21, 395:22, 396:8, 396:11, 396:13, 396:14, 398:12, 398:15, 402:21, 403:3, 404:22, 405:21, 405:23, 406:4, 406:6, 406:15, 406:18, 409:14, 409:18, 432:17, 432:19, 433:2, 433:5, 433:19, 433:21
**quote/unquote** [1] - 258:24
**quotes** [1] - 332:7
**quoting** [1] - 395:19

## R

**race** [35] - 64:14, 64:22, 64:24, 65:15, 65:18, 65:22, 65:24, 95:10, 95:16, 95:18, 96:22, 97:20, 98:3, 98:22, 99:21, 100:12, 100:19, 101:4, 119:8, 119:23, 132:12, 132:16, 132:21, 133:12, 133:14, 133:17, 133:20, 133:25, 134:7, 135:12, 135:16, 420:13, 444:15, 444:21, 444:24
**race-based** [2] - 135:12, 135:16
**race-related** [3] - 132:12, 132:16, 132:21
**race-reported** [1] - 133:25
**races** [6] - 65:3, 66:8, 66:25, 95:13, 203:8, 444:3
**racial** [4] - 95:6, 95:20, 96:18, 443:17
**radio** [16] - 126:25, 181:10, 181:15, 181:19, 181:22, 182:2, 192:24, 192:25, 193:4, 193:5, 193:15, 193:17, 194:8, 195:15, 198:25, 224:24
**rained** [1] - 214:18
**raining** [5] - 196:21, 198:13, 205:16, 212:20, 218:22
**raise** [1] - 116:12
**raised** [1] - 205:10
**rallied** [1] - 365:25
**ran** [1] - 285:25
**random** [2] - 66:18, 73:23
**randomly** [2] - 212:12, 304:17
**Randy** [1] - 398:5
**rate** [2] - 67:8, 445:6
**rather** [1] - 201:24
**Re** [1] - 280:22
**re** [2] - 195:12, 292:13
**re-enter** [1] - 195:12
**re-sent** [1] - 292:13
**reach** [1] - 363:20
**reached** [3] - 251:17, 251:19, 335:11
**reaction** [1] - 442:5
**read** [28] - 59:5, 61:11, 82:10, 90:15, 94:24, 99:6, 101:12, 121:4, 121:6, 125:23, 136:3, 136:22, 136:23, 208:15, 208:17, 288:12, 294:22, 356:18, 363:19, 372:12, 385:12, 419:13, 420:2, 423:15, 424:5, 424:22, 434:8, 456:9
**reading** [9] - 48:21, 53:6, 60:16, 111:23, 113:9, 148:20, 148:23, 149:9, 172:8
**Reading** [4] - 288:15, 361:17, 419:15, 434:11
**reading)** [7] - 59:8, 61:14, 90:17, 125:25, 277:10, 310:5, 418:6
**Reading)** [2] - 95:2, 359:3
**reads** [1] - 419:17
**ready** [1] - 11:8
**real** [3] - 337:13, 338:21, 403:12
**realistic** [1] - 79:25
**reality** [3] - 188:7, 240:21, 341:2
**realize** [2] - 262:12, 363:2
**realized** [3] - 208:9, 209:4, 231:11
**really** [10] - 73:20, 191:23, 206:10, 225:25, 341:7, 390:3, 396:4, 396:13, 402:25, 404:2
**rear** [1] - 205:13
**reason** [12] - 8:6, 8:14, 8:16, 8:22, 10:7, 304:18, 353:11, 365:15, 384:25, 397:5, 397:6, 453:18
**reasonable** [2] - 90:20, 91:2
**reasoning** [1] - 27:17
**recalled** [1] - 311:4
**receipt** [4] - 120:4, 121:3, 186:5, 394:24
**receive** [54] - 54:10, 59:16, 59:19, 69:19, 70:3, 75:2, 87:24, 88:11, 101:16, 101:17, 102:5, 104:7, 105:25, 108:20, 109:4, 109:7, 119:16, 120:21, 137:13, 160:12, 164:21, 170:18, 170:23, 175:7, 182:4, 183:14, 186:7, 189:3, 190:5, 216:24, 250:15, 250:22, 251:4, 251:7, 264:22, 267:19, 268:19, 290:13, 291:18, 292:19, 294:14, 299:7, 303:3, 325:17, 325:25, 359:21, 369:8, 372:17, 375:18, 388:4, 388:9, 395:4, 395:6, 444:9
**received** [37] - 6:7, 57:16, 58:10, 85:18, 86:11, 102:15, 105:7, 108:25, 113:13, 119:2, 120:23, 137:10, 145:20, 162:21, 172:4, 174:9, 182:6, 186:2, 261:25, 291:2, 291:22, 292:5, 292:24, 294:8, 298:15, 352:10, 356:12, 369:14, 372:25, 374:15, 394:19, 406:12, 407:6, 408:25, 435:15, 454:3, 454:17
**receiving** [5] - 120:19, 296:3, 317:7, 326:7, 326:21
**recently** [2] - 88:8, 357:6
**recipient** [2] - 170:20, 315:9
**recipients** [2] - 320:5, 334:15
**recognize** [31] - 48:20, 48:24, 108:16, 118:6, 118:8, 124:7, 124:9, 124:12, 162:8, 162:15, 185:18, 276:23, 278:10, 278:13, 279:19, 280:4, 280:8, 280:19, 289:23, 291:9, 291:13, 291:17, 293:10, 308:16, 308:19, 328:5, 358:25, 374:6, 386:19, 397:25, 414:23
**recognized** [4] - 162:18, 204:20, 316:3, 317:9
**recollection** [53] - 12:9, 12:12, 12:17, 23:7, 36:2, 41:16, 41:20, 55:13, 55:17, 80:8, 80:12, 80:20, 80:24, 88:15, 93:11, 101:20, 120:16, 176:24, 180:20, 184:19, 185:24, 189:14, 235:17,

235:20, 238:16, 243:14, 247:17, 257:7, 266:2, 266:5, 272:14, 275:18, 292:5, 305:7, 314:15, 323:11, 342:19, 358:16, 363:25, 364:15, 370:24, 371:5, 371:15, 371:19, 373:19, 386:12, 392:24, 397:16, 400:19, 408:16, 450:9, 451:7, 451:11
**recommend** [1] - 275:5
**recommendation** [31] - 69:15, 69:17, 75:4, 76:24, 77:18, 78:10, 78:15, 102:8, 103:18, 176:15, 177:3, 177:7, 178:3, 264:21, 264:25, 265:5, 265:9, 265:18, 265:22, 268:11, 275:3, 276:6, 288:21, 306:22, 307:4, 312:5, 312:11, 322:23, 322:24, 341:22, 378:24
**Recommendation** [1] - 287:18
**recommendations** [6] - 268:8, 308:15, 308:17, 327:18, 327:21, 446:8
**recommended** [9] - 176:12, 269:14, 270:9, 275:7, 275:11, 275:13, 289:6, 289:9, 385:19
**Recommended** [1] - 68:24
**recommending** [1] - 312:2
**recommends** [1] - 268:9
**record** [41] - 5:11, 6:3, 6:24, 7:6, 9:9, 27:5, 102:10, 106:23, 107:3, 131:7, 137:19, 137:23, 137:25, 143:7, 153:6, 186:13, 190:22, 191:9, 218:10, 218:14, 232:24, 256:15, 325:8, 325:11, 336:16, 336:20, 363:11, 363:15, 434:14, 434:22, 439:19, 443:10, 443:14, 453:9, 453:13, 454:8, 455:2, 455:5, 456:12, 456:13, 462:13
**recorded** [1] - 45:17
**recordings** [3] - 45:19, 410:16
**records** [5] - 41:12, 272:22, 409:15, 409:23, 442:24
**Records** [1] - 408:21
**recount** [1] - 434:19
**red** [2] - 196:18, 203:15
**redacted** [4] - 366:3, 407:19, 408:8, 458:21
**redaction** [1] - 402:5
**reduced** [1] - 446:7
**reese** [1] - 314:21
**Reese** [59] - 5:12, 5:16, 28:25, 29:4, 29:24, 30:6, 107:4, 118:4, 121:13, 136:4, 153:5, 157:6, 162:6, 162:8, 191:10, 256:16, 261:15, 287:19, 290:9, 297:13, 308:3, 314:18, 325:13, 327:25, 328:3, 336:14, 336:22, 366:22, 366:23, 374:2, 386:15, 386:17, 393:16, 393:18, 397:21, 401:14, 401:16, 402:18, 408:22, 411:12, 414:19, 443:16, 459:21, 460:14, 460:17, 460:18, 460:20, 460:22, 460:23, 460:24, 461:2, 461:4, 461:6, 461:8, 461:10, 461:12, 461:14, 461:16, 461:17
**REESE** [8] - 1:14, 1:25, 2:4, 5:2, 456:8, 456:18, 457:4, 462:10
**Reese's** [3] - 153:9, 319:23, 458:14
**refer** [7] - 72:20, 86:21, 334:19, 357:8, 357:12, 357:16, 373:15
**reference** [3] - 78:23, 299:4, 307:17
**references** [2] - 407:22, 458:23
**referencing** [1] - 299:8
**referral** [17] - 71:12, 74:4, 74:15, 74:16, 74:18, 75:23, 76:2, 93:23, 175:11, 175:13, 175:19, 175:23, 176:7, 177:12, 178:9, 180:8, 457:23
**referrals** [9] - 71:10, 81:7, 93:14, 94:5, 94:13, 103:2, 117:13, 176:9, 457:21
**referred** [2] - 103:12, 160:24
**referrer** [3] - 74:9, 74:24, 75:24
**referring** [40] - 32:17, 37:18, 68:16, 70:10, 70:15, 71:9, 73:8, 74:22, 76:15, 81:11, 102:12, 104:22, 115:22, 116:18, 157:17, 162:25, 188:9, 286:9, 287:8, 294:3, 294:5, 330:2, 334:2, 340:10, 344:2, 344:9, 360:18, 361:21, 369:23, 389:16, 389:20, 392:15, 395:13, 395:16, 395:18, 395:24, 396:3, 406:19, 448:4, 457:20
**refers** [4] - 76:11, 284:11, 284:17, 338:17
**refresh** [39] - 12:8, 12:11, 12:16, 23:6, 35:25, 41:15, 55:12, 80:8, 80:11, 80:19, 80:24, 88:14, 93:11, 101:19, 120:15, 176:23, 180:19, 189:14, 235:16, 235:20, 238:16, 243:14, 247:16, 266:4, 272:13, 275:17, 292:4, 305:6, 314:14, 323:10, 342:19, 358:15, 363:24, 364:15, 371:14, 371:19, 386:11, 397:15, 400:19
**refreshed** [1] - 55:16
**refreshes** [1] - 41:20
**refused** [2] - 328:22, 330:22
**refusing** [1] - 333:16
**regain** [1] - 228:19
**regard** [6] - 46:24, 81:8, 96:16, 252:25, 288:22, 384:17
**regarding** [71] - 12:4, 31:4, 45:19, 45:24, 76:21, 93:13, 93:19, 97:20, 97:21, 102:3, 103:12, 104:3, 108:13, 127:17, 133:14, 135:23, 150:18, 161:8, 162:14, 165:23, 171:10, 176:9, 190:6, 242:4, 243:16, 244:6, 244:19, 244:23, 245:6, 245:10, 245:20, 245:24, 248:6, 248:10, 248:13, 248:17, 250:16, 250:24, 251:8, 252:9, 257:17, 276:25, 280:22, 284:22, 322:4, 326:2, 326:4, 326:18, 327:21, 328:19, 335:23, 336:4, 336:8, 341:16, 343:2, 343:20, 352:16, 353:19, 356:22, 357:25, 358:5, 358:8, 358:12, 363:22, 369:14, 375:21, 382:10, 384:12, 391:15, 391:18, 391:21
**regardless** [3] - 64:24, 65:17, 112:5
**regards** [24] - 34:14, 55:9, 58:9, 59:20, 71:15, 84:14, 120:19, 127:13, 177:25, 237:13, 256:3, 256:23, 259:20, 305:10, 320:19, 342:22, 349:14, 354:20, 364:4, 370:17, 391:12, 401:2, 442:21, 458:3
**regrouped** [1] - 234:9
**regular** [9] - 86:14, 86:17, 118:22, 126:6, 126:11, 164:8, 171:15, 172:10, 280:16
**regularly** [9] - 88:17, 88:20, 126:10, 278:4, 280:14, 292:19, 371:21, 371:24, 444:12
**regulations** [1] - 92:2
**reinstated** [2] - 160:6, 160:9
**reiteration** [1] - 11:17
**rejected** [1] - 365:21
**relate** [1] - 444:21
**related** [15] - 71:13, 132:12, 132:16, 132:21, 144:14, 144:20, 153:10, 154:21, 306:18, 410:2, 411:3, 436:8, 436:9, 457:24, 462:16
**relates** [16] - 54:15, 82:23, 144:24, 166:13, 167:13, 178:24, 292:25, 320:6, 322:19, 352:12, 371:6, 392:8, 435:16, 438:10, 444:15, 458:18
**relating** [2] - 407:24, 458:25
**relation** [1] - 160:13
**relations** [1] - 100:13
**relationship** [1] - 296:14
**relative** [1] - 63:20
**relatively** [1] - 377:17
**relatives** [1] - 21:20
**relaying** [1] - 448:18
**Release** [1] - 163:15
**release** [6] - 163:19, 164:5, 210:8, 406:16, 407:10, 408:13
**released** [1] - 136:8
**relevant** [6] - 26:18, 49:19, 79:25, 146:23, 409:15, 452:23
**religion** [2] - 119:9, 119:24
**religious** [1] - 119:24
**remember** [73] - 9:3, 9:14, 13:3, 22:18, 26:3, 26:9, 34:20,

38:10, 40:10, 55:21, 59:14, 91:4, 91:14, 130:16, 180:24, 189:9, 189:11, 189:12, 193:21, 222:4, 225:22, 226:14, 226:16, 228:15, 228:16, 228:17, 229:3, 229:6, 231:22, 233:13, 235:14, 236:14, 236:20, 237:10, 237:12, 238:14, 242:16, 242:18, 243:5, 243:8, 247:9, 247:25, 253:20, 255:9, 255:10, 256:24, 263:24, 273:6, 273:7, 275:15, 283:13, 285:21, 286:5, 286:10, 293:5, 309:14, 333:20, 344:18, 344:19, 347:3, 349:20, 352:22, 362:19, 369:18, 371:9, 371:13, 376:23, 413:4, 413:12, 419:6, 424:17, 450:20, 450:25

**remind** [1] - 174:22

**remotely** [1] - 436:8

**remove** [9] - 226:22, 228:22, 230:8, 320:10, 326:10, 332:19, 332:20, 422:15, 438:19

**removed** [24] - 128:3, 128:4, 156:24, 157:22, 157:23, 197:19, 226:2, 228:8, 228:9, 228:17, 228:18, 233:9, 306:24, 307:2, 318:19, 340:14, 340:16, 340:19, 346:21, 348:3, 348:10, 348:11, 349:12, 439:2

**Renee** [13] - 315:3, 317:3, 329:5, 355:2, 396:19, 396:21, 401:23, 402:18, 405:19, 407:25, 459:2, 461:4, 461:14

**RENEE** [1] - 396:21

**repeat** [9] - 64:18, 99:4, 100:15, 101:10, 128:12, 363:16, 372:10, 385:10, 429:12

**repeated** [2] - 111:8, 433:4

**repercussions** [1] - 241:25

**rephrase** [2] - 64:18, 136:20

**replace** [1] - 87:19

**replaced** [1] - 161:21

**replied** [2] - 394:15, 419:10

**reply** [5] - 325:17, 361:9, 388:4, 388:9, 394:11

**Report** [2] - 124:4, 459:24

**report** [33] - 11:22, 12:4, 60:21, 64:4, 92:20, 113:11, 114:12, 123:4, 123:17, 123:21, 123:25, 124:11, 124:14, 124:22, 125:2, 125:4, 125:8, 125:15, 135:7, 172:10, 172:14, 180:4, 186:15, 258:11, 259:11, 259:21, 307:21, 308:6, 374:24, 391:11, 391:14, 391:18

**reported** [7] - 61:17, 62:2, 64:3, 93:20, 123:3, 133:25, 134:14

**REPORTER** [7] - 106:17, 106:21, 117:22, 171:4, 218:4, 325:4, 358:20

**reporter** [8] - 6:24, 7:3, 99:7, 101:13, 208:18, 363:19, 372:13, 385:13

**Reporting** [1] - 2:22

**reporting** [2] - 121:15, 171:11

**reports** [18] - 61:5, 96:15, 113:23, 114:8, 121:21, 121:24, 122:5, 122:11, 122:16, 172:18, 172:22, 173:3, 188:5, 188:8, 189:7, 392:7, 458:17, 459:19

**represent** [4] - 5:19, 159:6, 159:14, 163:6

**representation** [1] - 132:6

**representative** [1] - 158:14

**represented** [9] - 39:18, 42:12, 42:16, 43:7, 154:24, 158:8, 158:21, 159:11, 163:9

**representing** [2] - 310:10, 423:13

**reprimand** [3] - 161:9, 303:24, 304:4

**reprimanded** [2] - 374:22, 375:9

**reprimanding** [2] - 421:13, 421:18

**reprimands** [1] - 410:8

**reprint** [1] - 87:17

**REQUEST** [2] - 115:5, 457:12

**Request** [1] - 408:21

**request** [20] - 131:25, 186:10, 242:9, 262:23, 273:8, 290:16, 345:12, 364:19, 364:23, 364:25, 365:3, 376:24, 377:4, 378:24, 392:6, 408:5, 412:2, 412:12, 412:15, 446:12

**requested** [11] - 172:18, 172:21, 262:24, 329:10, 366:15, 377:11, 391:14, 412:4, 436:5, 442:25, 458:10

**requests** [8] - 71:18, 94:17, 300:11, 328:22, 330:22, 330:25, 454:6, 454:13

**require** [2] - 128:7, 366:10

**required** [6] - 106:6, 106:8, 106:10, 106:14, 173:2, 440:14

**requirements** [1] - 116:10

**requires** [3] - 7:19, 128:8, 128:14

**researched** [3] - 372:23, 436:6

**reserve** [4] - 6:3, 447:4, 452:17, 453:13

**reserved** [1] - 4:11

**reserving** [2] - 447:7, 453:10

**residential** [1] - 20:5

**resigned** [1] - 18:11

**resolve** [10] - 25:11, 28:15, 37:12, 39:7, 149:22, 149:25, 159:19, 383:20, 383:23, 384:4

**resolved** [3] - 39:14, 59:25, 163:25

**resolving** [3] - 120:6, 120:10, 159:15

**resource** [9] - 122:23, 123:3, 123:7, 123:9, 125:17, 128:9, 128:14, 180:22, 411:13

**respect** [1] - 379:21

**respectfully** [4] - 88:23, 131:17, 186:10, 242:8

**respective** [1] - 4:4

**respond** [15] - 95:9, 95:15, 101:3, 165:19, 165:22, 194:3, 201:17, 201:24, 264:7, 294:13, 354:9, 356:18, 359:23, 360:15, 360:17

**responded** [7] - 196:4, 298:5, 298:18, 361:6, 394:2, 400:4, 400:20

**responding** [3] - 200:7, 200:10, 352:14

**response** [28] - 9:5, 56:9, 122:12, 126:3, 152:15, 196:2, 199:20, 207:5, 207:8, 215:23, 223:10, 223:18, 238:3, 267:10, 294:9, 331:7, 353:15, 354:14, 360:11, 360:13, 370:25, 375:5, 388:18, 407:9, 412:11, 412:14, 424:13, 442:4

**response)** [2] - 58:6, 184:25

**responses** [1] - 363:4

**responsibilities** [1] - 125:10

**responsible** [21] - 47:25, 89:25, 90:4, 90:10, 107:7, 107:11, 107:17, 107:22, 112:19, 123:20, 124:20, 125:3, 125:7, 134:23, 135:7, 171:20, 172:9, 173:8, 178:11, 178:16, 178:20

**responsive** [2] - 6:7, 256:25

**rest** [6] - 7:15, 152:21, 158:4, 257:3, 360:12, 428:24

**restrain** [15] - 52:12, 196:19, 225:18, 225:23, 229:9, 230:2, 331:16, 331:18, 345:19, 345:21, 347:13, 349:15, 349:17, 349:21, 428:17

**restrained** [1] - 227:22

**restraint** [3] - 207:13, 207:15, 345:22

**restraints** [2] - 182:16, 182:19

**rests** [1] - 102:16

**result** [23] - 32:8, 33:15, 37:4, 37:7, 37:10, 37:22, 38:8, 50:11, 144:22, 146:10, 156:4, 166:4, 175:8, 180:5, 182:19, 182:24, 202:4, 259:10, 264:22, 345:6, 346:5, 420:8, 439:11

**results** [2] - 114:25, 341:15

**resume** [3] - 22:2, 22:11, 23:22

**retired** [3] - 296:12, 296:17, 296:22

**retrained** [1] - 55:22

**retraining** [1] - 179:16

**return** [1] - 33:18

**returned** [1] - 427:10

**returning** [1] - 300:12

**review** [12] - 10:14, 12:24, 47:3, 47:20, 66:6, 97:11, 152:9, 269:8, 272:22, 361:12, 453:15, 453:25

**reviewed** [14] - 10:11, 11:2, 11:11, 11:19, 11:22, 12:12, 13:4, 13:10, 46:23, 47:9,

118:14, 135:8, 273:2, 421:5
**reviewing** [1] - 11:4
**revised** [3] - 280:24, 281:2, 460:2
**revisit** [1] - 73:6
**RICH** [2] - 462:7, 462:24
**Rich** [2] - 2:5, 2:22
**right-hand** [2] - 220:17, 415:21
**rights** [2] - 151:5, 154:14
**Rights** [1] - 256:3
**ringing** [1] - 194:24
**rings** [1] - 359:4
**riotous** [2] - 202:13, 210:22
**riotously** [1] - 200:16
**risks** [1] - 182:15
**Road** [3] - 1:21, 2:22, 3:5
**Roberta** [1] - 324:11
**rolls** [2] - 426:10, 426:14
**roman** [2] - 90:15, 94:22
**room** [5] - 128:24, 137:17, 143:9, 183:24, 271:11
**room)** [2] - 137:21, 153:4
**roster** [2] - 379:13, 379:14
**row** [1] - 133:10
**rows** [1] - 133:22
**rQ** [1] - 155:20
**RT** [1] - 370:14
**RTI** [2] - 56:6, 56:12
**rule** [3] - 79:5, 150:8, 177:19
**rules** [9] - 68:19, 73:17, 131:14, 150:13, 177:14, 446:3, 453:14, 454:3, 454:11
**ruling** [7] - 142:20, 142:24, 150:9, 151:18, 154:19, 166:22, 167:19
**RULINGS** [1] - 457:9
**rumor** [1] - 342:15
**rumors** [13] - 336:3, 337:13, 338:2, 338:22, 340:22, 342:5, 342:8, 342:11, 342:22, 344:5, 368:6, 368:11, 368:15
**run** [1] - 75:19
**running** [2] - 298:4, 298:22

## S

**S"** [1] - 310:9
**safe** [2] - 298:4, 298:23
**safety** [5] - 20:17, 60:10, 126:5, 185:2, 351:3
**salaries** [1] - 121:18
**salary** [1] - 164:21
**saliva** [1] - 197:17
**sample** [3] - 22:6, 22:8, 22:12
**sarcastically** [1] - 352:20
**sat** [1] - 173:12
**saw** [42] - 196:6, 196:8, 199:17, 205:9, 212:5, 224:13, 225:20, 225:21, 229:19, 229:23, 229:24, 260:8, 282:12, 284:23, 285:22, 285:24, 286:11, 287:2, 300:2, 301:13, 303:20, 305:14, 311:20, 311:22, 330:12, 332:12, 332:15, 339:20, 343:5, 343:8, 345:18, 346:19, 346:21, 346:25, 347:10, 347:11, 347:24, 348:3, 348:25, 350:20, 409:13, 423:7
**Sayville** [1] - 393:11
**scene** [1] - 226:2
**schedule** [1] - 126:11
**scheduled** [3] - 126:6, 126:10, 245:14
**Scholarship** [2] - 326:2, 326:15
**scholarship** [13] - 315:13, 315:16, 315:20, 315:22, 316:13, 317:8, 317:11, 321:9, 321:11, 326:8, 326:11, 334:24, 401:20
**scholarships** [5] - 251:19, 317:3, 317:7, 326:22, 327:21
**Scholarships** [1] - 328:13
**SCHOOL** [1] - 1:8
**school** [113] - 15:13, 15:14, 15:15, 16:4, 16:5, 16:20, 17:2, 20:2, 20:4, 20:11, 22:20, 34:9, 35:21, 36:16, 50:5, 60:11, 60:12, 75:5, 75:14, 75:16, 86:22, 88:10, 89:9, 90:2, 91:2, 102:11, 103:10, 104:9, 104:11, 104:13, 109:10, 110:3, 111:24, 112:3, 112:4, 112:5, 112:7, 112:18, 113:4, 113:16, 114:5, 115:25, 116:7, 116:8, 117:15, 122:18, 122:22, 123:2, 123:7, 123:9, 123:10, 125:17, 125:18, 126:6, 127:5, 128:2, 128:7, 128:8, 128:9, 128:14, 133:2, 134:2, 158:4, 158:5, 172:12, 172:13, 172:22, 173:3, 179:4, 179:7, 180:22, 188:11, 188:16, 236:19, 238:6, 239:4, 239:12, 240:20, 240:21, 241:4, 246:14, 248:20, 253:18, 265:6, 282:14, 286:3, 351:3, 355:16, 362:17, 365:11, 373:13, 376:2, 378:4, 379:5, 381:6, 381:13, 382:11, 387:4, 387:8, 387:13, 393:9, 406:23, 411:13, 414:8, 426:4, 426:9, 426:12, 435:8, 439:8
**School** [172] - 16:7, 16:21, 17:16, 18:5, 19:4, 19:6, 23:3, 24:5, 24:9, 30:16, 30:18, 41:24, 48:8, 48:10, 48:14, 49:6, 49:7, 49:9, 50:21, 50:24, 51:8, 51:24, 54:3, 54:16, 58:11, 59:10, 60:5, 60:19, 61:7, 61:18, 61:25, 62:8, 63:8, 63:18, 65:12, 65:22, 66:9, 67:2, 70:15, 74:25, 78:22, 79:3, 79:4, 81:13, 85:20, 86:19, 87:4, 92:5, 92:17, 92:22, 95:22, 96:7, 96:8, 96:16, 98:7, 98:22, 100:4, 102:4, 102:17, 103:17, 104:5, 106:13, 107:9, 107:24, 108:22, 109:9, 109:24, 113:5, 113:9, 113:21, 117:3, 118:23, 122:2, 122:7, 122:14, 127:13, 127:19, 127:23, 128:2, 128:14, 128:24, 132:8, 133:13, 134:2, 157:6, 160:8, 161:3, 162:7, 162:13, 164:24, 167:4, 169:21, 170:22, 171:18, 172:19, 173:10, 173:13, 179:7, 179:13, 179:17, 181:16, 183:24, 185:6, 186:24, 187:5, 188:23, 189:21, 238:20, 241:12, 241:17, 241:22, 245:11, 249:3, 250:8, 257:22, 257:23, 259:6, 278:8, 280:17, 288:2, 292:17, 292:21, 295:7, 304:9, 305:21, 310:22, 312:11, 314:19, 333:4, 336:7, 340:11, 356:21, 357:9, 358:23, 365:17, 365:21, 375:20, 378:5, 380:18, 381:4, 381:11, 382:3, 382:7, 383:15, 384:2, 384:10, 384:16, 384:21, 391:25, 394:25, 395:8, 396:24, 401:2, 403:25, 404:10, 405:8, 405:16, 410:13, 410:17, 411:9, 416:15, 421:14, 421:24, 423:24, 425:23, 427:4, 435:9, 438:20, 440:11, 444:3, 444:9
**school's** [1] - 188:22
**school-sponsored** [1] - 172:13
**schools** [1] - 134:21
**Schools** [1] - 172:15
**Schuster** [6] - 393:3, 393:8, 393:17, 393:22, 393:24, 461:9
**SCHUSTER** [1] - 393:4
**Schuster's** [1] - 394:16
**science** [3] - 16:16, 16:23, 19:7
**scope** [2] - 94:17, 408:5
**Scott** [42] - 5:12, 162:6, 229:22, 230:21, 349:6, 349:8, 349:13, 350:3, 359:9, 359:11, 359:16, 393:3, 393:8, 393:21, 393:24, 394:15, 402:17, 411:12, 431:9, 431:12, 432:19, 433:2, 433:21, 438:19, 459:21, 460:14, 460:17, 460:18, 460:20, 460:22, 460:23, 460:24, 461:2, 461:4, 461:6, 461:8, 461:10, 461:12, 461:14, 461:16, 461:17
**SCOTT** [8] - 1:14, 1:15, 2:4, 5:2, 456:8, 456:18, 457:4, 462:10
**Scott's** [1] - 430:23
**Scott.Reese** [1] - 262:11
**Scott.Reese@ Longwood** [1] - 251:23
**Scott.Reese@ LongwoodCSD.org** [3] - 46:8, 264:16, 291:23
**screaming** [1] - 222:14
**sealing** [1] - 4:5

**Sean** [9] - 251:16, 334:20, 335:18, 336:25, 337:3, 337:6, 337:16, 341:25, 352:7
**Sean.Hughes@ LongwoodCSD.org** [1] - 337:18
**searched** [3] - 411:2, 412:3, 412:5
**Sears** [3] - 453:22, 453:24, 454:19
**second** [23] - 25:18, 28:7, 29:19, 30:10, 30:13, 32:2, 45:10, 45:11, 62:6, 94:20, 128:22, 141:12, 145:23, 153:10, 200:21, 207:11, 208:13, 218:9, 290:15, 348:4, 401:20, 422:13, 436:5
**secondary** [3] - 16:16, 18:4, 18:23
**seconds** [5] - 209:22, 216:8, 219:4, 225:13, 428:18
**secretaries** [1] - 89:15
**secretary** [4] - 254:10, 316:2, 317:3, 396:20
**section** [2] - 59:12, 108:19
**sector** [1] - 292:16
**security** [75] - 64:4, 81:23, 82:2, 89:18, 90:2, 106:10, 110:4, 113:5, 126:15, 129:2, 173:9, 173:13, 174:10, 179:4, 179:7, 179:13, 181:21, 183:7, 185:3, 185:8, 189:7, 192:19, 193:6, 197:18, 200:5, 225:17, 225:21, 226:4, 226:21, 226:25, 227:7, 227:22, 229:19, 229:20, 258:5, 258:25, 266:20, 267:8, 273:11, 273:12, 273:25, 274:3, 274:6, 274:8, 283:15, 294:5, 300:13, 305:14, 324:7, 337:15, 343:24, 344:4, 345:11, 345:13, 346:4, 348:14, 348:23, 349:2, 350:18, 350:19, 351:13, 362:18, 365:10, 377:4, 380:7, 390:13, 390:19, 390:23, 391:3, 411:12, 428:5, 430:22, 432:19, 433:21, 438:20
**Security** [1] - 185:6
**SECURITY** [2] - 1:14, 1:15
**see** [82] - 50:22, 67:12, 78:7, 82:14, 83:2, 98:13, 124:18, 132:20, 133:23, 133:24, 134:6, 134:9, 134:12, 134:17, 163:15, 183:18, 189:6, 203:12, 206:22, 226:12, 229:11, 229:14, 238:13, 261:13, 263:17, 279:4, 279:25, 280:21, 284:21, 285:5, 287:5, 289:2, 289:3, 291:25, 295:10, 296:7, 299:25, 301:10, 301:15, 302:10, 303:21, 311:8, 318:20, 339:19, 340:5, 340:25, 343:9, 343:12, 343:15, 347:25, 348:15, 348:18, 348:22, 349:13, 350:11, 360:20, 385:4, 385:8, 385:16, 387:25, 388:11, 388:17, 389:25, 390:23, 391:3, 395:14, 395:21, 402:5, 402:8, 402:17, 402:21, 406:8, 409:8, 430:22, 431:9, 431:12, 433:9, 434:6, 437:14, 437:18, 437:24, 438:3
**seeing** [4] - 188:19, 204:23, 233:20, 282:19
**seek** [2] - 166:22, 342:25
**seem** [4] - 138:7, 198:15, 213:4, 346:8
**Seeming** [1] - 216:15
**select** [1] - 212:12
**self** [3] - 222:15, 398:18, 403:6
**self-explanatory** [2] - 398:18, 403:6
**selves** [1] - 200:23
**semesters** [2] - 20:10, 20:13
**send** [25] - 56:20, 56:21, 87:18, 128:22, 234:20, 236:9, 236:15, 315:11, 325:16, 325:25, 326:4, 328:24, 329:8, 329:14, 337:19, 337:23, 361:4, 361:9, 382:14, 386:2, 386:9, 386:24, 387:12, 393:23, 400:12
**sender** [2] - 291:7, 298:8
**sending** [4] - 282:23, 335:18, 360:9, 394:24
**sends** [1] - 261:11
**senior** [12] - 187:18, 187:22, 189:19, 192:11, 228:24, 251:18, 362:13, 398:6, 417:17, 417:18, 427:5
**seniors** [1] - 417:21
**sense** [2] - 212:13, 375:4
**Sent** [2] - 338:6, 338:9
**sent** [38] - 87:13, 87:15, 87:22, 236:5, 236:16, 257:8, 257:11, 257:12, 257:13, 257:14, 261:5, 281:17, 281:23, 292:13, 311:22, 321:4, 327:4, 329:16, 337:11, 338:11, 340:21, 352:6, 360:5, 360:12, 361:13, 364:5, 367:5, 367:8, 367:10, 371:9, 387:16, 388:7, 394:3, 398:8, 400:16, 401:22, 446:3, 451:16
**separate** [1] - 354:11
**separated** [2] - 306:12, 306:17
**separately** [1] - 413:24
**September** [2] - 409:11, 411:24
**serious** [2] - 182:20, 355:6
**seriously** [2] - 368:25, 369:6
**service** [2] - 28:17, 185:7
**services** [1] - 181:8
**session** [1] - 184:4
**set** [6] - 49:15, 409:16, 434:14, 434:21, 462:11, 462:21
**settled** [2] - 155:13, 231:4
**Settlement** [1] - 163:14
**settlement** [1] - 163:19
**seven** [5] - 18:24, 150:11, 439:16, 439:18, 452:21
**Seventh** [1] - 255:2
**several** [18] - 176:8, 186:19, 186:22, 202:12, 262:25, 284:19, 314:6, 314:8, 314:9, 328:21, 329:25, 330:15, 330:18, 410:5, 413:12, 423:11, 438:18, 458:10
**Several** [1] - 202:11
**severe** [1] - 196:25
**severely** [1] - 218:25
**severity** [1] - 73:22
**sex** [2] - 119:13, 119:25
**sexual** [3] - 40:25, 119:10, 119:25
**shake** [1] - 7:7
**shall** [4] - 4:11, 119:7, 119:21, 172:9
**share** [3] - 296:15, 337:11, 358:11
**shared** [1] - 128:25
**Shield** [1] - 142:15
**shirt** [3] - 198:11, 313:2, 419:25
**shit** [4] - 388:24, 390:11, 390:13, 402:22
**short** [1] - 231:8
**shortly** [6] - 222:7, 316:4, 323:12, 326:24, 428:12, 451:17
**shoulder** [2] - 136:6, 153:16
**shouted** [1] - 197:10
**shouting** [1] - 199:16
**show** [19] - 64:9, 108:6, 145:16, 148:21, 231:20, 276:20, 276:21, 279:18, 287:20, 290:11, 295:21, 297:15, 349:17, 375:12, 409:2, 422:12, 423:4, 434:15, 448:22
**showed** [6] - 12:21, 122:21, 130:5, 285:14, 285:18, 339:10
**showing** [3] - 146:13, 328:3, 371:16
**shown** [5] - 56:6, 285:9, 296:4, 389:15, 448:17
**shows** [4] - 56:22, 126:25, 306:6, 444:19
**sic** [1] - 430:23
**sic]** [1] - 158:17
**sick** [1] - 10:5
**side** [10] - 196:12, 196:14, 197:6, 201:10, 205:12, 217:4, 220:17, 335:3, 383:9, 415:21
**sign** [8] - 75:9, 75:21, 102:22, 174:7, 186:4, 381:16, 453:15, 454:2
**signature** [9] - 163:21, 278:13, 278:16, 280:8, 288:7, 415:5, 415:16, 415:20, 454:14
**signatures** [1] - 165:11
**Signed** [1] - 456:21
**signed** [5] - 4:15, 4:18, 103:3, 259:12, 416:10
**significant** [1] - 40:6
**SILVERMAN** [1] - 3:9
**similar** [3] - 217:10, 285:2, 299:9
**simple** [5] - 111:17, 137:9, 138:11, 144:6, 148:13
**simply** [2] - 75:8, 138:13
**single** [3] - 237:12,

269:13, 342:14
**sit** [33] - 36:12, 41:19, 55:15, 57:16, 79:17, 80:4, 80:11, 80:20, 93:9, 176:21, 184:18, 228:14, 238:18, 247:22, 275:10, 288:18, 305:3, 305:5, 309:13, 325:22, 338:8, 338:16, 342:13, 344:17, 346:16, 364:11, 370:23, 379:3, 392:23, 408:7, 448:6, 449:5, 449:17
**sits** [1] - 50:2
**sitting** [1] - 70:6
**situation** [14] - 52:7, 53:18, 53:24, 60:9, 111:5, 199:8, 200:9, 208:12, 211:21, 211:25, 230:6, 298:2, 307:8, 341:2
**six** [9] - 56:20, 130:24, 133:3, 133:8, 133:9, 192:13, 222:12, 270:16, 270:22
**size** [1] - 229:8
**skinned** [1] - 217:11
**skinny** [1] - 217:11
**Skuggevik** [2] - 167:21, 168:12
**SKUGGEVIK** [1] - 167:22
**slam** [2] - 305:14, 431:12
**slammed** [5] - 136:4, 153:14, 215:15, 294:6, 348:18
**slamming** [1] - 208:14
**slapped** [1] - 197:5
**sling** [1] - 220:3
**slowly** [1] - 323:20
**small** [2] - 313:20, 345:17
**Smith** [22] - 195:23, 198:19, 199:7, 199:21, 199:25, 237:20, 259:13, 259:14, 259:17, 270:18, 315:3, 323:23, 329:3, 391:7, 391:9, 391:11, 391:20, 392:7, 428:10, 448:7, 453:22, 458:18
**smoking** [1] - 72:23
**so..** [1] - 213:25
**social** [27] - 45:23, 46:2, 46:24, 104:11, 104:13, 104:18, 116:19, 116:22, 170:21, 188:12, 188:17, 188:20, 295:7, 295:10, 295:13, 295:22, 296:4, 296:8, 301:7, 303:20, 368:22, 369:15, 371:10, 371:22, 372:5, 409:24, 411:7
**socially** [2] - 169:20, 170:4
**solely** [1] - 78:4
**solicited** [1] - 97:5
**someone** [20] - 24:4, 51:23, 52:20, 65:15, 68:3, 111:14, 176:17, 187:14, 199:24, 212:12, 214:4, 224:9, 226:9, 339:20, 346:19, 347:13, 354:9, 370:3, 372:16, 381:17
**sometime** [1] - 236:18
**sometimes** [3] - 8:24, 9:12, 362:25
**somewhat** [2] - 174:5, 230:7
**somewhere** [5] - 33:10, 57:15, 276:3, 321:23, 373:8
**son** [1] - 362:6
**soon** [2] - 218:2, 231:17
**sore** [1] - 136:10
**sorry** [27] - 12:19, 56:8, 92:10, 97:8, 98:15, 98:17, 147:9, 148:9, 151:12, 157:21, 178:6, 218:4, 219:14, 263:14, 270:25, 297:25, 306:24, 312:18, 343:7, 379:22, 380:8, 381:10, 388:12, 388:13, 393:6, 398:14, 443:4
**Sorry** [4] - 177:24, 181:13, 316:18, 431:24
**sort** [11] - 50:10, 66:5, 68:19, 71:22, 85:19, 141:22, 221:4, 240:6, 272:23, 380:15, 446:3
**sorts** [1] - 216:20
**sound** [2] - 159:9, 447:23
**sounds** [2] - 150:17, 450:15
**source** [2] - 445:14, 445:16
**south** [6] - 198:22, 230:25, 231:6, 232:20, 330:10, 330:11
**span** [2] - 376:18, 434:7
**spanning** [1] - 206:20
**spans** [1] - 402:3
**speaking** [4] - 54:12, 141:6, 154:9, 413:4
**speaks** [3] - 68:8, 403:9, 457:17
**Special** [2] - 296:13, 445:4
**special** [3] - 68:10, 393:12, 457:19
**specific** [6] - 15:18, 71:18, 94:16, 408:4, 421:7, 446:17
**specifically** [12] - 72:16, 88:5, 94:9, 174:5, 199:20, 204:12, 225:22, 237:10, 270:18, 274:3, 283:9, 445:5
**specifics** [2] - 26:16, 93:8
**speculate** [1] - 130:7
**speculating** [1] - 293:6
**spelled** [2] - 310:11, 428:4
**spelling** [4] - 310:13, 312:19, 313:19, 429:25
**spinning** [1] - 208:4
**spit** [1] - 223:9
**split** [2] - 200:21, 207:11
**split-second** [1] - 200:21
**sponsored** [1] - 172:13
**sporadically** [3] - 126:12, 126:18, 126:22
**spread** [1] - 389:7
**spring** [1] - 263:8
**spun** [7] - 196:21, 205:15, 208:13, 212:23, 216:4, 218:21, 428:16
**squash** [5] - 337:13, 338:22, 340:21, 344:5, 388:25
**SReese** [4] - 262:15, 262:17, 262:23, 458:9
**SReese33@hotmail.com** [2] - 46:10, 264:17
**SReese@LongwoodCSD.com** [2] - 262:6, 264:15
**SRO** [5] - 123:11, 126:10, 127:2, 127:3, 127:5
**ss** [2] - 456:4, 462:4
**staff** [66] - 23:20, 51:7, 51:14, 51:17, 63:23, 73:24, 78:19, 78:25, 79:4, 79:11, 79:13, 79:15, 79:19, 80:14, 81:13, 83:18, 84:3, 84:23, 105:24, 106:14, 110:13, 110:17, 112:19, 113:10, 189:2, 192:20, 193:6, 199:12, 225:21, 226:22, 227:2, 233:19, 241:11, 241:15, 241:23, 241:24, 242:7, 248:20, 249:3, 251:16, 257:15, 257:23, 265:12, 267:8, 300:6, 300:7, 300:20, 300:21, 301:18, 302:5, 302:24, 303:4, 307:23, 324:16, 337:11, 344:13, 346:4, 348:5, 348:14, 352:21, 352:23, 352:25, 363:21, 388:2, 421:6, 423:12
**Staff** [1] - 296:12
**Stamp** [4] - 260:23, 297:16, 315:8, 394:7
**stamped** [3] - 125:15, 290:17, 308:11
**Stamped** [1] - 260:18
**stance** [1] - 300:4
**standing** [2] - 347:20, 347:21
**stare** [1] - 26:13
**start** [11] - 14:20, 17:8, 63:21, 104:9, 192:8, 218:10, 240:20, 251:2, 342:7, 348:7, 423:23
**started** [6] - 68:14, 191:6, 199:4, 208:6, 345:24, 347:16
**starting** [1] - 17:21
**starts** [2] - 69:8, 401:19
**state** [22] - 5:10, 6:3, 8:13, 36:20, 36:21, 95:25, 96:2, 96:6, 97:19, 98:5, 107:15, 116:10, 123:22, 127:22, 127:25, 329:24, 365:16, 365:20, 388:23, 412:14, 438:14, 444:13
**STATE** [2] - 456:4, 462:3
**State** [12] - 2:6, 15:17, 66:12, 66:14, 68:8, 155:4, 155:19, 172:17, 183:6, 456:23, 457:17, 462:8
**State-mandated** [1] - 183:6
**Statement** [3] - 118:12, 414:19, 461:17
**statement** [107] - 6:11, 10:16, 10:18, 10:20, 10:21, 10:25, 11:17, 11:24, 12:3, 12:5, 34:25, 35:18, 84:8, 84:9, 108:13, 108:17, 126:7, 126:9, 136:12, 136:17, 136:21, 153:13, 180:10, 193:22, 215:24, 235:22, 249:19, 259:20, 265:11, 277:23, 308:6, 308:14, 308:17, 309:14, 310:4, 311:25, 313:6, 313:12, 313:15, 313:23, 314:7, 317:15, 317:18, 317:20, 318:12, 320:22, 325:14, 325:19, 329:11, 334:12, 334:14, 342:2, 361:24, 362:24, 369:20, 369:21, 370:9, 383:25, 386:2, 386:6, 405:2, 406:16, 407:10,

407:11, 407:13, 407:21, 408:12, 408:13, 413:15, 413:17, 413:21, 413:25, 414:3, 415:2, 415:23, 416:2, 417:10, 417:25, 418:4, 418:25, 419:12, 419:17, 420:2, 422:16, 422:20, 425:7, 425:16, 426:23, 427:16, 430:4, 432:21, 433:12, 433:14, 433:17, 433:18, 433:25, 436:25, 440:3, 440:15, 440:21, 440:24, 441:2, 451:21, 451:25, 452:6, 458:23
**Statement/ Recommendations** [2] - 308:2, 460:16
**statements** [27] - 11:14, 45:17, 45:18, 47:19, 83:16, 83:22, 84:14, 161:6, 165:20, 257:16, 278:25, 318:4, 318:6, 320:5, 340:12, 343:12, 343:16, 343:20, 390:7, 409:25, 418:11, 434:7, 434:9, 434:14, 441:5, 448:16, 453:12
**states** [1] - 408:9
**STATES** [1] - 1:2
**stating** [5] - 103:16, 313:24, 366:2, 432:24, 453:9
**stationed** [1] - 292:16
**status** [3] - 119:10, 119:12, 119:13
**stay** [2] - 183:10, 183:11
**Stay** [1] - 316:21
**stayed** [2] - 160:3, 183:21
**staying** [1] - 137:24
**steam** [1] - 200:20
**step** [3] - 198:6, 290:15, 419:20
**Steven** [5] - 123:11, 123:13, 128:23, 130:3, 131:10
**still** [19] - 6:5, 73:20, 143:8, 153:5, 161:2, 249:13, 256:8, 256:16, 319:12, 330:7, 345:12, 350:15, 350:18, 357:2, 387:4, 399:4, 399:6, 452:25, 454:16
**STIPULATED** [3] - 4:2, 4:8, 4:13
**stipulation** [1] - 157:8
**stone** [1] - 72:19
**Stony** [3] - 15:3, 136:8, 156:3
**stood** [1] - 269:13
**stoop** [1] - 202:6
**stop** [42] - 25:9, 110:20, 111:2, 140:13, 196:11, 196:13, 200:14, 200:22, 200:24, 201:2, 201:8, 201:15, 203:19, 204:14, 205:10, 206:6, 206:11, 206:14, 206:18, 207:12, 207:18, 208:10, 209:16, 211:7, 212:13, 247:4, 277:16, 277:20, 279:11, 281:6, 281:11, 287:13, 313:2, 314:2, 351:22, 351:23, 351:24, 351:25, 388:17, 419:18, 433:4
**Stop** [3] - 201:8, 204:14, 351:25
**stopped** [7] - 207:14, 207:17, 208:5, 211:5, 388:11, 388:14, 392:16
**stopping** [2] - 209:4, 209:18
**stored** [2] - 319:22, 458:14
**story** [5] - 285:23, 337:13, 338:21, 339:2, 383:10
**straight** [2] - 434:14, 434:22
**strength** [2] - 209:5, 226:10
**stress** [1] - 366:7
**strict** [1] - 239:21
**strictly** [1] - 111:25
**strike** [1] - 227:19
**string** [1] - 376:17
**strip** [1] - 402:8
**strong** [1] - 228:23
**strongly** [1] - 366:2
**struck** [8] - 222:16, 222:24, 223:2, 223:7, 223:8, 224:9, 228:6, 350:25
**struggle** [2] - 225:25, 347:9
**struggled** [1] - 346:3
**struggling** [10] - 73:24, 79:12, 226:3, 226:6, 226:25, 228:21, 339:12, 347:6, 347:12, 348:14
**Student** [4] - 61:25, 82:11, 94:23, 459:24
**student** [128] - 41:7, 47:14, 50:11, 50:15, 50:16, 51:8, 51:12, 51:14, 51:24, 52:9, 54:13, 60:10, 63:8, 63:21, 63:22, 64:22, 65:13, 66:2, 72:22, 73:11, 74:25, 76:22, 78:22, 79:3, 79:14, 79:15, 79:18, 80:13, 81:12, 82:17, 82:20, 82:24, 83:4, 83:6, 83:10, 83:13, 84:2, 84:3, 85:10, 85:12, 92:23, 95:9, 97:21, 102:4, 102:16, 103:10, 103:12, 103:22, 110:12, 110:16, 110:17, 110:19, 112:3, 113:11, 114:8, 119:7, 119:10, 182:24, 186:14, 190:6, 195:12, 196:8, 197:15, 203:15, 210:14, 211:8, 216:17, 222:11, 225:24, 228:8, 238:23, 239:18, 241:7, 241:12, 241:17, 241:22, 258:10, 259:11, 259:20, 286:7, 295:14, 295:16, 295:20, 295:21, 300:5, 300:9, 300:18, 302:11, 305:13, 305:22, 331:20, 337:13, 338:22, 338:25, 339:3, 339:11, 339:16, 339:19, 340:8, 340:22, 342:24, 342:25, 343:9, 343:20, 344:10, 347:5, 347:12, 348:11, 351:7, 365:7, 369:23, 370:6, 370:9, 399:15, 402:15, 420:11, 420:19, 421:23, 422:2, 427:3, 432:2, 432:16, 447:19, 448:3
**student's** [7] - 53:9, 65:18, 97:20, 188:20, 209:22, 300:19, 302:14
**student-generated** [1] - 286:7
**Students** [13] - 104:23, 106:15, 107:6, 108:14, 108:18, 110:11, 115:19, 116:13, 117:2, 117:14, 185:15, 185:20, 239:11
**students** [114] - 41:13, 41:23, 49:20, 54:12, 54:15, 60:21, 62:7, 63:22, 64:13, 64:23, 67:7, 69:11, 79:10, 79:12, 82:16, 83:17, 84:22, 86:3, 89:12, 98:21, 100:14, 101:16, 109:17, 110:2, 110:14, 112:4, 113:13, 119:22, 133:8, 174:11, 174:20, 184:4, 186:20, 186:23, 192:12, 194:18, 195:3, 195:18, 196:6, 197:19, 199:15, 200:15, 200:23, 201:2, 201:23, 202:11, 202:14, 202:22, 206:12, 210:18, 210:20, 212:10, 212:18, 224:2, 224:4, 224:13, 224:19, 224:22, 230:8, 231:9, 232:7, 239:3, 239:9, 239:17, 239:23, 240:14, 240:23, 241:5, 248:9, 248:12, 248:16, 257:21, 277:20, 300:2, 300:10, 300:13, 303:25, 304:5, 304:10, 310:22, 311:14, 332:24, 339:24, 340:3, 340:6, 340:13, 341:3, 343:13, 343:16, 348:5, 378:16, 378:19, 379:8, 380:21, 381:20, 383:14, 385:2, 385:5, 385:17, 399:4, 399:6, 404:7, 410:13, 420:7, 421:14, 422:5, 427:8, 428:6, 443:18, 444:9, 444:25, 445:5, 445:25
**students'** [7] - 101:4, 269:21, 279:5, 295:7, 295:10, 295:12, 384:5
**study** [1] - 444:19
**stuff** [5] - 174:21, 246:9, 294:13, 294:17, 303:11
**Stuhler** [3] - 158:17, 159:6, 159:12
**Stuhler's** [1] - 158:18
**STULER** [1] - 158:17
**subdued** [2] - 231:18, 231:21
**subject** [11] - 41:23, 62:25, 63:14, 156:8, 186:23, 187:4, 333:9, 337:8, 338:6, 338:9, 410:2
**submit** [4] - 22:2, 22:5, 23:18, 26:5
**submitted** [6] - 23:15, 24:3, 93:22, 436:9, 436:12, 459:5
**submitting** [1] - 123:21
**subordinate** [1] - 404:9
**subpoenaed** [1] - 356:5
**subscribed** [1] - 456:21
**subsection** [1] - 60:16
**subsequent** [1] - 245:9
**substance** [6] - 42:25, 153:20, 164:6, 164:11, 193:23, 235:9
**substantially** [8] -

86:11, 108:25, 162:21, 172:4, 185:25, 308:25, 317:23, 416:9
**successfully** [1] - 164:14
**suddenly** [2] - 228:9, 228:10
**sued** [6] - 32:4, 32:6, 32:7, 32:9, 32:11, 32:15
**suffered** [2] - 166:3, 439:11
**SUFFOLK** [4] - 1:9, 1:9, 1:10
**Suffolk** [25] - 29:5, 29:17, 29:22, 30:7, 33:6, 61:19, 127:12, 129:13, 129:15, 129:19, 181:23, 181:25, 237:24, 238:2, 238:19, 238:24, 249:23, 250:4, 250:7, 250:12, 253:13, 255:22, 289:16, 362:17, 380:12
**suggested** [2] - 334:3, 334:9
**suing** [1] - 32:21
**suit** [5] - 14:17, 37:18, 37:23, 39:24, 457:15
**Suite** [4] - 1:21, 2:22, 3:5, 3:11
**sum** [2] - 193:23, 235:9
**summer** [3] - 174:16, 184:3, 365:23
**SUPERINTENDANT** [1] - 1:12
**Superintendent** [3] - 161:17, 172:14, 459:22
**superintendent** [21] - 63:11, 70:17, 71:12, 103:15, 103:21, 128:5, 134:21, 164:7, 168:4, 168:5, 244:13, 244:15, 245:24, 246:23, 320:23, 365:25, 382:13, 403:23, 411:10, 457:24
**superintendents** [1] - 248:6
**superior** [1] - 123:22
**supervisor** [1] - 168:13
**support** [15] - 170:13, 170:15, 336:6, 337:14, 343:23, 343:24, 344:3, 345:12, 350:18, 359:25, 361:11, 392:14, 396:14, 402:23
**supportive** [1] - 350:17
**supposed** [5] - 239:6, 239:15, 240:19, 317:10, 366:7
**surfing** [1] - 46:18
**surprised** [1] - 424:15
**surreptitiously** [1] - 303:17
**surrounded** [1] - 371:5
**suspend** [3] - 69:14, 103:10, 103:22
**suspended** [9] - 67:8, 420:4, 420:8, 420:20, 420:25, 422:6, 426:8, 426:11, 445:6
**Suspension** [2] - 276:18, 279:16
**suspension** [16] - 33:23, 67:4, 75:5, 75:16, 75:21, 102:11, 102:12, 103:13, 175:11, 265:7, 276:24, 278:12, 280:6, 442:8, 445:9, 445:24
**switched** [2] - 262:10, 357:7
**swore** [1] - 418:20
**sworn** [17] - 4:15, 4:18, 5:3, 33:19, 33:22, 34:3, 34:6, 34:10, 34:13, 34:22, 35:23, 36:13, 155:5, 156:14, 343:12, 416:2, 462:12
**syrup** [1] - 9:24
**system** [5] - 262:10, 262:11, 263:7, 356:25, 357:3

**T**

**tackled** [1] - 223:8
**tag** [1] - 417:15
**tail** [2] - 47:15, 285:16
**tainted** [1] - 341:7
**talks** [1] - 246:8
**target** [1] - 212:7
**teacher** [11] - 18:4, 19:7, 192:25, 195:14, 229:14, 261:12, 261:13, 296:13, 300:11, 438:8, 445:12
**teacher's** [1] - 303:22
**teacher/ administrator** [1] - 435:8
**teachers** [13] - 89:9, 107:8, 107:18, 192:20, 199:13, 229:16, 303:12, 304:7, 305:14, 337:12, 338:21, 344:13, 404:9
**Team** [1] - 358:23
**team** [19] - 129:24, 130:4, 130:23, 270:13, 270:15, 271:10, 274:4, 274:6, 274:9, 321:7, 321:13, 321:16, 322:4, 323:3, 359:5, 359:10, 360:12, 379:17, 449:16
**teaming** [1] - 445:13
**technical** [1] - 319:16
**technically** [1] - 32:10
**tedious** [2] - 181:13, 312:16
**teeth** [1] - 84:23
**telephone** [2] - 244:2, 244:4
**ten** [7] - 6:21, 13:20, 191:20, 214:23, 263:14, 321:23, 443:7
**tenure** [5] - 41:5, 58:4, 58:10, 92:21, 169:23
**term** [1] - 164:15
**terminated** [2] - 21:3, 21:11
**terms** [14] - 49:15, 49:24, 64:25, 65:19, 77:23, 84:8, 116:22, 132:21, 344:3, 354:14, 390:12, 404:25, 405:2, 444:9
**test** [1] - 26:6
**testified** [11] - 5:5, 14:14, 36:22, 131:19, 131:22, 131:24, 436:12, 447:18, 449:3, 458:5, 459:5
**testify** [1] - 7:24
**testifying** [1] - 448:15
**testimonial** [1] - 339:20
**testimony** [25] - 10:9, 31:10, 31:13, 31:20, 31:25, 33:20, 33:22, 34:4, 34:7, 34:10, 34:13, 35:23, 36:14, 81:25, 155:5, 155:21, 156:14, 157:7, 256:7, 256:19, 449:14, 456:9, 456:12, 457:14, 462:14
**tests** [1] - 21:22
**text** [9] - 252:24, 277:12, 293:14, 294:4, 402:9, 402:11, 402:14, 407:22, 458:24
**texts** [5] - 240:19, 406:9, 406:13, 409:23, 411:7
**thankful** [2] - 228:11, 228:19
**thankfully** [1] - 197:18
**THE** [53] - 23:12, 38:15, 43:4, 79:24, 101:9, 106:17, 106:21, 117:22, 141:6, 141:11, 141:16, 141:19, 141:24, 142:2, 142:5, 142:17, 143:8, 145:7, 145:23, 147:7, 147:10, 147:20, 149:13, 150:7, 150:22, 151:14, 151:18, 152:4, 152:11, 152:20, 171:4, 177:24, 191:2, 191:15, 191:25, 192:5, 213:14, 218:4, 261:3, 283:22, 284:18, 316:17, 318:4, 325:4, 349:20, 353:23, 358:20, 372:8, 432:11, 433:23, 438:23, 444:5, 450:23
**the..** [1] - 31:16
**themselves** [4] - 12:11, 54:6, 303:13, 380:22
**thereafter** [5] - 187:8, 187:10, 322:2, 428:12, 451:17
**therefore** [2] - 7:12, 425:19
**Therefore** [1] - 398:20
**they've** [3] - 56:6, 56:23, 62:9
**thinking** [6] - 11:21, 32:17, 142:9, 197:12, 233:10, 375:12
**third** [5] - 31:17, 77:22, 112:17, 419:16, 436:5
**thirty** [1] - 183:13
**THIS** [1] - 190:18
**thorough** [1] - 62:16
**thoroughly** [3] - 64:2, 109:18, 450:14
**thousands** [1] - 262:3
**threat** [5] - 84:2, 84:11, 84:13, 133:5, 133:7
**threatening** [2] - 166:3, 372:15
**threatens** [1] - 60:9
**threats** [5] - 369:15, 371:10, 371:22, 372:5, 373:15
**three** [16] - 19:4, 19:10, 22:17, 66:22, 77:17, 102:19, 102:25, 200:13, 219:3, 264:13, 330:22, 330:25, 331:4, 418:11, 428:18, 445:3
**three-and-a-half** [1] - 19:4
**three-quarters** [1] - 200:13
**throughout** [6] - 27:5, 41:5, 58:3, 58:7, 58:10, 86:22
**throws** [1] - 196:21
**Thursday** [1] - 334:3
**tie** [1] - 221:4
**TIME** [1] - 455:6
**timely** [1] - 60:24
**tissue** [1] - 136:9
**title** [2] - 108:19, 118:12
**TO** [1] - 459:13
**today** [63] - 5:21, 6:15, 10:3, 10:5, 10:9, 11:9, 12:25, 18:20, 36:13, 40:18, 41:19, 42:4, 42:17, 43:8, 55:15, 57:15, 79:17, 80:4, 80:11, 80:20, 80:25, 93:10, 141:19, 141:21, 144:4, 169:24, 176:21, 184:18, 228:14, 238:18, 247:22, 253:2, 275:10, 288:18,

294:24, 298:2, 305:3, 305:5, 309:13, 313:15, 325:22, 338:8, 338:16, 342:13, 343:18, 344:17, 346:16, 357:4, 364:12, 367:25, 370:23, 379:3, 392:23, 408:7, 411:23, 416:6, 434:16, 448:6, 448:15, 448:16, 449:2, 449:5, 449:17
**together** [1] - 425:2
**tolerance** [1] - 179:23
**TOM** [1] - 1:5
**Tom** [1] - 411:16
**took** [11] - 8:9, 55:9, 131:22, 175:12, 198:6, 204:8, 204:11, 322:13, 348:4, 348:8, 369:5
**top** [13] - 61:11, 113:20, 125:22, 147:25, 163:13, 182:23, 315:6, 359:24, 388:18, 402:19, 406:25, 415:12, 415:19
**total** [2] - 133:8, 209:23
**touch** [13] - 210:9, 215:20, 215:25, 310:17, 310:22, 331:24, 370:13, 419:3, 419:6, 419:22, 419:23, 430:8, 438:3
**touched** [3] - 205:13, 429:9, 429:16
**touching** [4] - 111:7, 111:19, 210:17, 215:19
**touchy** [2] - 300:21, 300:24
**tough** [1] - 377:25
**towards** [2] - 199:4, 220:14
**town** [1] - 29:20
**track** [1] - 439:21
**trade** [2] - 427:4, 427:5
**traffic** [1] - 194:16
**trail** [2] - 93:24, 177:9
**trained** [13] - 54:14, 54:20, 54:22, 55:2, 55:4, 90:19, 90:25, 105:19, 107:19, 107:25, 179:19, 182:10, 182:13
**training** [74] - 54:10, 55:9, 55:17, 55:20, 55:23, 56:6, 56:8, 56:10, 56:12, 56:17, 56:19, 56:21, 57:17, 57:19, 57:22, 58:3, 58:8, 58:9, 58:19, 58:20, 58:21, 58:24, 59:16, 59:19, 70:3, 85:19, 91:12, 91:15, 96:20, 104:7, 104:8, 104:10, 104:13, 104:17, 104:21, 105:4, 105:8, 105:11, 105:22, 106:15, 107:6, 107:8, 109:5, 109:8, 116:9, 116:18, 116:21, 116:23, 119:16, 160:12, 173:9, 173:14, 174:9, 174:14, 174:17, 175:5, 175:8, 182:4, 182:6, 182:14, 183:7, 183:8, 183:10, 183:12, 184:7, 184:11, 184:16, 184:20, 184:23, 185:7, 185:21, 186:5, 186:8
**trainings** [2] - 58:16, 107:5
**transcript** [3] - 453:15, 456:9, 456:11
**transcripts** [3] - 36:5, 454:2, 454:19
**Transgressed** [1] - 66:3
**treated** [4] - 64:14, 64:22, 64:23, 383:3
**treatment** [6] - 60:21, 68:9, 164:11, 443:18, 444:20, 457:18
**trial** [3] - 4:12, 36:22, 155:10
**Trial** [1] - 2:3
**tried** [8] - 197:3, 228:19, 299:17, 303:13, 419:18, 419:20, 419:23, 428:16
**trooper** [5] - 127:22, 127:25, 365:16, 365:20, 366:3
**trouble** [1] - 7:10
**true** [15] - 132:6, 163:18, 292:15, 335:23, 414:14, 415:23, 420:3, 425:6, 425:16, 425:18, 426:23, 442:12, 456:11, 456:13, 462:13
**truth** [16] - 7:19, 7:20, 8:9, 389:24, 403:2, 403:7, 404:22, 404:25, 405:2, 413:17, 413:21, 416:5, 418:20, 434:15, 435:2
**truths** [2] - 344:6, 405:6
**try** [11] - 8:19, 139:6, 188:6, 192:15, 200:14, 203:19, 207:12, 230:8, 244:15, 316:19
**trying** [36] - 34:21, 52:11, 196:22, 198:14, 199:14, 215:10, 219:6, 226:8, 226:11, 226:22, 228:22, 229:9, 230:2, 231:9, 300:4, 300:17, 328:21, 331:5, 331:9, 331:16, 332:6, 332:11, 332:16, 332:18, 332:20, 332:21, 332:23, 333:5, 347:7, 347:13, 349:15, 349:23, 383:23, 406:22, 421:20, 421:22
**turn** [1] - 135:20
**turned** [3] - 197:9, 230:17, 390:2
**turnkey** [3] - 56:19, 58:21
**Turnpike** [1] - 29:16
**twice** [2] - 24:24, 45:6
**two** [37] - 9:3, 22:17, 25:22, 35:11, 45:9, 45:11, 61:11, 66:21, 77:15, 77:22, 78:7, 104:16, 104:19, 145:7, 149:10, 190:21, 198:6, 214:6, 216:19, 217:20, 219:3, 219:19, 225:18, 226:17, 229:8, 262:7, 262:8, 271:18, 271:25, 272:7, 293:16, 303:15, 305:14, 354:12, 360:21, 363:8, 451:2
**Two** [1] - 214:18
**two-minute** [2] - 190:21, 363:8
**TY** [2] - 360:17, 392:13
**type** [6] - 105:11, 106:15, 156:25, 200:9, 226:4, 345:25
**types** [1] - 132:25
**typical** [4] - 265:17, 278:11, 340:18, 368:22
**typically** [13] - 81:22, 126:17, 177:20, 237:5, 303:9, 347:11, 351:8, 354:19, 364:19, 369:2, 376:24, 377:2, 380:14
**Typically** [1] - 73:16
**typing** [1] - 319:6
**typo** [1] - 398:16

## U

**ultimately** [4] - 75:20, 102:5, 102:14, 103:20
**unable** [3] - 431:16, 432:18, 433:20
**unapproved** [1] - 362:13
**unclear** [1] - 346:8
**unconscious** [1] - 105:16
**undefinitively** [1] - 297:6
**under** [29] - 24:15, 25:25, 31:22, 40:4, 51:18, 60:16, 68:12, 71:19, 89:3, 94:18, 94:22, 108:19, 115:8, 132:2, 155:24, 164:15, 242:12, 256:8, 256:17, 263:4, 283:12, 313:25, 320:2, 392:11, 408:6, 436:15, 441:6, 446:18, 456:10
**undergo** [1] - 62:15
**underlie** [1] - 8:5
**underlying** [2] - 144:24, 166:15
**underneath** [2] - 134:18, 280:21
**understandable** [1] - 8:17
**understood** [3] - 8:10, 102:24, 151:23
**undertaken** [1] - 391:3
**unexpected** [3] - 397:10, 398:13, 398:17
**unfair** [1] - 338:4
**unfairly** [1] - 383:3
**unfounded** [1] - 115:2
**uniformity** [2] - 64:10, 77:21
**union** [5] - 158:12, 158:13, 158:20, 158:24, 414:11
**unique** [3] - 364:20, 364:21, 377:10
**unit** [1] - 255:23
**UNITED** [1] - 1:2
**university** [1] - 15:19
**unlawful** [1] - 426:4
**unless** [3] - 124:19, 191:12, 218:5
**unnecessarily** [1] - 140:24
**unprofessional** [1] - 179:24
**unsupervised** [1] - 192:17
**unsworn** [2] - 155:21, 343:15
**unwanted** [1] - 111:7
**up** [72] - 7:3, 24:14, 31:21, 40:3, 51:14, 59:6, 61:12, 68:11, 69:12, 71:17, 73:25, 78:17, 81:21, 82:12, 89:2, 94:15, 94:24, 115:7, 122:21, 125:24, 126:25, 130:5, 150:25, 151:10, 155:23, 175:24, 180:10, 197:7, 202:7, 205:18, 216:16, 218:16, 225:6, 225:13, 229:10, 233:6, 233:11, 241:16, 242:11, 242:22, 254:14, 255:8, 263:3, 267:8, 285:8, 301:7, 302:11, 303:14, 303:18, 307:4, 315:14, 316:4, 319:3, 319:24, 319:25, 347:17, 375:15, 377:25, 381:16, 392:10, 403:24, 405:25, 408:4, 431:10,

436:7, 436:14, 446:16, 454:6, 454:12, 454:24, 458:15
**updated** [1] - 87:14
**ups** [3] - 375:18, 376:7, 410:7
**upset** [2] - 399:4, 399:6
**uses** [1] - 241:23
**utilize** [2] - 129:15, 129:18
**utilized** [2] - 263:20, 263:25
**utilizing** [1] - 46:17

## V

**VADIR** [15] - 121:14, 123:3, 123:17, 123:21, 123:24, 124:4, 124:11, 124:14, 124:21, 125:15, 135:7, 173:2, 459:19
**vantage** [1] - 390:8
**varied** [1] - 129:4
**various** [2] - 19:25, 192:15
**Various** [1] - 314:18
**VDIR** [1] - 459:23
**vehicular** [3] - 28:19, 160:17, 160:21
**verbal** [10] - 35:5, 67:15, 67:16, 133:5, 133:7, 188:10, 193:3, 201:17, 201:24, 207:4
**verbalized** [1] - 85:10
**verbally** [10] - 77:2, 84:7, 130:11, 177:16, 201:6, 201:7, 206:19, 268:20, 276:2, 381:20
**Vermont** [1] - 377:25
**version** [16] - 262:13, 384:5, 384:6, 389:6, 389:9, 389:10, 389:11, 389:14, 403:12, 405:7, 405:10, 405:13, 405:17, 448:14, 448:18
**versions** [8] - 337:14, 338:22, 338:25, 339:3, 340:22, 342:24, 342:25, 343:10
**versus** [2] - 141:3, 141:9
**vicinity** [1] - 197:19
**victim** [2] - 14:4, 119:12
**video** [63] - 45:19, 47:3, 47:11, 47:14, 201:12, 204:4, 273:2, 273:3, 273:9, 273:20, 273:22, 274:9, 274:11, 274:15, 282:7, 282:12, 282:13, 282:15, 282:19, 282:23, 283:5, 283:14, 283:24, 284:3, 284:7, 284:11, 284:24, 285:2, 285:15, 285:18, 286:6, 286:8, 286:11, 286:13, 286:17, 286:20, 286:24, 287:3, 287:5, 299:24, 300:6, 300:14, 300:16, 300:19, 302:2, 302:4, 302:10, 303:11, 306:5, 323:7, 323:11, 339:6, 339:10, 340:9, 355:16, 355:25, 410:15, 453:17, 453:19, 453:21
**videos** [5] - 47:20, 284:21, 338:2, 340:8, 454:21
**view** [2] - 86:3, 221:7
**viewed** [1] - 299:24
**violated** [1] - 311:12
**violating** [2] - 52:21, 333:13
**violation** [4] - 66:2, 328:19, 333:25, 334:10
**violations** [6] - 61:17, 61:19, 164:18, 274:17, 311:4, 311:11
**violators** [1] - 90:11
**violence** [7] - 83:20, 83:23, 84:5, 84:15, 84:20, 85:8, 119:12
**violent** [8] - 121:24, 122:6, 122:13, 172:11, 180:3, 182:11, 182:14, 184:23
**virtue** [1] - 211:2
**visible** [1] - 194:23
**vision** [4] - 108:13, 108:17, 228:10, 228:18
**Vision** [1] - 118:12
**vivid** [2] - 198:17, 266:7
**vividly** [1] - 198:16
**voice** [1] - 254:8
**VOICE** [1] - 141:4
**voicemail** [1] - 409:25
**voicemails** [1] - 252:24
**vulgarity** [3] - 83:16, 84:11, 84:13

## W

**wait** [4] - 7:12, 98:15, 142:14, 260:25
**Wait** [1] - 150:7
**waived** [1] - 4:7
**walk** [7] - 39:10, 199:4, 206:24, 208:23, 231:5, 231:8, 232:20
**walked** [17] - 196:15, 198:9, 198:10, 198:23, 200:17, 205:13, 223:20, 230:15, 230:16, 230:22, 231:14, 313:4, 330:9, 330:11, 419:19, 428:15, 437:11
**walking** [6] - 199:13, 207:20, 208:2, 208:21, 224:2, 224:14
**walks** [1] - 51:14
**wall** [5] - 197:7, 198:7, 205:13, 216:17, 218:17
**Walt** [2] - 1:21, 3:5
**wants** [2] - 151:7, 283:21
**warnings** [1] - 376:5
**warranted** [3] - 240:2, 306:4, 376:24
**WAS** [1] - 190:18
**waste** [1] - 150:11
**watching** [1] - 286:5
**weapon** [1] - 72:10
**wearing** [2] - 196:18, 419:25
**website** [1] - 87:23
**websites** [1] - 46:24
**weed** [1] - 188:6
**week** [6] - 13:2, 13:4, 184:2, 371:7, 377:23, 418:17
**weeks** [3] - 187:8, 187:9, 356:13
**weight** [2] - 119:23, 433:3
**Weiner** [2] - 445:18, 445:19
**welcome** [1] - 110:15
**welcomed** [2] - 111:9, 301:4
**well-being** [2] - 53:12, 406:6
**west** [1] - 5:14
**WHEREOF** [1] - 462:20
**white** [2] - 420:20, 447:19
**White** [1] - 3:12
**Whitman** [2] - 1:21, 3:5
**whole** [11] - 7:19, 8:8, 107:22, 157:12, 205:3, 227:10, 274:3, 274:5, 313:22, 362:21, 365:24
**wildly** [5] - 208:14, 216:5, 219:7, 346:4, 349:16
**William** [1] - 334:20
**Williams** [1] - 437:15
**wingspan** [4] - 205:22, 205:24, 206:4, 206:7
**winter** [1] - 326:10
**Winter** [44] - 211:17, 216:19, 216:25, 217:4, 217:5, 217:9, 221:22, 226:12, 276:7, 276:10, 276:13, 276:15, 276:19, 276:25, 277:20, 279:2, 279:10, 279:22, 280:23, 281:6, 281:11, 282:3, 310:16, 311:20, 312:7, 315:16, 315:21, 316:10, 316:13, 317:10, 320:13, 320:18, 322:19, 326:19, 331:17, 331:21, 331:25, 347:5, 379:7, 379:9, 420:10, 420:14, 460:3, 460:6
**Winter[phonetic** [1] - 211:11
**Winterand** [1] - 225:10
**Winters'** [2] - 311:23, 312:10
**winthrop** [1] - 226:13
**Wisdom** [4] - 19:3, 19:6, 19:12, 19:15
**wish** [2] - 406:15, 407:9
**wishes** [1] - 408:12
**withdraw** [7] - 29:10, 74:21, 100:16, 136:20, 137:3, 281:8, 306:16
**withdrawn** [59] - 26:4, 37:3, 44:2, 48:8, 58:8, 66:23, 82:14, 85:6, 85:18, 99:18, 100:19, 109:6, 117:11, 119:15, 123:8, 123:19, 127:9, 134:24, 158:12, 169:19, 170:19, 171:15, 171:21, 173:20, 182:5, 183:4, 186:21, 189:17, 200:8, 240:4, 243:21, 257:5, 264:19, 273:15, 276:13, 278:5, 278:22, 280:14, 283:3, 288:25, 289:20, 299:15, 305:4, 305:19, 309:8, 311:21, 324:17, 327:14, 334:16, 335:5, 342:4, 344:21, 372:2, 381:3, 395:5, 399:5, 404:7, 412:9, 431:19
**witness** [40] - 5:3, 6:4, 6:8, 6:10, 27:16, 27:18, 47:14, 48:21, 53:6, 71:9, 137:14, 137:20, 139:2, 139:17, 143:8, 143:12, 144:8, 144:16, 146:19, 147:17, 148:4, 148:17, 149:24, 150:5, 151:4, 152:25, 153:3, 153:19, 190:8, 190:11, 190:14, 425:14, 447:5, 447:10, 447:12, 452:18, 452:20, 457:20, 462:10, 462:14
**WITNESS** [26] - 23:12,

38:15, 43:4, 79:24, 101:9, 177:24, 191:2, 191:15, 191:25, 192:5, 213:14, 261:3, 283:22, 284:18, 316:17, 318:4, 349:20, 353:23, 372:8, 432:11, 433:23, 438:23, 444:5, 450:23, 457:3, 462:20
**witness'** [1] - 453:13
**witness's** [1] - 144:17
**witnessed** [5] - 60:23, 229:24, 229:25, 233:23, 432:3
**witnesses** [2] - 453:24, 454:22
**wits** [1] - 228:20
**woman** [1] - 189:24
**WOMAN'S** [1] - 141:4
**won** [1] - 445:22
**word** [3] - 222:18, 303:22, 427:17
**Word** [6] - 318:23, 319:2, 319:4, 319:7, 449:7, 449:11
**worded** [1] - 313:21
**words** [26] - 8:8, 72:5, 72:24, 74:13, 78:12, 86:21, 93:25, 105:16, 109:20, 110:19, 110:24, 111:14, 112:9, 122:22, 153:24, 177:18, 195:9, 202:13, 239:17, 240:24, 240:25, 241:6, 261:18, 282:11, 309:9, 369:6
**worker** [1] - 104:13
**workers** [5] - 104:11, 104:18, 116:20, 116:22, 170:7
**works** [2] - 29:25, 140:6
**worry** [1] - 446:11
**wrestle** [1] - 209:6
**write** [11] - 175:24, 235:21, 236:2, 324:24, 335:10, 337:2, 337:5, 368:23, 375:18, 376:7, 410:7
**write-up** [1] - 175:24
**write-ups** [3] - 375:18, 376:7, 410:7
**writes** [1] - 297:24
**writing** [37] - 22:6, 22:8, 22:11, 24:15, 31:22, 40:4, 67:13, 68:12, 71:18, 89:3, 94:16, 104:3, 115:8, 130:10, 131:15, 131:25, 155:24, 177:21, 242:6, 242:12, 263:4, 268:20, 268:23, 303:8, 320:2, 362:4, 392:11, 408:4, 417:10, 436:15, 446:8, 446:15, 446:17, 454:6, 454:13, 454:25, 459:10
**writings** [2] - 243:20, 243:22
**written** [34] - 10:21, 41:12, 45:18, 64:5, 68:19, 72:18, 73:18, 91:8, 91:10, 93:18, 96:15, 101:2, 105:25, 127:17, 153:24, 175:7, 177:19, 177:25, 183:14, 183:18, 240:5, 240:9, 241:16, 242:3, 249:18, 257:5, 257:7, 257:16, 313:7, 317:18, 319:3, 375:15, 438:14, 446:3
**wrote** [11] - 180:10, 236:3, 242:14, 242:22, 308:19, 312:25, 331:4, 359:24, 388:16, 406:14, 419:16

## X

**XII** [1] - 90:16
**XX** [1] - 190:18

## Y

**year** [52] - 15:4, 17:21, 35:9, 57:2, 57:11, 69:21, 86:22, 88:10, 91:2, 93:4, 93:6, 94:10, 97:13, 104:9, 104:17, 109:10, 116:19, 117:15, 121:16, 123:10, 124:18, 125:10, 125:11, 125:12, 128:2, 134:2, 158:4, 158:6, 160:4, 160:5, 169:15, 172:22, 173:16, 174:2, 174:4, 199:25, 228:24, 246:8, 246:14, 246:17, 246:19, 253:18, 262:15, 296:21, 350:14, 357:7, 373:5, 378:13, 379:5, 393:9, 399:17, 399:20
**years** [21] - 6:21, 13:20, 17:24, 17:25, 18:24, 19:4, 19:10, 35:11, 41:6, 56:15, 66:21, 85:25, 88:8, 144:17, 164:15, 168:20, 264:10, 264:14, 271:2, 445:3, 451:2
**yelled** [1] - 304:19
**yelling** [2] - 222:13, 310:17
**yes-or-no** [1] - 42:24
**yesterday** [8] - 6:6, 12:25, 141:17, 142:7, 148:2, 148:6, 338:12, 406:18
**YORK** [3] - 1:3, 456:4, 462:3
**York** [14] - 1:21, 2:7, 2:23, 3:6, 3:12, 5:15, 15:17, 66:12, 66:14, 68:8, 183:6, 456:23, 457:17, 462:8
**you..** [1] - 76:19
**yourself** [10] - 20:6, 59:6, 61:11, 90:16, 94:24, 125:23, 194:20, 320:11, 434:9, 453:8

## Z

**Zachary** [3] - 420:22, 420:23, 447:22
**Zacko** [2] - 407:2, 407:4
**zero** [1] - 179:23
**ZIMMERMAN** [1] - 1:10
**Zimmerman** [4] - 289:22, 292:7, 415:3, 416:15
**Zucker** [2] - 212:2, 447:22